HAGENS BERMAN SOBOL SHAPIRO LLP
Reed R. Kathrein (Bar. No. 139304)
reed@hbsslaw.com
Lucas E. Gilmore (Bar No. 250893)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

*Liaison Counsel for Plaintiff*

LABATON KELLER SUCHAROW LLP
Eric J. Belfi (*pro hac vice* forthcoming)
ebelfi@labaton.com
Francis P. McConville (*pro hac vice* forthcoming)
fmcconville@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, and CLAIRE MCDONOUGH,<br>Defendants. | Case No. 2:24-cv-04566<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Indiana Public Retirement System ("Plaintiff"), individually and on behalf of all others similarly situated, by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which

are alleged upon personal knowledge.  Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (1) Rivian Automotive, Inc.'s ("Rivian" or the "Company") regulatory filings with the U.S. Securities and Exchange Commission ("SEC"); (2) press releases and media reports issued and disseminated by the Company; (3) analyst and media reports concerning the Company; and (4) other public information regarding the Company, including statements made by Rivian executives.  Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This securities class action is brought on behalf of all persons or entities that purchased or otherwise acquired Rivian securities between August 12, 2022 and February 21, 2024, inclusive (the "Class Period").  The claims asserted herein are alleged against Rivian, its chief executive officer Robert J. Scaringe ("Scaringe") and its chief financial officer Claire McDonough ("McDonough") (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      Rivian, headquartered in Irvine, California, is an automotive manufacturer that develops and builds electric vehicles ("EVs") for both retail and commercial customers.  The Company was founded in 2009 and went public in November 2021 through its initial public offering.  Since its inception, Rivian has never turned a profit.

3.      Because Rivian is an unprofitable growth company, Rivian's ability to manufacture and sell enough EVs to become profitable in the near future has been of paramount concern for its investors.  To do so, Rivian would have to significantly increase its manufacturing capacity to produce more EVs annually.  Also, Rivian would need to grow customer demand for its EVs, including maintaining its book of preorders, so that it could sell a larger number of EVs without significant price reductions.

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Rivian had overstated demand for its EVs; (ii) Rivian had concealed the negative effect inflation and higher interest rates were having on demand for its EVs; (iii) the number of orders in Rivian's order bank had decreased due to cancellations and other factors; (iv) Rivian was failing to ramp up its production of EVs at the rate it claimed; (v) all the foregoing was likely to, and did, negatively impact the Company's anticipated earnings and vehicle production targets for 2024; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.     Defendants' fraud began to be revealed on February 28, 2023, after the close of trading, when Rivian announced a lower-than-expected 2023 EV production target. On this news, Rivian's stock price fell $3.54 per share, or **more than 18 percent**, to close at $15.76 per share on March 1, 2023.

6.     Then, on February 21, 2024, after the close of trading, Rivian issued a press release announcing its fourth quarter and full year 2023 financial results. As part of these results, Rivian revealed that it planned to produce only 57,000 EVs in 2024, well below the 80,000 EVs expected by analysts. Rivian also revealed an adjusted EBITDA[1] loss of $2.7 billion expected for 2024, versus a $2.59 billion loss expected by analysts, blaming "[e]conomic and geopolitical uncertainties and pressures, most notably the impact of historically high interest rates." Rivian also announced it would cut 10% of salaried staff.

7.     On this news, Rivian's stock price fell $3.94 per share, or **more than 25 percent**, to close at $11.45 per share on February 22, 2024.

---

[1] "EBITDA" refers to earnings before interest, taxes, depreciation, and amortization.

8.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Rivian is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

12.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

13.    Plaintiff, as set forth in the attached Certification, acquired Rivian securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.    Defendant Rivian is a Delaware corporation with principal executive offices located at 14600 Myford Road in Irvine, California.  Rivian's Class A common stock trades in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "RIVN."  As of April 23, 2024, 987,495,232 shares of Rivian's Class A common stock were outstanding, owned by hundreds or thousands of investors.

15.    Defendant Scaringe has served as Rivian's Chief Executive Officer at all relevant times.  Defendant Scaringe is also the Company's founder.

16.     Defendant McDonough has served as Rivian's Chief Financial Officer at all relevant times.

17.     Defendants Scaringe and McDonough are collectively referred to herein as the "Individual Defendants."  The Individual Defendants, because of their positions with Rivian, possessed the power and authority to control the contents of Rivian's reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers and institutional investors, *i.e.*, the market.  Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

18.     Rivian is liable for the acts of the Individual Defendants, and its employees under the doctrine of *respondeat superior* and common law principles of agency as all the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

19.     The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Rivian under *respondeat superior* and agency principles.

## **SUBSTANTIVE ALLEGATIONS**

### **Background**

20.     Rivian develops and builds EVs for both retail and commercial customers. Its major products include the R1T, a pickup truck, the R1S, a sport utility vehicle, and

the Electric Delivery Van ("EDV"), which is marketed as a commercial EV.  A large portion of Rivian's EVs are manufactured at its facility in Normal, Illinois.

21.    Rivian went public in November 2021 via an initial public offering ("IPO") which raised billions of dollars in proceeds for the Company.  After the IPO, Rivian stock has traded on the NASDAQ under the ticker symbol "RIVN."  At the time of the IPO, Rivian called itself a "growth stage company with a history of losses," and told investors that it "expect[ed] to incur significant expenses and continuing losses for the foreseeable future."

22.    Since the IPO, investors have been focused on Rivian's ability to turn a profit.  To become profitable, Rivian would need to increase its production capacity so it could manufacture and sell enough cars to generate revenue that exceeds its costs.  Becoming profitable would also require strong demand for Rivian's EVs so that it could increase its sales without having to make significant price cuts.

23.    Rivian allows customers to preorder its EVs, and these preorders are part of Rivian's backlog or "order bank."  The Company's backlog increases when there is more demand for its EVs than Rivian can produce and deliver.  Backlog decreases when Rivian increases its production capacity allowing the Company to fill more preorders.  Backlog also decreases when customer demand declines due to fewer new preorders or higher preorder cancellations.  Therefore, the size of Rivian's order bank is a key signal of demand for its EVs.

**Materially False and Misleading Statements Issued During the Class Period**

24.    The Class Period begins on August 12, 2022.  On August 11, 2022, after the close of regular trading on the NASDAQ, Rivian reported its financial results for the second quarter of 2022.  As part of these results, Rivian published a letter to shareholders (the "Q2 2022 Letter") which touted the "strong demand," for Rivian's EVs.  The Q2 2022 Letter also claimed that Rivian "continued to ramp production."

25.    On August 11, 2022, Rivian also hosted a related call with analysts and investors to discuss the financial results (the "Q2 2022 Earnings Call.").  During the

Q2 2022 Earnings Call, Defendant Scaringe touted the "progress," Rivian had made ramping up its production.

26.     Also on August 11, 2022, Rivian filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2022 (the "Q2 2022 10-Q"). The Q2 2022 10-Q represented that "[w]e do not expect . . . seasonality in demand to significantly impact our operations in the near-term as we scale our business due to our backlog of preorders," and that "[w]e believe we are well-positioned for international expansion in light of a healthy global demand for EVs and for the vehicle segments in which we currently operate or expect to operate."

27.     Moreover, in discussing factors affecting Rivian's performance, the Q2 2022 10-Q represented, in relevant part:

> The R1T, R1S, and EDV, our initial launch products, appear to resonate with customers based on positive responses to vehicles delivered and preorder data . . . . We believe the Rivian brand is becoming established in the most attractive consumer and commercial vehicle market segments.
>
> * * *
>
> [W]e expect to substantially raise brand awareness by connecting directly with our community through engaging content, rich digital experiences, and immersive events. We anticipate that these activities will lead to additional preorders and deliveries, and, as a result, increase our base of Rivian customers.

28.     Appended as exhibits to the Q2 2022 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that the Q2 2022 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

7

29.   On November 9, 2022, Rivian reported its financial results for the third quarter of 2022.  As part of these results, Rivian published a letter to shareholders (the "Q3 2022 Letter").  The Q3 2022 Letter again touted the "strong demand" for Rivian's products and the continued "ramp" in the Company's production.

30.   Also on November 9, 2022, Rivian hosted a related call with analysts and investors to discuss the financial results (the "Q3 2022 Earnings Call.").  During the Q3 2022 Earnings Call, Defendant Scaringe claimed that Rivian had "significant demand visibility as evidenced by our consumer and commercial backlog," and Defendant McDonough claimed there was "a robust backlog of demand," for Rivian EVs.  Further, Defendant McDonough stated that Rivian was "starting to really ramp up our production."

31.   Further, on November 9, 2022, Rivian filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2022 (the "Q3 2022 10-Q"). The Q3 2022 10-Q contained substantively the same statements referenced in ¶ 26, *supra*, regarding demand for Rivian's products.  The Q3 2022 10-Q also contained substantively the same statements referenced in ¶ 27, *supra*, regarding the purported positive preorder data that the Company had observed.

32.   Appended as exhibits to the Q3 2023 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by the Individual Defendants.

33.   The statements referenced in ¶¶ 24-32 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Rivian had overstated demand for its EVs; (ii) Rivian had concealed the negative effect inflation and higher interest rates were having on demand for its EVs; (iii) the number of orders in Rivian's order bank had decreased due to cancellations and other factors; (iv) Rivian was failing to ramp up its production of

EVs at the rate it claimed; (v) all the foregoing was likely to, and did, negatively impact the Company's anticipated earnings and vehicle production targets for 2024; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge as Defendants Continue to Mislead Investors

34.     The truth behind Defendants' misstatements was first partially revealed to investors on February 28, 2023 when, after the close of trading, Rivian disclosed its financial results for the fourth quarter and full year 2022.  As part of these results, Rivian published a letter to shareholders (the "Q4 2022 Letter") which disclosed its 2023 production target of 50,000 vehicles produced, which was below analysts' expectations of 60,000.  This revealed that Defendants' prior statements about Rivian's ability to increase production were false or misleading.  On this news, Rivian's stock price fell $3.54 per share, or ***more than 18 percent***, to close at $15.76 per share on March 1, 2023.

35.     Although Rivian's production issues were partially disclosed, Defendants continued to mislead investors regarding Rivian's production ramp up and demand for its EVs.  For instance, the Q4 2022 Letter stated, *inter alia*:

> The successful introduction of the R1T and R1S has been underpinned by strong demand and near categorically positive industry accolades – the result is a net preorder backlog that extends into 2024.
>
> * * *
>
> Rivian's rapid production ramp and introduction of multiple vehicle platforms has afforded our team significant manufacturing, operations, and development experience in a compressed timeframe. We are in the process of aggressively applying these learnings to our first mass market vehicle, the R2, and to our new manufacturing facility in Georgia with the goal of achieving a considerably lower cost structure.
>
> * * *
>
> In addition to our enhanced customer experience, we expect to demonstrate considerable progress against our product development roadmap in 2023. Deliveries of a ~400-mile R1 Max Pack variant are planned to begin in Fall 2023. We intend to make this configuration available to our existing preorder customers. We expect high demand and interest for this new offering.

36.     Also on February 28, 2023, after the close of trading, Rivian filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2022 (the "2022 10- K"). The 2022 10-K contained substantively the same statements referenced in ¶ 26, *supra*, regarding demand for Rivian's products.

37.     The 2022 10-K also stated, *inter alia*:

We aspire to drive meaningful change in the world's transition to sustainable mobility. ***We believe multiple industry tailwinds such as regulatory support and shifting consumer demand will continue to drive a transition from legacy internal combustion engine ("ICE") vehicles to EVs.***[2]

38.     In discussing factors affecting Rivian's performance, the 2022 10-K contained substantively the same statements referenced in ¶ 27, *supra*.

39.     Appended as exhibits to the 2022 10-K were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by the Individual Defendants.

40.     On May 9, 2023, Rivian reported its financial results for the first quarter of 2023.  As part of these results, Rivian published a letter to shareholders (the "Q1 2023 Letter").  The Q1 2023 Letter stated that "[d]uring the first quarter of 2023, R1 production continued to grow quarter-over-quarter and EDV is ramping production after the successful introduction of our in-house motor[.]"  In addition, the Q1 2023 Letter stated, in relevant part, that "[w]e plan to engage with our preorder customers and drive additional demand by expanding our demo drive program, offering more opportunities for potential customers to experience a Rivian vehicle."

41.     Also on May 9, 2023, Rivian filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2023 (the "Q1 2023 10-Q").  The Q1 2023 10-Q made substantively similar representations as referenced in ¶ 26, *supra*, regarding demand for Rivian products.

---

[2] Emphasis added unless otherwise noted.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

42. Moreover, in discussing factors affecting Rivian's performance, the Q1 2023 10-Q contained substantially the same statements referenced in ¶ 27, *supra*, regarding the purported positive preorder data that the Company had observed, as well as the brand awareness that would lead to additional preorders and deliveries.

43. Appended as exhibits to the Q1 2023 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by the Individual Defendants.

44. On August 8, 2023, Rivian reported its financial results for the second quarter of 2023. As part of these results, Rivian published a letter to shareholders (the "Q2 2023 Letter"). The Q2 2023 Letter stated, *inter alia*:

> Results for the second quarter of 2023 reflect strong financial and operational progress as we continued to ramp production, improved cost efficiency, successfully introduced new technologies, and enhanced the customer experience. On a quarter-over-quarter basis, production and deliveries grew ~50% and ~60%, respectively while gross profit per vehicle delivered improved by ~$35,000.
>
> * * *
>
> Due to the progress we have seen to date on our production lines, the ramp of our in-house motor line, and the supply chain outlook, we are increasing our 2023 production guidance to 52,000 total units. Our progress on cost management has also continued and therefore we are improving our Adj. EBITDA guidance to $(4,200) million. We are also lowering our capital expenditures guidance to $1,700 million with the reduction largely driven by a timing shift of some expenses to 2024.

45. The Q2 2023 Letter also represented, in relevant part, that "[f]or the remainder of 2023, we intend to maintain the momentum of the first half of the year by continuing to deliver against our value drivers: production ramp, cost efficiency, future platforms and technologies, and customer experience."

46. Also on August 8, 2023, Rivian filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2023 (the "Q2 2023 10-Q"). The Q2 2023 10-Q contained the same statements referenced in ¶ 26, *supra*, regarding demand for Rivian's products.

47. Moreover, in discussing factors affecting Rivian's performance, the Q2 2023 10-Q contained substantively the same statements referenced in ¶ 27, *supra*,

regarding the purported positive preorder data that the Company had observed, as well as the brand awareness that would lead to additional preorders and deliveries.

48.    Appended as exhibits to the Q2 2023 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by the Individual Defendants.

49.    On November 7, 2023, Rivian disclosed its financial results for the third quarter of 2023.  As part of these results, Rivian published a letter to shareholders (the "Q3 2023 Letter").  Q3 2023 Letter stated, *inter alia*:

> Results for the third quarter of 2023 reflect continued progress against our key value drivers including ramping production, improving cost efficiency, successfully introducing new technologies, and enhancing the customer experience.  Production during the third quarter of 2023 demonstrated our strongest quarterly rate to date with an annualized production rate of over 65,000 units, while financial results continue to benefit from our focus on driving down costs.  Importantly, investment in new technologies and our direct-to-customer operations are contributing to Rivian's competitive differentiation by enhancing the features and capabilities of our consumer and commercial platforms as well as improving the customer experience.

> Due to the progress experienced on our production lines, the ramp of our in-house motor line, and the supply chain outlook, we are increasing our 2023 production guidance to 54,000 total units.  Our progress on cost management has also continued and therefore we are improving our Adj. EBITDA guidance to $(4,000) million.  We are also lowering our capital expenditures guidance to $1,100 million.

50.    The Q3 2023 Letter also stated, in relevant part, that "we forecast reaching positive gross profit in 2024 and therefore expect that by the end of 2024, we will not have material LCNRV [lower of cost or net realizable value] inventory charges associated with goods manufactured at our Normal facility."

51.    Also on November 7, 2023, Rivian filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2023 (the "Q3 2023 10-Q").  While the Q3 2023 10-Q discussed "Rising Interest Rates" as a risk factor affecting Rivian's performance, Defendants downplayed the severity of the negative impacts of this factor on the Company's near-term prospects, merely warning of risks that "may" or "could" materialize "if" certain aggravating conditions occurred:

> ***Inflation and Rising Interest Rates.*** The United States economy has experienced inflation in various market segments. In order to help slow inflation, the Federal Reserve Bank in the United States has raised interest rates rapidly and substantially in recent years, and it is expected that interest rates will remain elevated for longer than previously anticipated. This may result in vehicle financing becoming less affordable to customers, influence customers' buying decisions to less expensive vehicles, or cause tightening of lending standards. If we are unable to fully offset higher costs through price increases or other measures, especially in the near-term as we continue to work through the backlog of preorders, or if we experience lower demand for our vehicles, we could experience an adverse impact on our business, prospects, financial condition, results of operations, and cash flows.

(Emphasis in original.) This risk factor was false or misleading because inflation and higher interest rates had already harmed demand for Rivian's EVs. Therefore, this very risk had materialized during the Class Period.

52.     Similar to previous reports filed by Rivian, the Q3 2023 10-Q continued to assert that "[w]e do not expect . . . seasonality in demand to significantly impact our operations in the near-term as we scale our business ***due to our backlog of preorders***."

53.     The Q3 2023 10-Q also contained similar statements as referenced in ¶ 27, *supra*, regarding the purported positive preorder data that the Company had observed, as well as the brand awareness that would lead to additional preorders and deliveries, while specifically citing Rivian's "order bank" as a factor showing that "[t]he R1T, R1S, and EDV appear to resonate with customers[.]"

54.     Likewise, similar to previous Rivian reports, the Q3 2023 10-Q continued to assert that "[w]e do not expect . . . seasonality in demand to significantly impact our operations in the near-term as we scale our business ***due to our backlog of preorders***."

55.     Appended as exhibits to the Q3 2023 10-Q were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by the Individual Defendants.

56.     The statements referenced in ¶¶ 35-55 were materially false and misleading because Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Rivian had overstated demand for its EVs; (ii) Rivian had concealed the negative effect inflation

13

and higher interest rates were having on demand for its EVs; (iii) the number of orders in Rivian's order bank had decreased due to cancellations and other factors; (iv) Rivian was failing to ramp up its production of EVs at the rate it claimed; (v) all the foregoing was likely to, and did, negatively impact the Company's anticipated earnings and vehicle production targets for 2024; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

57.    On February 21, 2024, after the close of trading, Rivian issued a press release announcing its fourth quarter and full year 2023 financial results.  As part of these results, Rivian revealed that it planned to produce only 57,000 EVs in 2024, well below the 80,000 EVs expected by analysts.  Rivian also revealed an expected adjusted EBITDA loss of $2.7 billion for 2024, versus a $2.59 billion loss expected by analysts, blaming "[e]conomic and geopolitical uncertainties and pressures, most notably the impact of historically high interest rates."  Rivian also revealed its plans to cut 10% of salaried staff.

58.    Also on February 21, 2024, Rivian held a call with analysts and investors to discuss these financial results (the "Q4 2023 Earnings Call.").  During the Q4 2023 Earnings Call, Defendant Scaringe stated:

> Our business is not immune to existing economic and geopolitical uncertainties.  Most notably, ***the impact of historically high interest rates, which has negatively impacted demand***.  In this fluid environment, we appreciate the expressed interest in demand visibility from the investment community.  The conversion of orders to sales can be impacted by several factors, including delivery timing, location of order, monthly payments, and customer readiness.

> Our order bank has notably reduced overtime as deliveries have more than doubled in 2023 versus 2022 along with ***the impact of cancellations due to both the macroenvironment*** and the customer factors I just referenced.  For 2024, we expect our total deliveries to be derived from our existing backlog as well as new orders generated during the year.

59.    On this news, Rivian's stock price fell $3.94 per share, or ***more than 25 percent***, to close at $11.45 per share on February 22, 2024.

60.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## **ADDITIONAL SCIENTER ALLEGATIONS**

61.    As alleged herein, Defendants acted with scienter in that Defendants knew, or recklessly disregarded, that the documents and public statements they issued and disseminated to the investing public in the name of the Company, or in their own name, during the Class Period were materially false and misleading.  Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Rivian, and their control over and/or receipt and/or modification of Rivian's materially false and misleading statements, were active and culpable participants in the fraudulent scheme alleged herein.

62.    Defendants knew or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public.  The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complexity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants.

63.    The Individual Defendants, because of their positions with Rivian, controlled the contents of Rivian's public statements during the Class Period.  The Individual Defendants were each provided with or had access to the information alleged herein to be false and misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected.  Because of their positions and access to material, non-public information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the investing public and that the positive representations that were being made were false and misleading.  As a result,

1  each of the Defendants is responsible for the accuracy of Rivian's corporate statements

2  and is, therefore responsible and liable for the representations contained therein.

3  ## LOSS CAUSATION

4  64.    During the Class Period, as detailed herein, Rivian and the Individual

5  Defendants made false and misleading statements and omissions, and engaged in a

6  scheme to deceive the market.  These false and misleading statements and omissions

7  artificially inflated the price of Rivian securities and operated as a fraud or deceit on

8  the Class (as defined below).  Later, when Defendants' prior misrepresentations and

9  fraudulent conduct were disclosed to the market, the price of Rivian securities fell

10  significantly.  As a result of their purchases of Rivian securities during the Class Period,

11  Plaintiff and other members of the Class suffered economic loss, *i.e.,* damages, under

12  the federal securities laws.

13  ## CLASS ACTION ALLEGATIONS

14  65.    Plaintiff brings this action as a class action pursuant to Federal Rule of

15  Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who

16  purchased or otherwise acquired Rivian securities during the Class Period (the

17  "Class"); and were damaged upon the revelation of the alleged corrective disclosures.

18  Excluded from the Class are Defendants herein, the officers and directors of the

19  Company, at all relevant times, members of their immediate families and their legal

20  representatives, heirs, successors or assigns and any entity in which Defendants have

21  or had a controlling interest.

22  66.    The members of the Class are so numerous that joinder of all members is

23  impracticable.  The disposition of their claims in a class action will provide substantial

24  benefits to the parties and the Court.  As of April 23, 2024, 987,495,232 shares of

25  Rivian's Class A common stock were outstanding, owned by hundreds or thousands of

26  investors.  Throughout the Class Period, Rivian securities were actively traded on the

27  NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this

28  time and can be ascertained only through appropriate discovery, Plaintiff believes that

there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Rivian or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

67.   There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)   Whether Defendants violated the Exchange Act;

(b)   Whether Defendants' statements and/or actions mispresented material facts;

(c)   Whether Defendants' statements and/or actions omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)   Whether Defendants knew or recklessly disregarded that their statements, actions, and/or omissions were false and misleading;

(e)   Whether Defendants' misconduct impacted the price of Rivian securities;

(f)   Whether Defendants' conduct caused the members of the Class to sustain damages; and

(g)   The extent of damages sustained by Class members and the appropriate measure of damages.

68.   Plaintiff's claims are typical of those of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

69.   Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

17

70.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## **INAPPLICABILITY OF STATUTORY SAFE HARBOR**

71.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Rivian who knew that the statement was false when made.

## **PRESUMPTION OF RELIANCE**

72.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine.  At all relevant times, the market for Rivian securities was an efficient market for, among other things, the following reasons:

(a)     Rivian common stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient market;

(b)     As a regulated issuer, Rivian filed periodic public reports with the SEC and NASDAQ;

(c)     Rivian regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and

1    through other wide-ranging public disclosures, such as communications with the

2    financial press and other similar reporting services; and

3           (d)    Rivian was followed by several securities analysts employed by

4    major brokerage firm(s) who wrote reports which were distributed to the sales force

5    and certain customers of their respective brokerage firm(s) and which were distributed

6    to the sales force and certain customers of their respective brokerage firm(s).  Each of

7    these reports was publicly available and entered the public marketplace.

8           73.    As a result of the foregoing, the market for Rivian securities promptly

9    digested current information regarding Rivian from publicly available sources and

10   reflected such information in the price of Rivian securities.  Under these circumstances,

11   all purchasers of Rivian securities during the Class Period suffered similar injury

12   through their purchase of Rivian securities at artificially inflated prices and the

13   presumption of reliance under the fraud-on-the-market doctrine applies.

14          74.    Further, at all relevant times, Plaintiff and other Class members relied on

15   Defendants to disclose material information as required by law.  Plaintiff and other

16   Class members would not have purchased or otherwise acquired Rivian securities at

17   artificially inflated prices if Defendants had disclosed all material information as

18   required by law.  Thus, to the extent that Defendants concealed or improperly failed to

19   disclose material facts concerning the Company and its business, Plaintiff and other

20   Class members are entitled to a presumption of reliance in accordance with *Affiliated*

21   *Ute Citizens of Utah* v. *United States*, 406 U.S. 128, 153 (1972).

22                              **COUNT I**

23          **(Violations of Section 10(b) of the Exchange Act and Rule 10b-5**
            **Promulgated Thereunder Against All Defendants)**
24

25          75.    Plaintiff repeats and re-alleges each and every allegation contained above

     as if fully set forth herein.
26

27

28

76. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

77. During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

78. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a) Employed devices, schemes, and artifices to defraud;

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Rivian securities during the Class Period.

79. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Rivian securities. Plaintiff and the Class would not have purchased Rivian securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

80. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Rivian securities during the Class Period.

81. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants)

82.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-74 as if fully set forth herein.

83.     The Individual Defendants acted as controlling persons of Rivian within the meaning of Section 20(a) of the Exchange Act.  By virtue of their positions and their power to control public statements about Rivian, the Individual Defendants had the power and ability to control the actions of Rivian and its employees.  By reason of such conduct, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

DATED: May 31, 2024                     Respectfully submitted,

                                        ___/s/ *Lucas E. Gilmore*___
                                        Lucas E. Gilmore

21

1
2
3
4
5
6

HAGENS BERMAN SOBOL SHAPIRO LLP
Reed R. Kathrein (Bar. No. 139304)
reed@hbsslaw.com
Lucas E. Gilmore (Bar No. 250893)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

7
8
9
10
11

HAGENS BERMAN SOBOL SHAPIRO LLP
Christopher R. Pitoun (Bar. No. 290235)
christopherp@hbsslaw.com
301 North Lake Avenue
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

12

*Liaison Counsel Plaintiff*

13
14
15
16
17
18
19

LABATON KELLER SUCHAROW LLP
Eric J. Belfi (*pro hac vice* forthcoming)
ebelfi@labaton.com
Francis P. McConville (*pro hac vice*
forthcoming)
fmcconville@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

20

*Counsel for Plaintiff and the Proposed Class*

21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS