HAGENS BERMAN SOBOL SHAPIRO LLP
Reed R. Kathrein (Bar. No. 139304)
reed@hbsslaw.com
Lucas E. Gilmore (Bar No. 250893)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

*Liaison Counsel for Proposed Lead Plaintiff*

LABATON KELLER SUCHAROW LLP
Eric J. Belfi (admitted *pro hac vice*)
ebelfi@labaton.com
Francis P. McConville (admitted *pro hac vice*)
fmcconville@labaton.com
Hui Chang (*pro hac vice* forthcoming)
hchang@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Proposed Lead Plaintiff and*
*Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, and CLAIRE MCDONOUGH, <br><br> Defendants. | Case No. 2:24-cv-04566-CBM-JPR <br><br> CLASS ACTION <br><br> MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL <br><br> Date: August 27, 2024 <br> Time: 10:00 a.m. <br> Courtroom: 8D <br> Judge: Hon. Consuelo B. Marshall |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

I.    INTRODUCTION...............................................................................................1

II.   SUMMARY OF THE ACTION ..........................................................................2

III.  ARGUMENT ......................................................................................................4

    A.    The Pension Funds Should be Appointed as Lead Plaintiff ...............4

        1.    The PSLRA Standard for Appointing the Lead Plaintiff ..........4

        2.    The Pension Funds Are the "Most Adequate Plaintiff" ............5

            a.    The Pension Funds' Motion Is Timely..............................5

            b.    The Pension Funds Have a Substantial Financial Interest .................................................................................5

            c.    The Pension Funds Satisfy the Typicality and Adequacy Requirements of Rule 23 ...............................6

            d.    The Pension Funds Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA ...............................7

    B.    The Court Should Approve the Pension Funds' Choice of Counsel.............................................................................................10

IV.   CONCLUSION .................................................................................................11

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aqua Metals Sec. Litig.*,
No. 17-cv-07142-HSG, 2018 WL 4860188
(N.D. Cal. May 23, 2018)......................................................................................9, 10

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002).............................................................................*passim*

*Das v. Unity Software Inc.*,
No. 5:22-cv-03962-EJD, 2023 WL 1927739
(N.D. Cal. Feb. 10, 2023) .........................................................................................8

*Doherty v. Pivotal Software, Inc.*,
No. 3:19-cv-03589-CRB, 2019 WL 5864581
(N.D. Cal. Nov. 8, 2019) ...........................................................................................9

*Felix v. Symantec Corp.*,
No. C 18-02902 WHA, 2018 WL 4029053
(N.D. Cal. Aug. 23, 2018) ......................................................................................6, 7

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021)........................................................................................8

*In re Versata, Inc., Sec. Litig.*,
No. C 01- 1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ...............7, 8

**Rules and Statutes**

Fed. R. Civ. P. 23.....................................................................................................*passim*

15 U.S.C. § 78u–4(a) *et seq.*..................................................................................*passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
No. 04-cv-8141 (S.D.N.Y.) ....................................................................................10

*In re Broadcom Corp. Class Action Litig.*,
No. 06-cv-5036 (C.D. Cal.)....................................................................................10

ii

*In re Countrywide Fin. Corp. Sec. Litig.*,
No. 07-cv-5295 (C.D. Cal.) ................................................................................ 10

*In re Mercury Interactive Corp. Sec. Litig.*,
No. 05-cv-3395 (N.D. Cal.) ............................................................................... 10

**Other Authorities**

H.R. Conf. Rep. No. 104-369, *reprinted in* 1995 U.S.C.C.A.N. ......................... 7, 8

iii

## I.    INTRODUCTION

Presently pending before the Court is a securities class action (the "Action") on behalf of a "Class" of all persons or entities other than defendants that purchased or otherwise acquired Rivian Automotive, Inc. ("Rivian" or the "Company") securities between August 12, 2022 and February 21, 2024, inclusive (the "Class Period").  In securities class actions, the Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires district courts to appoint the "most adequate plaintiff" to serve as lead plaintiff.  15 U.S.C. § 78u–4(a)(3)(B)(i).  In that regard, the Court must determine which member of the "Class" has the "largest financial interest" in the relief sought by the Class, and also whether that movant has made a *prima facie* showing of typicality and adequacy under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

Proposed Lead Plaintiff National Pension Service, on behalf of the National Pension Fund (together, "NPS") and Indiana Public Retirement System ("Indiana" and collectively with NPS, the "Pension Funds"), submit that they should be appointed Lead Plaintiff because they have the largest financial interest in this litigation and have made the requisite showing of typicality and adequacy required by the standards of the PSLRA.  As discussed herein, the Pension Funds have a significant financial interest of approximately ***$36.4 million*** in losses as calculated on a last-in-first-out ("LIFO") as a result of defendants' alleged misconduct—an interest believed to be greater than that of any competing movant.[1]  The Pension Funds also meet the typicality and adequacy requirements of Rule 23 because their claims are typical of those of absent Class members, and because they will fairly and

---

[1] A Copy of the Pension Funds' PSLRA Certifications ("Certifications") are attached as Exhibit A to the accompanying Declaration of Lucas E. Gilmore ("Gilmore Decl."), which sets forth all the relevant transactions for the Pension Funds in Rivian securities during the Class Period.  In addition, a chart reflecting the calculation of the Pension Funds' losses as a result of their transactions in Rivian securities ("Loss Analysis") is attached as Exhibit B to the Gilmore Decl.

1

adequately represent the interests of the Class. The Pension Funds have further demonstrated their adequacy with their selection and retention of Labaton Keller Sucharow LLP ("Labaton") as proposed Lead Counsel for the Class. Labaton is a nationally recognized securities class action firm that has recovered billions of dollars for the benefit of injured investors and has the expertise and resources necessary to handle litigation of this complexity and scale.

Further, the Pension Funds fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous and efficient prosecution of this litigation. Prior to seeking appointment as Lead Plaintiff, representatives from the Pension Funds held a conference call to discuss, among other things, the merits of the claims against defendants, as well as their respective funds' common goals in the litigation. The Pension Funds have conferred together and discussed how they will jointly prosecute this Action and otherwise ensure the vigorous yet cost-effective prosecution of this litigation.

Accordingly, the Pension Funds are the "most adequate plaintiff," and respectfully requests that the Court appoint them Lead Plaintiff and approve their selection of Counsel.

## II.    SUMMARY OF THE ACTION

This is a federal class action on behalf of a class of all persons and entities who purchased or otherwise acquired Rivian securities between August 12, 2022 and February 21, 2024, inclusive, seeking to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act.

Rivian, headquartered in Irvine, California, is an automotive manufacturer that develops and builds electric vehicles ("EVs") for both retail and commercial customers. Rivian common stock trades on the NASDAQ under the ticker symbol "RIVN."

2

The Complaint alleges that, throughout the Class Period, defendants misled investors about the Company's business, operations, and prospects. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) Rivian had overstated demand for its EVs; (ii) Rivian had concealed the negative effect inflation and higher interest rates were having on demand for its EVs; (iii) the number of orders in Rivian's order bank had decreased due to cancellations and other factors; (iv) Rivian was failing to ramp up its production of EVs at the rate it claimed; (v) all the foregoing was likely to, and did, negatively impact the Company's anticipated earnings and vehicle production targets for 2024; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

Defendants' fraud began to be revealed to the market on February 28, 2023, when Rivian announced a lower-than-expected 2023 EV production target. On this news, Rivian's stock price fell $3.54 per share, or more than 18 percent, to close at $15.76 per share on March 1, 2023. Then, on January 2, 2024, Rivian announced that its vehicle production numbers for the fourth quarter of 2023 fell below expectations. On this news, Rivian's stock price fell $2.36 per share, or more than 10 percent, to close at $21.10 per share on January 2, 2024. Finally, on February 21, 2024, Rivian announced wider-than-expected anticipated losses for 2024. Rivian also issued lower-than-expected 2024 EV production guidance and announced it would cut 10% of salaried staff. On this news, Rivian's stock price fell $3.94 per share, or more than 25 percent, to close at $11.45 per share on February 22, 2024.

As a result of defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's securities, the Pension Funds and the Class have suffered significant damages.

## III.   ARGUMENT

### A.   The Pension Funds Should be Appointed as Lead Plaintiff

The Pension Funds respectfully submit that they are the presumptively "most adequate plaintiff" because they have timely filed this motion, have claimed a substantial financial interest, and are both typical and adequate under Rule 23.  As the "most adequate plaintiff," the Pension Funds should be appointed as Lead Plaintiff and their choice of counsel approved.

### 1.   The PSLRA Standard for Appointing the Lead Plaintiff

The PSLRA sets forth a procedure for the appointment of a lead plaintiff in securities class actions.  15 U.S.C. §§ 78u–4(a)(1) & (a)(3)(B); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002).  First, within twenty days of filing a class action, the filing plaintiff must publish a notice advising members of the purported class of the pendency of the action, the claims asserted, the purported class period, and their right to move the court for appointment as lead plaintiff of the purported class. 15 U.S.C. § 78u–4(a)(3)(A)(i); *Cavanaugh*, 306 F.3d at 729.

Second, upon considering all motions for appointment as lead plaintiff filed in response to the notice, the court must appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff.  The "presumptively most adequate plaintiff" is the person or group of persons who: (1) has either filed the complaint or made a motion to serve as lead plaintiff within 60 days after publication of the required notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 730.

As the Ninth Circuit stated in *Cavanaugh*:

> In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.  It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy."

4

306 F.3d at 730 (footnote omitted).

Third, the court must then "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730. Only proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class" can rebut the presumption in favor of appointing the presumptively most adequate plaintiff as lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II); *see also Cavanaugh*, 306 F.3d at 730.

### 2. The Pension Funds Are the "Most Adequate Plaintiff"

#### a. The Pension Funds' Motion Is Timely

The Pension Funds filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u–4(a)(3)(A)(i), on May 31, 2024, counsel for Indiana, plaintiff in the Action, caused notice regarding the pending nature of this case to be published on *Business Wire*, a widely circulated, national, business-oriented news reporting service. *See* Notice, Gilmore Decl. Ex. C. Thus, as permitted by the PSLRA, any person or group of persons may apply to be appointed Lead Plaintiff within 60 days after publication of the notice, *i.e.,* on or before July 30, 2024. The Pension Funds filed their motion within the required period and have thus satisfied the procedural requirements of the PSLRA.

#### b. The Pension Funds Have a Substantial Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii); *Cavanaugh*, 306 F.3d at 730. As evidenced by their Certifications and Loss Analysis, the Pension Funds suffered ***$36.4 million*** in LIFO losses as a result of

5

defendants' alleged misconduct.  *See* Gilmore Decl., Exs. A and B.  To the best of counsel's knowledge, there are no other plaintiffs with a larger financial interest.  Therefore, the Pension Funds satisfy the PSLRA's prerequisite of having the largest financial interest.

<strong>c.      The Pension Funds Satisfy the Typicality and Adequacy Requirements of Rule 23</strong>

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u–4(a)(3)(B)(iii)(I)(cc).  Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(3)-(4); *Cavanaugh*, 306 F.3d at 730 (focusing "in particular" on typicality and adequacy at the lead plaintiff stage).

"The typicality requirement is satisfied when the putative lead plaintiff has suffered the same injuries as absent class members as a result of the same conduct by the defendants."  *Felix v. Symantec Corp.*, No. C 18-02902 WHA, 2018 WL 4029053, at *3 (N.D. Cal. Aug. 23, 2018) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  Here, the claims that the Pension Funds assert are typical of the claims of the other members of the putative Class because, like all other Class members, the Pension Funds purchased Rivian securities during the Class Period in reliance on defendants' false and misleading representations, and sustained monetary damages as a result.  Because the claims that the Pension Funds assert are based on the same legal theories and arise from the same event or practice or course of conduct that gives rise to the claims of other Class members, typicality is satisfied.

The thrust of the adequacy inquiry is: "(1) whether there are conflicts within the class; and (2) whether plaintiff and counsel will vigorously fulfill their duties to

6

the class." *Symantec Corp.*, 2018 WL 4029053, at *3 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)). Here, no antagonism exists between the Pension Funds' interests and those of the absent Class members; rather, the interests of the Pension Funds and the Class members are squarely aligned. In addition, the Pension Funds have demonstrated their adequacy through their selection of Labaton as Lead Counsel to represent the Class in this Action. As discussed more fully herein, Labaton is highly experienced in prosecuting securities class actions vigorously and efficiently, and timely submitted this Motion to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v). Accordingly, the Pension Funds satisfy the adequacy requirement.

### d. The Pension Funds Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the requirements of Rule 23, the Pension Funds—sophisticated institutional investors—are precisely the type of investor Congress intended, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *see also In re Versata, Inc., Sec. Litig.*, No. C 01- 1439 SI, 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20, 2001) (finding that a movant's "institutional status is given great weight in assessing its adequacy as a plaintiff" because "Congress intended that the lead plaintiff procedures under the PSLRA would 'encourage institutional investors to take a more active role in securities class action lawsuits'") (citation omitted). Congress reasoned that increasing the role of institutional investors, which typically have a large financial

7

stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.

It is no surprise, therefore, that courts within the Ninth Circuit have repeatedly recognized the propriety of appointing cohesive groups of institutional investors that demonstrate an ability to represent the Class' interests. *See In re Versata*, 2001 WL 34012374, at *6-7 (appointing a group composed of sophisticated investors as lead plaintiff because they "possess[ed] both sophistication and business knowledge, as well as substantial individual losses which adds meaningful incentive for a vigorous prosecution of the action"); *Das v. Unity Software Inc.*, No. 5:22-cv-03962-EJD, 2023 WL 1927739, at *1 (N.D. Cal. Feb. 10, 2023) (appointing as lead plaintiff a group of institutional investors); *see also In re Mersho*, 6 F.4th 891, 903 n.4 (9th Cir. 2021) ("[It] is clear from the statutory language" that "group[s] can serve as a lead plaintiff[.]"); *Cavanaugh*, 306 F.3d at 731 n.8 ("[A] 'group of persons' can collectively serve as a lead plaintiff[.]").

The Pension Funds understand the duties and responsibilities with which a Lead Plaintiff is charged under the PSLRA, including to oversee and supervise the litigation separate and apart from counsel. The Pension Funds have submitted sworn Certifications attesting to their willingness and ability to fulfill those duties and responsibilities in this case. *See* Gilmore Decl., Ex. A. The Pension Funds comprise a small, cohesive partnership of sophisticated institutional investors that each determined that their joint appointment as Lead Plaintiff would advance the Class' best interest.

The Pension Funds are sophisticated institutional investors that have billions in combined assets under management and have significant experience acting as fiduciaries and in selecting, hiring, and overseeing the activities of outside counsel

8

in complex litigation. Moreover, the Pension Funds each have dedicated staffs of professionals, including legal professionals, who will ensure the effective oversight of counsel and this litigation. The Pension Funds have already taken measures to ensure the claims are vigorously and effectively prosecuted in the best interests of the Class. First, Indiana filed the Complaint the Action. Further, as part of their effort to formalize their oversight of this Action and before seeking appointment as Lead Plaintiff, representatives of the Pension Funds held a conference call on July 29, 2024 in which they discussed the strength of the claims against Defendants, their strategy for prosecuting the action, the benefits the Class will receive from the leadership of experienced institutional investors, and the measures the funds have implemented to ensure that the Class' claims will be zealously and efficiently litigated. Further, while the Pension Funds understand that any attorneys' fees awarded in this Action will be set by the Court, the Pension Funds take very seriously their obligation as Lead Plaintiff to ensure that any request for attorneys' fees sought by counsel is appropriate and have negotiated retainer agreements with Labaton that limit the fees counsel may request. Through these and other measures, the Pension Funds have sought to ensure that the Class will receive the best possible representation.

In sum, the Pension Funds have demonstrated their willingness, resources, experience, and commitment to working closely with one another to supervise their proposed Lead Counsel and obtain the best possible recovery for the Class. The Pension Funds are precisely the type of institutional investors that Congress sought to empower as Lead Plaintiff when enacting the PSLRA. *See, e.g., Doherty v. Pivotal Software, Inc.*, No. 3:19-cv-03589-CRB, 2019 WL 5864581, at *11-12 (N.D. Cal. Nov. 8, 2019) (appointing group of institutional investors as lead plaintiff); *In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 WL 4860188, at *4 (N.D.

9

Cal. May 23, 2018) (appointing a group of investors that demonstrated they are "fully capable of representing the class's interests effectively").

### B.    The Court Should Approve the Pension Funds' Choice of Counsel

The Pension Funds have selected and retained Labaton as their proposed Lead Counsel for the Class and Hagens Berman Sobol Shapiro LLP ("Hagens Berman") as their proposed Liaison Counsel for the Class.  The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval.  15 U.S.C. § 78u–4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734.  The Court should not disturb the lead plaintiff's selection of counsel unless necessary to "protect the interests of the class."  15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa); *see also Cavanaugh*, 306 F.3d at 734 ("While the appointment of counsel is made subject to the approval of the court, the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff.").

Labaton has significant experience in prosecuting securities class actions and has excelled as lead counsel in numerous landmark securities class actions throughout the United States on behalf of defrauded investors, including cases in this District.  Labaton served as a lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and secured a $117.5 million settlement in *In re Mercury Interactive Corp. Securities Litigation*, No. 05-cv-3395 (N.D. Cal.).  In addition, Labaton was a lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which achieved a settlement of $624 million—one of the largest securities fraud settlements arising from the financial crisis of 2007 and 2008, and also secured a $160.5 million settlement as lead counsel in *In re Broadcom Corp. Class Action Litigation*, No. 06-cv-5036 (C.D. Cal.).  Labaton presently serves as lead and co-lead counsel in several significant investor class actions.  *See* Gilmore Decl. Ex. D.  Similarly, Hagens

10

Berman is an accomplished securities class action firm with decades of experience in prosecuting securities class actions and has successfully secured favorable outcomes for classes of plaintiffs in numerous class action lawsuits. *See* Gilmore Decl. Ex. E.

Thus, the Court can be assured that, by approving the Pension Funds' choice of counsel, the Class will receive the highest caliber of legal representation. Accordingly, the Court should approve the Pension Funds' selection of Labaton as Lead Counsel for the Class and Hagens Berman as Liaison Counsel for the Class.

## IV.    CONCLUSION

For the foregoing reasons, the Pension Funds respectfully request that this Court enter an Order: (1) appointing the Pension Funds as Lead Plaintiff; (2) approving the Pension Funds' selection of Labaton as Lead Counsel for the Class and Hagens Berman as Liaison Counsel for the Class; and (3) granting such other and further relief as the Court may deem just and proper.

DATED: July 30, 2024                    Respectfully submitted,

            /s/ *Lucas E. Gilmore*
              Lucas E. Gilmore
HAGENS BERMAN SOBOL SHAPIRO LLP
Reed R. Kathrein (Bar. No. 139304)
reed@hbsslaw.com
Lucas E. Gilmore (Bar No. 250893)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

HAGENS BERMAN SOBOL SHAPIRO LLP
Christopher R. Pitoun (Bar. No. 290235)
christopherp@hbsslaw.com
301 North Lake Avenue

11

Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152


*Liaison Counsel for Proposed Lead Plaintiff*

LABATON KELLER SUCHAROW LLP
Eric J. Belfi (admitted *pro hac vice*)
ebelfi@labaton.com
Francis P. McConville (admitted *pro hac vice*)
fmcconville@labaton.com
Hui Chang (*pro hac vice* forthcoming)
hchang@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477


*Counsel for Proposed Lead Plaintiff and Proposed Lead Counsel for the Class*

12

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered users via the e-mail addresses on the court's Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the court's Manual Notice List.

    /s/ *Lucas E. Gilmore*
    Lucas E. Gilmore

    HAGENS BERMAN SOBOL SHAPIRO LLP
    Lucas E. Gilmore (Bar No. 250893)
    lucasg@hbsslaw.com
    715 Hearst Avenue, Suite 300
    Berkeley, CA 94710
    Telephone: (510) 725-3000
    Facsimile: (510) 725-3001

13