**THE BURKE LAW FIRM**
Timothy J. Burke (SBN #181866)
tim.burke@burke-law-firm.com
1001 Wilshire Boulevard, #2187
Los Angeles, CA 90017
(310) 984-7199 (phone)
(310) 602-6589 (fax)

*Local Counsel for Kamil Kirio and Nada Badr-Kirio and Proposed Liaison Counsel for the Proposed Class*

[Additional Counsel on Signature Block]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE and CLAIRE MCDONOUGH,<br><br>Defendants. | Case No. 2:24-cv-04566-CBM-JPR<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF KAMIL KIRIO AND NADA BADR-KIRIO FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL, AND IN OPPOSITION TO COMPETING MOTION**<br><br>Judge:   Consuelo B. Marshall<br>Date:    August 27, 2024<br>Time     10:00 a.m.<br>Crtrm:   8D |

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 6

    I.   THE COURT SHOULD APPOINT THE KIRIOS FAMILY AS LEAD PLAINTIFF IN THIS ACTION .............................................................. 6

        A.    The Kirios Family Has the Largest Financial Interest of Any Qualified Movant Before the Court ................................................ 6

        B.    The Kirios Family Readily Satisfies the *Prima Facie* Rule 23 Requirements ...................................................................... 6

        C.    There is No Proof to Rebut the Strong Presumption in Favor of The Kirios Family ...................................................................... 7

    II.  THE COURT SHOULD DENY THE UNRELATED GROUP'S MOTION BECAUSE IT HAS FAILED TO SATISFY ITS PRIMA FACIE RULE 23 REQUIREMENTS ............................................... 8

    III. EVEN A PRELIMINARY REVIEW OF THE UNRELATED GROUP'S BELATED JOINT DECLARATION SHOWS CONTINUING ADEQUACY ISSUES ....................................................... 15

CONCLUSION ....................................................................................................... 17

i

## TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Ali v. Intel Corp.*,
    No. 18-CV-00507-YGR, 2018 WL 2412111 n.8 (N.D. Cal. May 29, 2018) ...... 11

*Burns v. UP Fintech Holding Limited*,
    No. CV 23-4842-CBM, 2024 WL 387261 (C.D. Cal. Jan. 30, 2024) ..........passim

*Camp v. Qualcomm Inc.*,
    No. 18-cv-1208-AJB-BLM, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019)...........10

*Crihfield v. CytRx Corp.*,
    No. CV 16-05519 SJO (SKx), 2016 WL 10587938
    (C.D. Cal. Oct. 26, 2016) ...................................................................................11

*Das v. Unity Software Inc.*,
    No. 5:22-cv-03962-EJD, 2023 WL 1927739 (N.D. Cal. Feb. 10, 2023).......12, 16

*Doherty v. Pivotal Software, Inc.*,
    No. 3:19-cv-03589-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019).............12

*Garbowski v. Tokai Pharmaceuticals, Inc.*,
    302 F. Supp. 3d 441 (D. Mass. 2018) ...............................................................11

*Haideri v. Jumei Int'l Holding Ltd.*,
    No. 20-CV-02751-EMC, 2020 WL 5291872 (N.D. Cal. Sept. 4, 2020) .............16

*In re Aqua Metals Sec. Litig.*,
    No. 17-cv-07142-HSG, 2018 WL 4860188 (N.D Cal. May 23, 2018) ...............12

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ........................................................................ 8, 13

*In re Cloudera, Inc. Sec. Litig.*,
    No. 19-CV-03221-LHK, 2019 WL 6842021
    (N.D. Cal. Dec. 16, 2019) ................................................................ 2, 9, 11, 16

*In re Mersho*,
    6 F.4th 891 (9th Cir. 2021) ........................................................................ 2, 11

*In re Origin Materials, Inc., Sec. Litig.*,
    No. 2:23-cv-01816 WBS JDP, 2023 WL 8698363 (E.D. Cal. Dec. 15, 2023)...... 9

*In re Spectrum Pharmaceuticals, Inc.*,
    No. 2:13–cv–00433–LDG (CWH), 2014 WL 1394162 ...................................... 9

ii

*In re Stitch Fix, Inc. Sec. Litig.*,
    393 F. Supp. 3d. 833 (N.D. Cal. 2019) ...............................................................15

*In re Versata, Inc., Sec. Litig.*,
    No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ...............8, 12

*Int'l Union of Operating Engineers Loc. No. 478 Pension Fund v. FXCM Inc.*,
    No. 15-CV-3599 KMW, 2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015).............12

*Isaacs v. Musk*,
    No. 18-CV-04865-EMC, 2018 WL 6182753 (N.D. Cal. Nov. 27, 2018) ...........16

*Jakobsen v. Aphria, Inc.*,
    No. 18 CIV. 11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ........15

*Koffsmon v. Green Dot Corp.*,
    No. CV 19-10701 DDP, 2022 WL 170636 (C.D. Cal. Jan. 19, 2022) ...............10

*Lako v. Loandepot, Inc.*,
    No. 8:21-cv-01449-JLS-JDE, 2022 WL 1314463 (C.D. Cal. May 2, 2022) .......10

*No. 636 Defined Ben. Plan v. Bank of Am. Corp.*,
    275 F.R.D. 187 (S.D.N.Y. 2011) ........................................................................12

*Perez v. HEXO Corp.*,
    No. 19 Civ. 10965 (NRB), 2020 WL 905753 (S.D.N.Y. Feb. 20, 2020) ...........14

*Robb v. Fitbit Inc.*,
    No. 16-CV-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016) .................12

*Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC
    (RNBx), 2006 WL 6886020, at *8-10 (C.D. Cal. May 2, 2006) .........................10

*Tomaszewski v. Trevena, Inc.*,
    383 F. Supp. 3d 409 (E.D. Pa. 2019) .................................................................10

**Statutes**

15 U.S.C. 78u-4..................................................................................................17

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) .........................................................................8

15 U.S.C. § 78u-4 (a)(3) (B)(iii)(I) .................................................................2, 6, 7

**Rules**

Fed. R. Civ. P. 23 ........................................................................................passim

iii

Kamil Kirio and Nada Badr-Kirio (the "Kirios Family"), as Trustees of the Kirio Family Trust Dated September 21, 2015, respectfully submit this memorandum in further support of their motion for appointment as lead plaintiff and approval of their choice of counsel pursuant to the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), codified as Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), and in opposition to the competing motion.[1]

## PRELIMINARY STATEMENT

On July 30, 2024, two movants timely filed motions for appointment as Lead Plaintiff: (1) the Kirios Family, and (2) Indiana and NPS. An analysis of these motions makes it clear that the Kirios Family is the "most adequate" plaintiff and should be appointed Lead Plaintiff in this Action.

The PSLRA requires this Court to determine which movant has the largest financial interest and also satisfies *prima facie* adequacy and typicality under Fed. R. Civ. P. 23. Possessing the largest financial interest alone is not enough to secure the PSLRA's presumption. And while the PSLRA has some preference for appointing institutional investors to lead securities litigations, being an institutional movant alone is not a trump card. Institutions, like all other movants, must still satisfy the PSLRA's requirements, and this is particularly true when they, as Indiana and NPS did here, move as part of an unrelated group formed at the last-minute by counsel. Because the PSLRA's primary purpose is to eliminate lawyer-driven litigation, unrelated groups must be scrutinized to determine whether they are

---

[1] A competing motion was filed by the National Pension Service ("NPS"), which is a South Korean pension fund, and the Indiana Public Retirement System ("Indiana") (sometimes referred to collectively herein as the "Unrelated Group"). Citations to "Br." are to the Unrelated Group's motion. *See* ECF No. 25. "Mot." refers to the Kirios Family's opening motion. *See* ECF No. 29.

1

legitimate movants or the precise problem the PSLRA sought to correct. Significantly, such examinations apply equally to unrelated groupings of institutions and individual investors, and, for the reasons detailed *infra*, Indiana and NPS fail the test. *See*, *e.g.*, *In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2019 WL 6842021 (N.D. Cal. Dec. 16, 2019) (group of two institutions with largest loss was disqualified as inadequate). The movant that ultimately has the largest financial interest **and** satisfies its Rule 23 requirements is the presumptive lead plaintiff, and the presumption in that movant's favor can only be rebutted upon "proof" of the movant's inadequacy.[2]

Despite having a larger financial interest than the Kirios Family, Indiana and NPS should not be appointed Lead Plaintiff here.  Indiana and NPS are members of a transparently lawyer-driven group comprised of two unrelated and widely geographically dispersed institutions with no preexisting relationship. They were undeniably formed at the eleventh hour by counsel. And, in the face of this Court's recent scrutiny over unrelated group movants (that actually attempted to support their grouping), Indiana and NPS utterly failed to satisfy their basic *prima facie* Rule 23 requirements in their initial motion.

In the Ninth Circuit, courts routinely reject group movants without a preexisting relationship unless the movants can demonstrate that they can effectively litigate the action and manage counsel. *See In re Mersho*, 6 F.4th 891 (9th Cir. 2021) (unrelated groups can, under limited and appropriate circumstances, be appointed as

---

[2] *See* 15 U.S.C. § 78u-4 (a)(3) (B)(iii)(I) ("the court shall adopt a presumption that the most adequate plaintiff [] has the largest financial interest in the relief sought by the class; and [] otherwise satisfies the requirements of Rule 23 … the presumption … may be rebutted only upon proof [] that the presumptively most adequate plaintiff"[] will not fairly and adequately protect the interests of the class; or [] is subject to unique defenses that render such plaintiff incapable of adequately representing the class").

2

lead plaintiff). This showing is typically accomplished through the filing of a sworn declaration under penalty of perjury **with a group's initial motion**. Counsel for the Unrelated Group know this, and so does Indiana, which has recently filed **eight** lead plaintiff motions as part of a proposed group, and in every instance supported its grouping with a joint declaration filed with its initial moving papers.

Of course, the substance of any sworn declaration or equivalent evidentiary showing of a group's adequacy is also of paramount importance. As this Court has recently reiterated, mere boilerplate assertions are not enough to satisfy an unrelated group movant's Rule 23 requirements. *See Burns v. UP Fintech Holding Limited*, No. CV 23-4842-CBM, 2024 WL 387261, at *3 (C.D. Cal. Jan. 30, 2024) (rejecting two-member group with the largest financial interest despite their submission of a sworn joint declaration because "boilerplate assurances that they would work together to oversee the litigation" were insufficient). In this context, the motion that the Unrelated Group filed in this Court should stand no chance.

Here, the Unrelated Group failed to provide the Court in its initial motion with **any** declaration or evidentiary showing demonstrating its ability to control counsel and work cohesively in the best interests of the proposed Class. *See infra* at 9.  Even the brief submitted on their behalf by counsel abysmally fails to explain how two distant entities in different time zones can and will work cohesively to manage counsel and protect the best interest of the proposed Class (as opposed to their attorneys). Critical factors that courts routinely weigh heavily – like how group members will communicate amongst themselves and counsel, and how group members will resolve disputes amongst themselves to avoid a detrimental deadlock – are completely absent from the Unrelated Group's opening papers.

The Unrelated Group likewise failed to explain in their initial motion how and why a U.S. and South Korean entity first came to learn of each other, and how or

3

why they joined forces on the day of the lead plaintiff deadline. The lack of explanation in its opening papers is not surprising as the record shows that Indiana and NPS each signed their PSLRA certifications the day the motion was due on July 30. *See* ECF No. 26. And the only supposed contact that the group members had with one another before then was an alleged telephone call ambiguously referenced by their counsel (with no mention of who participated) on July 29 (which, in reality, was likely also July 30 for NPS given that Korea is approximately 13-14 hours ahead of the U.S.). Br. 9.

Equally troubling, the PSLRA certifications that Indiana and NPS each signed do not even demonstrate each group member's awareness of one another or that they are moving collectively as part of a group. *See* ECF No. 26. The only acknowledgment and discussion of their grouping is found in threadbare representations made by counsel in the brief they wrote, which could hardly be considered a *prima facie* Rule 23 showing. The only rational explanation here is that this last-minute amalgamation was designed by counsel to secure the largest financial interest at all costs – no matter how sloppy the motion looked. Br. 2, 9. In sum, this is the very conduct that the PSLRA was designed to eliminate, and under these circumstances, the Unrelated Group should not be rewarded with an opportunity to cure their deficiencies on opposition.[3] Moreover, to the extent counsel

---

[3] On August 6, 2024, as the Kirios Family was finalizing this opposition (and as they predicted would happen), the Unrelated Group filed a belated joint declaration to attempt to clean up the mess that they created in their initial motion (the "Joint Declaration"). That belated declaration, which should not be accepted by this Court, only further confirms that the Unrelated Group was a lawyer-driven rush job in the first place. The Kirios Family will address the Unrelated Group's opposition and Joint Declaration in their reply memorandum, but even a preliminary review of the Joint Declaration shows ongoing adequacy problems. *See infra* at 16-17. Regardless, no amount of back-peddling or post-motion activity by the group can salvage its inadequacy, and the Court is tasked with assessing the quality of the movants as represented in their respective motions, not the quality of counsel's ability to cover-up its gamesmanship *post hoc*.

4

for the Unrelated Group will now seek to disaggregate the group and present Indiana and NPS as individual movants, they cannot be allowed to do so now either.

In stark contrast to the Unrelated Group, the Kirios Family, which is the only other movant before the Court, has the largest financial interest of qualified movants, satisfies Rule 23, and is thus the presumptive lead plaintiff here. The Kirios Family's financial interest is substantial – exceeding $1.9 million – which ensures it will vigorously represent the interests of the proposed Class.

In addition, the Kirios Family has made the requisite *prima facie* showing of adequacy and typicality under Rule 23. The Kirios Family is typical of other proposed Class members here because it, like the rest of the proposed Class, was harmed by Defendants' alleged misstatements and omissions. The Kirios Family has also satisfied Rule 23's adequacy requirement as it has no conflicts with the proposed Class, has a substantial financial interest, and chose Bernstein Liebhard LLP ("Bernstein Liebhard"), an experienced law firm in securities class actions, as proposed Lead Counsel for the proposed Class. *Id*.

Thus, under the PSLRA, there is a "strong" presumption that the Kirios Family should be appointed the Lead Plaintiff here. Once the PSLRA's strong presumption attaches, only "proof" of inadequacy can rebut it. No such proof exists here to rebut the presumption in the Kirios Family's favor. Thus, the Kirios Family should be appointed Lead Plaintiff in this action.

Accordingly, the Kirios Family respectfully requests that it be appointed as Lead Plaintiff, that its selection of Bernstein Liebhard and The Burke Law Firm ("Burke Law Firm") be approved as Lead Counsel and Liaison Counsel, respectively, and that the competing motion be denied.

## ARGUMENT

### I.  THE COURT SHOULD APPOINT THE KIRIOS FAMILY AS LEAD PLAINTIFF IN THIS ACTION

Under the PSLRA, a "strong" presumption in favor of being appointed Lead Plaintiff goes to the movant who suffered the largest financial interest **and** satisfies Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, that movant is the Kirios Family because it has the largest financial interest of any qualified movant before the Court and readily satisfies the *prima facie* Rule 23 requirements. In addition, no "proof" exists to rebut the strong presumption in favor of appointing the Kirios Family as Lead Plaintiff. Indiana and NPS are not qualified movants because they have not, and belatedly cannot, meet their *prima facie* Rule 23 requirements. *See infra* at 8-9.  Therefore, Indiana and NPS must be disqualified.

### A.  The Kirios Family Has the Largest Financial Interest of Any Qualified Movant Before the Court

The Kirios Family has a $1,951,245 financial interest in this Action, which is the largest financial interest of any qualified movant before the Court. Indeed, while the Unrelated Group claims a larger financial interest of $36,376,799, it must be disqualified, because, as detailed *infra*, its motion does not even come close to satisfying the *prima facie* Rule 23 requirements and is purely lawyer-driven.  The Kirios Family does not take lightly that the Unrelated Group has a larger loss and is comprised of institutional investors. However, the Rule 23 *prima facie* requirements apply with equal force to all movants, and a movant's status as an institution alone does not cure the inadequacies present in the Unrelated Group's motion, nor does it completely immunize the Unrelated Group from being subject to lawyer-driven machinations.

### B.  The Kirios Family Readily Satisfies the *Prima Facie* Rule 23 Requirements

6

In addition to having the largest financial interest of any qualified movant before the Court, the Kirios Family has made the requisite *prima facie* showing of typicality and adequacy under Rule 23.

The Kirios Family's claims are typical of the Class in that they suffered the same injuries as a result of the same, or substantially the same, course of conduct by the named defendants, and base their claims on the same, or substantially the same, legal theories as the Class. *See* Mot. at 5.

The Kirios Family also readily meets the PSLRA's *prima facie* adequacy requirements. The Kirios Family has no conflicts of interest with other Class members because it bought Rivian securities during the Class Period and was harmed by the same alleged misstatements and omissions as other Class members. As noted *supra*, the Kirios Family also has the largest financial interest of qualified movants, which ensures that it will vigorously represent the interests of the proposed Class by maximizing a potential recovery in this Action. *See id.* at 6.  Additionally, the Kirios Family chose well-experienced counsel to represent the proposed Class. *See id.* at 8. Finally, the Kirios Family provided sufficient background information about themselves in their opening brief, including that they live in California, have invested in the securities markets for over twenty-five years, and run a flooring company together. *See id*. at 6.

Thus, the Kirios Family satisfy the *prima facie* Rule 23 requirements and  are entitled to the PSLRA's "strong" presumption of being the most adequate plaintiff to represent the proposed Class.  *See id.*

### C.    There is No Proof to Rebut the Strong Presumption in Favor of The Kirios Family

The only way for competing movants to rebut the PSLRA's "strong" presumption in favor of appointing the Kirios Family as Lead Plaintiff is to present

actual "proof", not mere speculation, that The Kirios Family somehow does not satisfy Rule 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). There is no proof of any Rule 23 impediment against the Kirios Family here. Moreover, the lead plaintiff process is not a "beauty contest" – the qualified movant with the largest financial interest (here, the Kirios Family) is the most adequate plaintiff, period. *See In re Cavanaugh*, 306 F.3d 726, 729-34 (9th Cir. 2002) (once a court determines which plaintiff has the largest stake, the court must appoint that plaintiff as lead unless it finds that he does not satisfy the typicality or adequacy requirements). This holds true when individual investors have a smaller financial interest than competing institutions that have not satisfied Rule 23.

## II.   THE COURT SHOULD DENY THE UNRELATED GROUP'S MOTION BECAUSE IT HAS FAILED TO SATISFY ITS *PRIMA FACIE* RULE 23 REQUIREMENTS

The Unrelated Group is not a qualified movant because it has not, and indeed cannot through *post hoc* activity and filings, satisfy its foundational *prima facie* Rule 23 requirements. Notwithstanding that it is comprised of two institutions, the fact remains that the Unrelated Group is an inadequate, unrelated lawyer-driven amalgamation formed at the last-minute by counsel that did not even attempt to support its own adequacy in its opening papers. Under these rare circumstances, the Unrelated Group's motion must be denied.

Courts must take a "case-by-case approach" when adjudicating lead plaintiff motions. *In re Versata, Inc., Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *6-7 (N.D. Cal. Aug. 20, 2001). Here, the Unrelated Group presents a textbook case of an inadequate movant under Rule 23. The group is undeniably a lawyer-made construct thrown together at the last minute. The group submitted no declaration with its initial motion and failed to even attempt to explain, *inter alia*, how its members found one another, why they decided to work together as a group, how

8

they will work cohesively as a group, why their group has particular strengths enabling them to successfully prosecute this case, how they will monitor counsel, or how they will address a debilitating decision deadlock between its two members. *See e.g., In re Origin Materials, Inc., Sec. Litig.*, No. 2:23-cv-01816 WBS JDP, 2023 WL 8698363, at *2 (E.D. Cal. Dec. 15, 2023) (finding group did not make a *prima facie* showing of adequacy where there was "nothing in the record explaining how [group members] became acquainted or what their relationship is"); *Cloudera*, 2019 WL 6842021 at *7 (denying lead plaintiff status to group comprised of institutions because it failed to explain how it would jointly manage the case aside from describing one conference call). Counsel's ability to eventually sort these critical issues out **days after** the group's motion is filed is not indicative of an adequate grouping.

Moreover, the Unrelated Group here did not even offer an explanation for why it could not submit a timely joint declaration with its initial motion – of course the reason is obvious. And ironically, counsel for the Unrelated Group have also argued that the absence of a declaration from a lead plaintiff group fatally undermines the group's adequacy. *See In re Spectrum Pharmaceuticals, Inc.*, No. 2:13–cv–00433–LDG (CWH), 2014 WL 1394162, ECF No.34 at 5 (D. Nev. Mar. 20, 2014) (where a group failed to submit a joint declaration in connection with its initial motion, then belatedly submitted a joint declaration, Unrelated Group's counsel (which was not representing a group in this case) argued that ***"the court should reject as untimely the evidence submitted by the [ ] Group seeking to justify itself"***); *see also id*. at *3 (The court appointed Unrelated Group's client and explained that "[c]ritically, none of the members have proffered any declaration or statement indicating how the SPPI Group was formed-how the members met."); *see also Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 WL 6886020, at *8-10 (C.D.

9

Cal. May 2, 2006) (denying motion to appoint group where group failed to submit joint declaration initially, noting that "there is no reason the [group] could not have submitted such evidence in connection with [its] initial motion[]").

Compounding the problem here further, neither group member's PSLRA certification – which were each signed on the day the motion was due – acknowledges the other group member or their own participation as a group movant in this Action. *See* ECF No. 34-1. The entirety of the Unrelated Group's initial motion rests on boilerplate and conclusory claims made solely by counsel, which do not even come close to satisfying the *prima facie* Rule 23 requirements imposed on unrelated groups in this Circuit.  Br. 2, 9.  *See infra* 11-14.

In rejecting an unrelated group movant that, unlike here, actually attempted to support its grouping with a joint declaration, this Court noted in *Fintech* that most courts reject lead plaintiff groups that lack a pre-existing relationship. *Fintech*, 2024 WL 387261, at *3 (citing *Koffsmon v. Green Dot Corp.*, No. CV 19-10701 DDP, 2022 WL 170636, at *1 (C.D. Cal. Jan. 19, 2022)). The Court further explained that where courts have appointed lead plaintiff groups without pre-existing relationships, it was only when a court had "made findings, supported by evidence, that particular investor groups appear well-suited to cooperatively oversee class litigation and counsel." *Fintech*, 2024 WL 387261, at *3.

The Unrelated Group here provided no such evidence with its initial motion, and the group is hardly "well-suited to cooperatively oversee [counsel]" when counsel is apparently their only link.[4]  *See* Br. 2, 9. *See also Lako v. Loandepot, Inc.*,

---

[4] In fact, while counsel for the Unrelated Group have already acknowledged an error on Indiana's PSLRA certification and filed a corrected document on August 2, 2024 (*see* ECF No.34), Indiana did not sign a new certification acknowledging NPS or its group participation. An error on a certification further highlights the group's inadequacy. *See, e.g., Camp v. Qualcomm Inc.*, No. 18-cv-1208-AJB-BLM, 2019

10

No. 8:21-cv-01449-JLS-JDE, 2022 WL 1314463 (C.D. Cal. May 2, 2022) (rejecting group of two investors who lacked a pre-litigation relationship and whose declaration "recited only boilerplate assurances that its members would work together to oversee the litigation"); *Mersho*, 6 F.4th at 901 ("[d]istrict courts often consider a pre-litigation relationship along with other factors such as [] how the members found their counsel [] and the prosecution procedures set out in their filings). *See also Ali v. Intel Corp.*, No. 18-CV-00507-YGR, 2018 WL 2412111, at *3 n.8 (N.D. Cal. May 29, 2018) ("Also troubling is the declaration's failure to describe how Tavares and Ali, who reside in New York City and London [] became 'aware of each other,' [suggesting] each was recruited by counsel"); *Crihfield v. CytRx Corp.*, No. CV 16-05519 SJO (SKx), 2016 WL 10587938, at *4 (C.D. Cal. Oct. 26, 2016) ("[p]erhaps the most troubling aspect of the Joint Declaration, however, is its failure to describe how the six members . . . who reside in Michigan, Illinois, California, Massachusetts, and Vancouver [] came to know of each others' existence, strengthening the inference that each was recruited by counsel").

Although *Fintech* involved individual investors, the scrutiny over unrelated groups is not restricted to unrelated individuals. Despite the PSLRA's preference for institutions, moving in a group with unrelated institutions is not a trump card, and does not absolve institutional groups from their Rule 23 requirements. Institutional investor groups are also routinely scrutinized – and rejected when inadequate – just like any other group movant. *See, e.g., Cloudera*, 2019 WL 6842021, at *6 (group

WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (highlighting "doubts about [the lead plaintiff's] ability to serve as the class representative because of… errors in the transaction records [] accompanying [his] motion"); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414 (E.D. Pa. 2019) (rejecting lead plaintiff who made minor error in certification as inadequate); *Garbowski v. Tokai Pharmaceuticals, Inc.*, 302 F. Supp. 3d 441, 451-52, 455 (D. Mass. 2018) (applicant's failure to list post-class period sales called adequacy into question).

11

of two institutions with largest loss was disqualified from being appointed as lead plaintiff where group's joint declaration was "conclusory" and contained "little or no substance"); *Int'l Union of Operating Engineers Loc. No. 478 Pension Fund v. FXCM Inc.*, No. 15-CV-3599 KMW, 2015 WL 7018024, at *4 (S.D.N.Y. Nov. 12, 2015) (rejecting two-member institutional investor group, holding that "[n]othing before the Court indicates that Teamsters 710 and Inter–Local Fund formed this group independent of counsel…  in their Joint Declaration, [these two funds] acknowledge that only after "conferring with one another and with counsel" did [they] decide to jointly file a motion for appointment as lead plaintiff"); *Pipefitters Loc. No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) (rejecting group of institutions because "conclusory assurances" in group's joint declaration "do not satisfy this Court that the Funds Group will be able to effectively manage this litigation"); *cf. Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016) (appointing group of individuals over group of institutions and noting that the institution's joint declaration is no different than the individual's joint declaration and that "no one group appears to be more or less "lawyer-driven" than the other").

It also speaks volumes that in every case cited by the Unrelated Group in support of their claim that institutions have pride of place, declarations were submitted by members of the proposed lead plaintiff group ***with their initial motion*** to show adequacy. *See Das v. Unity Software Inc.*, No. 5:22-cv-03962-EJD, 2023 WL 1927739, at *1 (N.D. Cal. Feb. 10, 2023); *Doherty v. Pivotal Software, Inc.*, No. 3:19-cv-03589-CRB, 2019 WL 5864581, at *11-12 (N.D. Cal. Nov. 8, 2019); *In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 WL 4860188, at *4 (N.D Cal. May 23, 2018).  *See also Versata*, 2001 WL 34012374, at *6-7 ("[e]ach member of the Wang group has submitted a declaration providing background information and

12

articulating why the member is seeking lead plaintiff status as part of the asserted group").

The Unrelated Group here is even less adequate than the groups examined and rejected in the above-referenced cases – where declarations submitted with initial motions were found wanting – because the group here did not even submit a declaration with its initial motion for the Court to consider. Instead, the Unrelated Group's *lawyers* weighed in on their group's supposed adequacy as follows:

> Prior to seeking appointment as Lead Plaintiff, representatives from the [Indiana and NPS] held a conference call to discuss, among other things, the merits of the claims against defendants, as well as their respective funds' common goals in the litigation. [Indiana and NPS] have conferred together and discussed how they will jointly prosecute this Action and otherwise ensure the vigorous yet cost-effective prosecution of this litigation.[5]

Br. 2. This boilerplate statement from counsel does not come close to the "evidence" (*Fintech*, 2024 WL 387261, at *6) this Court deems necessary to demonstrate adequacy. The PSLRA's purpose was to eliminate lawyer-driven litigation, and allowing this grouping, justified only by attorney lip-service, undermines that purpose.

The Unrelated Group claims the fact that Indiana filed the complaint (Br. 9) supports its adequacy, but it is of little value. In fact, Indiana filed a second complaint after the first one was voluntarily dismissed. *See Glenn Dietel v. Rivian Automotive, Inc. et al.*, 2:24-cv-03269-MCS-AS (C.D. Cal.). Indiana's complaint largely followed the initial complaint's allegations.

---

[5] Separately, the Unrelated Group's lawyers claim that the group drove a hard bargain with respect to fees, and that this supposedly supports their adequacy. Br. 9. But this flies in the face of the Ninth Circuit's *Cavanaugh* case. *See id.*, 306 F.3d at 733 (rejecting argument that "plaintiff's adequacy under Rule 23 can be judged by how advantageous an attorney's fee deal he manages to negotiate" as fees are ultimately approved by a court).

13

The "evidence" (*Fintech*, 2024 WL 387261, at *6) before the Court from the Unrelated Group's initial motion – not later when it decided to clean up the mess – plainly demonstrates that:

- The Unrelated Group members signed certifications the same day the motion was due that do not even acknowledge one another or that they are moving in a group. *See* ECF No. 34-1.

- The Unrelated Group did not initially submit a sworn declaration under penalty of perjury that even attempts to support its grouping.

- The Unrelated Group's counsel claims that one phone call took place the day prior to the deadline (which was likely the day of the filing for NPS given the time zone difference with South Korea) – but does not mention who was on the call from each fund or what authority they had (Br. 9). Nor did counsel spell out what was discussed with any specificity – the lawyers' discussion is purely conclusory and boilerplate. *See id*.

- The brief submitted by counsel for the Unrelated Group does not even spell out any of the critical details of how the group will purportedly work together to manage counsel and act in the best interests of the Class. *See supra* at 13.

This record plainly shows that Indiana and NPS cannot satisfy Rule 23's adequacy requirements – regardless of what the belated Joint Declaration now says. In fact, to even allow the Unrelated Group to establish its adequacy belatedly with a declaration containing core information that was so foundational to their motion in the first place will only reward the lawyer-driven tactics that the PSLRA was primarily designed to eliminate. *See Perez v. HEXO Corp.*, No. 19 Civ. 10965 (NRB), 2020 WL 905753, at *3 (S.D.N.Y. Feb. 20, 2020), *reconsideration denied sub nom. In re HEXO Corp. Sec. Litig.*, No. 19 Civ. 10965 (NRB), 2020 WL 5503634 (S.D.N.Y. Sept. 11, 2020) ("given [movant's] failure to provide any information regarding his experience **in his preliminary motion**, the Court questions whether Wong will meaningfully oversee and control the prosecution of this consolidated class action").

14

Finally, to the extent counsel for the Unrelated Group tries to argue that even if the group is deemed inadequate here, which it clearly is, the Court should nevertheless appoint one of the group members as Lead Plaintiff that won't work either. First, neither member of the Unrelated Group has expressed a willingness to move individually in a sworn certification or declaration, and the Court should not make that motion for them. *In re Stitch Fix, Inc. Sec. Litig*. 393 F. Supp. 3d. 833, 835-6 (N.D. Cal. 2019) (declining to consider group members on an individual basis after denying group's motion and group members did not request individual consideration); *Jakobsen v. Aphria, Inc*., No. 18 CIV. 11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) (court would not consider whether individual group members could be appointed as lead plaintiff as there were no separate individual motions). Second, as detailed *supra*, each member of the Unrelated Group has already acquiesced to (or was unaware of) the lawyer-driven machinations of counsel, and thus has demonstrably acted here in the best interests of counsel, not the proposed Class. Third, in *Fintech*, this Court rejected a two-member group as inadequate where each had a larger financial interest than the movant ultimately appointed. *See* 2024 WL 387261, at *3, 6 (group movants had losses of $170,885 and $206,736; movant appointed lost $96,178).

For all these reasons, the Unrelated Group has not come close to demonstrating its *prima facie* Rule 23 adequacy.

## III. EVEN A PRELIMINARY REVIEW OF THE UNRELATED GROUP'S BELATED JOINT DECLARATION SHOWS CONTINUING ADEQUACY ISSUES

Although the Kirios Family will address the Unrelated Group's opposition and Joint Declaration thoroughly on reply, even a cursory review shows continuing adequacy impediments. For example, the Joint Declaration states that NPS and Indiana will "exercise joint decision-making and work together". ECF No. 36-2 at

15

10. However, the Unrelated Group has two members and you cannot have a democracy of two. Courts in this Circuit have repeatedly found the absence of such a mechanism undermines a group's adequacy. *See Cloudera*, 2019 WL 6842021, at *7 (rejecting two-member institutional group where declaration "provided no detail whatsoever about any decisionmaking process"); *Isaacs v. Musk*, No. 18-CV-04865-EMC, 2018 WL 6182753, at *3 (N.D. Cal. Nov. 27, 2018) (rejecting group where "the decisionmaking structure [in declaration] does not appear to be robust"); *Haideri v. Jumei Int'l Holding Ltd.*, No. 20-CV-02751-EMC, 2020 WL 5291872, at *5 (N.D. Cal. Sept. 4, 2020) (declining to appoint group where decision-making structure was not in original declaration and "appears to have been devised only after inquiry and prodding by the Court").

Similarly, the Joint Declaration notes Indiana's past lead plaintiff experience. But the Joint Declaration fails to note that Indiana has moved for lead plaintiff as a group member eight times in the last three years – and in each of these instances it submitted a joint declaration with its initial motion, further underscoring the failure to do the same here. *See New England Teamsters Pension Fund v. Agilon health, inc.*, No. 1:24-cv-0297 (W.D. Tex.) (ECF No. 11-5); *Henry v. Futu Holdings Limited*, No. 2:23-cv-3222 (D.N.J.) (ECF No. 12-6); *In re Silvergate Capital Corp. Securities Litigation*, No. 3:22-cv-1936 (S.D. Cal.) (ECF No. 16-5); *In re Opendoor Technologies Inc. Securities Litigation*, No. 2:22-cv-1717 (D. Ariz.) (ECF No. 12-4); *Das v. Unity Software, Inc.*, No. 5:22-cv-3962 (N.D. Cal.);(ECF No. 25-4); *McLeod v. InnovAge Holding Corp.*, No. 1:21-cv-0770 (D. Colo.) (ECF No. 6-5)); *City of Hialeah Employees Retirement System v. Peloton Interactive, Inc.*, No. 1:21-cv-9582 (S.D.N.Y.) (ECF No. 23-3); *Crews, Jr. v. Rivian Automotive, Inc.*, No. 2:22-cv-1524 (C.D. Cal.) (ECF No. 54-6).

Moreover, the PSLRA states that no movant shall serve as lead plaintiff more

16

than five times in three years. *See* 15 U.S.C. 78u-4. Indiana is well over its statutory "five in three years" limit and cannot serve as lead plaintiff. Courts sometimes waive the "five in three" requirement for institutional investors but that would not matter here since it would not change the group's glaring inadequacy.

The Kirios Family will further address the problems with the Joint Declaration on reply.[6]

**CONCLUSION**

For the foregoing reasons and those in their opening motion, the Kirios Family respectfully request that this Court: (1) appoint The Kirios Family as Lead Plaintiff on behalf of the proposed Class; and (2) appoint Bernstein Liebhard and the Burke Law Firm as Lead and Liaison Counsel, respectively, for the litigation.

Dated: August 6, 2024          Respectfully submitted,

**THE BURKE LAW FIRM**

*/s/ Timothy J. Burke*
Timothy J. Burke (SBN #181866)
1001 Wilshire Drive, #2187
Los Angeles, CA 90017
(302) 984-7199 (phone)
(302) 602-6589 (fax)
tim.burke@burke-law-firm.com

*Local Counsel for Kamil Kirio and Nada Badr-Kirio and Proposed Liaison Counsel for the Proposed Class*

**BERNSTEIN LIEBHARD LLP**
Laurence J. Hasson
Joseph R. Seidman, Jr.
Jeffrey McEachern

---

[6] The Unrelated Group argues that the Kirios Family's claim that "they were 'not aware of any other movant that has a greater financial interest than them in the Action'" was false because the Kirios Family knew of Indiana's losses since they are included in the certification Indiana filed with its complaint. ECF No. 36 at 10. Wrong. The Kirios Family properly stated they were unaware of any other ***movant***. They did not know whether Indiana would move for lead plaintiff.

17

10 East 40th Street
New York, NY  10016
(212) 779-1414 (phone)
(212) 779-3218 (fax)
lhasson@bernlieb.com
seidman@bernlieb.com
jmceachern@bernlieb.com

*Counsel for Kamil Kirio and Nada Badr-Kirio and Proposed Lead Counsel for the Proposed Class*

18