**THE BURKE LAW FIRM**
Timothy J. Burke (SBN #181866)
tim.burke@burke-law-firm.com
1001 Wilshire Boulevard, #2187
Los Angeles, CA 90017
(310) 984-7199 (phone)
(310) 602-6589 (fax)

*Local Counsel for Kamil Kirio and Nada Badr-Kirio and Proposed Liaison Counsel for the Proposed Class*

[Additional Counsel on Signature Block]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE and CLAIRE MCDONOUGH,<br><br>              Defendants. | Case No. 2:24-cv-04566-CBM-JPR<br><br><u>CLASS ACTION</u><br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF KAMIL KIRIO AND NADA BADR-KIRIO FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF COUNSEL**<br><br>Judge:    Consuelo B. Marshall<br>Date:     August 27, 2024<br>Time      10:00 a.m.<br>Crtrm:    8D |

The Kirios Family respectfully submits this reply memorandum in further support of its motion for appointment as lead plaintiff.[1]

**PRELIMINARY STATEMENT**

The oppositions filed on August 6, 2024 further confirm that the Kirios Family should be appointed Lead Plaintiff in this Action. In contrast, the Unrelated Group cannot be appointed here as it has not supported its Rule 23 adequacy. If the PSLRA's primary purpose is to eliminate lawyer-driven litigation – and it is – then the Unrelated Group's motion presents a textbook case for this Court to deny.

First impressions are lasting impressions. Here, Indiana and NPS moved for Lead Plaintiff as a transparently lawyer-driven and last-minute grouping of unrelated and geographically dispersed funds with no prelitigation relationship. Despite boasting their vast resources and experience to manage attorneys, they spectacularly failed to ensure that their counsel here timely supported their motion with the most basic background information and a joint declaration demonstrating their *prima facie* adequacy. Moreover, they did not even suggest that their grouping here serves a beneficial purpose beyond their counsel's obvious self-interest in securing the largest financial interest of any Lead Plaintiff movant.

The mere fact that Indiana and NPS are institutions with large losses does not immunize them from Rule 23 impediments or being under their counsel's control. Nor does their counsel's filing of a belated "Joint Declaration" to try and sanitize their rush-job motion one week later (which would only reward counsel's gamesmanship). In fact, counsel for Indiana and NPS have challenged unrelated

---

[1] One competing motion was filed by the National Pension Service ("NPS") and the Indiana Public Retirement System ("Indiana") (collectively the "Unrelated Group"). Citations to "Br." are to the Unrelated Group's opposition (ECF No. 36). "Joint Declaration" and "Joint Decl." refer to the Unrelated Group's joint declaration (ECF No. 36-2). "Opp'n" refers to the Kirios Family's opposition (ECF No. 37).

1

groups for filing late declarations like this one in the past and prevailed. *See* Opp'n 9; *see also infra* 8. The Kirios Family should likewise prevail here too.

Moreover, the Joint Declaration that Indiana and NPS filed does not even cure the fatal deficiencies with the Unrelated Group in hindsight. First, it only highlights the deficient and rushed nature of the group's lawyer-driven motion, which lacked *any* acknowledgment from Indiana and NPS that they were grouping, and was devoid of *any* meaningful support for their grouping. *See infra* 6.

Second, the Joint Declaration glaringly fails to fix key deficiencies that led this Court to recently reject another unrelated, two-member group movant in *Burns v. UP Fintech Holding Ltd.*, No. CV 23-4842-CBM-BFMx, 2024 WL 387261, at *3 (C.D. Cal. Jan. 30, 2024) ("*Fintech*"). In *Fintech*, the Court found a group with a (timely-filed) declaration inadequate because the declaration exposed, *inter alia*, that: (1) there was no pre-litigation relationship; (2) there were only boilerplate statements about working together; (3) the group had a flawed decision-making mechanism; and (4) the group was formed by counsel. *Id.* at *4-5. There, the Court not only denied the group's motion, but did not appoint any of its members individually either (despite their individual financial interests).

The Court's concerns in *Fintech* are overwhelmingly present here too. The Joint Declaration: (1) makes clear Indiana and NPS had no prelitigation relationship; (2) describes how the group will work together in classically boilerplate fashion; (3) does not identify a true decision-making mechanism to manage disagreements; and (4) contains nothing to counter the fact that the Unrelated Group was formed by counsel. *See infra* 6-7. Thus, while the Joint Declaration patches up some gaping holes in background information, it is still wanting on critical issues that this Court finds dispositive of adequacy. As in *Fintech*, the Court here should deny the group's motion and likewise not appoint any of the group members individually. In fact, neither Indiana nor NPS indicated

in any of their filings to date that they even would be willing to individually serve as Lead Plaintiff and, notwithstanding that they each would still suffer from Rule 23 impediments, they cannot make this request now for the first time on reply.[2] *See infra* 9.

In stark contrast, the Kirios Family should be appointed Lead Plaintiff here. The Kirios Family is the "most adequate" plaintiff because it has the largest financial interest of qualified movants and satisfies the *prima facie* Rule 23 requirements. *See* Mot. 4-5; Opp'n 6-7. Thus, the Kirios Family is entitled to the PSLRA's "strong" presumption of being Lead Plaintiff, which can only be rebutted with "proof" of inadequacy or atypicality. No such proof exists here.

The Unrelated Group makes two exceedingly weak arguments that do not come close to rebutting the Kirios Family's presumptive status. First, based on nothing but their say so, the Unrelated Group claims the Kirios Family is not sophisticated enough to be Lead Plaintiff. To the contrary, the Kirios Family handily satisfies its Rule 23 requirements, and its members' extensive investment and business experience amply shows they are more than qualified. *See infra* 4-5. Nevertheless, "sophistication" is not even an adequacy requirement, it is a bonus.

Second, the Unrelated Group absurdly argues that the Kirios Family falsely claimed "they were 'not aware of any other movant that has a greater financial interest than them'" because Indiana's losses were on a certification it filed as a named plaintiff. Br. 10. But without a crystal ball, the Kirios Family could not know whether Indiana would move for lead plaintiff or not; named plaintiffs very

---

[2] It is well established that no new information or arguments can be submitted on reply. *See Shijiazhuang Hongray Grp. v. World Trading 23 Inc.*, No. 5:21-cv-00972-FWS-KK, 2023 WL 9019008, at *1-2 (C.D. Cal. Nov. 21, 2023) (explaining the general principle that courts "do[] not consider new evidence or argument first submitted on reply"); *Sweet v. Pfizer*, 232 F.R.D. 360, 365 n.7 (C.D. Cal. 2005) (party "cannot submit new information as part of its [r]eply.").

often do not file lead plaintiff motions. Accordingly, the Unrelated Group has not rebutted the presumption in favor of the Kirios Family.

For these reasons, the Court should grant the Kirios Family's motion in its entirety and deny the competing motion.

## ARGUMENT

### I. THE KIRIOS FAMILY IS THE PRESUMPTIVE LEAD PLAINTIFF AND THE PRESUMPTION HAS NOT BEEN REBUTTED

The Kirios Family has the largest financial interest of any qualified movant before the Court (approximately $1.9 million) and satisfies Rule 23. *See* Opp'n 6-8; Mot. at 5-6. Thus, the Kirios Family is the presumptive Lead Plaintiff here.

In its opposition, the Unrelated Group confirmed it has no "proof" to rebut the PSLRA's "strong" presumption in favor of appointing the Kirios Family. The Unrelated Group speculates without any merit that the members of the Kirios Family are not sophisticated investors, have no prior experience serving as lead plaintiff, and cannot control their counsel. But "sophistication" or extensive "experience managing lawyers" are not requirements to make a *prima facie* showing of adequacy – nor is previously serving as a lead plaintiff. A movant must simply show it has no conflicts with other Class members and selected qualified counsel; the Kirios Family did both. *See* Opp'n 5*; Lopez v. Ageagle Aerial Sys., Inc.*, No. 2:21-cv-01810-CAS (Ex), 2021 WL 2377343, at *3 (C.D. Cal. June 7, 2021) ("nothing more than a preliminary showing [of typicality and adequacy] is required."). As a bonus, the Kirios Family also has been investing for a collective 50 years and runs a business together. There is simply no reason, and certainly no "proof", to doubt their adequacy and typicality here.

Second, the Unrelated Group absurdly argues that the Kirios Family falsely claimed to be unaware of any movant with a larger loss. Br. 10. That is also wrong. The Kirios Family stated in its brief that it was unaware of any other "movant" and

that was true. Without a crystal ball, the Kirios Family could not know whether Indiana, a named plaintiff, would also move for lead plaintiff. In fact, named plaintiffs very often do not move for lead plaintiff in securities cases.

Without any "proof" to rebut the strong presumption in its favor, the Kirios Family should be appointed Lead Plaintiff.

**II.  IN STARK CONTRAST, THE UNRELATED GROUP'S INADEQUACY IS CEMENTED BY ITS UNTIMELY AND FLAWED JOINT DECLARATION**

In stark contrast to the Kirios Family, the Unrelated Group failed to satisfy its *prima facie* Rule 23 adequacy requirements, including by filing a barren motion that provided no support for their last-minute, lawyer-driven grouping. Opp'n 1. The Unrelated Group has now compounded its inadequacy with the Joint Declaration, which only highlights the rushed nature of their lawyer-driven motion, and fails to cure fatal deficiencies that this Court has found disqualifying of other group movants. Thus, the Unrelated Group's motion must be denied.

In *Fintech*, 2024 WL 387261, at *3, this Court carefully scrutinized a timely-filed joint declaration submitted by an unrelated two-member group and still found the group and its members inadequate. The Court took issue with the group's joint declaration, *inter alia*, because it showed that the group: (1) had a flawed decision-making mechanism; (2) was formed by counsel; (3) had only only boilerplate statements about how group members would work together; and (4) showed there was no pre-litigation relationship. *Id.* at *4-5. The Court ultimately declined to appoint the group and any of its members individually as the lead plaintiff (despite that the members individually still had the largest losses).

Notwithstanding that the Unrelated Group here had the benefit of reviewing the *Fintech* decision before filing its motion, the exact same deficiencies that troubled the Court there are present here to an even worse degree. First, in *Fintech*,

5

this Court was critical of the group's decision-making mechanism. *Fintech*, 2024 WL 387261, at \*4. But here, the Court's concern should be far greater, as the Joint Declaration has no real decision-making mechanism whatsoever. The Joint Declaration merely pays lip-service to the critical need for such a mechanism by ambiguously mentioning "joint decision-making." *See* Joint Decl. at ¶ 10 ("We will exercise joint decision-making … We will also [] confer with and without counsel to ensure that we are able to make timely decisions and have a mechanism to resolve any disagreement."). Critically, the Unrelated Group provides no mechanism to break a deadlocked vote – a must for a group of two. Courts in this Circuit regularly find the absence of a decision-making mechanism undermines a group's adequacy, particularly where, like here, the group has an even membership. *See* Opp'n 16.

Second, in *Fintech*, this Court found that the group "fail[ed] to demonstrate they can adequately control counsel since their joint declaration indicates they have been grouped together by lawyers." 2024 WL 387261, at \*4. Here too, Indiana and NPS were grouped by their lawyers. The Joint Declaration is noticeably ambiguous as to how Indiana and NPS were brought together, whose idea it was to join forces, and why joining forces was even necessary or beneficial, other than to secure a large financial interest.[3] *Compare* Fintech joint declaration at ¶ 9 ("[a]fter reviewing the allegations pleaded in the complaint, and consulting with each other and our counsel, we each independently determined to seek joint appointment as Co-Lead Plaintiffs.") (Ex. A hereto), *with* Joint Decl. at ¶ 6 ("we separately and collectively consulted with our counsel, and independently decided to join together to file a joint motion for appointment as Lead Plaintiff under the PSLRA.").

---

[3] The fact that Indiana and NPS did not need to aggregate their losses to attain the largest financial interest is beside the point. Their counsel did not know who else would move for Lead Plaintiff, and they provide no purpose for this grouping beyond the obvious desire to increase their odds on this winner-takes-all motion.

Worse, beyond the ambiguities in the Joint Declaration, the Unrelated Group has already demonstrated its inability to manage counsel because its initial motion was utterly deficient. This stands in stark contrast to the case law the Unrelated Group relies on and Indiana's past group lead plaintiff motions in which it ensured that its initial motion was supported by a joint declaration.[4] *See* Opp'n 16.

Third, the joint declaration in *Fintech* had "only boilerplate statements that [group members] would work together as co-lead plaintiffs." *See* Ex. A, *Fintech* joint declaration at ¶ 9. Likewise, here, the Unrelated Group's Joint Declaration provides classically boilerplate statements. *See, e.g.,* Joint Decl. at ¶ 10 ("we have established procedures for overseeing the progress of the litigation and communicating both separate and apart from and with counsel as necessary."). Moreover, as discussed *supra*, the Unrelated Group has already demonstrated the inability of its members to work together cohesively.

Fourth, the joint declaration in *Fintech* provided no evidence that its group members had a pre-litigation relationship. Here, similarly, the Unrelated Group's Joint Declaration provides no evidence of a pre-litigation relationship.

In sum, the Joint Declaration here falls far short of demonstrating the Unrelated Group's adequacy even in hindsight. The Joint Declaration also

---

[4] Nearly all the cases relied on by the Unrelated Group to support their grouping are inapposite here because they deal with instances where, unlike here, a joint declaration was either filed with the initial motion or the motion was unopposed. *See Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, No. 21-cv-08812-JST, 2022 WL 3571995, at *3 (N.D. Cal. July 26, 2022) (joint declaration submitted with initial motion); *Bruce v. Suntech Power Holdings* Co., No. CV 12–04061 RS, 2012 WL 5927985, at *3 (N.D. Cal. Nov. 13, 2012) (same); *Borteanu v. Nikola Corp.*, 562 F. Supp. 3d 174, 186 (D. Ariz. 2021) (same); *In re SVB Fin. Grp. Sec. Litig.*, No. 3:23-CV-01097-JD, 2023 WL 8367938, at *2-3 (N.D. Cal. Nov. 30, 2023) (same); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2012 WL 78780, at *3 (N.D. Cal. Jan. 9, 2012) (unopposed motion); *Doherty v. Pivotal Software, Inc.*, No. 3:19-cv-03589-CRB, 2019 WL 5864581, at *6 (N.D. Cal. Nov. 8, 2019) (group motion only opposed by another group movant); *Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1054-55 (N.D. Cal. 2017) (outlier where court accepted group on other grounds).

undermines the Unrelated Group's adequacy in other material ways. For example:

- None of the background information now provided about NPS (*see* Joint Decl. at ¶ 2) was in the initial motion – underscoring that the grouping was a last-minute rush job. *See Perez v. HEXO Corp.*, No. 19 Civ. 10965 (NRB), 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020) (rejecting lead plaintiff movant who submitted no information with initial motion).

- The Joint Declaration touts Indiana's lead plaintiff experience (*Id.* at ¶ 5) – but fails to note that Indiana has moved for lead plaintiff as a group member eight times in the last three years, and in each of these instances it submitted a joint declaration with its initial motion, showing Indiana knows the right way to form an adequate group and further underscoring the lawyer-driven group's failure to do the same here. *See* Opp'n 16.

- The Joint Declaration now explains what was purportedly discussed on the eleventh-hour conference call the group members had, but it still does not identify who participated and whether they had authority to act on behalf of the funds. *See* Joint Decl. at ¶ 9; Opp'n 4, 14.

- The Joint Declaration states that "[b]ased on ***our past experience serving as lead plaintiffs***, we have established procedures…" But NPS's certification does not list any prior lead plaintiff appointments and a search by the undersigned counsel could find none.[5] *Id.* at ¶ 10.

Finally, it is noteworthy that counsel for the Unrelated Group here have repeatedly argued that a belated joint declaration renders a group and its members inadequate when it suited them. In *In re Spectrum Pharmaceuticals, Inc.*, the Unrelated Group's counsel criticized a group for belatedly submitting a joint declaration that sidestepped the vital question of *how* the group was formed:

> While the Joint Declaration submitted by the Group asserts that members chose to join the group after extensive questioning and negotiation with counsel…*it is conspicuously silent regarding how the group members came to meet one another*. *See Spectrum*, Dkt. No. 64 at 6 (Ex. B hereto).

---

[5] If NPS has indeed never served as a lead plaintiff, then this is technically a false statement in a sworn declaration – far worse that the Unrelated Group's petty and incorrect argument that the Kirios Family falsely claimed to be unaware of a larger movant. *See supra* at 3. At a minimum, it shows carelessness, the likes of which militate further against the Unrelated Group's adequacy here. *See Fintech*, 2024 WL 387261 at *5 ("errors in [] Certification signed under penalty of perjury further demonstrate [movant] will not adequately represent the class"); *Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (errors cast doubt on movant's ability to serve as class representative).

*See also In re Spectrum Pharmaceuticals, Inc.*, No. 2:13-CV-00433-LDG-CWH, (D. Nev. June 10, 2013) Dkt. No. 76 at 4 and & n.5 (Ex. C hereto) ("the joint declaration executed [] *after it sought appointment as Lead Plaintiff* [] only highlights the concerns regarding the Group's formation…. Indeed, the court should reject as untimely the evidence submitted by the SPPI Group seeking to justify itself"). The *Spectrum* court ultimately agreed and rejected the group, finding that "none of the members have proffered any declaration or statement indicating how the [] Group was formed–how the members met–and none dispute the suggestion by [Unrelated Group's Counsel] that the formation of their group was driven by their counsel." *In re Spectrum Pharm., Inc.*, No. 2:13-cv-00433-LDG (CWH), 2014 WL 1394162, at *3 (D. Nev. Mar. 20, 2014). The Court should do the same here.

Here too, the Unrelated Group suffers from the same impediments and its Joint Declaration is "silent regarding how the group's members met each other" (*see* Ex. B at 6) and "only highlights the concerns regarding the group's formation" (Ex. C at 4). For these reasons, "the court should reject [it] as untimely [] evidence [] to justify itself." (*id*. at 5 n.5).[6] But even if the Court accepts the Joint Declaration, it only cements the Unrelated Group's inadequacy, as discussed *infra.*

## III. THE UNRELATED GROUP CANNOT NOW OFFER ONE MEMBER TO SERVE AS LEAD PLAINTIFF

The Unrelated Group has not requested that its members be considered for appointment as lead plaintiff individually if the group is rejected. To the extent the Unrelated Group even tries to make this argument now it must be rejected. *See Shijiazhuang Hongray Grp.*, 2023 WL 9019008, at *1 ("district court[s] need not consider arguments raised for the first time in a reply brief"); Opp'n 15.

---

[6] In the Kirios Family's opposition, there was a typographical error when citing to *Spectrum*. The opposition cited Dkt. No. 34 instead of Dkt. No. 76.

Significantly, in *Fintech*, this Court rejected a two-member group as inadequate where each had a larger financial interest than the movant ultimately appointed – and declined to appoint either group member individually after finding the group inadequate. *See* 2024 WL 387261, at *2-3, 6 (group movants had $170,885 and $206,736; movant appointed had $96,178). Furthermore, given that Indiana and NPS acquiesced to or were unaware of their counsel's gamesmanship here they would still suffer from the same disqualifying Rule 23 impediments as individuals.

## CONCLUSION

For the foregoing reasons and those given in its earlier filings, the Kirios Family respectfully request that this Court: (1) appoint The Kirios Family as Lead Plaintiff on behalf of the proposed Class; and (2) appoint Bernstein Liebhard and The Burke Law Firm as Lead and Liaison Counsel, respectively, for the litigation.

Dated: August 13, 2024          Respectfully submitted,

**THE BURKE LAW FIRM**

*/s/ Timothy J. Burke*
  Timothy J. Burke (SBN #181866)
  1001 Wilshire Drive, #2187
  Los Angeles, CA 90017
  (302) 984-7199 (phone)
  (302) 602-6589 (fax)
  tim.burke@burke-law-firm.com

*Local Counsel for Kamil Kirio and Nada Badr-Kirio and Proposed Liaison Counsel for the Proposed Class*

10

**BERNSTEIN LIEBHARD LLP**
Laurence J. Hasson
Joseph R. Seidman, Jr.
Jeffrey McEachern
10 East 40th Street
New York, NY 10016
(212) 779-1414 (phone)
(212) 779-3218 (fax)
lhasson@bernlieb.com
seidman@bernlieb.com
jmceachern@bernlieb.com

*Counsel for Kamil Kirio and Nada Badr-Kirio and Proposed Lead Counsel for the Proposed Class*

11