**EXHIBIT C**

William M. O'Mara (Nevada Bar No. 0837)
**THE O'MARA LAW FIRM, P.C.**
311 E. Liberty St.
Reno, Nevada  89501
Telephone: (775) 323-1321
Facsimile: (775) 323-4082
Email: bill@omaralaw.net

*Local Counsel*

Christopher J. Keller
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: ckeller@labaton.com

*Counsel for Arkansas Teacher Retirement
System and Proposed Lead Counsel for the Class*

(*Additional counsel appear on signature page*)

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

|  |  |
|---|---|
| JOHN PERRY and JUDITH GREENBERG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> SPECTRUM PHARMACEUTICALS, INC., *et al.*, <br><br> Defendants. | Case No. 2:13-CV-00433-LDG-CWH <br><br> (Base File) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF
ARKANSAS TEACHER RETIREMENT SYSTEM FOR APPOINTMENT AS
<u>LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

Only three movants remain in contention for appointment as Lead Plaintiff in this litigation: (1) Arkansas Teacher;[1] (2) the SPPI Group; and (3) the Sector Funds.[2] Arkansas Teacher respectfully submits this reply memorandum of law in further support of its motion for: (1) appointment as Lead Plaintiff in the above-captioned consolidated action; and (2) approval of Arkansas Teacher's selection of Labaton Sucharow as Lead Counsel for the Class.

## I.      PRELIMINARY STATEMENT

Arkansas Teacher has the greatest financial interest of any movant seeking appointment as Lead Plaintiff in this action, and no argument advanced by any competing party counsels a different conclusion. Contrary to the SPPI Group's claims, the Court, in the exercise of its critical gate-keeping responsibilities, has no obligation to take at face value any loss figure offered by a movant for lead plaintiff. Indeed, the SPPI Group's aggregation of losses from three unrelated individual investors with no preexisting relationship cannot withstand close scrutiny.

The group's genesis is in a campaign by its counsel to assemble a group of investors with losses large enough to prevail on a lead plaintiff motion—an effort that runs afoul of the intent of the PSLRA to wrest control of securities class actions from counsel. That this effort deeply

---

[1] All capitalized terms herein take their definitions from Arkansas Teacher's opening memorandum (Dkt. No. 42) and memorandum in opposition (Dkt. No. 64). References to "SPPI Opp." are to the SPPI Group's opposition memorandum (Dkt. No. 53) and "SPPI Reply" are to the SPPI Group's reply memorandum (Dkt. No. 72); references to "Sector Opp." are to the Sector Funds' opposition memorandum (Dkt. No. 63).

[2] Five of the original nine movants have either withdrawn or expressed that they do not have the largest financial interest in the Action. *See* Leonid Farbman's Response to Competing Motions for App't as Lead Plaintiff (Dkt. No. 51); Qi Gao's Notice of Withdrawal (Dkt. No. 52); Cohens' Notice of Withdrawal (Dkt. No. 62); Mehmet Ali Albayrak's Notice of Withdrawal (Dkt. No. 70); and Maraskovsy Group's Notice of Withdrawal (Dkt. No. 75). Additionally, Marc Wachsberg, who alleged losses of $9,509 on his investments in Spectrum securities, has not opposed any of the competing motions.

undermines the intent of the statute is all the more apparent because not one of the group's members can claim a financial interest in this litigation larger than that of Arkansas Teacher. Courts routinely reject lead plaintiff applications by such attorney-driven agglomerations in favor of investors with smaller claimed losses who suffer no similar infirmity.

In light of these concerns, it is especially ironic that the SPPI Group should argue that Arkansas Teacher's successful advocacy for investors through securities class actions somehow renders Arkansas Teacher an inappropriate representative for the Class. As courts in this Circuit have repeatedly recognized, the legislative history of the PSLRA expressly provides that the so-called "professional plaintiff" provisions of the PSLRA do not apply to institutional investors. In fact, appointment of Arkansas Teacher as Lead Plaintiff would comport with the spirit of the PSLRA and the weight of authority. Arkansas Teacher's appointment as Lead Plaintiff would ensure that the Action is vigorously prosecuted by an experienced institutional investor, with a track record of achieving significant recoveries for injured investors, that is motivated to actively oversee the Action.

In sum, the competing movants have offered no "proof" to rebut the presumption that Arkansas Teacher is the "most adequate plaintiff," as required by the PSLRA, and no such proof exists. Accordingly, the Court should appoint Arkansas Teacher as Lead Plaintiff, approve its selection of counsel, and reject all competing motions.

## II.     ARGUMENT

### A.     Arkansas Teacher Has the Largest Financial Interest in the Action

Under the straightforward sequential procedure for lead plaintiff appointment set forth in *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002), and as provided by the PSLRA, the

2

Court must begin its analysis of lead plaintiff movants by determining which movant "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

While courts may consider several factors in assessing movants' financial interests, the greatest emphasis is placed on the economic loss. *See*, *e.g.*, *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (noting that "[d]istrict courts commonly refer to the four-factor *Olsten-Lax* test, which considers (1) total shares purchased, (2) net shares purchased, (3) net funds expended, and (4) approximate losses suffered," but explaining that courts generally place the greatest emphasis on the loss factor). If losses are claimed by a group, courts must make a threshold determination regarding whether members' losses may appropriately be aggregated. *See Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1072-73 (W.D. Wash. Dec. 19, 2011) (considering whether group members could properly aggregate losses as part of analysis of financial interest). In their opposition memoranda, the SPPI Group and the Sector Funds fail to controvert the fact that Arkansas Teacher has the greatest financial interest in the Action.[3]

**1.**     **When the SPPI Group Members' Losses Are Disaggregated, <u>Arkansas Teacher Has the Largest Loss in this Litigation</u>**

The Court can make short work of the SPPI Group's argument that Arkansas Teacher does not have the largest loss in this litigation. The Group can only prevail on this argument if it can persuade the Court to aggregate the losses of the Group's constituent members. However, because the Group's members have nothing in common besides counsel that issued a press

---

[3] In fact, the Sector Funds expressly acknowledge that Arkansas Teacher's claimed financial interest in the Action well exceeds that of the Sector Funds. *See* Sector Funds Opp. at 1 (tabulating the financial interests of all movants and reflecting that Arkansas Teacher's LIFO loss is 90 percent greater than that of the Sector Funds); *id.* at 2 ("two other movants claim larger financial interests than the Sector Funds").

3

release to cobble together the largest losses, such aggregation is improper under the law of this Circuit. *See In re Netflix, Inc., Sec. Litig.*, No. 12-0225 SC, 2012 WL 1496171, at *4 (N.D. Cal. Apr. 27, 2012) (noting that Ninth Circuit courts "uniformly refuse to aggregate the losses of individual investors with no apparent connection to each other aside from their counsel").[4] When the losses of Arkansas Teacher are compared with the losses of the disaggregated SPPI Group members and with remaining members, Arkansas Teacher emerges as the clear victor, exceeding the losses of next-largest individual movant by nearly 90 percent.

Since the filing of its opening brief, the SPPI Group has offered the Court no reassurance regarding its origin or the nature of the relationships between Group members. Instead, the joint declaration executed by the members of the SPPI Group *after* it sought appointment as Lead Plaintiff, Dkt. No. 55-1, Exhibit I (the "SPPI Declaration"), only highlights the concerns regarding the Group's formation. The SPPI Declaration admits that the Group's members "were introduced to each other member of the SPPI Group through our counsel." SPPI Decl. ¶ 3; *see also Frias*, 835 F. Supp. 2d at 1074 (refusing to consider on an aggregate basis losses of group whose members "admit[ted] that they had no pre-litigation relationship and that they were

---

[4] Although the SPPI Group cites the Ninth Circuit's *Cavanaugh* decision to claim that it is well settled that courts allow groups of unrelated investors to serve as lead plaintiff, courts recognize that *Cavanaugh* did not conclude that groups of investors without preexisting relationships may aggregate their claims to demonstrate the largest financial interest in a securities class action. *See, e.g., Frias*, 835 F. Supp. 2d at 1072 ("The Ninth Circuit has . . . expressly left open the question of whether a group can satisfy the 'largest financial interest' requirement by aggregating losses." ) (quotation omitted); *see also Cavanaugh*, 306 F.3d at 731 n. 8 (noting that the court was "not asked to determine whether a group can satisfy the 'largest financial interest' requirement by aggregating losses").

introduced by counsel").[5]  The Court should not permit the SPPI Declaration's discussion of scholarly articles, consultations with counsel, and discussions with professors to obscure the fact that the SPPI Group is an amalgam of unaffiliated strangers who lack the requisite preexisting relationship necessary for their losses to be properly aggregated.  *See In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1111 (N.D. Cal. 2001) ("A group is not a proper group unless its members have a relationship that predates the litigation.").

While the SPPI Group cites several cases for the proposition that losses of a movant group's individual members may be a aggregated under certain circumstances, such conditions are not present here.  In *Sabbagh v. Cell Therapeutics, Inc.*, No. C10-414MJP, 2010 WL 3064427, at *6 (W.D. Wash. Aug. 2, 2010), the court appointed a group whose members had preexisting relationships, and that included the individual with the largest loss.  Similarly unavailing is the SPPI Group's reliance on *Steiner v. Aurora Foods Inc.*, No. 00-CV-602, 2000 WL 33911305 (N.D. Cal. June 5, 2000), in which no concerns were raised regarding the origins of the group of three individuals whose $8.5 million loss "dwarf[ed]" the $612 loss of the competing individual movant.  *Id.* at *2-3.  As further discussed in Arkansas Teacher's Opposition Memorandum, Dkt. No. 64 at 9-10, the SPPI Group can also find no support in *In re Versata, Inc., Securities Litigation*, No. 01-cv-1439, 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20, 2001), in which the Court's appointment of a group turned in part on the fact that the group included a prominent institutional investor among its members.

---

[5]  Indeed, the court should reject as untimely the evidence submitted by the SPPI Group seeking to justify itself.  *See Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 WL 6886020, at *8 n.10 (C.D. Cal. May 2, 2006) (declining to permit group to submit supplemental information to remedy a defect because "there is no reason the [group] could not have submitted such evidence in connection with [its] initial motion[]").

### 2.   Arkansas Teacher Has the Largest Individual Financial Interest

The SPPI Group's attack on the relative financial interest of Arkansas Teacher fails for the independent reason that the Group does not include the movant with the largest individual interest in the relief sought by the Class.  Courts are extraordinarily reluctant to grant lead plaintiff motions by movant groups that do not include the individual movant with the largest loss.  *See City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 296 (S.D.N.Y. 2010) (appointing Arkansas Teacher, who sought appointment on an individual basis, as lead plaintiff over a group of institutional investors in part due to the fact that "Arkansas Teacher has the greatest individual loss"); *In re E.Spire Commc'ns, Inc., Sec. Litig.*, 231 F.R.D. 207, 211-213 (D. Md. 2000) (granting lead plaintiff motion of individual investor with largest financial interest in the case over motion by group of investors with a larger loss, but whose members lacked a preexisting relationship).

As reflected in the chart below, under *every metric* that courts consider in evaluating largest financial interest, Arkansas Teacher incurred the largest loss of any individual movant.

6

| MOVANT | LOSS[6] | TOTAL SHARES PURCHASED | NET SHARES PURCHASED | NET FUNDS EXPENDED |
|---|---|---|---|---|
| **Arkansas Teacher** | **$767,251** | **176,333** | **175,746** | **$2,048,983** |
| Yong Kwon (of SPPI Group) | $404,654 | 89,907 | 89,907 | $1,060,976 |
| Sector Healthcare Fund (of Sector Funds) | $332,407 | 75,000 | 75,000 | $915,960 |
| Yongtong Lan (of SPPI Group) | $253,832 | 62,380 | 52,000 | $633,432 |
| Ray Defelice (of SPPI Group) | $151,696 | 77,687 | 37,273 | $439,925 |
| Sector Healthcare Value Fund (of Sector Funds) | $71,237 | 15,000 | 15,000 | $180,633 |

Because Arkansas Teacher incurred the largest individual loss, Arkansas Teacher has the greatest financial interest in the Action and the strongest incentive to vigorously prosecute the Action on behalf of the Class.

### 3. Analyzing Movant Losses Using a Percentage-of-Portfolio Method Contradicts the Express Purpose of the PSLRA

The SPPI Group contravenes settled case law in arguing that its financial interest is greater than that of Arkansas Teacher because "losses [for the SPPI Group members] were significant to their personal portfolios," SPPI Declaration ¶ 2, or "are insignificant to [Arkansas Teacher] and miniscule in light of the size of the $11.8 billion fund," SPPI Reply at 10. Courts have repeatedly rejected such arguments because they would mandate that individual investors would always have a superior financial interest to institutional investors, in conflict with the

---

[6] Losses listed herein were calculated under the LIFO method. If the first-in-first-out ("FIFO") loss calculation method is used, all of the various movants' losses remain unchanged except for the loss of Sector Healthcare Fund, which increases slightly to $341,867—still well less than the loss of Arkansas Teacher.

intent of the PSLRA to encourage institutional investors to serve as lead plaintiff. *See*, *e.g.*, *In re Netflix*, 2012 WL 1496171, *7 (finding this argument "unavailing" because "a proportional measure would result in individual investors nearly always having the largest financial stake relative to institutional investors whose holdings frequently amount to hundreds of millions of dollars. . . . [and] [s]uch a result would defeat the PSLRA's aim of putting institutional investors at the helm of more private securities class actions"); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2001) (rejecting this argument because, *inter alia*, this "would undercut the PSLRA's goal of increasing the appointment of institutional investors as lead plaintiffs"); *In re Peregrine Sys., Inc. Sec. Litig.*, No. Civ.02 CV 870-J(RBB), 2002 WL 32769239, at *16 (S.D. Cal. Oct. 11, 2002) (rejecting the invitation to evaluate losses based on their percentage of the competing movants' net worth as "inconsistent with the PSLRA's statutory purpose of attracting institutional investors").

**B.** **Arkansas Teacher Satisfies the Requirements of Rule 23**

Arkansas Teacher stands out in comparison to the opposing movants not only for the significance of its stake in the outcome of the Action, but also in its ability to meet Rule 23's typicality and adequacy requirements. Like all members of the class, Arkansas Teacher acquired Spectrum securities during the Class Period and suffered damages as a result of Defendants' misrepresentations, satisfying the typicality requirement of Rule 23(a)(3). In addition, Arkansas Teacher's prior success prosecuting class actions demonstrates its ability to select skilled counsel, supervise its chosen counsel, and protect the interests of absent investors as contemplated by Rule 23(a)(4)'s adequacy requirement. Indeed, Arkansas Teacher's wealth of experience in prosecuting securities class actions and successfully recovery hundreds of millions

of dollars for injured investors, described in its Opening Memorandum and detailed further below, will benefit the Class. Moreover, as a sophisticated institutional investor, Arkansas Teacher is "'exactly the type of lead plaintiff envision[ed] by Congress when it instituted the lead plaintiff requirements.'" *Frias*, 835 F. Supp. 2d at 1076 (citation omitted); *see also Hufnagle v. Rino Int'l Corp.*, No. CV 10-8695-VBF, 2011 WL 710704, at *4 (C.D. Cal. Feb. 14, 2011) ("'According to Congress, institutional investors appointed as lead plaintiffs would be the most competent plaintiff to select and control lead counsel.'") (quoting Moore's Federal Practice § 23.191[3][b][v]).[7]

There is no merit to any of the arguments offered by the SPPI Group or the Sector Funds suggesting that Arkansas Teacher is unable to meet the requirements of Rule 23. Contrary to the contentions of the opposing movants, the PSLRA's so-called "professional plaintiff" restriction does not apply to institutional investors. Indeed, a court in this Circuit has explicitly held just one year ago that Arkansas Teacher is a paradigmatic lead plaintiff.

Congress, which instituted the PSLRA to encourage sophisticated institutional investors to serve as lead plaintiffs, H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733, never intended for the professional plaintiff restriction to apply to institutional investors. The full text of the restriction is:

---

[7] The SPPI Group mischaracterizes Arkansas Teacher as arguing that institutional investors are always preferred over other investors, regardless of losses. SPPI Opp. at 10-11, SPPI Reply at 4. Rather, institutional investors may prevail over a group of individuals with a combined larger loss where, as here, the members of the group have no preexisting relationship and cannot claim the largest individual loss. Similarly, the serious questions surrounding the formation of the SPPI Group bear little similarity to an attack on a solitary individual with the largest financial interest in *Mohanty v. BigBand Networks, Inc.*, No. C 07-5101 SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008). SPPI Reply at 4 n. 17.

9

> Restrictions on professional plaintiffs
>
> *Except as the court may otherwise permit, consistent with the purposes of this section*, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

15 U.S.C.A. § 78u-4(a)(3)(B)(vi) (emphasis added). The legislative history of the professional plaintiff restriction reflects that the provision was not intended to apply to institutional investors such as Arkansas Teacher:

> *Institutional investors* seeking to serve as lead plaintiff may need to exceed this limitation and *do not represent the type of professional plaintiff this legislation seeks to restrict*. As a result, the Conference Committee grants courts discretion to avoid *the unintended consequences of disqualifying institutional investors* from serving more than five times in three years. The Conference Committee does not intend for this provision to operate at cross purposes with the "most adequate plaintiff" provision.

H.R. Conf. Rep. 104-369, at 35, reprinted in 1995 U.S.C.C.A.N. at 734 (emphases added).

"As the Ninth Circuit [has] observed, apart from the statute itself, the Conference Report for the PSLRA represents 'the most reliable evidence of congressional intent.'" *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 410 (N.D. Cal. 2012) (citing *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999)). "The legislative history concerning the PSLRA restriction on professional plaintiffs could not be clearer in stating that institutions . . . were not intended to be subject to the 5 case limit." *Naiditch v. Applied Micro Circuits Corp.*, No. 01-CV-0649-K-AJB, 2001 WL 1659115, at *5 (S.D. Cal. Nov. 5, 2001). "Clearly, Congress did not intend the '5 case limitation' to be used as a sword against the very type of lead plaintiff it would prefer to control these cases—institutional investors." *Id.*

10

Accordingly, the overwhelming majority of courts in this Circuit and elsewhere recognize that the professional plaintiff limitation does not apply to institutional investors, and in particular to public pension funds, the type of investors the PSLRA sought to encourage to take active roles in securities class actions. *See In re Diamond Foods*, 281 F.R.D. at 410 ("The majority of judges in our district who have considered the issue and a judge in a neighboring district have concluded that the 'professional plaintiff' provision of the PSLRA was not intended to apply to institutional investors.") (citing cases); *Naiditch*, 2001 WL 1659115, at *3 (rejecting professional plaintiff argument against an institutional investor who was serving as lead plaintiff in eleven class actions because these appointments "in fact could evince a laudatory zeal to fulfill its fiduciary duties. Such experience will well equip [it] to oversee this litigation."); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-cv-7281(JFK), 2008 WL 4974839, at *8 (S.D.N.Y. Nov. 24, 2008) (holding that institutional investors are "not subject to the PSLRA's strict ban on 'professional plaintiffs' who have served as lead plaintiff in more than five class actions in the previous three-year period"); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 454 (C.D. Cal Aug. 9, 2002) (finding that "the PSLRA expressly authorizes courts to waive the restriction on professional plaintiffs to achieve the objectives of the statute," and citing decisions in which courts refused to apply the professional plaintiff prohibition to institutional investors).[8]

---

[8] *See also In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 512 (E.D. Pa. 2004) ("[T]he limitation against professional plaintiffs was not designed to be applied mechanically to institutional investors."); *Meeuwenberg v. Best Buy Co.*, No. 03-cv-6193, 2004 WL 950362, at *3 (D. Minn. Apr. 29, 2004) ("The majority of courts have held institutional investors exempt from the statutory professional plaintiff restriction."); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 299 (D. Del. 2003) ("[T]he majority of courts . . . have concluded that the restriction does not apply to institutional investors."); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 641 (D.N.J. 2002) ("The majority of courts that have considered this issue have determined that the limitation does not apply to institutional investors.").

11

As explained by the *Netflix* court, seeking to apply the professional plaintiff rule to movants such as Arkansas Teacher "misapprehends both the spirit and the letter of the PSLRA." *Netflix*, 2012 WL 1496171, at *6. This is particularly true where the movant is a state retirement system with ample resources to engage in multiple complex litigations at once. *See In re Diamond Foods*, 281 F.R.D. at 412 (finding that waiver of the professional plaintiff restriction was appropriate where a state retirement system movant with the largest loss was an institutional investor and a state agency with "extensive experience in serving as lead plaintiff in securities class actions and . . . sufficient resources to devote to managing th[e] action").

The authority cited by the opposing movants in contending that the professional plaintiff restriction should apply to Arkansas Teacher is unpersuasive. The SPPI Group directs the Court's attention to *In re Telxon Corp. Securities Litigation*, 67 F. Supp. 2d 803 (N.D. Ohio 1999)—a 14 year-old case from another jurisdiction. However, the *Telxon* court expressly held that an investor's status as an institutional investor should be taken into account in determining the applicability of the professional plaintiff restriction, particularly when the alternative lead plaintiff is a group composed of unrelated individuals.

> This is not to say, however, that a person's status as an institutional investor should not be taken into account at all. Clearly, it should be considered in determining whether to excuse compliance with the rule; it simply should not be the dispositive factor.

*Id.* at 822. While the *Telxon* court went on to apply the professional plaintiff restriction to an institutional investor, it noted that the group of individuals urging the application of the restriction on the institutional investor included two brothers who had the largest individual loss in the action. *See id.* at 822-23 (noting that the group of individuals included two brothers with a loss more than double that of the subject institutional investor).

12

The sole authority cited by the Sector Funds for the proposition that institutional investors do not merit from a "blanket exemption" from the professional plaintiff restriction is even less helpful to their argument. The decision in *Cunha v. Hansen Natural Corp.*, No. 08-cv-1249, 2009 WL 2029797 (C.D. Cal. July 13, 2009), focused on the facts that the institutional investor at issue was involved in "over 21" cases over a three-year period and that an alternative institutional investor could adequately represent the class. *Id.* at \*7. Further, the financial interests of the competing movants in *Cunha* differed by less than $70,000 (*id.* at \*2) whereas in the Action, the Sector Funds concede that Arkansas Teacher's financial stake in the Action outstrips theirs by more than $360,000 (Sector Opp., at 1). Tellingly, in the nearly four years since it was issued, the *Cunha* opinion has not been followed by a single court and has, in fact, been examined in and rejected by another Ninth Circuit court. *See City of Marysville Gen. Emps. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*, No. 09-cv-659, 2010 WL 2000040, at \*8 (D. Idaho May 19, 2010) (holding that "the term 'professional plaintiff' was meant to restrict the use of plaintiffs who 'have only a nominal interest in the litigation and who act as lead plaintiff primarily to accommodate counsel'") (citation omitted).[9]

The Court should also reject the SPPI Group's baseless claims regarding Arkansas Teacher's recitation of the cases in which Arkansas Teacher is currently serving as lead plaintiff. Arkansas Teacher's certification clearly states that it lists only cases *filed in the last three years in which Arkansas Teacher currently serves as lead plaintiff. See* Certification, Ex. A to Stocker

---

[9] The Sector Funds err in their sweeping contention that institutional investors challenged on the basis of the professional plaintiff restriction have prevailed only when no alternative, qualified institutional investor was before a court. *See*, *e.g.*, *Diamond Foods*, 281 F.R.D. at 410-12 (rejecting professional plaintiff restriction argument raised by competing institutional investor with a smaller loss).

13

Opening Decl., Dkt. No. 43, ¶ 6 ("Arkansas Teacher is currently serving as a lead plaintiff in the following class actions filed under the federal securities laws during the last three years:"). Arkansas Teacher's list was limited in scope to mirror the PSLRA's certification requirement that movants "identif[y] any other action under this chapter, *filed during the 3-year period preceding the date on which the certification is signed by the plaintiff*, in which the plaintiff has sought to serve as a representative party on behalf of a class," and indicate in which cases listed in the preceding paragraph Arkansas Teacher was appointed as lead plaintiff.  15 U.S.C.A. § 78u-4(a)(2)(A)(v) (emphasis added).

There is no greater merit in the SPPI Group's argument that Arkansas Teacher—a state fund routinely engaged in numerous lawsuits at one time—will somehow be unable to adequately focus on the Action due to cases it has settled or is in the process of settling for absent investors.  These cases, such as *In re Schering-Plough Corporation / Enhance Securities Litigation*, No. 08-cv-397 (D.N.J.) (settlement of $473 million reached in principle and motion for preliminary approval pending), reflect only that "this institutional investor has shown it has the capability to manage this litigation."  *In re Diamond Foods*, 281 F.R.D. at 410.[10]

The opposing movants offer no proof to refute the presumption that Arkansas Teacher is the most adequate plaintiff and a proper representative for all Spectrum investors.  Accordingly, the Court should appoint Arkansas Teacher as Lead Plaintiff.

---

[10]  The SPPI Group also appears to contend Arkansas Teacher's attention would be drawn away from the Action by cases that have already been dismissed with prejudice and can no longer be appealed under the Federal Rules of Appellate Procedure.  *See City of Monroe*, No. 10-cv-2835 (S.D.N.Y.) (dismissed with prejudice on September 19, 2011 and not appealed); *Arkansas Teacher Retirement System v. Monsanto Co.*, No. 10-cv-1380 (E.D. Mo.) (dismissed with prejudice on August 1, 2012 and not appealed).  The SPPI Group also suggests that Arkansas Teacher may be distracted by other individual securities cases or corporate governance cases, but cites no such cases, all of which would be a matter of public record.

14

**C.      The Court Should Reject the Motions of the Remaining Movants Because They Have Not Satisfied the Requirements of Rule 23**

The PSLRA's most adequate plaintiff presumption does not apply to the SPPI Group or the Sector Funds because they do not have the largest financial interest in the Action. However, even if they did have the largest financial interest—and they do not—the Court should decline to appoint them because: (1) the SPPI Group has not demonstrated that it would "fairly and adequately protect the interests of the class"; and (2) the Sector Funds are subject to standing issues that constitute "unique defenses that render [them] incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II); *see also In re Netflix*, 2012 WL 1496171, at *5 (explaining that "[t]he point of [the rebuttable lead plaintiff presumption] is not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole").

Even if the Court were to entertain the untimely declaration filed by the members of the SPPI Group, the SPPI Declaration fails to establish that the Group meets the typicality and adequacy prerequisites set forth in Rule 23. The SPPI Group has offered no suggestion that it was assembled in any manner other than by responding to the notification of attorneys, who did not file a complaint in the Action, through responses to a published notification specifically requesting contact from "[i]nvestors who suffered losses greater than $100,000 in [Spectrum] stock." Ex. A to Stocker Opp. Decl., Dkt. No. 65.[11] Where a movant's participation in a group

---

[11] The Court should not be taken in by the SPPI Group's attempt to rationalize the dissemination of a press release seeking investors with hundreds of thousands of dollars in losses by comparing the practice to the issuance of a notice regarding the filing of a complaint extending an existing class period, as was the case in *Navistar* and *ITT*. SPPI Reply at 9. In such cases, counsel has already been retained by an investor, and the notice is intended to alert potential class members to the changed class period.

is a result of "counsel's patent effort to solicit clients, [the group's formation] runs directly contrary to the goals of the PSLRA – to reduce lawyer-driven litigation." *Tsirekidze*, 2008 WL 942273, at *4. The *In re Netflix* opinion is not distinguishable from the instant facts as the SPPI Group would have the Court believe. In *In re Netflix*, the court considered declarations filed by the members of an unrelated group assembled by a law firm that sought investors with losses in excess of $100,000, referenced by counsel for Arkansas Teacher. *See Newman Ferrara LLP Pursues Securities Fraud Claims Against Netflix, Inc. and Reminds Investors of March 13, 2012 Deadline*, attached as Exhibit A to the Decl. of Michael W. Stocker in Further Supp. of the Mot. of Arkansas Teacher (the "Stocker Reply Decl."), filed herewith. Although the *In re Netflix* court did not reject the declarations, filed with the movants' reply brief, as untimely, the court held that "the declaration [did] not cure the defects in the [group's] motion." *In re Netflix*, 2012 WL 1496171, at *2 n.6. The *In re Netflix* court determined that, in light of the group of individuals' failure to respond to questions about its formation, the group "made no showing of former ties or current cohesion." *Id.* at *4.

The Court should also reject the proposition of the Sector Funds that they would be a more suitable lead plaintiff than Arkansas Teacher, because, as pointed out by the SPPI Group in its opposition, the Sector Funds suffer from serious Article III standing issues. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008) (providing that a plaintiff must be able to demonstrate an injury-in-fact under Article III of the U.S. Constitution by holding title to a claim).

The Sector Funds' certification is apparently signed by the managing director of Sector Asset Management, the Controlling Principal of Sector Gamma AS, which is licensed by the

16

Financial Supervisory Authority of Norway and is the manager of the Sector Funds, both of which are Irish entities. *See* Sector Healthcare Fact Sheet – March 2013, Sector Healthcare Value Fact Sheet – May 2013, attached as Exhibit B to the Stocker Reply Decl. Information publicly available about the Sector Funds makes it difficult for the Court to comprehend their structure. For example, Sector Healthcare Value Fund is a sub-fund of Sector Capital Funds Plc under the Undertakings for Collective Investment in Transferable Securities ("UCITS") administered by the Central Bank of Ireland, and shares of this fund are publicly-traded on the Irish Stock Exchange. *See* Information from Irish Stock Exchange's website, www.ise.ie, Ex. C to the Stocker Reply Decl.

Because the Sector Funds' certification was apparently executed by a representative of a thrice-removed entity, it is unlikely that this entity has standing to pursue claims for losses incurred on investments in Spectrum stock by the Sector Funds. *See In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (noting that Article III standing must be demonstrated at the time of the filing of a lead plaintiff motion). It is likely, however, that this deficient certification would subject the Sector Funds to a typicality defense, rendering them an inadequate lead plaintiff. *See In re Herley Indus. Inc. Sec. Litig.*, Civil Action No. 06-2596, 2009 WL 3169888, at *12 (E.D. Pa. Sept. 30, 2009) ("A class representative is not 'typical' if it is 'subject to a unique defense that is likely to become a major focus of the litigation.'") (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006)).

17

III.     **CONCLUSION**

For the foregoing reasons, Arkansas Teacher respectfully requests that the Court:

(1) appoint Arkansas Teacher as Lead Plaintiff; (2) approve Arkansas Teacher's selection of

Labaton Sucharow as Lead Counsel; and (3) deny all competing motions.

Dated: June 10, 2013                                   Respectfully submitted,

                                                       By: ___*/s/ William M. O'Mara*_____
                                                       William M. O'Mara (Nevada Bar No. 0837)
                                                       David C. O'Mara (Nevada Bar No. 8599)
                                                       **THE O'MARA LAW FIRM, P.C.**
                                                       311 E. Liberty St.
                                                       Reno, Nevada  89501
                                                       Telephone: (775) 323-1321
                                                       Facsimile: (775) 323-4082
                                                       Email: bill@omaralaw.net
                                                       david@omaralaw.net

                                                       *Local Counsel*

                                                       Christopher J. Keller
                                                       Eric J. Belfi
                                                       Michael W. Stocker
                                                       **LABATON SUCHAROW LLP**
                                                       140 Broadway
                                                       New York, New York  10005
                                                       Telephone: (212) 907-0700
                                                       Facsimile: (212) 818-0477
                                                       Email: ckeller@labaton.com
                                                       ebelfi@labaton.com
                                                       mstocker@labaton.com

                                                       *Counsel for Arkansas Teacher Retirement
                                                       System and Proposed Lead Counsel for the Class*

18

## CERTIFICATE OF SERVICE

I, William M. O'Mara, Local Counsel for Arkansas Teacher Retirement System, certify that on this 10th day of June, 2013, I electronically filed this Reply Memorandum of Law in Further Support of the Motion of Arkansas Teacher Retirement System for Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel with the Clerk of the U.S. District Court using the CM/ECF system and which will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


 */s/ William M. O'Mara*
William M. O'Mara