HAGENS BERMAN SOBOL SHAPIRO LLP
Reed R. Kathrein (Bar. No. 139304)
reed@hbsslaw.com
Lucas E. Gilmore (Bar No. 250893)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

*Liaison Counsel for Proposed Lead Plaintiff*

LABATON KELLER SUCHAROW LLP
Eric J. Belfi (admitted *pro hac vice*)
ebelfi@labaton.com
Francis P. McConville (admitted *pro hac vice*)
fmcconville@labaton.com
Hui Chang (admitted *pro hac vice*)
hchang@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Proposed Lead Plaintiff and*
*Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, and CLAIRE MCDONOUGH,<br><br>Defendants. | Case No. 2:24-cv-04566-CBM-PVC<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION<br><br>Date: December 10, 2024<br>Time: 10:00 a.m.<br>Courtroom: 8D<br>Judge: Hon. Consuelo B. Marshall |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................ii

I.    INTRODUCTION ......................................................................................... 1

II.    ARGUMENT ................................................................................................ 2

    A.    Motion for Reconsideration Standard ................................................... 2

    B.    The Standard for a *Prima Facie* Showing of Adequacy ...................... 2

    C.    The Court Committed Clear Error by Concluding the Pension Funds Failed to Make a *Prima Facie* Showing of Adequacy .............. 4

        1.    The Lead Plaintiff Order Failed to Consider the Prosecutorial Procedures Established by the Pension Funds ................................................................................................. 5

        2.    The Lead Plaintiff Order Failed to Consider That the Kirios Provided No Evidence of Their Own Procedures .......... 8

        3.    The Court Should Have Considered NPS for Individual Appointment .............................................................................. 9

III.    CONCLUSION ........................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................................2

*Das v. Unity Software Inc.,*
2023 WL 1927739 (N.D. Cal. Feb. 10, 2023) ...................................................3, 7

*Davis v. United States*,
2015 WL 13439817 (C.D. Cal. Mar. 3, 2015) .....................................................2

*Frank v. Dana Corp.*,
237 F.R.D. 171 (N.D. Ohio 2006)..........................................................................5

*Karp v. Diebold Nixdorf, Inc.*,
2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) .......................................................9

*Malasky v. IAC/InterActiveCorp*,
2005 WL 549548 (S.D.N.Y. Mar. 7, 2005) ..........................................................7

*Mannkind Sec. Actions,*
2011 WL 13218021 (C.D. Cal. Apr. 27, 2011) ..............................................9, 10

*McCracken v. Edwards Lifesciences Corp.*,
2014 WL 12694135 (C.D. Cal. Jan. 8, 2014)........................................................7

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021)...........................................................................3, 5, 10

*Miami Police Relief & Pension Fund v. Fusion-io, Inc.*,
2014 WL 2604991 (N.D. Cal. June 10, 2014) ......................................................6

*Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.,*
2022 WL 3571995 (N.D. Cal. July 26, 2022) ...................................................4, 7

*Pipefitters Loc. No. 636 Defined Ben. Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011).........................................................................10

*Silverberg v. DryShips Inc.*,
2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018).....................................................5

ii

*Varghese v. China Shenghuo Pharm. Holdings,* Inc.,
589 F. Supp. 2d 388 (S.D.N.Y. 2008) ..................................................................... 9

**Rules & Statutes**

Fed. R. Civ. P. 23..................................................................................................... 2

Fed. R. Civ. P. 60(b) ............................................................................................... 2

15 U.S.C. § 78u–4 *et seq.* ........................................................................................ 2

iii

## I.    <u>INTRODUCTION</u>

Presently pending before the Court is a securities class action (the "Action") on behalf of a "Class" of all persons or entities other than defendants that purchased or otherwise acquired Rivian Automotive, Inc. ("Rivian" or the "Company") securities between August 12, 2022 and February 21, 2024, inclusive (the "Class Period").  On July 30, 2024, Proposed Lead Plaintiff National Pension Service, on behalf of the National Pension Fund (together, "NPS") and Indiana Public Retirement System ("Indiana" and collectively with NPS, the "Pension Funds") moved for appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  ECF Nos. 24-26.  On the same day, Kamil Kirio and Nada Badr-Kirio (the "Kirios"), as Trustees of the Kirio Family Trust Dated September 21, 2015, similarly moved for Lead Plaintiff appointment.  ECF Nos. 27-29.

In an order dated October 24, 2024 and entered October 29, 2024 (the "Lead Plaintiff Order") the Court found that the Pension Funds have the largest financial interest in the Action and that both NPS and Indiana each have a larger financial interest than the Kirios collectively.  *See* ECF No. 49 at 4 (finding that the "Pension Funds claim $34,026,122.10 in losses by NPS and $2,350,677.10 in losses by [Indiana], for a collective total of $36.4 million in losses during the class period" compared to the Kirios' loss of $1,951,245).  However, the Lead Plaintiff Order determined that the Pension Funds failed to make a *prima facie* showing of adequacy and instead appointed the Kirios Lead Plaintiff.  ECF No. 49 at 6 & 9.  The Pension Funds request reconsideration of the Lead Plaintiff Order because, as described below, it committed clear error and failed to consider material facts presented to the Court in its determination that the Pension Funds have not made a *prima facie* showing of adequacy while the Kirios have.  Therefore, the Pension Funds respectfully request that this Court enter an Order granting their motion for

1

reconsideration and appointing the Pension Funds as Lead Plaintiff in the Action, or, in the alternative, appointing NPS Lead Plaintiff individually.

## II.    ARGUMENT

### A.    Motion for Reconsideration Standard

Under Rule 60(b) of the Federal Rules of Civil Procedure, a party may seek reconsideration of a final judgment or court order for any reason that justifies relief, including: "mistake, inadvertence, surprise, or excusable neglect," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b). Pursuant to L.R. 7-18, "A motion for reconsideration of the decision on any motion may be made only on the grounds of . . . a manifest showing of a failure to consider material facts presented to the Court before such decision." "'Reconsideration is appropriate if the district court . . . . committed clear error or the initial decision was manifestly unjust.'" *Davis v. United States*, 2015 WL 13439817, at *1 (C.D. Cal. Mar. 3, 2015).

### B.    The Standard for a *Prima Facie* Showing of Adequacy

The PSLRA requires district courts to appoint the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA sets out a three-step process for identifying the lead plaintiff. 15 U.S.C. § 78u-4(a)(3); *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). The first step "consists of publicizing the pendency of the action, the claims made and the purported class period." *In re Cavanaugh,* 306 F.3d at 729. Then, in the second step, the court must consider the losses allegedly suffered by the various movants before selecting as the presumptive lead plaintiff the one who has the largest financial interest in the relief sought by the class and otherwise has made a *prima facie* showing that it satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. "The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id* at 730.

2

Therefore, after determining that the Pension Funds had a larger financial interest than the Kirios (ECF No. 49 at 3), the Court was next required to determine whether the Pension Funds had made a *prima facie* showing of adequacy and typicality. *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021). Courts in the Ninth Circuit "determine whether a plaintiff will adequately represent a class by answering two questions: (1) do the movant and its 'counsel have any conflicts of interest with other class members' and (2) will the movant and its 'counsel prosecute the action vigorously on behalf of the class?'" *Id.* at 899-900 (citation omitted).

The Ninth Circuit has acknowledged that "district courts have considered the lack of a pre-litigation relationship as part of their adequacy analysis at step two . . . along with other factors such as the size of the group, how the members found their counsel, and the prosecution procedures set out in their filings." *Id.* at 901-02. Such district courts frequently appoint groups of two institutional investors that affirm that they have discussed how they will jointly prosecute the lawsuit. For instance, in *Das v. Unity Software Inc.,* the court appointed two institutions (Indiana and the Oklahoma Firefighters Pension and Retirement System) lead plaintiff where there was no evidence of conflict and the institutions' "interests appear to align with those of the class members such that they will 'vigorously' prosecute the action on behalf of the class." 2023 WL 1927739, at *3 (N.D. Cal. Feb. 10, 2023). In finding the two institutions satisfied the adequacy requirement, the court noted that the pension funds were "sophisticated institutional investors." *Id.* at *2. Further, the court noted that the two institutions "have conferred to discuss the claims, their funds' common goals of the litigation, and how they will successfully and cost-effectively jointly prosecute this action to obtain the greatest possible recovery for the Class." *Id.* at *3. These simple claims were enough for the court in *Unity Software* to determine the two institutions satisfied the adequacy standard.

Similarly, in *Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, the court appointed two institutions lead plaintiff, a pension system from Ohio and a financial institution from Denmark. 2022 WL 3571995, at *5 (N.D. Cal. July 26, 2022). Even though the court acknowledged that the two institutions lacked a pre-litigation relationship, it found they had satisfied the adequacy requirement after reviewing joint declarations submitted by the group and determining they "appear to have communicated well together, both before and after filing their joint motion to be appointed as lead plaintiff." *Id.* at *3. The court also noted that the fact that "the group consists only of two members 'provides additional assurance that the Group itself, and not its attorneys, will control the litigation.'" *Id.* (citation omitted). Although the court noted that two institutions "could have presented a more robust decisionmaking structure," it found there was "no reason to doubt that they will be unable to resolve any conflicts that might arise in the future," based on their record of having communicated before and while moving for lead plaintiff appointment. *Id.*

Thus, in determining whether a group of two unrelated institutional investors satisfies the *prima facie* adequacy standard, courts determine whether the institutions have any conflicts with the class and whether they will vigorously prosecute the action. Courts sometimes consider the prosecutorial procedures established by the institutions in making this determination. However, where institutions have demonstrated that they have and will continue to communicate in jointly managing the lawsuit, the institutions are found to have satisfied the adequacy requirement.

**C.    The Court Committed Clear Error by Concluding the Pension Funds Failed to Make a *Prima Facie* Showing of Adequacy**

The Pension Funds move for reconsideration because the Lead Plaintiff Order misapplied the PSLRA's *prima facie* adequacy standard and failed to consider the full record before the Court in three ways. First, in determining that the Pension

4

Funds had failed to show they are adequate, the Lead Plaintiff Order overlooked record evidence that more than established the adequacy of the Pension Funds under the standard employed by courts in the Ninth Circuit. *Silverberg v. DryShips Inc.,* 2018 WL 10669653, at *2 (E.D.N.Y. Aug. 21, 2018) (reconsideration may be granted where the movant points to "controlling . . . data that the court overlooked"); *Frank v. Dana Corp.*, 237 F.R.D. 171, 172 (N.D. Ohio 2006) (granting a motion for reconsideration where the original lead plaintiff determination was based on the court misconstruing facts). Conversely, while applying this heightened standard to the Pension Funds, the Lead Plaintiff Order failed to consider the dearth of adequacy evidence provided by the Kirios and applied no adequacy standard when evaluating the Kirios' motion. Finally, the Lead Plaintiff Order failed to consider NPS for appointment individually which would have relieved any concerns with NPS and Indiana's coordination while satisfying the PSLRA's mandate to appoint the movant with the largest financial interest that is typical and adequate.

### 1. The Lead Plaintiff Order Failed to Consider the Prosecutorial Procedures Established by the Pension Funds

In finding the Pension Funds inadequate to serve as Lead Plaintiff, the Lead Plaintiff Order committed clear error and failed to consider the full, robust record presented by the Pension Funds showing that the institutions had both a mechanism to resolve disagreements and substantial procedures for prosecuting the Action. To meet the adequacy standard employees by courts in the Ninth Circuit, movants must show that they have no "'conflicts of interest with other class members,'" and that they will "'prosecute the action vigorously on behalf of the class.'" *Mersho*, 6 F.4th at 899-900 (citation omitted).

The Lead Plaintiff Order found the Pension Funds inadequate because they did "not provide other information on how NPS and [Indiana] will resolve disagreements or specific, substantive information on how they will jointly manage

5

the case." ECF No. 49 at 5. Clearly, this holds the Pension Funds to a far higher standard than merely whether they have conflicts with other class members and will vigorously prosecute the Action. In that same order, the Court quotes joint declarations provided by NPS and Indiana showing that on their "joint conference call on July 29, 2024," the two "discussed. . . [the] **procedures and mechanisms for communication and decision-making**," that they "**have established procedures for overseeing the progress of the litigation and communicating both separate and apart from and with counsel as necessary**," and that they will "confer with and without counsel to ensure that we are able to make timely decisions and **have a mechanism to resolve any disagreement regarding the prosecution of the Action**.'" ECF No. 49 at 5 (emphasis added). Thus, as the Court acknowledged, Indiana and NPS provided evidence that they have a mechanism for resolving any disagreements that might arise in the course of litigating the Action.

The Lead Plaintiff Order also ignored other evidence NPS and Indiana provided in their joint declarations regarding their established procedures for prosecuting the lawsuit. For instance, Indiana and NPS stated that they "have directed counsel to advise us of all developments during the lead plaintiff motion process as well as to provide us with updates regarding counsel's ongoing investigation," and that they will "actively oversee the prosecution of this Action for the benefit of the proposed class **by reviewing pleadings, holding joint calls with and without counsel as needed, among other things**," and that they "**have instructed counsel to provide us with monthly or quarterly updates on the progress of the litigation, or as frequently as is otherwise necessary**." ECF No. 36-2 ¶ 12 (emphasis added); *see Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, 2014 WL 2604991, at *5 (N.D. Cal. June 10, 2014) (appointing a "[s]mall, cohesive" group of "two sophisticated investors," which submitted a joint declaration claiming "they will work cooperatively together to direct and supervise

the activities of counsel to best vindicate the interests of all shareholders and to vigorously prosecute the case"). In determining the Pension Funds failed to provide information regarding how they will jointly manage the Action, the Lead Plaintiff Order completely ignores these specific procedures established by the Pension Funds to supervise counsel and jointly manage the case. *See Malasky v. IAC/InterActiveCorp*, 2005 WL 549548, at *1 (S.D.N.Y. Mar. 7, 2005) (granting a motion for reconsideration where the lead plaintiff appointment was based on incorrect facts about the movants).

The Lead Plaintiff Order also ignored evidence of joint procedures provided by the Pension Funds after the Kirios challenged their adequacy to serve as Lead Plaintiff. Specifically, the two institutions provided in a signed declaration that they "have continued to be actively involved in this litigation, receiving regular updates from counsel regarding the status of this case, including the results of counsel's proprietary investigation," and that "NPS and Indiana have continued to communicate by telephone and email as needed, particularly to address the specious questions raised by the Kirios in their opposition brief." ECF No. 45-2 ¶ 11. NPS and Indiana's joint effort in opposing the Kirios' challenge demonstrated precisely the type of coordination and communication needed for a Lead Plaintiff to effectively oversee counsel and prosecute a complex securities lawsuit. *See McCracken v. Edwards Lifesciences Corp.*, 2014 WL 12694135, at *4 (C.D. Cal. Jan. 8, 2014) (appointing a group of five institutional investors that "submitted a Joint Declaration . . . describing the Investor Group's procedures for overseeing this litigation, including regular joint conference calls with counsel, short-notice phone and email communication"). This robust adequacy showing by the Pension Funds more than satisfies the standard applied by district courts in the Ninth Circuit. *See Unity Software Inc.,* 2023 WL 1927739, at *3; *Meta Platforms, Inc.*, 2022 WL 3571995, at *3.

7

Even if the evidence described above did not fully demonstrate to the Court's satisfaction that Indiana and NPS have robust procedures for coordinating and resolving disagreements, the Court had the opportunity to ask for further explanation at the hearing originally scheduled for August 27, 2024.  Instead, the Court decided to cancel that argument of its own volition instead of clarifying any remaining questions.  ECF No. 48.

Therefore, the Pension Funds' motion for reconsideration should be granted because the Lead Plaintiff Order failed to consider the wide breadth of evidence provided by the Pension Funds regarding their mechanisms for resolving disagreements and otherwise jointly prosecuting the Action.

### 2.     The Lead Plaintiff Order Failed to Consider That the Kirios Provided No Evidence of Their Own Procedures

The Lead Plaintiff Order also failed to consider the total absence of evidence regarding the Kirios' own procedures for resolving disagreements and otherwise prosecuting the Action.  In contrast to the Court's critical evaluation of NPS and Indiana's submissions, the Court failed to evaluate whether the Kirios have provided any information whatsoever regarding their own procedures for overseeing the litigation or mechanisms to resolve disputes.  They have not.  The Court notes that the Kirios merely state they each "are willing to serve as representative parties." ECF No. 49 at 7.  In their initial motion, the Kirios also provided that have "invested for over 20 years," and "have a flooring business together and live in California." ECF No. 29 at 2.  That is the extent of the evidence provided by the Kirios that they will adequately serve the Class as Lead Plaintiff.  In contrast to the robust showing of coordination the Pension Funds provided once the Kirios challenged their adequacy (ECF No. 45-2), the Kirios provided **no** additional evidence to support a finding of adequacy after they were challenged.  *See* ECF No. 46 at 4.  None of the Kirios' submissions provide the Court any information as to how the Kirios will

coordinate to supervise counsel and prosecute the Action or how disputes between the two individuals would be resolved.

In contrast to the exacting adequacy standard applied to the Pension Funds, the Lead Plaintiff Order accepted the Kirios' motion without reviewing the record to determine how the Kirios will address those issues. The Lead Plaintiff Order found that "there is no requirement that a movant seeking to be appointed as lead plaintiff certify that the movant is a sophisticated investor or that the movant has significant experience overseeing complex litigation." But lead plaintiff movants, including married couples, must show they are adequate to represent the class. *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at \*6 (S.D.N.Y. Oct. 30, 2019) (rejecting married lead plaintiff movants because the movants had failed to provide evidence of adequacy). Based on the substantial evidence of adequacy provided by the Pension Funds and the complete lack of evidence provided by the Kirios, it cannot be the case that the Kirios satisfy the *prima facie* adequacy requirement but the Pension Funds do not. By applying such disparate adequacy standards to the two movant groups, the Court committed clear error and manifestly failed to consider the evidence provided by each movant group.

### 3. The Court Should Have Considered NPS for Individual Appointment

Finally, once the Court found the Pension Funds inadequate for Lead Plaintiff appointment collectively, it should have considered NPS, the individual investor with the largest losses, for appointment. This would have obviated any concerns with how NPS and Indiana would jointly manage the case while satisfying the PSLRA preference for appointing the investor with the largest financial interest.

Courts have the authority to appoint single members of movant groups lead plaintiff. *Varghese v. China Shenghuo Pharm. Holdings,* Inc., 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008) (collecting cases); *Mannkind Sec. Actions*, 2011 WL

9

13218021, at *4-6 (C.D. Cal. Apr. 27, 2011) (declining to appoint a group as lead plaintiff but appointing the single member of that group with the largest financial interest). Here, the Court should have exercised this option and considered NPS individually for appointment. This would have avoided the outcome of the current decision, where movants with losses **seventeen times smaller** than the loss of NPS were appointed in its stead. Clearly, this appointment contravenes the PSLRA's preference for appointing the lead plaintiff with the largest financial interest. *See Mersho*, 6 F.4th at 901 n.3 (9th Cir. 2021) (finding an appointment "troubling because it resulted in the appointment of a lead plaintiff whose losses are less than half or one-third of what each of the Petitioners suffered individually," which the Ninth Circuit found to be "incongruous with the PSLRA's presumption that the investors with the largest stake have the greatest incentive to supervise the litigation closely").

In particular, the Court should have considered NPS for appointment individually after determining that Indiana suffers from a unique issue which renders it inappropriate to serve as Lead Plaintiff. ECF No. 49 at 6. Where one member of a movant group can no longer be appointed, courts routinely consider the remaining members for individual appointment, even where the movant "did not file a motion individually." *Pipefitters Loc. No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) ("Courts routinely select individual members of a proposed lead plaintiff group to serve as lead plaintiff."). Therefore, the Court should have considered NPS individually for appointment.

## III. CONCLUSION

For the foregoing reasons, the Pension Funds respectfully request that this Court enter an Order granting their motion for reconsideration and appointing the Pension Funds as Lead Plaintiff in the Action, or, in the alternative, appointing NPS Lead Plaintiff individually.

10

DATED: November 12, 2024              Respectfully submitted,


                                           /s/ *Lucas E. Gilmore*
                                         Lucas E. Gilmore
                                     HAGENS BERMAN SOBOL SHAPIRO
                                     LLP
                                     Reed R. Kathrein (Bar. No. 139304)
                                     reed@hbsslaw.com
                                     Lucas E. Gilmore (Bar No. 250893)
                                     lucasg@hbsslaw.com
                                     715 Hearst Avenue, Suite 300
                                     Berkeley, CA 94710
                                     Telephone: (510) 725-3000
                                     Facsimile: (510) 725-3001

                                     HAGENS BERMAN SOBOL SHAPIRO
                                     LLP
                                     Christopher R. Pitoun (Bar. No. 290235)
                                     christopherp@hbsslaw.com
                                     301 North Lake Avenue
                                     Pasadena, CA 91101
                                     Telephone: (213) 330-7150
                                     Facsimile: (213) 330-7152

                                     *Liaison Counsel for Proposed Lead
                                     Plaintiff*

                                     LABATON KELLER SUCHAROW LLP
                                     Eric J. Belfi (admitted *pro hac vice*)
                                     ebelfi@labaton.com
                                     Francis P. McConville (admitted *pro hac
                                     vice*)
                                     fmcconville@labaton.com
                                     Hui Chang (admitted *pro hac vice*)
                                     hchang@labaton.com
                                     140 Broadway
                                     New York, NY 10005
                                     Telephone: (212) 907-0700
                                     Facsimile: (212) 818-0477

                                     *Counsel for Proposed Lead Plaintiff and
                                     Proposed Lead Counsel for the Class*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered users via the e-mail addresses on the court's Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the court's Manual Notice List.

/s/ *Lucas E. Gilmore*
Lucas E. Gilmore

HAGENS BERMAN SOBOL SHAPIRO LLP
Lucas E. Gilmore (Bar No. 250893)
lucasg@hbsslaw.com
301 North Lake Avenue
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

12