HAGENS BERMAN SOBOL SHAPIRO LLP
Reed R. Kathrein (Bar. No. 139304)
reed@hbsslaw.com
Lucas E. Gilmore (Bar No. 250893)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

*Liaison Counsel for Proposed Lead Plaintiff*

LABATON KELLER SUCHAROW LLP
Eric J. Belfi (admitted *pro hac vice*)
ebelfi@labaton.com
Francis P. McConville (admitted *pro hac vice*)
fmcconville@labaton.com
Hui Chang (admitted *pro hac vice*)
hchang@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Proposed Lead Plaintiff and*
*Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, and CLAIRE MCDONOUGH, <br><br> Defendants. | Case No. 2:24-cv-04566-CBM-PVC <br><br> CLASS ACTION <br><br> REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR RECONSIDERATION <br><br> Date: December 10, 2024 <br> Time: 10:00 a.m. <br> Courtroom: 8D <br> Judge: Hon. Consuelo B. Marshall |

## I.  INTRODUCTION

The PSLRA[1] provides a straightforward, sequential process for lead plaintiff selection.  The first movant to satisfy the statutory criteria is entitled to appointment. *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").  The Lead Plaintiff Order violated that process by appointing the Kirios, unknown individual investors who have made no showing of their adequacy, over the Pension Funds, sophisticated institutional investors that have made a robust adequacy showing.  Although the Lead Plaintiff Order purported to examine the movants' submissions, it strains credulity to conclude that, based on the full factual record, the Kirios are adequate and the Pension Funds are not.  Therefore, the Lead Plaintiff Order committed clear error by failing to examine the full factual record while applying inconsistent *prima facie* adequacy standards in appointing the Kirios.  The Motion for Reconsideration (ECF No. 51) should be granted.

## II.  ARGUMENT

### A.   The Pension Funds Meet Any Relevant *Prima Facie* Adequacy Standard

The Motion for Reconsideration should be granted because the Pension Funds easily meet the PSLRA's *prima facie* adequacy standard.  The Ninth Circuit has explicitly stated that groups of investors can serve as lead plaintiff. *In re Mersho*, 6 F.4th 891, 903 n.4 (9th Cir. 2021) (holding that a "group can serve as a lead

---

[1] Unless otherwise noted, all defined terms and abbreviations remain unchanged from the Pension Funds' initial Motion for Reconsideration.  *See* ECF No. 51.  All citations are omitted and emphasis added, unless noted.

1

plaintiff"). This includes groups of unrelated investors, although courts can consider the group's "pre-litigation relationships or cohesion," in determining adequacy. *Id.* at 901. In determining whether unrelated groups are adequate, courts consider "factors such as the size of the group, how the members found their counsel, and the prosecution procedures set out in their filings." *Id.* at 902.

The Pension Funds easily satisfy that *prima facie* adequacy standard. The Pension Funds are comprised of two institutional investors. This supports a finding that they "will be able to work together to adequately represent the class." *In re Nike, Inc. Sec. Litig.*, 2024 WL 4579499, at *5 (D. Or. Oct. 25, 2024) (appointing a group of two institutions, one Canadian and one German, as lead plaintiff). Further, the Pension Funds have submitted two joint declarations detailing how they each decided to move for lead plaintiff as a group with Labaton as their proposed Lead Counsel. ECF Nos. 36-2 & 45-2. These submissions explain that, from the outset, the Pension Funds **have jointly controlled** this litigation and their counsel in a coordinated and efficient manner.

As explained in the joint declarations, in April 2024 a different securities class action lawsuit was filed against Rivian. ECF No. 45-2 ¶ 6. Labaton informed Indiana about that lawsuit and its investigation into the relevant defendants. *Id.* After that original action was voluntarily dismissed, Indiana decided to file the present Action to protect itself and similarly situated investors. *Id.* ¶ 7. After this Action was filed, Indiana instructed Labaton to continue its investigation into the allegations. *Id.* Meanwhile, NPS reviewed the complaint filed by Indiana and findings from Labaton's investigation. *Id.* ¶ 8. Throughout June and July 2024, NPS "asked Labaton numerous questions about the merits of the securities litigation pending against Rivian and the duties and responsibilities NPS would assume should it be appointed as Lead Plaintiff. NPS evaluated both Labaton's answers to its questions and the results of Labaton's investigation and decided to move for Lead

2

Plaintiff appointment." *Id.* NPS directed its counsel to file its motion for appointment alongside Indiana so it could gain the "benefits of working alongside an experienced Lead Plaintiff that was already overseeing a robust investigation by counsel," and had already filed a complaint against the relevant defendants. *Id.* ¶ 9. For its part, Indiana decided to move for appointment with a like-minded institution based on the benefits it had observed serving as lead plaintiff alongside other institutions in previous PSLRA lawsuits. *Id.*; ECF No. 36-2 ¶ 5. Based on these independent processes at each institution and their conversations regarding working together to prosecute the Action (ECF No. 36-2 ¶ 9), the Pension Funds ***directed*** their counsel to file a motion for Lead Plaintiff appointment on their behalf. Later, the Pension Funds ***directed*** their counsel to submit the motion for reconsideration at issue here. Based on this record, Pension Funds are patently not a lawyer-driven group, but rather engaged, coordinated institutional investors seeking to protect the interests of the Class.

Finally, the Pension Funds have outlined the detailed prosecutorial procedures they have established, both in their initial motion for reconsideration brief (ECF No. 51-1 at 6-7) and below. Therefore, the Lead Plaintiff Order committed clear error in determining that the Pension Funds do not meet the adequacy standard because they did not "provide other information on how [the Pension Funds] will resolve disagreements or specific, substantive information on how they will jointly manage the case." ECF No. 49 at 5. This is precisely what the Pension Funds have provided.

The Pension Funds' robust adequacy showing clearly distinguishes them from cases cited by the Kirios. In *Burns v. UP Fintech Holding Ltd.*, the Court found that two individual movants were "grouped together by lawyers in order to be appointed as lead plaintiffs based on their aggregate losses." 2024 WL 387261, at *4 (C.D. Cal. Jan. 30, 2024). In contrast, the Pension Funds have repeatedly demonstrated that they were not grouped together by lawyers but came together at their own

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR RECONSIDERATION
CASE NO. 2:24-cv-04566-CBM-PVC

direction to best serve the Class. ECF No. 45-2 ¶ 9. Further, because the Pension Funds each have losses larger than the Kirios, it is obvious that they did not move together to aggregate their losses. *Bruce v. Suntech Power Holdings Co.*, 2012 WL 5927985, at \*2 (N.D. Cal. Nov. 13, 2012) (appointing a group of investors where one member of the group had the largest financial interest of any movant individually). Similarly, in *Koffsmon v. Green Dot Corp.*, the court refused to aggregate the losses of a group of movants. 2022 WL 170636, at \*1 (C.D. Cal. Jan. 19, 2022). No aggregation is at issue here. In *In re Cloudera, Inc. Securities Litigation*, the court rejected a movant which provided only "cursory details" supporting a finding of adequacy. 2019 WL 6842021, at \*7 (N.D. Cal. Dec. 16, 2019). In contrast, as described above, the Pension Funds have provided a step-by-step account of how, since April 2024, its two members have overseen their counsel's investigation into the Action's allegations, how they independently decided to seek lead plaintiff appointment, how they decided to move collectively, and their involvement in the lead plaintiff process itself.[2] Based on these detailed submissions, the Pension Funds in no way resemble the rejected groups cited by the Kirios.

The Kirios also fail to distinguish case law provided by the Pension Funds. The Kirios argue that *Ohio Public Employees Retirement System v. Meta Platforms, Inc.*, 2022 WL 3571995 (N.D. Cal. July 26, 2022) is distinct from the current case

[2] Other cases cited by the Kirios are similarly distinguishable because in each case the rejected movants failed to provide information about group members and explain how they decided to join together to seek appoint. *See In re Origin Materials, Inc.*, 2023 WL 8698363, at \*2 (E.D. Cal. Dec. 15, 2023) (rejecting the motion of an individual and an investment bank); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) (rejecting groups movants that made only "conclusory and cursory" submissions); *Lako v. Loandepot, Inc.*, 2022 WL 1314463, at \*6 (C.D. Cal. May 2, 2022) (rejecting a movant group which "provided sparse information regarding the individual members of the group").

4

because "the declaration there was submitted initially with the motion, was more detailed, and explained that the group was formed through a public request made by the Ohio Attorney General and was not lawyer-driven." ECF No. 53 at 8. The Court has already determined that the Pension Funds' joint declarations should be considered in determining Lead Plaintiff appointment. ECF No. 49 at 5 n.4. Further, the two joint declarations provided by the Pension Funds were highly detailed and included plans for coordination and prosecutorial procedures. ECF Nos. 36-2 & 45-2. Finally, similar to the *Meta* case, here the Pension Funds formed their group based on the ***direction*** of relevant legal staff at each fund, including the Foreign Attorney (U.S.) of the Risk Management & Legal / Investment Legal Team of NPS (ECF No. 45-2 ¶ 2) and Indiana's General Counsel. *Id.* ¶ 3. Therefore, the Pension Funds have made a showing equal to the group that was appointed in the *Meta* case.

The *Meta* case is representative of the vast majority of Ninth Circuit law which allows groups of coordinated investors to serve as lead plaintiff. Even groups of unrelated individuals have been found adequate after submitting "a joint declaration attesting that each is knowledgeable about the litigation, that they are working together, and that they are committed to protecting the interests of the Class." *Suntech Power Holdings Co.*, 2012 WL 5927985, at *3. These findings align with the adequacy standard applied to groups of unrelated investors by courts across the country. For instance, in *Cohen v. Luckin Coffee Inc.*, the court appointed a group of two institutions that had "laid out plans for cooperation in the future that include communications with each other." 2020 WL 3127808, at *5 (S.D.N.Y. June 12, 2020). The adequacy showing of the Pension Funds obviously meets or exceeds the adequacy showing from these and other instances.

The Ninth Circuit has confirmed that unrelated groups of investors can be appointed lead plaintiff as long as they meet the *prima facie* adequacy standard. *Mersho*, 6 F.4th at 901-02. The overwhelming majority of cases across the country

5

reflect that holding by consistently appointing sophisticated institutional investors as lead plaintiff. The Pension Funds respectfully contend that if their motion fails to satisfy the *prima facie* adequacy standard in this case, then no group of sophisticated institutional investors could ever achieve PSLRA lead plaintiff status—a conclusion that stands at direct odds with clear Ninth Circuit precedent and black letter PSLRA lead plaintiff jurisprudence. Therefore, the Lead Plaintiff Order committed clear error by finding them inadequate.

**B.     The Lead Plaintiff Order Committed Clear Error by Applying Inconsistent Adequacy Standards**

In contrast to the robust showing of the Pension Funds described above, the Kirios have made ***no showing*** of their adequacy to serve the Class as Lead Plaintiff. Thus, it was clear error to find that the Kirios satisfied the *prima facie* adequacy standard while the Pension Funds did not. The Kirios repeatedly accuse the Pension Funds of being a "lawyer-driven" group. ECF No. 53 at 1 & 10. In contrast, they claim not to be lawyer-driven. *Id.* at 3. These contentions are in no way supported by the factual record and, in fact, disregard the filings before the Court.

By way of background, the point of the PSLRA's lead plaintiff selection process is to prevent securities litigation from being "'lawyer-driven'" and "initiated and controlled by plaintiff's counsel." *In re Versata, Inc., Sec. Litig.*, 2001 WL 34012374, at *1 (N.D. Cal. Aug. 20, 2001) (citation omitted). "The whole point of the reform was to install a lead plaintiff with substantive decisionmaking ability and authority." *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1024 (N.D. Cal. 1999); *see also Shapiro v. TG Therapeutics, Inc.*, 2022 WL 16555585, at *5 (S.D.N.Y. Oct. 31, 2022) (noting that courts must consider "such factors as the 'available resources and experience of the proposed lead plaintiff' . . . in order to ensure the plaintiff can 'act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was

6

delivered at a reasonable price'"). Therefore, in determining whether a lead plaintiff movant is lawyer-driven, the question is whether the movant or its counsel is in control. In comparing the submissions of the Pension Funds and the Kirios, it is clear that the Pension Funds control their counsel. The Kirios make no such showing.

The last time the Kirios were involved in these proceedings in any way was on July 9, 2024 when they signed their PSLRA-required certification. ECF No. 28-2. That is the extent of the Kirios' participation in the Action. The only further information provided about the Kirios is contained in their initial lead plaintiff brief, which indicates they "are a married couple who are 55 and 57 years old, respectively, and each has invested for over 20 years," and that they "have a flooring business together and live in California." ECF No. 29 at 3. Even that paltry information was not provided in a sworn statement of the Kirios, but in the brief signed by their local counsel. Thus far, the Kirios have passively stood by as pawns while their counsel attempt to assert control over this litigation. Do the Kirios even know they were appointed Lead Plaintiff? Were the Kirios aware they opposed the lead plaintiff motion filed by sophisticated institutional investors? Have the Kirios participated in any material way sufficient to demonstrate control over the litigation and monitor their counsel? It is impossible to answer those questions based on the current record.

The Kirios' complete absence thus far in the Action plainly fails to meet the relevant *prima facie* adequacy standard. Courts in the Ninth Circuit require a more robust showing to determine that individual movants are adequate to serve as lead plaintiff. In *Desilvio v. Lion Biotechnologies, Inc.*, the court received three motions from individuals moving for lead plaintiff appointment. No. 17-cv-02086-SI (N.D. Cal. July 7, 2017), ECF No. 35 at 1. Although each of these movants "filed the necessary certification," the court determined "the information provided there is skeletal." *Id.* The court required the movants to submit a declaration detailing basic

7

information including their occupations and how each individual "came to retain his/her respective lawyer(s)." *Id.* The Kirios have provided no declarations and have provided no information regarding how they came to retain their lawyers. Courts have repeatedly rejected such weak adequacy showings. *See TG Therapeutics, Inc.*, 2022 WL 16555585, at *5-6 (rejecting an individual movant who, based on his weak adequacy showing, "gave the Court grounds to doubt that he would actively manage the litigation in the manner envisioned by Congress" despite the fact that he "has over forty years of investment experience and . . . has experience in managing attorneys in real estate and other matters related to his business"). The Kirios have been completely silent for four months, throughout several rounds of contentious briefing. Based on this record, the only rational conclusion is that the Kirios are precisely the type of "'figurehead' plaintiffs who were unlikely to monitor their attorneys' activities," which the PSLRA sought to root out. *Mersho*, 6 F.4th at 898.

In contrast, the Pension Funds have time and again provided significant evidence of their active participation in the Action, their established prosecutorial procedures, and their oversight of their counsel's investigation into the allegations in the Action. *See* ECF Nos. 36-2 & 45-2 (joint declarations signed by the Pension Funds). The below chart compares the showings of each movant:

| Procedure | The Pension Funds | The Kirios |
|---|---|---|
| Established a dispute resolution mechanism | The Pension Funds "have a mechanism to resolve any disagreement regarding the prosecution of the Action." ECF No. 36-2 ¶10. | None established. |
| Designated professional staff to oversee the Action | ECF No. 45-2 ¶10-11 (describing staff of each of the Pension Funds overseeing Action). | None designated. |
| Demonstrated coordination to address Lead Plaintiff motion opposition | "Since NPS and Indiana filed their motion on July 30, 2024, we have continued to be actively involved in this litigation, receiving regular updates from counsel regarding the status of this case, including the results of counsel's proprietary investigation, which we | None demonstrated. |

8

| | | |
|---|---|---|
| | understand to include testimony from several former Rivian employees corroborating the alleged wrongdoing at the center of this case.  In addition, representatives of NPS and Indiana have continued to communicate by telephone and email as needed, particularly to address the specious questions raised by the Kirios in their opposition brief."  ECF No. 45-2 ¶ 11 | |
| Has overseen their counsel's investigation of the Action's allegations | "NPS and Indiana have received several privileged updates from counsel regarding its ongoing investigation into the Action." ECF No. 36-2 ¶ 4; *see also* ECF Nos. 45-2 ¶¶ 6, 7, 8, 11 & 36-2 ¶¶ 6, 9, 12 | No oversight described. |

The Pension Funds respectfully ask, which of these movants has made a more robust adequacy showing?  The answer is clear.  It cannot be the case that the Kirios satisfy the *prima facie* standard while the Pension Funds do not.  Therefore, the Lead Plaintiff Order committed clear error in applying inconsistent adequacy standards.

## C.      In the Alternative, NPS Should be Appointed Individually

The Kirios attempt to argue that the Court may not appoint NPS Lead Plaintiff Individually.  ECF No. 53 at 9-10.  This ignores courts' broad discretion in appointing the lead plaintiff that would best serve the class.  In appointing lead plaintiffs under the PSLRA, courts exercise a gatekeeping function to serve the best interests of the class. *See Sayce v. Forescout Techs., Inc.*, 2020 WL 6802469, at *6 (N.D. Cal. Nov. 19, 2020) ("'Congress envisioned that courts still would play an independent, gatekeeping role to implement the PSLRA.'"); *Smajlaj v. Brocade Commc'ns Sys. Inc.*, 2006 WL 7348107, at *2 (N.D. Cal. Jan. 12, 2006) ("The Court, in appointing a Lead Plaintiff, acts as the gatekeeper for absent class members.  In that role, the Court must ensure that this action will be litigated as effectively and efficiently as possible.").  Where a lead plaintiff group has been rejected, courts may apply this discretion to appoint an individual member of that group. *See, e.g. In re*

9

*Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997) (declining to appoint a group lead plaintiff but appointing the member of that group with the largest financial interest).

Here, if the Court continues to decline to appoint the Pension Funds collectively, the Court should exercise this discretion to appoint NPS individually. NPS has consistently made a robust showing of its adequacy and met all the PSLRA's requirements to be appointed individually. *See* ECF Nos. 24-26. If the Pension Funds are rejected as a group, appointing NPS is the only way for the Court to satisfy the PSLRA's requirement to appoint the movant with the largest financial interest that meets the *prima facie* requirements and follow Ninth Circuit law requiring the same. *See Mersho*, 6 F.4th at 901 n.3 (9th Cir. 2021) (finding an appointment "troubling because it resulted in the appointment of a lead plaintiff whose losses are less than half or one-third of what each of the Petitioners suffered individually," which the Ninth Circuit found to be "incongruous with the PSLRA's presumption that the investors with the largest stake have the greatest incentive to supervise the litigation closely"); *see also Meta*, 2022 WL 3571995, at *4 (refusing to "penalize" group member that alone had a larger loss than any competing movant "for its decision to join with [another sophisticated institution] to seek to lead this litigation").

**III.    CONCLUSION**

The Pension Funds respectfully request that this Court enter an Order granting their motion for reconsideration and appointing the Pension Funds as Lead Plaintiff in the Action, or, in the alternative, appointing NPS Lead Plaintiff individually.

DATED: November 26, 2024          Respectfully submitted,

                                  /s/ *Lucas E. Gilmore*
                                  Lucas E. Gilmore

10

HAGENS BERMAN SOBOL SHAPIRO LLP
Reed R. Kathrein (Bar. No. 139304)
reed@hbsslaw.com
Lucas E. Gilmore (Bar No. 250893)
lucasg@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001

HAGENS BERMAN SOBOL SHAPIRO LLP
Christopher R. Pitoun (Bar. No. 290235)
christopherp@hbsslaw.com
301 North Lake Avenue
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152

*Liaison Counsel for Proposed Lead Plaintiff*

LABATON KELLER SUCHAROW LLP
Eric J. Belfi (admitted *pro hac vice*)
ebelfi@labaton.com
Francis P. McConville (admitted *pro hac vice*)
fmcconville@labaton.com
Hui Chang (admitted *pro hac vice*)
hchang@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Proposed Lead Plaintiff and Proposed Lead Counsel for the Class*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 26, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered users via the e-mail addresses on the court's Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the court's Manual Notice List.

> /s/ *Lucas E. Gilmore*
> Lucas E. Gilmore
>
> HAGENS BERMAN SOBOL SHAPIRO LLP
> Lucas E. Gilmore (Bar No. 250893)
> lucasg@hbsslaw.com
> 301 North Lake Avenue
> Pasadena, CA 91101
> Telephone: (213) 330-7150
> Facsimile: (213) 330-7152

12