**THE BURKE LAW FIRM**
Timothy J. Burke (SBN #181866)
tim.burke@burke-law-firm.com
1001 Wilshire Boulevard, #2187
(310) 984-7199 (phone)
(310) 602-6589 (fax)

*Liaison Counsel for Lead Plaintiffs and
the Proposed Class*

[Additional Counsel on Signature Block]

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE and CLAIRE MCDONOUGH, <br><br> Defendants. | Case No. 2:24-cv-04566-CBM-JPR <br><br> **CLASS ACTION** <br><br> **LEAD PLAINTIFFS' OPPOSITION TO MOTION FOR STAY OF PROCEEDINGS** <br><br> Date: January 7, 2025 <br> Time: 10:00 a.m. <br> Courtroom: 8D <br> Judge: Hon. Consuelo B. Marshall |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT..................................................................................1

ARGUMENT ...........................................................................................................4

    A.    The Unrelated Group's Reconsideration Motion Is Radically Unlikely to Succeed on the Merits...................................................................................5

    B.    The Unrelated Group Has Not Shown That It Will Be Irreparably Injured By Denying the Stay Motion.........................................................................7

    C.    Lead Plaintiffs And The Proposed Class Have Been Harmed by the Stay Motion – And Will Be Further Harmed If It Is Granted ...................................8

    D.    The Public Interest Strongly Supports Denying the Stay Motion...................9

CONCLUSION ......................................................................................................10

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) ...............................................................................5

*Bazarganfard v. Club 360 LLC*,
No. 2:21-cv-02272-CBM-(PLAx), 2024 WL 3191226 (C.D. Cal. May 24, 2024) .......5

*Carroll v. Nakatani*,
342 F.3d 934 (9th Cir. 2003) ...............................................................................6

*Doe #1 v. Trump*,
957 F.3d 1057 (9th Cir. 2020) ..........................................................................4, 5

*Kinney v. Capstone Turbine Corp.*,
No. CV 15-8914 DMG (RAOx), 2016 WL 5341948 (C.D. Cal. Feb. 29, 2016) ..........6

*Kona Enters., Inc. v. Est. of Bishop*,
229 F.3d 877 (9th Cir. 2000) ...............................................................................5

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) ...............................................................................7

*Mi Familia Vota v. Fontes*,
111 F.4th 976 (9th Cir. 2024) ..............................................................................4

*Nken v. Holder*,
556 U.S. 418 (2009) .........................................................................................4, 5

*Weil v. Raisin City Elementary School District*,
No. 1:21-cv-00500-JLT-EPG, 2024 WL 3204266 (E.D. Cal. June 27, 2024) ..............7

*Rules*

Local Civil Rule 7-18 .......................................................................................2, 6

Court-appointed Lead Plaintiffs Kamil Kirio and Nada Badr-Kirio ("Lead Plaintiffs") respectfully submit this opposition to the Unrelated Group's Motion for Stay of Proceedings (the "Stay Motion") (ECF No. 55).[1]

### PRELIMINARY STATEMENT

The Stay Motion, like the Reconsideration Motion upon which it rests, is meritless and must be denied. On October 29, 2024, the Court entered its well-reasoned order granting the Kirios' lead plaintiff motion and denying the Unrelated Group's motion (the "Order") (ECF No. 49). In response, counsel for the Unrelated Group filed a frivolous Reconsideration Motion that fails to identify any evidence or controlling law that the Court ignored, and impermissibly raises new arguments that cannot even be considered on reconsideration. *See* Recons. Opp'n 4-9. They also filed a frivolous Stay Motion, which likewise must be denied because the Reconsideration Motion has little to no likelihood of success; the Unrelated Group will not be irreparably injured by a denial of the Stay Motion; the Stay Motion has harmed, and will continue to harm, Lead Plaintiffs and the proposed Class; and public policy militates in favor of denying the Stay Motion. Rather than accept defeat graciously, counsel for the Unrelated Group caused the Lead Plaintiffs to needlessly exhaust resources fighting off two groundless motions, while simultaneously conducting their investigation and drafting the Amended Complaint under a very tight schedule. Lead Plaintiffs rose to this challenge, while the Unrelated Group's counsel has only proven that they are willing to harm the proposed Class (and even their own clients) to feed their own ambitions – enough is enough. Their Stay Motion should be denied.

---

[1] National Pension Service ("NPS") and the Indiana Public Retirement System ("Indiana") are referred to as the "The Unrelated Group". The Unrelated Group's motion for reconsideration is referred to as the "Recons. Mot.". ECF No. 51-1. Lead Plaintiffs' opposition to the Recons. Mot. is referred to as the "Recons. Opp'n". *See* ECF No. 53. The Stay Motion is cited as "Br. _". *See* ECF No. 55-1.

1

Courts consider four factors when deciding a motion for a stay based on a motion for reconsideration: (1) the likelihood of success on reconsideration; (2) irreparable injury to the movant; (3) injury to other parties; and (4) public policy. The first two factors are the most important, and the second factor alone is outcome-determinative if it is not met. Here, all four factors conclusively demonstrate that the Court should deny the Stay Motion.

First, the Court should deny the Stay Motion because the Reconsideration Motion has little to no likelihood of success. The Reconsideration Motion abysmally failed to demonstrate that this Court committed "clear error" or "failed to consider material facts". *See* Recons. Opp'n 4-9. It is indisputable that the Court examined the Unrelated Group's motion for lead plaintiff and its belated declarations. After thoroughly analyzing these materials, the Court found the declarations boilerplate and lacking, and that the Unrelated Group failed to satisfy its Rule 23 requirements. *See* Order 4-6. The Unrelated Group now urges the Court to re-think its conclusions based on the very same declarations, but it is black letter law – and explicitly stated in Local Rule 7-18 – that this is not a valid basis for reconsideration. *See* Recons. Opp'n 4-5, 7, 8. Similarly, the Unrelated Group argues that this Court committed clear error, but it raises no controlling law that this Court ignored. In sum, the Reconsideration Motion is frivolous and stands a very low, if any, chance of success.

Second, the Unrelated Group has not identified any "irreparable injury" it will suffer if the Stay Motion is denied. The Unrelated Group's only alleged "injury" is that it will not be able to litigate the action as the (self-proclaimed) "appropriate, statutorily-required Lead Plaintiff". Br. 1. But the Court adjudicated the lead plaintiff motion and properly appointed the Kirios as the "appropriate, statutorily-required Lead Plaintiff". *Id*. The Unrelated Group's opinion that it should have been appointed instead is not an injury. Moreover, the Unrelated Group's opinion that the Kirios are "unknown individuals" is meaningless (Br. 1, 6). The Kirios provided more than sufficient details about themselves,

and this Court vetted them and found them adequate under Rule 23. Qualified individuals like the Kirios are routinely appointed to serve as lead plaintiffs in securities litigations over institutions where those institutions, like here, failed to satisfy their Rule 23 requirements.

Relatedly, the Unrelated Group's claim that it will be injured if it cannot utilize its supposed investigation is a non-starter. The PSLRA requires courts to appoint the movant with the largest financial interest that also satisfies Rule 23, and, based on those criteria, the Court appointed the Kirios. Purported investigations cannot be weaponized to reopen the lead plaintiff process after a movant loses. Moreover, to the extent the group's purported investigation could potentially add value, any claim of injury relating to it is entirely self-inflicted. Nothing stopped the group from sharing its purported investigation with the Lead Plaintiffs for the benefit of the proposed Class – other than the selfish motivations of the Unrelated Group's counsel to extract a shadow *de facto* leadership role here for themselves (which they tried to do behind the Court's back). Thus, the Unrelated Group fails to allege any injury here, let alone an irreparable one.

The Unrelated Group's failure to satisfy the first two prongs applicable to stay motions is dispositive, and the Court can stop the analysis here. Nevertheless, the third and fourth prongs also strongly militate in favor of denying the Stay Motion.

Under the third prong, the Stay Motion should be denied because Lead Plaintiffs and the proposed Class have been injured, and will continue to be injured by a stay. The Unrelated Group's conduct has already injured Lead Plaintiffs and the proposed Class as Lead Plaintiffs had to conduct their investigation and draft the Amended Complaint under a short timeframe, while simultaneously wasting precious resources fending off two groundless motions filed by the group. Lead Plaintiffs rose to the challenge but should not have had the distraction of this sideshow. Moreover, since Lead Plaintiffs already filed their Amended Complaint on December 10, 2024, staying the case now will further harm them and the proposed Class by unduly delaying the case and forcing them to

3

continue to distract resources away from the real objective – recovering shareholder losses from Defendants.

Finally, public policy further supports denying a stay here. Public policy is a catch-all meant to further the spirit of the law. The law here, the PSLRA, was explicitly meant to halt lawyer-driven litigation. The PSLRA did not give institutional investors a trump card to win every lead plaintiff motion they file, including when, as here, they are a lawyer-driven group and fail to satisfy their Rule 23 requirements, which is what the Unrelated Group essentially argues. Indeed, this Court noted that the Unrelated Group smacked of a lawyer-driven concoction. *See* Order at 6 n.5 ("waiving that [serving as lead plaintiff in five cases within three years] restriction here would not promote the objectives of the PSLRA *to prevent lawyer-driven litigation*"). Adopting the group's arguments would violate the spirit of the PSLRA and ignore the Rule 23 requirements when an institutional investor is a movant. That is not what Congress intended. It would also undermine public policy to incentivize lead plaintiff movants who lose, like the Unrelated Group, to move to reconsider in every case and argue they should have won because of their purported investigations, which do not factor into the PSLRA's lead plaintiff process.

For these reasons, the Court should deny the Stay Motion in its entirety.

## ARGUMENT

All four factors relevant to the Court's stay analysis weigh heavily in favor of denying a stay here. When a stay is requested pending a motion for reconsideration, courts in the Ninth Circuit consider "(1) whether the stay applicant has made a strong showing that [they are] likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024). Significantly, "[t]he first two factors are the most critical" (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)), *see also*

4

*Doe #1 v. Trump*, 957 F.3d 1057, 1058 (9th Cir. 2020), and the court reaches the third and fourth factors only after an applicant satisfies the first two factors. *Nken*, 556 U.S. at 435; *see also Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020). If the moving party does not make this threshold showing, then a stay may not issue regardless of proof regarding the other stay factors. *Doe*, 957 F.3d at 1058. Here, there is no doubt that the Court should deny the Stay Motion as the Unrelated Group has an exceedingly low chance of winning the Reconsideration Motion and will not suffer any irreparable injury here. This should end the Court's inquiry. Nevertheless, the third and fourth factors also strongly militate in favor of denying the Stay Motion.

### A. The Unrelated Group's Reconsideration Motion Is Radically Unlikely to Succeed on the Merits

The Stay Motion is doomed because the Unrelated Group's Reconsideration Motion is frivolous and dead on arrival. Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). As argued at length in the Reconsideration Opposition, the Unrelated Group failed to identify any evidence that this Court failed to consider in its Order. Indeed, the Court cited in the Order the very evidence the Unrelated Group claims was overlooked – the group's two boilerplate and insufficient declarations. *See* Order 5-6. And, as this Court recently noted when denying another motion for reconsideration, "the Court is not required to reference all evidence submitted by the parties in an order ruling on a motion." *Bazarganfard v. Club 360 LLC*, No. 2:21-cv-02272-CBM-(PLAx), 2024 WL 3191226, at *2, 4 (C.D. Cal. May 24, 2024).

In its Reconsideration Motion, and now again in its Stay Motion, the Unrelated Group has merely expressed disagreement with the Court's Order and regurgitated the same facts and arguments that already failed in its lead plaintiff motion. Recons. Opp'n 1, 4. The group also failed to identify any "clear error" in the Court's application of the law. *See id*. 4-9. Arguing that the Court should have decided things differently does not

come close to presenting an "extraordinary" circumstance warranting reconsideration. To the contrary, as Local Civil Rule 7-18 makes abundantly clear, the Unrelated Group's attempts to re-hash its earlier arguments are forbidden. *See id.* 3-4.

The Unrelated Group also impermissibly raised an entirely new argument for the first time in the Reconsideration Motion – that the group should be allowed to throw Indiana overboard and proceed with NPS alone if that will get its counsel a leadership role. *Id.* 9-10. This argument likewise stands no real chance of success because reconsideration is not a vehicle "to raise arguments or present evidence for the first time." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). The Unrelated Group never made this argument in the lead plaintiff briefing despite Lead Plaintiffs repeatedly noting that the Unrelated Group did not move for NPS or Indiana to be, in the alternative, appointed alone. *See* Recons. Opp'n 10-11. The fact the group now makes this argument shows its true colors. The Reconsideration and Stay Motions are not about Indiana and NPS, they are about their counsel trying to become lead counsel by any means necessary.

The Reconsideration Motion is equally unlikely to succeed on the Unrelated Group's absurd claim that the Court held the Unrelated Group and the Kirios to different standards. To further the purpose of the PSLRA, which is to avoid lawyer-driven litigation, it is well-settled that courts more closely scrutinize groups of unrelated movants cobbled together by counsel than they do related group movants that do not raise any of the same concerns. *See* Recons. Opp'n 5-7. Thus, this Court did not commit "clear error" by demanding more from an Unrelated Group joined by counsel with no track record of working together cohesively than it did from a married couple that is essentially considered one person. *See Kinney v. Capstone Turbine Corp.*, No. CV158914DMGRAOX, 2016 WL 5341948, at *4 (C.D. Cal. Feb. 29, 2016) (appointing married couple as lead plaintiffs over unrelated group that "fail[ed] to sufficiently justify its composition and structure" and stating that "[i]n contrast to the artificial cohesion of the [unrelated group], the Kays represent the quintessential cohesive unit fit to qualify

together as an adequate lead plaintiff – they are a married couple"). In the end, the Kirios satisfied their Rule 23 burden and the Unrelated Group did not. The group's reliance on *Weil v. Raisin City Elementary School District*, No. 1:21-cv-00500-JLT-EPG, 2024 WL 3204266, at *1-2 (E.D. Cal. June 27, 2024) on this point falls flat. The *Weil* court granted a sliver of a reconsideration motion where a magistrate judge's finding on one of many discovery requests contained a "material inconsistency". *Id.* There was no "material inconsistency" in the Court's examination of the movants' adequacy here. *See* Recons. Opp'n 7-8.

In sum, the Unrelated Group's likelihood of success on its Reconsideration Motion is extremely low.

**B.**   **The Unrelated Group Has Not Shown That It Will Be Irreparably Injured By Denying the Stay Motion**

The Stay Motion likewise should be denied because the Unrelated Group has failed to show "that an irreparable injury is the more probable or likely outcome" if the stay is denied. *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011). The Unrelated Group falls far short of this high burden as it cannot identify any injury here at all, let alone an irreparable one. The Unrelated Group merely claims that it will suffer irreparable harm if the case is "prosecuted by unknown individuals instead of the appropriate, statutorily-required Lead Plaintiff." Br. 1. But the Kirios provided more than sufficient details about themselves, and the Court found that they satisfied their Rule 23 requirements. Order 7-8. Thus, calling them "unknown" is a meaningless insult and nothing more. Moreover, the Court also properly found that the Kirios – and not the Unrelated Group – are the "appropriate, statutorily-required Lead Plaintiff". *Id. See* Order 8. Qualified individuals like the Kirios are routinely appointed to serve as lead plaintiffs in securities litigations over institutions where those institutions, like here, fail to satisfy their Rule 23 requirements. In sum, the Court's findings here do not constitute "irreparable injury" just because counsel for the Unrelated Group wishes they were decided differently.

Relatedly, the Unrelated Group claims it will suffer injury if it cannot utilize its purported investigation. Br. 5. But the PSLRA requires courts to appoint the movant with the largest financial interest that also satisfies Rule 23, and, based on those defined criteria, the Court appointed the Kirios. Purported investigations cannot be weaponized to reopen the lead plaintiff process after a movant loses. This would only incentivize counsel for losing movants to endlessly try and cannibalize court-appointed lead plaintiffs to the detriment of the classes the lead plaintiffs seek to represent.

Furthermore, any claimed injury concerning the Unrelated Group's purported investigation is disingenuous at best and purely self-inflicted. Nothing stopped counsel for the Unrelated Group from providing the results of its supposed investigation to Lead Plaintiffs if they truly believed it could add value. The reason it did not do so – despite claiming now to be so concerned about injury to the proposed Class – is that the group's counsel insisted that it would only share the details of its investigation in exchange for a shadow *de facto* leadership role here behind the Court's back. Lead Counsel did not accede to this demand. Regardless, an investigation plays no role in determining the lead plaintiff under the PSLRA, and thus has no bearing on the Reconsideration Motion or the Stay Motion.

### C.    Lead Plaintiffs And The Proposed Class Have Been Harmed by the Stay Motion – And Will Be Further Harmed If It Is Granted

Lead Plaintiffs and the proposed Class have already been harmed by the Stay Motion. Instead of filing the Stay Motion with, or soon after, the Reconsideration Motion on November 12, 2024, the Unrelated Group waited over two weeks and filed it on November 29, 2024, setting January 7, 2025 as the Motion hearing date. Thus, the group's claim that "the stay would amount to a short delay before [Lead Plaintiffs] proceed with filing an amended complaint" (Br. 6) was false when made. And the Unrelated Group knew this was false because the scheduling order for the motion to dismiss briefing, which contained the December 10, 2024 amended complaint due date, was entered on

November 12, 2024 (*see* ECF No. 52), well before the Unrelated Group filed the Stay Motion. Thus, counsel for the Unrelated Group selfishly forced the Lead Plaintiffs to conduct their investigation and draft the Amended Complaint under the tight deadlines approved by the Court, while simultaneously fending off two groundless motions. Lead Plaintiffs rose to the challenge, but the side-show created by the Unrelated Group resulted in a needless distraction of resources.

Lead Plaintiffs and the proposed Class will continue to be harmed if the stay is granted because their Amended Complaint is now on file and this case will be unduly delayed if the Stay Motion is granted. Furthermore, the Unrelated Group will continue to distract precious resources away from the real objective here, which is to recover the losses suffered on behalf of the proposed Class from Defendants.

**D.    The Public Interest Strongly Supports Denying the Stay Motion**

Under the PSLRA, Congress believed that institutional investors would often serve as lead plaintiffs because they often have large financial interests, but Congress put the Rule 23 guardrails in the PSLRA for a reason, and neither the PSLRA nor the caselaw interpreting it state that Rule 23 does not apply to institutions. The group spills a lot of ink on this, essentially arguing that public policy supports the Stay Motion because institutional investors should win when they move for lead plaintiff, regardless of whether they satisfy Congress' mandate that lead plaintiffs satisfy Rule 23's typicality and adequacy requirements, but it is all irrelevant. The group ignores what governs – the law.

Thus, public policy supports denying the Stay Motion because appointing unrelated institutional investors as lead plaintiff poses the same dangers as appointing unrelated individuals as lead plaintiffs; namely, as the Unrelated Group's declarations show, such groups can be lawyer-driven amalgamations and inadequate to represent a class just like unrelated groups of individuals. Congress passed the PSLRA for the express purpose of stopping such lawyer-driven litigation. In sum, ignoring or overriding

Congressional laws like the PSLRA would not serve the public interest, it would subvert it.

## CONCLUSION

For all the above reasons, this Court should deny the Stay Motion in its entirety.

Dated: December 17, 2025          Respectfully submitted,


THE BURKE LAW FIRM


 /s/ Timothy J. Burke
Timothy J. Burke (SBN #181866)
1001 Wilshire Drive, #2187
Los Angeles, CA 90017
(302) 984-7199 (phone)
(302) 602-6589 (fax)
tim.burke@burke-law-firm.com

*Liaison Counsel for Lead Plaintiffs
and the Proposed Class*


BERNSTEIN LIEBHARD LLP
Laurence J. Hasson
Joseph R. Seidman, Jr.
Jeffrey McEachern
10 East 40th Street
New York, NY  10016
(212) 779-1414 (phone)
(212) 779-3218 (fax)
lhasson@bernlieb.com
seidman@bernlieb.com
jmceachern@bernlieb.com

*Lead Counsel for Lead Plaintiffs and
the Proposed Class*

Case No. 2:24-cv-04566-CBM-JPR
Lead Plaintiffs' Opposition to Motion For Stay of Proceedings