JORDAN ETH (CA SBN 121617)
JEth@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
HANNA M. LAURITZEN (CA SBN 339895)
HLauritzen@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

*Attorneys for Defendants*
RIVIAN AUTOMOTIVE, INC., ROBERT J.
SCARINGE, and CLAIRE MCDONOUGH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, and CLAIRE MCDONOUGH,<br><br>Defendants. | Case No. 2:24-cv-04566-CBM-PVC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS LEAD PLAINTIFFS' AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: February 4, 2025<br>Time: 10:00 a.m.<br>Courtroom: 8D<br>Judge: Hon. Consuelo B. Marshall<br><br>Action Filed: May 31, 2024<br>Trial Date: None set |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on February 4, 2025, at 10:00 a.m. at the United States District Court for the Central District of California, located at the First Street Courthouse, 350 W. 1st Street, Courtroom 8D, 8th Floor, Los Angeles, California 90012, Defendants Rivian Automotive, Inc. ("Rivian" or the "Company"), Robert J. Scaringe, and Claire McDonough (the "Individual Defendants," and together with Rivian, "Defendants") will and hereby do move pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), as well as the Private Securities Litigation Reform Act of 1995 ("Reform Act"), to dismiss Lead Plaintiffs' Amended Complaint (the "Complaint") filed on December 10, 2024 (Dkt. Nos. 57, 58).  This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, Defendants' Request for Consideration of Documents Incorporated Into Complaint and for Judicial Notice, the Declaration of David J. Wiener ("Wiener Decl.") and exhibits attached thereto ("Ex. _"), and such other argument and materials as may be presented before this Motion is taken under submission.

Defendants' counsel met and conferred with Plaintiffs' counsel regarding this motion in accordance with Local Rule 7-3 on December 23, 2024. The parties were unable to reach agreement to resolve this motion.

Dated: January 7, 2025

MORRISON & FOERSTER LLP

By: */s/ Jordan Eth*
Jordan Eth

*Attorneys for Defendants*
RIVIAN AUTOMOTIVE, INC.,
ROBERT J. SCARINGE, and
CLAIRE MCDONOUGH

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................2

    A.    The Company and Its Business.................................................2
    B.    Rivian's Production Growth Throughout the Class Period..................3
    C.    Plaintiffs' Complaint...............................................................4

LEGAL STANDARD ..........................................................................................5

ARGUMENT.......................................................................................................6

I.    PLAINTIFFS' SECTION 10(b) CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT.........................................................6

    A.    Plaintiffs do not plead with particularity that any challenged statement was materially false or misleading when made....................6

        1.    Plaintiffs lack any contemporaneous facts showing falsity. .......7

        2.    Plaintiffs fail to plead falsity with respect to the opinion statements. ................................................................11

        3.    Plaintiffs' attacks on Rivian's risk factor disclosures fail.........12

    B.    Most of the statements are also protected by the Reform Act's Safe Harbor and the bespeaks-caution doctrine....................................13

    C.    Many of the statements are also non-actionable statements of corporate optimism. ...............................................................17

II.    PLAINTIFFS' SECTION 10(b) CLAIM SHOULD ALSO BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER.................................................................18

    A.    The resignations do not support any inference of scienter. ...............19

    B.    Rivian's bond offerings do not support any inference of scienter.......19

    C.    The compensation allegations do not support any inference of scienter. ................................................................20

    D.    Plaintiffs do not offer a cogent and compelling theory of fraud..........21

III.    PLAINTIFFS' SECTION 20(a) CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT PLED A PREDICATE VIOLATION OF SECTION 10(b). ...............................................22

CONCLUSION..................................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Arrowhead Rsch. Corp. Sec. Litig.*,
No. 2:14-CV-07890-CBM-ASx, 2016 WL 6562066 (C.D. Cal. Mar. 29, 2016) ........................................................................18-19, 20

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) .......................................... 10, 11, 12

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ................................... 8

*In re Cloudera, Inc.*,
121 F.4th 1180 (9th Cir. 2024) ........................................... 5-7

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010) ......................................... 14, 15

*In re Eargo, Inc. Sec. Litig.*,
656 F. Supp. 3d 928 (N.D. Cal. 2023) ................................... 12

*Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
353 F.3d 1125 (9th Cir. 2004) ............................................ 14

*Espy v. J2 Global, Inc.*,
99 F.4th 527 (9th Cir. 2024) ............................................... 5

*Farhar v. Ontrak, Inc.*,
714 F. Supp. 3d 1198 (C.D. Cal. 2024) .......................... 15, 17, 18

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*,
554 F. Supp. 2d 1083 (C.D. Cal. 2008) .................................. 17

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002) ............................................ 20

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
No. CV 17-1479 PA, 2017 WL 5635424 (C.D. Cal. Aug. 20, 2017) ............... 19

*McGovney v. Aerohive Networks, Inc.*,
    367 F. Supp. 3d 1038 (N.D. Cal. 2019)................................................................ 10

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ..................................................................... 6, 18

*Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension
    Fund*,
    575 U.S. 175 (2015) ................................................................................ 11-12

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014) ............................................................................ 22

*Paddock v. Dreamworks Animation SKG, Inc.*,
    No. CV 14-06053 SJO (Ex), 2015 WL 12711653
    (C.D. Cal. Apr. 1, 2015) .................................................................................. 20

*In re Pivotal Sec. Litig.*,
    19-cv-03589-CRB, 2020 WL 4193384 (N.D. Cal. July 21, 2020) ................... 12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ................................................................. 15, 17-18

*Reed v. Amira Nature Foods Ltd.*,
    No. CV 15–0957 FMO, 2016 WL 6571281
    (C.D. Cal. July 18, 2016) ................................................................................ 10

*Ret. Sys. v. Sterling Fin. Corp.*,
    47 F. Supp. 3d 1205 (E.D. Wash. 2014) ........................................................... 10

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ...................................................................... 20-22

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) .................................................................... 6, 8, 10

*In re Sorrento Therapeutics, Inc. Sec. Litig.*,
    97 F.4th 634 (9th Cir. 2024) ......................................................................... 6, 19

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ........................................................................... 14

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) ............................................................................... 8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ................................................................. 6, 18, 19

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ........................................................ 7-8, 18

*Waterford Twp. Police v. Mattel, Inc.*,
   321 F. Supp. 3d 1133 (C.D. Cal. 2018) ................................................ 17, 18

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018) .......................................................... 20, 21

*Wochos v. Tesla*,
   985 F.3d 1180 (9th Cir. 2021) .......................................................... *passim*

*Wyatt v. Mattel, Inc.*,
   No. CV-19-1646-CBM-MAA(x), 2020 WL 364324
   (C.D. Cal. Jan. 21, 2020) ...................................................... 10, 15-16, 18

*Xiaojiao Lu v. Align Tech., Inc.*,
   417 F. Supp. 3d 1266 (N.D. Cal. 2019) ................................................... 8

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ......................................................... 5, 19, 20

**Statutes and Other Authorities**

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*:
   § 10, 15 U.S.C. § 78j ................................................................. *passim*
   § 20, 15 U.S.C. § 78t .................................................................. 4, 22
   § 21E, 15 U.S.C. § 78u-5 .............................................................. 14, 15

Fed. R. Civ. P. 9 .................................................................. 1, 5[1]

---

[1] Unless otherwise noted, all emphasis is added and all internal citations are omitted.

## INTRODUCTION

On August 11, 2022 (the start of the Class Period), Rivian announced that it expected to achieve positive gross margins for the first time by the end of 2024. According to Plaintiffs, Rivian and the individual defendants—Rivian's CEO Robert J. Scaringe and CFO Claire McDonough—knew all along that Rivian lacked the customer demand to support this goal, and they misrepresented throughout the Class Period that the Company was "on track" to achieve it.

Plaintiffs' claims fail on multiple grounds. *First*, the Complaint lacks any factual allegations—much less the particularized allegations required to meet the "exacting" requirements of the Reform Act and Rule 9(b)—to support Plaintiffs' allegations of falsity and scienter with respect to any challenged statement. There are no confidential witnesses. No descriptions of internal reports, meetings, or metrics contradicting the challenged statements. No allegations of insider trading. All that Plaintiffs offer in support of their conclusory allegations is that Rivian ultimately issued 2024 production guidance at the end of the Class Period that fell short of the market's expectations. So what? There are no allegations that Defendants knew any information contradicting their statements at the time they were made, and nothing about Rivian's 2024 production guidance is inconsistent with the earlier challenged statements. *Second*, Plaintiffs' core theory is barred by on-point Ninth Circuit authority applying the Reform Act's Safe Harbor for forward-looking statements. *See Wochos v. Tesla*, 985 F.3d 1180 (9th Cir. 2021). The Safe Harbor is a separate and independent ground for dismissal with respect to most of the challenged statements. *Third*, many of the challenged statements are statements of corporate optimism that are substantively identical to statements repeatedly found to be not actionable by courts within the Ninth Circuit—a further ground for dismissal.

What's more, as Plaintiffs concede, the production guidance Rivian provided during the Class Period proved to be *conservative*. The Company raised its 2023

production guidance twice during the Class Period, and ultimately announced at the end of the Class Period that it had exceeded both its original and updated guidance. The Complaint should be dismissed.

## BACKGROUND

### A.    The Company and Its Business

Rivian is an electric vehicle ("EV") company based in Irvine, California. (¶ 23.)  Rivian designs, develops, and manufactures EVs and sells them directly to consumer and commercial customers.  (*Id*.)  Rivian also offers financing, insurance, software, vehicle charging, and vehicle service.  (*Id.*)  Rivian manufactures its vehicles at a plant in Normal, Illinois (the "Normal Facility").  (¶ 28.)  The Individual Defendants are Rivian's CEO Robert J. Scaringe and its CFO Claire McDonough.  (¶¶ 24-25.)

Rivian began accepting preorders for its first EVs in 2018.  (¶ 31.) Customers placing a preorder were required to deposit $1,000.  (*Id.*)  Before and during the Class Period, Rivian disclosed in its SEC filings and other investor communications that customer preorders were "cancellable and fully refundable." (Ex. 1 at 17; *see also* Ex. 2 at 37.)  The Company warned that "[b]ecause all of our preorders are cancellable, it is possible that a significant number of customers who submitted preorders for our vehicles may not purchase vehicles."  (*Id.*)  At the start of the Class Period, Rivian reported approximately 98,000 customer preorders in its "backlog."  (¶ 42.)

Rivian became a publicly traded company in November 2021, two months after producing its first EVs for sale.  (¶¶ 34, 36.)  In its first years as a public company, Rivian continued to invest heavily in increasing production at the Normal Facility, which resulted in the Company experiencing operating losses and negative gross margins before and during the Class Period.

On August 11, 2022, Rivian announced that it expected to achieve positive gross margins for the first time by the end of 2024.  (¶¶ 3, 44.)  CFO McDonough

identified three key factors to Rivian's projected path to profitability: (1) increasing production; (2) implementing new technologies to reduce costs; and (3) increasing the average selling price of its EVs.  (Ex. 3 at 7-8; ¶ 44.)

### B.    Rivian's Production Growth Throughout the Class Period

Rivian's vehicle production grew throughout the Class Period.  On February 28, 2023, Rivian announced that it had produced 24,337 vehicles in 2022, far surpassing the 1,015 vehicles produced in 2021.  (¶¶ 37, 62; Ex. 4 at 3.)  Rivian also issued 2023 production guidance that projected the Company would produce 50,000 vehicles in 2023.  (¶ 60.)  That production guidance was below analyst estimates, and Rivian's stock price declined from $19.30 to $15.76 per share the next day.  (¶¶ 60-61.)  Later in 2023, Rivian increased its 2023 production guidance to 52,000 and then to 54,000.  (¶ 9.)

While the Company was rapidly ramping up its production capacity, Rivian repeatedly warned investors about the risks it faced.  Rivian warned that it had "a history of losses and expect[ed] to incur significant expenses and continuing losses for the foreseeable future" and that its "limited operating history makes it difficult for us to evaluate our future business prospects."  (Ex. 2 at 2; Ex. 5 at 2; Ex. 1 at 12-13; Ex. 6 at 2; Ex. 7 at 2; Ex. 8 at 2.)  The Company further warned that its "ability to develop and manufacture vehicles of sufficient quality and appeal to customers on schedule and on a large scale is unproven" and that it had "experienced, and may in the future experience, significant delays in the manufacture and delivery of our vehicles."  (*See, e.g.*, Ex. 1 at 2.)

Rivian also repeatedly reiterated that it "intend[ed] to continue making investments to drive growth," which would cause "additional losses [and] could delay [the Company's] ability to achieve profitability and positive operating cash flow."  (Ex. 2 at 16; Ex. 5 at 17; Ex. 1 at 53; Ex. 6 at 18; Ex. 7 at 18; Ex. 8 at 18.)  Rivian further warned that it anticipated these future investments "will require significant external debt and/or equity financing."  (*Id.*)

On February 21, 2024, the end of the Class Period, Rivian announced Q4 2023 and full-year 2023 results. The Company reported that it had exceeded its original 2023 production guidance by over seven thousand vehicles, producing 57,232 vehicles. (Ex. 9 at 5.) Rivian also announced that it had improved gross profit per vehicle by approximately $81,000 as compared to Q4 2022. (*Id.* at 12.) On the same day, the Company announced flat production guidance for 2024, projecting that it would produce 57,000 vehicles that year, which was below analyst expectations. (¶ 120.) That guidance reflected Rivian's plans to temporarily shut down manufacturing lines at the Normal Facility in Q2 2024 to implement new technology. (Ex. 9 at 6, 13.) The Company also projected that it would achieve positive gross margins in Q4 2024. (*Id.* at 6.) After these announcements, the Company's stock price declined from $15.39 to $11.45 per share. (¶ 15.)

### C.    Plaintiffs' Complaint

On May 31, 2024, this litigation was filed, purportedly on behalf of a class of persons who purchased Rivian stock between August 11, 2022, and February 21, 2024 (the "Class Period"). The operative Complaint was filed on December 10, 2024. Plaintiffs assert two Exchange Act claims: a fraud claim under Section 10(b) against all Defendants and a control-person claim under Section 20(a) against the Individual Defendants. (¶¶ 260-273.)

Plaintiffs challenge thirty-two statements made during the Class Period.[2] The statements fall into three categories: (1) statements regarding Rivian's projections that it would achieve positive gross margins by the end of 2024; (2) statements discussing production and customer demand; and (3) risk-factor disclosures made in Rivian's quarterly and annual SEC filings regarding the Company's ability to maintain and estimate demand and cost improvements.

Plaintiffs allege all of these statements were misleading for the same reasons:

---

[2] The attached Appendix contains a chart of the challenged statements identified in the Complaint and lists the reasons why each statement is non-actionable in addition to not being false or misleading.

(1) Defendants lacked a reasonable basis to assume that "there was sufficient demand to warrant increased production" or that "produced units would be sold at a profit" as required to achieve gross-margin profitability in 2024; (2) preorder backlog was not a "reliable" indicator of demand because preorders were fully cancellable; (3) Rivian's preorder backlog included a large number of pre-March 1, 2022 preorders, which Rivian had committed to fulfilling at lower prices that would "undermine" profitability; (4) macroeconomic factors, including rising inflation and interest rates, were adversely affecting demand; and (5) Rivian was "experiencing supply chain [and] production issues" that presented a "challenge for ramping production and achieving gross margin profits by 2024." (*See, e.g.*, ¶¶ 5, 54, 141, 143, 163.)

The Complaint relies entirely on public sources to support its allegations. There are no allegations sourced from current or former Rivian employees or confidential witnesses, and there are no references to the contents of internal reports, metrics, or meetings.

## LEGAL STANDARD

To state a claim under Section 10(b), Plaintiffs must plead "(1) a material misrepresentation or omission by the defendant ('falsity') [and] (2) scienter." *Espy v. J2 Global, Inc.*, 99 F.4th 527, 535 (9th Cir. 2024). Plaintiffs must also meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the even "more exacting pleading requirements" of the Reform Act, which require that the complaint "plead with particularity both falsity and scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990-91 (9th Cir. 2009). The complaint must "specify" each "statement alleged to have been misleading" and "what is false or misleading about the purportedly fraudulent statement, and why it is false." *In re Cloudera, Inc.*, 121 F.4th 1180, 1187 (9th Cir. 2024); *see also Tesla*, 985 F.3d at 1188. A plaintiff "cannot rely on hindsight; rather, it must explain why the statements were false or misleading at the time they were made." *Cloudera*, 121

F.4th at 1187.  Providing a "litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false," is insufficient.  *Id.* (quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008)).

To plead scienter, a plaintiff must allege particularized facts "giving rise to a strong inference that the defendant acted with the required state of mind"—an "intent to deceive, manipulate, or defraud."  *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 639-40 (9th Cir. 2024).  The inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007)).

As discussed below, the Complaint falls far short of meeting these exacting standards.

## ARGUMENT

### I.    PLAINTIFFS' SECTION 10(b) CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT.

The Complaint fails to allege the essential element of falsity for any challenged statement.  As discussed below, (1) there are no particularized allegations showing that any challenged statement was false or misleading when made; (2) most of the statements are also forward-looking statements protected by the Reform Act's Safe Harbor and the bespeaks-caution doctrine; and (3) many of the statements are also non-actionable statements of corporate optimism.

#### A.    Plaintiffs do not plead with particularity that any challenged statement was materially false or misleading when made.

All of the challenged statements fail because Plaintiffs have not met their fundamental burden to plead with particularity "contemporaneous statements or conditions" showing the "false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).  As discussed below in

§ I.A.1, because Plaintiffs have not alleged particularized facts showing that the challenged statements "directly contradict[ed] what the defendant knew at that time," the Section 10(b) claim should be dismissed. *Cloudera*, 121 F.4th at 1186. Additionally, as discussed in §§ I.A.2-3, Plaintiffs also fail to meet the pleading standards applied by courts to statements of opinion and risk factor disclosures.

### 1.    Plaintiffs lack any contemporaneous facts showing falsity.

Plaintiffs have not alleged with particularity any contemporaneous undisclosed facts, let alone any facts contradicting Defendants' statements regarding customer demand and Rivian's projected "roadmap" to positive gross margins.  There are, for example, no allegations attributed to confidential witnesses or allegations of the contents of internal reports, metrics, or statements showing that Rivian lacked "sufficient demand to increase production" (¶ 141(a)) during the Class Period; that its production ramp would fail; or that the Company would not achieve its projected positive gross margin goal by the end of 2024.  To the contrary, the Complaint's only allegation relating to purported internal information suggests that Rivian's internal targets for production during the Class Period may have been even ***higher*** than its public production guidance.  (¶ 76.)

The Ninth Circuit considered and rejected similarly vague and conclusory allegations in *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002).  There, the plaintiffs alleged that the company misled investors about its ability to sell its products.  The plaintiffs alleged that the company was "suffering serious problems" with its sales teams, that its sales cycles were "lengthening substantially" and that the company was "encountering significant difficulties" in selling its products "due to the lack of differentiation and the technological problems with those products." *Id.* at 1086.  The Ninth Circuit affirmed dismissal and found that "[w]e hardly need elaborate on the inadequacy of these generalized allegations under the heightened pleading standard of the [Reform Act]." *Id.*  The court found the allegations

inadequate because the complaint failed to identify "any specific report, to mention any dates or contents of reports, or to allege the[] sources of information about any reports" or metrics inconsistent with the challenged statements. *Id.* at 1088. The same is true here. *See Ronconi*, 253 F.3d at 430-31 (rejecting conclusory assertion that "sales growth was not accelerating" where plaintiff failed to "describe, chart or graph" the sales figures); *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1278 (N.D. Cal. 2019) ("[S]imply asserting that . . . the Company's sales were on a downward trend [] is inadequate under Ninth Circuit law."); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012) ("Beyond merely making conclusory allegations, however, Plaintiffs were required to allege specific facts that show how these problems and difficulties necessarily precluded [the defendant] from reaching its projected growth targets.").

Plaintiffs' suggestion that a higher "internal production target" for 2023 that was "leaked" in a press article supports its claims makes no sense. (¶¶ 8, 76-77.) First, Plaintiffs' argument is fundamentally inconsistent with their theory of falsity. That Defendants internally discussed the "possibility" that the Company could *exceed* its 2023 production guidance does not contradict the Company's public disclosures or show that Defendants knew demand was "insufficient" to support increased production.

Second, while the Complaint repeatedly references the "leaked" internal target, Plaintiffs do not include it as an allegedly false or misleading statement. (*See* Compl. § V.)  For good reason.  Ninth Circuit law is clear that defendants are liable for a projection published by a third party only where they put their "imprimatur, express or implied, on the projections." *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 934 (9th Cir. 1996).  Here, Plaintiffs concede that Rivian did not endorse the "leaked" figure or any other production forecasts from analysts. (¶ 77.) Instead, the Company immediately and repeatedly *reaffirmed* its (lower) disclosed production guidance.  (¶¶ 77, 87.)  In any event, even if Rivian were responsible for

the higher production targets, there are still no contemporaneous factual allegations contradicting the projection, much less any allegations showing that the Individual Defendants knew it could not be achieved.

Plaintiffs' allegations also ignore Rivian's detailed disclosures of the very issues allegedly "concealed."  For example, Plaintiffs allege repeatedly that the challenged statements were false or misleading because preorders "could be canceled at any time"; customers were required to wait "extremely long periods . . . before their turn came up . . . significantly increasing the risk of cancellations"; a "material portion" of the preorder backlog was based on "pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price"; and "[m]acroeconomic factors, including high inflation and high interest rates were . . . softening demand." (*See, e.g.*, ¶ 141, 143, 146, 151.)  The problem for Plaintiffs is that Rivian explicitly discussed these issues in its public statements before and during the Class Period:

- "Because all of our preorders are cancellable, it is possible that a significant number of customers who submitted preorders for our vehicles may not purchase vehicles."  (Ex. 1 at 17; *see also* Ex. 2 at 37 ("Customer preorders for our vehicles are cancellable and fully refundable.").)

- "The potentially long wait from the time a preorder is made until the time the vehicle is delivered, and any delays beyond expected wait times, could also impact consumer decisions on whether to ultimately make a purchase."  (Ex. 2 at 37; *see also* Ex. 1 at 17.)

- "[T]he other core factor as we think about that step-stone from a gross profit perspective is also really the anniversarying or moving beyond those pre-March 1 pre-orders as well that allow us to move into our current [average selling prices]."  (Ex. 3 at 8; *see also* ¶¶ 41, 93.)

- "As interest rates rise, market rates for new vehicle financing will

generally be expected to rise as well, which may make our vehicles less affordable to customers or steer customers to less expensive vehicles that would be less profitable for us, adversely affecting our business, prospects, financial condition, results of operations, and cash flows." (Ex. 2 at 40; *see also* Ex. 1 at 27.)

These disclosures addressing the very "facts" Plaintiffs allege were concealed are fatal to Plaintiffs' claims. *See McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1056 (N.D. Cal. 2019) (dismissing complaint where defendant "disclose[d] exactly what Plaintiffs claim [defendant] omitted"); *Reed v. Amira Nature Foods Ltd.*, No. CV 15–0957 FMO (PJWx), 2016 WL 6571281, at *8 (C.D. Cal. July 18, 2016) (granting motion to dismiss where defendant disclosed allegedly omitted information); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017) (falsity analysis of a statement "'always depends on the context,' which includes 'all its surrounding text, including hedges, disclaimers, and apparently conflicting information.'").

Lacking any contemporaneous factual allegations and ignoring Rivian's actual disclosures, Plaintiffs attempt to support their theory with a hindsight attack: Because Rivian released production guidance at the end of the Class Period that was lower than investment analyst expectations, Defendants must have known from the start that customer demand was "weak." (*See, e.g.*, ¶¶ 2, 12.) But Ninth Circuit law is clear that this pleading of "fraud by hindsight"—simply "contrast[ing] a defendant's past optimism with less favorable actual results" is insufficient under the Reform Act. *City of Roseville Emps.' Ret. Sys. v. Sterling Fin. Corp.*, 47 F. Supp. 3d 1205, 1222 (E.D. Wash. 2014), *aff'd*, 691 F. App'x 393 (9th Cir. 2017); *see also Ronconi*, 253 F.3d at 430 & n.12; *Wyatt v. Mattel, Inc.*, No. CV-19-1646-CBM-MAA(x), 2020 WL 364324, at *3 (C.D. Cal. Jan. 21, 2020) ("The fact that [a] prediction proves to be wrong in hindsight does not render the statement untrue when made."). Even more so here, where Plaintiffs are contrasting ***analysts'***

optimism with Rivian's later guidance.

### 2. Plaintiffs fail to plead falsity with respect to the opinion statements.

In addition to the absence of any particularized factual allegations in the Complaint, Plaintiffs further fail to meet the standards for pleading falsity applicable to the twenty-six challenged opinion statements. (*See* Stmts. 1, 3-5, 7-8, 10-17, 19-24, 26-30, 32.) These statements conveyed Defendants' subjective beliefs and expectations regarding Rivian's future, such as: "We see 2024 as really that pivotal year for us in driving a step change in terms of the underlying gross margin expectations within the business" (Stmt. 4); "[W]e expect to see a material step change in gross margin in that walk from current state to that 2024 time frame" (Stmt. 7); "[A]s we think about it, the demand backlog that we have is very robust. It gives us a clear line of sight until well into 2024." (Stmt. 13); "[W]e expect approximately half of the [gross margin] improvement will be driven by greater volume and utilization of our installed capacity" (Stmt. 20).

There are three ways to state a claim based on an allegedly misleading statement of opinion. The first, a misrepresentation theory, requires that Plaintiff plead both that "the speaker did not hold the belief she professed" and that the belief was objectively untrue. *Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*, 575 U.S. 175, 184-86 (2015). The second theory requires Plaintiffs to identify "embedded statements of fact" in the opinion statement and allege with particularity facts showing that "the supporting fact [the speaker] supplied [is] untrue." *Align*, 856 F.3d at 615-16 (summarizing *Omnicare* standard). The third theory, based on alleged omissions, requires Plaintiffs to (1) "identify particular (and material) facts going to the basis for the [defendant's] opinion"; (2) show that the facts were material, i.e., that "there is a substantial likelihood that a reasonable investor would consider it important"; and (3) show that the omission of the facts rendered the opinion statement misleading to a reasonable person reading

it "fairly and in context." *Omnicare*, 575 U.S. at 194, 196. "That is no small task for an investor." *Id.* at 194; *see Align*, 856 F.3d at 615.

Plaintiffs plead no facts, let alone "particular" and "material" facts, going to the basis of any of the opinions expressed in the challenged statements or any "embedded fact" that was untrue. Nor do Plaintiffs allege anything about any Defendant's subjective beliefs at the time the statements were made, nor any facts bearing on materiality.  Plaintiffs also fail to show how any reasonable investor would have been misled, particularly in the context of the Company's disclosures regarding its performance and the detailed risk disclosures provided to investors. There was good reason for optimism, and Rivian warned of the risks.  On this additional ground, Plaintiffs' attacks on the twenty-six opinion statements fail.

### 3.    Plaintiffs' attacks on Rivian's risk factor disclosures fail.

Under Ninth Circuit law, risk factors "are not actionable without further factual allegations indicating that the risks had already 'come to fruition.'"  *In re Pivotal Sec. Litig.*, 19-cv-03589-CRB, 2020 WL 4193384, at *6 (N.D. Cal. July 21, 2020); *In re Eargo, Inc. Sec. Litig.*, 656 F. Supp. 3d 928, 944 (N.D. Cal. 2023). Plaintiffs come nowhere close to meeting this burden.

Plaintiffs challenge Rivian's risk-factor disclosures that the Company's "ability to become profitable in the future will depend on . . . [its] ability to maintain strong demand and average selling prices for our vehicles, as well as our capability to manufacture our vehicle portfolio efficiently." (*See, e.g.*, Stmts. 9, 18, 25, 31.)  Plaintiffs contend that these risk-factor disclosures were misleading because Rivian lacked a "clear line of sight into demand" for the same reasons discussed above:  (1) Rivian's preorder backlog was allegedly "not a valid proxy for demand" because preorders "could be canceled at any time"; (2) "Rivian's backlog required consumers to wait extremely long periods . . . which led to significant cancellations"; (3) a "material portion" of Rivian's preorders were based

on "pre-March 1, 2022 preorder" pricing; and (4) "[m]acroeconomic factors, including high inflation and high interest rates were already adversely impacting" demand.  (*See, e.g.*, ¶¶ 156, 177, 191, 204.)

These allegations fail for the same reasons discussed above.  All of these issues were, in fact, disclosed to the market.  Moreover, there are no particularized allegations showing that Rivian had ***already experienced*** a material undisclosed decline in demand at the time the statements were made.  To the contrary, the Complaint concedes that the Company ***exceeded*** the 2023 production guidance it provided to investors.  (*Compare* ¶ 120 (57,232 EVs produced), *with* ¶ 154 (production guidance of 50,000 EVs).)  Because there are no particularized allegations that Rivian warned of "hypothetical" risks that had "already come to fruition" when the challenged statements were made, Plaintiffs' theory of falsity with respect to these statements fails.

### B.    Most of the statements are also protected by the Reform Act's Safe Harbor and the bespeaks-caution doctrine.

Twenty-three of the thirty-two challenged statements are not actionable for a separate and independent reason:  They are forward-looking statements protected by the Reform Act's Safe Harbor provision and the bespeaks-caution doctrine.  (*See* Stmts. 1, 3-4, 7-8, 10-17, 19-21, 23-24, 26-29, 32.)  These statements describe Rivian's "forecast [of] reaching positive gross profit in 2024" (Stmt. 11; *see also* Stmts. 12, 20); its "significant confidence in the long-term gross profit margin targets that [it] set out" (Stmt. 4; *see also* Stmt. 32); the expected drivers of the "material step change in gross margin. . . from current state to that 2024 time frame" (Stmt. 7; *see also* Stmts. 14-17, 19-21, 24, 27, 29, 32); the Company's "focus" on "fully ramping" production at the Normal Facility (Stmts. 1, 3); and the Company's "line of sight through 2024 in terms of demand" (Stmt. 8; *see also* Stmts. 10, 13, 23, 26).

The Reform Act's Safe Harbor provides that a defendant "shall not be liable

with respect to any forward-looking statement" if (1) the statement is "identified as a forward-looking statement and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially," *or* (2) the plaintiff "fails to prove that the forward-looking statement" was "made or approved" with "actual knowledge. . . that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1); *see also Tesla*, 985 F.3d at 1189-90; *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-12 (9th Cir. 2010). The bespeaks-caution doctrine is similar. It enables the court to "rule as a matter of law that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1408 & n.5 (9th Cir. 1996); *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1132 (9th Cir. 2004).

Future production goals and profitability projections are "by definition" forward-looking statements. *Cutera*, 610 F.3d at 1111; *see Tesla*, 985 F.3d at 1192 ("Tesla's goal to produce 5,000 vehicles per week is unquestionably a 'forward-looking statement.'"). The statements here were also identified as forward-looking in the Company's press releases, shareholder letters, and conference calls. (*See, e.g.*, Ex. 10 at 4; Ex. 11 at 15-16; Ex. 3 at 3; Ex. 12 at 10-11; Ex. 13 at 3; Ex. 14 at 13; Ex. 15 at 3; Ex. 16 at 21; Ex. 17 at 3; Ex. 18 at 4.)

The challenged statements were also accompanied by meaningful cautionary language. In its shareholder letters and on its conference calls, Rivian warned that its forward-looking statements were "neither promises nor guarantees and involve known and unknown risks, uncertainties, and other important factors that may cause our actual results, performance, or achievements to be materially different from any future results" predicted in the forward-looking statements. (*See, e.g.*, Ex. 4 at 13-14; Ex. 11 at 15-16; Ex. 12 at 10-11; Ex. 14 at 13; Ex. 16 at 21.) The Company warned that its "ability to develop and manufacture vehicles on a large scale is

unproven"; that "preorders for our vehicles are cancellable and fully refundable";

that it "may experience significant delays in the manufacture and delivery of . . .

vehicles"; and that its "pricing decisions may affect our community, preorders, and

demand negatively." (*Id.*)  Rivian also referred investors to additional detailed risk

disclosures contained in its SEC filings that addressed numerous risks relating to

customer demand, production, and profitability.  (*See, e.g.*, Ex. 2 at 2-3, 15-17, 25-

37; Ex. 5 at 2-3, 16-18, 26-39; Ex. 1 at 2-6, 12-20; Ex. 6 at 2-3, 17-19, 27-40; Ex. 7

at 2-3, 17-19, 27-40; Ex. 8 at 2-3, 17-19, 28-41; Ex. 13 at 3; Ex. 15 at 3.)  These on-

point cautionary disclosures preclude Plaintiffs' claim under the first prong of the

Safe Harbor.  *See Cutera*, 610 F.3d at 1112; *Police Ret. Sys. of St. Louis v. Intuitive

Surgical, Inc.*, 759 F.3d 1051, 1059-60 (9th Cir. 2014); *Wyatt*, 2020 WL 364324, at

*6.[3]

   Plaintiffs' claims are also independently barred under the second prong of the

Safe Harbor because Plaintiffs do not allege that Defendants had "***actual***

***knowledge***" that any of the forward-looking statements were false when made.

15 U.S.C. § 78u-5(c)(1)(B).  There are, for example, no facts alleged about how the

profitability target was developed, what information it incorporated, or what

assumptions were made, much less anything showing that the Individual

Defendants ***knew*** it was unachievable.  *See Tesla*, 985 F.3d at 1193-94 (affirming

dismissal on Safe Harbor grounds where there were no particularized allegations

that the executive "*knew* that 'it was *impossible*' to meet the company's forward-

looking projections, and 'not merely highly unlikely'"); *Farhar v. Ontrak, Inc.*, 714

F. Supp. 3d 1198, 1211 (C.D. Cal. 2024) (dismissing complaint that lacked

particularized facts showing that it was a "foregone conclusion" that company

would not achieve its goal).

   The Ninth Circuit's decision in *Tesla* is directly on point.  There, the plaintiff

---

[3] Plaintiffs' claims are barred under the bespeaks-caution doctrine for the same
reasons.

challenged statements discussing Tesla's goal of "ramp[ing] production to 5,000 vehicles per week" and potential "bottlenecks in ramping production" to this level. 985 F.3d at 1190-91.  The plaintiff argued that Tesla's statements that it was "on track" and that there were "no issues" that "would prevent [it] from achieving the goal" were not forward-looking statements because they "contain[ed] express or implied" embedded assertions about current circumstances and progress towards the target.  *Id.* at 1191-92.  The Ninth Circuit rejected the plaintiff's argument and held that the statements were forward-looking statements protected by the Safe Harbor.  *Id.*

The court explained that the Safe Harbor protects "statement[s] of the *plans and objectives* of management for future operations," and "statement[s] of the *assumptions* underlying or relating to" those plans and objectives.  *Id.* at 1191.  The court found that because "any announced 'objective' for 'future operations' *necessarily* reflects an implicit assertion that the goal is achievable based on current circumstances," a statement that a company is "'on track' to achieve an announced objective, or a simple statement that a company knows of no issues that would make a goal impossible to achieve, are merely alternative ways of declaring or reaffirming the objective itself."  *Id.* at 1192; *see Wyatt*, 2020 WL 364324, at *5 (analyzing similar "on track" statements before *Tesla*).

The court also held that the Safe Harbor barred the plaintiff's claim because the forward-looking statements were accompanied by meaningful cautionary language.  *Tesla*, 985 F.3d at 1193-94 & n.3.  The court found Tesla's cautionary statements addressing the "risk of delays in the manufacture, production, delivery and/or completion of its vehicles" and the risk that it may experience "delays ... in bringing to market and ramping production of new vehicles" to be sufficiently "detailed and specific" to invoke the Safe Harbor's protections. *Id.*

The same is true here.  The challenged statements address Rivian's "2023 production guidance" and expectation for "production volumes to increase further

in 2024." (Stmt. 17.)  They discuss Rivian's belief that its performance "position[ed] [it] well to continue executing on [its] goals for the remainder of the year as well as into 2024" (Stmt. 19) and its anticipated "largest driver[s] as we think about the path to positive gross profit" in 2024 (Stmt. 27).  These statements are substantively identical to the statements the Ninth Circuit found to be forward-looking in *Tesla*.  And, as discussed above, contrary to Plaintiffs' conclusory assertion that Rivian's risk factors were "boilerplate," the cautionary language included with Rivian's forward-looking statements is just as "detailed and specific" as the cautionary language found adequate in *Tesla*.  The Safe Harbor thus applies and further bars Plaintiffs' claims with respect to the forward-looking statements.

### C.    Many of the statements are also non-actionable statements of corporate optimism.

"Vague" and "feel good" statements of corporate optimism are not actionable.  *Intuitive*, 759 F.3d at 1060.  This doctrine applies to statements that use "subjective and emotive terms" and are "not capable of objective verification." *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1148-49 (C.D. Cal. 2018); *see also Ontrak*, 714 F. Supp. 3d at 1209-10; *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1096-97 (C.D. Cal. 2008).

Sixteen of the challenged statements are not actionable for this independent reason.  (*See* Stmts. 1, 3, 4-5, 8, 10, 13, 19, 22-23, 26-30, 32.)  They offer only vague, enthusiastic descriptions of Rivian's customer demand and growth prospects, such as:  "Equally as important is the continued strong demand for our products." (Stmt. 3); "[W]e are encouraged by the strong demand for our products." (Stmt. 5); "[W]e have a very clear line of sight through 2024 in terms of demand" (Stmt. 8); "[T]he demand backlog that we have is very robust." (Stmt. 13); and "[W]e're quite bullish on the continued strong demand we have for our products." (Stmt. 26).

These optimistic statements are virtually indistinguishable from those found

by courts within the Ninth Circuit to be non-actionable.  *See, e.g.*, *Intuitive*, 759 F.3d at 1060 (statements that sales opportunity was "very, very large" and "that the company was "in a pretty good position" non-actionable); *Ontrak*, 714 F. Supp. 3d at 1209-10 (statement that defendant "grew its pipeline of customers to its 'most robust level' and will 'proceed into new heights'" not actionable); *Wyatt*, 2020 WL 364324, at *8 (statement that "[w]e . . . are well positioned for 2019" non-actionable); *Waterford Twp.*, 321 F. Supp. 3d at 1149 (statement that inventory was in "pretty decent shape" not actionable).  This Court should do the same here.

## II.   PLAINTIFFS' SECTION 10(b) CLAIM SHOULD ALSO BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER.

Plaintiffs' Section 10(b) claim also fails for an additional, independent reason:  Plaintiffs do not plead "with particularity facts giving rise to a strong inference" of scienter, let alone one that is "at least as compelling as any opposing inference."  *Tellabs*, 551 U.S. at 324-25.

The Complaint lacks ***any*** particularized facts showing that the Individual Defendants knew of information contradicting the challenged statements.  (*See* ¶¶ 215-222.)  There are, for example, no confidential witnesses or descriptions of meetings, reports, or data reviewed by the Defendants that was inconsistent with the Company's projections or statements regarding its demand.  *See Metzler*, 540 F.3d at 1068 ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud."); *Vantive*, 283 F.3d at 1089 (affirming dismissal of complaint with "a total absence of factual allegations that would permit a strong inference that the defendants knew that their representations were false or misleading when made"); *Intuitive*, 759 F.3d at 1063 (affirming dismissal where complaint did "not detail the actual contents of the reports the executives purportedly referenced or had access to"); *In re Arrowhead Rsch. Corp. Sec. Litig.*, No. 2:14-CV-07890-CBM-ASx,

2016 WL 6562066, at *10 (C.D. Cal. Mar. 29, 2016) ("Plaintiffs cannot rely solely 'on allegations that management had an important role in the company'" where the complaint "'does not contain additional detailed allegations about defendants' actual exposure to information'"), *aff'd*, 711 F. App'x 434 (9th Cir. 2018). And there are no allegations that any Defendant engaged in insider trading. *See Sorrento*, 97 F.4th at 643 ("[Plaintiff] identifies no individual stock sales at all. Accordingly, [plaintiff] has not made the requisite showing of trading history necessary to raise an inference of scienter.")

Plaintiffs, instead, present a series of conclusory allegations that the Ninth Circuit and its district courts have repeatedly rejected. (*See* ¶¶ 222-235.) For the reasons discussed below, individually and taken together, these allegations do not support a "cogent" and "compelling" inference of fraud, let alone one that is "at least as compelling as any opposing inference." *Tellabs*, 551 U.S. at 324.

### A.    The resignations do not support any inference of scienter.

Plaintiffs start with a conclusory allegation that scienter can be inferred because "Rivian had numerous suspiciously timed resignations." (*See* ¶¶ 222-226.) The Ninth Circuit has held, however, that executive resignations do not support an inference of scienter unless the plaintiff "allege[s] sufficient information to differentiate between a suspicious change in personnel and a benign one." *Zucco*, 552 F.3d at 1002. Plaintiffs make no attempt to meet that burden here. Instead, Plaintiffs label the departures of a few non-defendant executives as "suspicious" based on nothing more than when they occurred. Plaintiffs' "conjecture" is insufficient. *See M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, No. CV 17-1479 PA (MRWx), 2017 WL 5635424, at *13 (C.D. Cal. Aug. 20, 2017) (rejecting conclusory allegation that timing of resignations was suspicious).

### B.    Rivian's bond offerings do not support any inference of scienter.

Next, Plaintiffs allege that Defendants were "motivated to commit fraud" to

"ensure the success of Rivian's two suspiciously timed Class Period bond offerings." (*See* ¶¶ 227-231.) But Ninth Circuit law is clear that "routine corporate objectives such as the desire to obtain good financing" do not support an inference of scienter. *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018); *see Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002); *Arrowhead*, 2016 WL 6562066, at *9 (allegation that defendants sought to "raise funds from investors" insufficient); *Paddock v. Dreamworks Animation SKG, Inc.*, No. CV 14-06053 SJO (Ex), 2015 WL 12711653, at *11 (C.D. Cal. Apr. 1, 2015). Plaintiffs allege nothing more than that here. Rivian consistently told investors that it planned to continue investing in its long-term growth, which would require "significant external debt and/or equity financing." Issuing debt is not indicative of fraud.

### C. The compensation allegations do not support any inference of scienter.

Plaintiffs' compensation allegations also do nothing to establish scienter. (¶ 235.) It is, of course, "common for executive compensation, including stock options and bonuses, to be based partly on the executive's success in achieving key corporate goals." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012). Courts "will not conclude that there is fraudulent intent merely because a defendant's compensation was based in part on such successes." *Id.* Thus, under Ninth Circuit law, compensation allegations fail to support a strong inference of scienter where a "complaint fails to provide specifically, with comparisons to prior years' bonuses, the correlation between [defendants'] compensation and [the company's] bottom line." *Zucco*, 552 F.3d at 1005. "Generalized assertions" about a defendant's compensation being affected by the company's stock price are "inadequate." *Id.* at 1004-05.

Generalized assertions are all Plaintiffs offer here. Plaintiffs allege nothing more than that the Individual Defendants' "compensation was heavily dependent on" the "value of Rivian stock" because, like virtually all public company

executives, they received shares and stock options as part of their compensation packages.  (¶ 235.)  There are, for example, no allegations showing that the number of shares or options received by the Individual Defendants depended on Rivian's stock price during the Class Period, and there are no allegations comparing Rivian's Class Period compensation program with its prior compensation programs. Plaintiffs also fail to explain how the Individual Defendants benefited from any alleged temporary artificial inflation of Rivian's stock when there are no allegations that the Individual Defendants sold stock during the Class Period.  Receiving and continuing to hold stock does not support Plaintiffs' allegation; it undermines it. *Webb*, 884 F.3d at 856; *Rigel*, 697 F.3d at 884.

### D.    Plaintiffs do not offer a cogent and compelling theory of fraud.

Considering the scienter allegations holistically, Plaintiffs fail to offer a theory of fraud that is coherent, let alone cogent and compelling.

The Individual Defendants are not alleged to have sold Rivian stock during the Class Period, and Plaintiffs do not allege any financial motive for any Individual Defendant to engage in the alleged fraud.

The purported fraud also makes no sense.  According to Plaintiffs, Defendants "***underpromised***" with their 2023 production guidance, disclosing to investors production guidance that was lower than the Company's internal goals. At the end of the Class Period, Rivian announced that it had ***exceeded*** the publicly disclosed 2023 production guidance, more than doubling its annual vehicle production during the Class Period and reducing the Company's gross loss per vehicle by approximately $81,000.

What's more, throughout the Class Period, Rivian repeatedly discussed the issues that Plaintiffs allege were concealed, including that its customer preorders were "cancellable and fully refundable," that a "continuing substantial increase in customer interest rates . . . could have a material adverse effect on our business,"

and that "[t]he potentially long wait from the time a preorder is made until the time the vehicle is delivered . . . could [] impact consumer decisions on whether to ultimately purchase or cancel a preorder." (*See, e.g.*, Ex. 1 at 17, 27.)  On-point risk disclosures, such as these, further undermine any inference of scienter. *Rigel*, 697 F.3d at 884.

Plaintiffs' theory is not cogent or more compelling than the opposing, nonculpable inference that the Court can draw.  Throughout the Class Period, Rivian ramped up production of its EVs in a highly competitive market, achieving impressive results and strong growth in production rates and improvements in gross margins.  The production ramp slowed at the end of the Class Period, as the Company continued to implement improvements on its manufacturing lines and adapt to changing macroeconomic conditions.  That is not fraud.

### III.  PLAINTIFFS' SECTION 20(a) CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT PLED A PREDICATE VIOLATION OF SECTION 10(b).

To state a control-person liability claim under Section 20(a), Plaintiffs must plead an "underlying primary violation[] of the securities laws." *Rigel*, 697 F.3d at 886.  Plaintiffs' failure to plead a predicate violation under Section 10(b) here is thus fatal to their Section 20(a) claim.  *See id.*; *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 610 (9th Cir. 2014).

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated: January 7, 2025                    MORRISON & FOERSTER LLP


                                          By: */s/ Jordan Eth*
                                          Jordan Eth

                                          *Attorneys for Defendants*
                                          RIVIAN AUTOMOTIVE, INC.,
                                          ROBERT J. SCARINGE, AND
                                          CLAIRE MCDONOUGH

1

2

## <u>CERTIFICATE OF COMPLIANCE</u>

3          The undersigned, counsel of record for Defendants Rivian Automotive, Inc.,

4   Robert J. Scaringe, and Claire McDonough, certifies that this brief contains 6,998

5   words, which complies with the word limit of L.R. 11-6.

6

7   Dated: January 7, 2025                     MORRISON & FOERSTER LLP

8

9                                              By: */s/ Jordan Eth*
                                                   Jordan Eth
10
                                               *Attorneys for Defendants*
11                                             RIVIAN AUTOMOTIVE, INC.,
                                               ROBERT J. SCARINGE, AND
12                                             CLAIRE MCDONOUGH

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28