THE BURKE LAW FIRM
Timothy J. Burke (SBN #181866)
tim.burke@burke-tim-firm.com
1001 Wilshire Boulevard, #2187
(310) 984-7199 (phone)
(310) 602-6589 (fax)

*Liaison Counsel for Lead Plaintiffs and
the Proposed Class*

[Additional Counsel on Signature Block]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE and CLAIRE MCDONOUGH,<br><br>  Defendants. | Case No. 2:24-cv-04566-CBM-PVC<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL<br><br>Date:        March 25, 2025<br>Time:        10:00 a.m.<br>Courtroom:   8D<br>Judge:       Hon. Consuelo B. Marshall |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................... 1

STATEMENT OF FACTS ................................................................................. 4

ARGUMENT ..................................................................................................... 5

I.    LEGAL STANDARD ............................................................................... 5

II.    DEFENDANTS' MISSTATEMENTS ARE ACTIONABLE ............................. 6

        A.    Plaintiffs Adequately Allege Falsity ................................. 6

        B.    The Safe Harbor Is Inapplicable ................................... 12

        C.    Defendants' Statements Were Not Protected Opinions ...................... 14

        D.    Defendants' Statements Were Not Puffery ........................... 15

III.    PLAINTIFFS ALLEGE A STRONG INFERENCE OF SCIENTER ................ 17

        A.    Defendants' Knowledge Supports Scienter ........................... 17

        B.    Two Suspiciously-Timed Bond Offerings Support Scienter ............. 18

        C.    Four Suspicious Resignations Support Scienter ................... 19

        D.    Defendants' Compensation Supports Scienter ..................... 20

        E.    Scaringe's Founder-Status Supports Scienter ....................... 21

        F.    An Inference of Scienter Is Stronger Than Innocence ......................... 21

CONCLUSION ................................................................................. 23

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Abdo v. Fitzsimmons*,
  2021 WL 616324 (N.D. Cal. Feb. 17, 2021) ....................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................6

*Atlas v. Accredited Home Lenders Holding Co.*,
  556 F. Supp. 2d 1142 (S.D. Cal. 2008) ..............................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................5

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) ...................................................................6, 13, 18

*Borteanu v. Nikola Corp.*,
  2023 WL 1472852 (D. Ariz. Feb. 2, 2023)........................................8, 11, 13

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) ............................................................10

*El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*,
  709 F. Supp. 3d 1296 (D. Colo. 2023)......................................................13, 18

*Evanston Police Pension Fund v. McKesson Corp.*,
  411 F. Supp. 3d 580 (N.D. Cal. 2019) ..............................................................20

*Farhar v. Ontrak, Inc.*,
  714 F. Supp. 3d 1198 (C.D. Cal. 2024) .............................................................16

*Farrar v. Workhorse Grp., Inc.*,
  2021 WL 5768479 (C.D. Cal. Dec. 2, 2021) ................................................8, 11

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023) ...................................................................10, 13, 17

ii

*In re Arrowhead Res. Corp. Sec. Litig.*,
   2016 WL 6562066 (C.D. Cal. Mar. 29, 2016) ................................................................. 19

*In re Cutera Securities Litigation*,
   610 F.3d 1103 (9th Cir. 2010) ........................................................................................ 13

*In re Fibrogen, Inc.*,
   2022 WL 2793032 (N.D. Cal. July 15, 2022) ............................................... 7, 12, 16, 19

*In re Finisar Corp. Sec. Litig.*,
   2017 WL 1549485 (N.D. Cal. May 1, 2017) ................................................................... 18

*In re Ibis Tech. Secs. Litig.*,
   422 F. Supp. 2d 294 (D. Mass. 2006) ............................................................................ 19

*In re Impax Labs, Inc. Sec. Litig.*,
   2007 WL 7022753 (N.D. Cal. July 18, 2007) ................................................................. 19

*In re Lucid Grp., Inc. Sec. Litig.*,
   2024 WL 3745605 (N.D. Cal. Aug. 8, 2024) .................................................................. 13

*In re Nielsen Holdings PLC Securities Litigation*,
   510 F. Supp. 3d 217 (S.D.N.Y. 2021) .............................................................................. 7

*In re Plantronics, Inc. Sec. Litig.*,
   2022 WL 3653333 (N.D. Cal. Aug. 17, 2022) .................................................................. 9

*In re Portal Software, Inc. Sec. Litig.*,
   2005 WL 1910923 (N.D. Cal. Aug. 10, 2005) ................................................................ 19

*In re QuantumScape Sec. Class Action Litig.*,
   580 F. Supp. 3d 714 (N.D. Cal. 2022) ............................................................... 13, 18, 19

*In re Questcor Sec. Litig.*,
   2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ................................................................... 20

*In re Splunk Inc. Sec. Litig.*,
   592 F. Supp. 3d 919 (N.D. Cal. 2022) ............................................................................ 10

*In re STEC Inc. Sec. Litig.*,
   2011 WL 2669217 (C.D. Cal. June 17, 2011) ................................................................ 12

iii

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ...............................................................9, 10

*In re Zillow Grp., Inc. Sec. Litig.*,
   2019 WL 1755293 (W.D. Wash. Apr. 19, 2019) ........................................17

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .......................................................................6

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
   242 F. Supp. 3d 950 (C.D. Cal. 2017) .......................................................16

*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*,
   2024 WL 3708800 (D. Ariz. Aug. 7, 2024) ..................................................9

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ...................................................................19

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ...............................................................12, 23

*Longo v. OSI Sys.*,
   2021 WL 1232678 (C.D. Cal. Mar. 31, 2021) ............................................18

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
   2017 WL 5635424 (C.D. Cal. Aug. 20, 2017) ............................................20

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) .....................................................................6

*McGovney v. Aerohive Networks, Inc.*,
   367 F. Supp. 3d 1038 (N.D. Cal. 2019) .....................................................11

*Mulligan v. Impax Labs, Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014) .........................................................12

*Murphy v. Precision Castparts Corp.*,
   2017 WL 3084274 (D. Or. June 27, 2017) ....................................13, 15, 16

*Oh v. Hanmi Fin. Corp.*,
   621 F. Supp. 3d 1075 (C.D. Cal. 2022) ......................................................15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ........................................................................................14, 15

*Paddock v. Dreamworks Animation SKG, Inc.*,
    2015 WL 12711653 (C.D. Cal. Apr. 1, 2015) ..............................................19

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) .......................................................................16

*Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) .........................................................11, 12, 16

*Reed v. Amira Nature Foods Ltd.*,
    2016 WL 6571281 (C.D. Cal. July 18, 2016)................................................11

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014) ...................................................................17, 18

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) .........................................................................10

*Roseville Emps' Ret. Sys. v. Sterling Fin. Corp.*,
    963 F. Supp. 2d 1092 (E.D. Wash. 2013) .....................................................10

*S. Ferry LP #2 v. Killinger*,
    687 F. Supp. 2d 1248 (W.D. Wash. 2009) .....................................................18

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
    732 F. Supp. 3d 300 (S.D.N.Y. 2024)..............................................................9

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    2019 WL 4859099 (N.D. Cal. Oct. 2, 2019)..................................................20

*Shenwick v. Twitter, Inc.*,
    282 F. Supp. 3d 1115 (N.D. Cal. 2017) ...................................................7, 18

*Skiadas v. Acer Therapeutics Inc.*,
    2020 WL 4208442 (S.D.N.Y. July 21, 2020) ................................................22

*Stadium Capital LLC v. Co-Diagnostics, Inc.*,
    2024 WL 456745 (S.D.N.Y. Feb. 5, 2024) ...............................................8, 9

Case No. 2.24-cv-04566-CBM-PVC
LEAD PLAINTIFFS' MEMORANDM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .................................................................................... 17, 20, 21

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) ............................................................ 21

*Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*,
    2012 WL 3835078 (N.D. Cal. Sept. 4, 2012) .................................................. 14

*Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*,
    321 F. Supp. 3d 1133 (C.D. Cal. 2018) ...................................................... 16, 17

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ...................................................................... 19, 20

*Westley v. Oclaro, Inc.*,
    897 F. Supp. 2d 902 (N.D. Cal. 2012) ........................................................ 10, 11

*Weston v. DocuSign*,
    669 F. Supp. 3d 849 (N.D. Cal. 2023) ................................................... 7, 15, 17

*Wochos v. Tesla*,
    985 F.3d 1180 (9th Cir. 2021) ............................................................ 12, 13, 14

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
    655 F.3d 1039 (9th Cir. 2011) ......................................................................... 21

*Wyatt v. Mattel, Inc.*,
    2020 WL 364324 (C.D. Cal. Jan. 21, 2020) .............................................. 10, 16

*Xiaojiao Lu v. Align Tech., Inc.*,
    417 F. Supp. 3d 1266 (N.D. Cal. 2019) ........................................................... 10

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ........................................................................... 21

Statutes

15 U.S.C. § 78t(a) ................................................................................................. 23

15 U.S.C. § 78u-5(c) ............................................................................................ 12

Lead Plaintiffs Kamil Kirio and Nada Badr-Kirio ("Plaintiffs") hereby oppose Defendants' motion to dismiss ("Motion", cited as Mot.) (ECF No. 66) the Amended Complaint ("AC").[1]

### INTRODUCTION

This case is about Rivian, an EV start-up notorious for hemorrhaging cash and losing money on every EV manufactured, racing to prove it could produce and sell a high volume of EVs at profit (its "Fundamentals") before running out of funding. In August 2022, Defendants unveiled a "Roadmap" to profitability in 2024, chiefly based on increasing production and reducing costs through economies of scale. Critical to the Roadmap's success was having sufficient demand for Rivian EVs.

Defendants repeatedly guaranteed demand was "strong", stable, and would last "through 2024", confirming the Roadmap's thesis to investors. Based on data they monitored "closely" but did not disclose, including Rivian's preorder "Backlog", cancellation rates, and macroeconomic factors (the "Data"), Defendants unequivocally assured investors they had "clear visibility" and "a very clear line of sight through 2024" "in terms of demand" (the "Guarantees"). ¶¶52-53, 101, 152, 164, 192.

But Defendants had no basis to make these Guarantees and thus claim Rivian's Roadmap was on track. The Backlog was merely a list of uncommitted consumers who made fully-refundable $1,000 deposits, had to wait 2.5 years+ for the opportunity to buy an EV, and could cancel for any reason at any time without penalty. ¶54. Defendants knew Rivian's Backlog was highly unreliable, but repeatedly told investors that it "clearly" demonstrated "strong demand" to support the Roadmap. ¶209. Defendants confidently repeated this trope to keep Rivian's profit story and funding alive, and to mislead investors to believe Rivian would finally prove its business was sustainable in 2024.

---

[1] Defendants are Rivian Automotive, Inc. ("Rivian" or the "Company"), Robert J. Scaringe ("Scaringe"), and Claire McDonough ("McDonough"). Paragraph cites are to the AC (ECF No. 58). Undefined terms are defined in the AC.

On February 28, 2023, Defendants announced disappointing 2023 production guidance of 50,000 EVs (the "2023 Guidance"), raising serious doubts Rivian could prove its Fundamentals and achieve profits under the Roadmap. On this news, Rivian stock dropped 18%. ¶7. However, Defendants soothed investors by insisting the Roadmap remained on track and was still fueled by "robust" demand. ¶164. Investors were further comforted by a "leak" days later teasing that Rivian's internal production estimate was 62,000 EVs (the "Leaked Figure"). ¶76. Fitting squarely into Scaringe's strategy to under-promise and overdeliver (the "Strategy"), Rivian subsequently increased its 2023 Guidance in trickles in August and November, ending the year producing 57,232 EVs. ¶¶9, 12.

Then, on February 21, 2024, Defendants floored the market by admitting Rivian still could not prove its Fundamentals in 2024 and the Roadmap needed to be revamped. Rivian announced wildly disappointing 2024 production guidance of 57,000 EVs (the "2024 Guidance"), demonstrating that its production was actually decreasing, and admitted that the supposedly "clear" demand for Rivian EVs weakened before 2024 even started. Thus, Rivian slashed the role of production in the Roadmap. ¶244. On this news, Rivian's stock plummeted 25%. ¶246.

Defendants move to dismiss their own version of the AC. This is not a projections case where investors cry foul in hindsight based on missed estimates. Defendants painted a rosy picture of Rivian's ability to prove its Fundamentals in 2024 to address investors' core concerns about the Company's sustainability. Defendants' picture was divorced from reality because they knowingly painted it with misinformation. Plaintiffs adequately allege Defendants admitted to "closely" monitoring the Data "daily" and knew there was a fundamental disconnect between demand and Backlog when making their misleading Guarantees. Plaintiffs do not need more internal sources to support these allegations.

Defendants' misstatements are also not protected by the Safe Harbor. Defendants guaranteed "strong demand" would fuel production through 2024 based on the Data. ¶¶91,

136, 140, 182. Defendants repeatedly stressed their "clear visibility" into demand to demonstrate their absolute confidence in the Data, leaving no room for doubt or risk of uncertainty. ¶¶52, 101, 152, 164, 192. These present-tense statements are not protected under the Safe Harbor. They likewise are not protected as mere corporate optimism because they are not "vague, enthusiastic" statements, they are clear statements of contemporaneous "fact".

Furthermore, Defendants cannot hide behind boilerplate and meaningless risk disclosures. Defendants claim they warned investors that preorders were cancellable, and that Rivian's limited operating history made it difficult to predict its prospects. Mot. 2-3. However, these generic warnings, which did not mention Backlog or the Roadmap, and were buried in SEC filings, lost all meaning when Defendants simultaneously guaranteed "strong demand" was a *fait accompli*.

Defendants' Leaked Figure also fully supports Plaintiffs' fraud theory. In line with Scaringe's Strategy, Defendants announced disappointing 2023 Guidance, but the Leaked Figure was mysteriously revealed days later, staving off investor concern. Defendants did not discredit the Leaked Figure, making the Roadmap appear more achievable. On the heels of this leak, Rivian raised $1.5 billion from investors.

Plaintiffs also adequately plead a strong inference of scienter. Defendants admitted they "closely" monitored the Data underlying their misstatements. The Ninth Circuit and district courts in this Circuit find scienter satisfied under these circumstances. Plaintiffs also adequately plead Defendants knew or recklessly disregarded that Backlog was not a proxy for demand, and, as such, they could not rely on Backlog to make Guarantees, validate the Roadmap, or claim the Roadmap was on track. Scienter, which is evaluated holistically, is further supported by Rivian raising over $3 billion in suspiciously-timed capital raises; multiple and suspicious executive resignations in departments relevant to the misstatements; the fact that 90-95% of Defendants' compensation was in Rivian securities; and Scaringe's unique motivation to keep the Company he founded afloat.

Case No. 2.24-cv-04566-CBM-PVC
LEAD PLAINTIFFS' MEMORANDM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

For these reasons, Defendants' Motion should be denied.

## STATEMENT OF FACTS

Founded by Scaringe, Rivian is a start-up known for bleeding cash and losing money on every EV manufactured. Rivian, which raised billions from investors, needed to prove to the market that its Fundamentals were sound before its funding evaporated. ¶¶1, 27.

In August 2022, Defendants unveiled the Roadmap to achieve Rivian's first profits in 2024 by proving its Fundamentals. ¶¶3, 42. The Roadmap involved ramping production, reducing costs, and increasing pricing. Production was by far the most important factor, but it required strong and stable demand for Rivian EVs. ¶¶44-47, 80-84.

Defendants painted a rosy picture of Rivian's ability to prove its Fundamentals by: guaranteeing "strong demand" through 2024 based on Data they "closely" watched "daily"; boasting the Backlog's resilience to industry-wide macroeconomic pressures on pricing and demand; and overstating the Backlog as a reliable indicator of progress on the Roadmap. ¶¶5, 42, 51-52, 91-92, 101, 142, 145, 152, 182, 185, 192. Defendants spoke in extremely confident terms about these matters. ¶¶5, 10, 64, 101, 152, 164, 192, 200, 205.

But Defendants knew Rivian's Backlog was highly unreliable, not immune to industry-wide macroeconomic pressures, and could not be used to predict demand or support production ramp under the Roadmap. ¶¶2-10, 31, 39-41, 45-47, 53-54, 64-71, 123. Defendants also knew Rivian was not close to selling its EVs at profit due to the high cost of its bill of materials (¶¶6, 150), high fixed costs of producing a small volume of EVs in its large-scale facility (¶¶6, 28, 159, 166, 180), and supply-chain issues. ¶¶6, 53-54, 81. Thus, the picture Defendants painted for investors was profoundly unrealistic.

Nevertheless, without access to the Data, investors had no choice but to accept Defendants' Guarantees and affirmations about the Roadmap. ¶¶54, 152. Based on Defendants' misrepresentations, analysts expected Rivian to produce over 60,000 EVs in 2023. ¶59.

On February 28, 2023, Rivian surprised investors by reporting disappointing 2023 Guidance, raising serious doubts about the Roadmap's viability. ¶60. On this news, Rivian's stock plummeted 18%. ¶61. Defendants tempered this bad news by re-affirming the Roadmap and "strong demand". ¶¶7, 157.

Days later, on March 3, 2023, the Leaked Figure was revealed by a Rivian insider. ¶76. Defendants did not deny the Leaked Figure was real, leaving the market optimistic about the Roadmap. ¶77. Buoyed by this excitement, Rivian conducted a $1.5 billion bond offering in March 2023. ¶¶229-230.

In July 2023, Scaringe teased his Strategy for Rivian. ¶95. On cue, Rivian increased its 2023 Guidance to 52,000 EVs in August 2023. On the heels of this news, on October 11, 2023, Rivian conducted a $1.725 billion bond offering. ¶¶109-111.

Then, on February 21, 2024, Defendants stunned the market by admitting Rivian still could not prove its Fundamentals in 2024. ¶¶123, 124. Defendants reported wildly disappointing 2024 Guidance, lower than Rivian's 2023 production, the Leaked Figure, and analysts' 2024 estimates of 65,000 EVs. ¶120. Defendants also disclosed that despite their Guarantees, demand weakened before 2024 even started, and, as such, Rivian needed to revamp the Roadmap by slashing production and laying off 10% of its workforce. ¶124. On this news, Rivian stock plunged 25%. ¶125.

Post-Class Period, on October 4, 2024, Rivian further reduced its 2024 Guidance to 47,000-49,000 EVs. On November 7, 2024, Rivian announced it still hoped to achieve profitability in 2024, but not through its Fundamentals – Rivian now intends to buy its way to profit by selling an unprecedented $300 million in regulatory credits. ¶213.

## ARGUMENT

### I.    LEGAL STANDARD

A complaint must only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court must accept as true all well-pleaded allegations of material fact and construe them in a light most favorable to the Plaintiffs. *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031-32 (9th Cir. 2008). Dismissal is only "appropriate [] where the complaint lacks a cognizable theory or sufficient facts to support a cognizable theory." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018).

Defendants here only contest the falsity and scienter elements of Plaintiffs' §10(b) claim, but their arguments fail and their Motion should be denied.

## II.    DEFENDANTS' MISSTATEMENTS ARE ACTIONABLE

### A. Plaintiffs Adequately Allege Falsity

Defendants argue that Plaintiffs failed to plead falsity, but that argument fails. Every securities case turns on what defendants said, how they said it, and what they knew at the time. Here, Defendants repeatedly made Guarantees, validating the thesis of the Roadmap to prove Rivian's Fundamentals in 2024. ¶¶52, 101, 152, 164, 192. Defendants' Guarantees were misleading when made because they were knowingly based on misinformation. ¶54. Defendants alone had access to the Data (¶¶5, 52, 91, 182, 185), which they misinterpreted for investors in terms that projected no risk of uncertainty. *Id*. Thus, Defendants' misstatements here are actionable.

Misrepresentations are actionable if they "give []the impression of a state of affairs that differs in a material way from the [real] one." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008). Here, Defendants fundamentally misrepresented that Backlog equated to "strong demand" and supported ramping production for the duration of the Roadmap – it did not (¶¶52, 136, 140, 145-146); that "strong demand" was guaranteed despite industry-wide macroeconomic pressures – it was not (¶¶164-165); and that, as such, the Roadmap was on track to prove Rivian's Fundamentals in 2024 – which, in reality, remained a pipe dream (¶¶142, 150).

Defendants' assertion that none of their statements were misleading is particularly unconvincing considering their drumbeat that they had a "clear line of sight" and "clear visibility" into "strong demand" through 2024 based on Backlog. ¶¶52, 101, 145, 152, 164, 192. Defendants knew Backlog could not provide "clarity" into demand. ¶54. Thus, Defendants' statements equating Backlog and demand were inherently misleading when made. *Cf. Shenwick v. Twitter, Inc*., 282 F. Supp. 3d 1115, 1143 (N.D. Cal. 2017) ("even if ad engagements could provide some insight into user engagement, Twitter's reliance on that metric was misleading"). But even if Backlog could provide some visibility into demand, Defendants' statements were nonetheless misleading because Defendants still lacked the "clarity" to guarantee "strong demand" through 2024, which they did. Defendants chose to make these Guarantees and must live by them. The fact that demand weakened in 2023 (¶209) renders Defendants' Guarantees *per se* misleading. *See In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 237 (S.D.N.Y. 2021) (defendants "assured the public that Nielsen [still] had access to all of the data it needed"; court held "[p]laintiffs sufficiently allege that Defendants made misleading guarantees about [regulation's] impact on Nielsen's business").

Defendants' Guarantees likewise show their Data monitoring statements were misleading. Either Defendants did not monitor the Data "closely", rendering their statements about doing so misleading (¶¶182-183; 196-197), or they did, and knew they could not predict demand through 2024 or that demand already weakened, but made the Guarantees anyway. *See Weston v. DocuSign*, 669 F. Supp. 3d 849, 883 (N.D. Cal. 2023) (misleading to claim demand resistant to external factors based on "real-time access to, and knowledge of, sales information"); *In re Fibrogen, Inc.*, 2022 WL 2793032, at *10 (N.D. Cal. July 15, 2022) ("expressions of confidence [when] discussing …existing data…describing [it] as 'robust'" actionable); *Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1155 (S.D. Cal. 2008) ("significance of [] information []

7

illustrated by [] frequency [of] Defendants['] emphasi[s]"). Any way you slice it, Defendants' statements were misleading.

Courts find misstatements equating backlog with demand actionable where, like here, backlog was merely an "expression[] of interest" and was "cancellable at any time." *Borteanu v. Nikola Corp*., 2023 WL 1472852, at *10 (D. Ariz. Feb. 2, 2023). The *Nikola* court explained that "given just how speculative" backlog figures are "referring to the backlog at all is arguably [] misleading". *Id.*; *see also Farrar v. Workhorse Grp., Inc.*, 2021 WL 5768479, at *5 (C.D. Cal. Dec. 2, 2021) (statements "repeatedly referenc[ing] [] backlog as an indicator" of "demand" actionable).

The Backlog here was particularly unreliable and, as such, Defendants' statements misinterpreting it were highly misleading. ¶¶5, 54. Moreover, Defendants did not even disclose the Data relied on, forcing investors to accept Defendants' Guarantees without any "proof". ¶84. Thus, Defendants' misstatements touting Backlog to make the Guarantees, and to validate the Roadmap and Rivian's Fundamentals (¶¶185, 216), are actionable. *Farrar*, 2021 WL 5768479, at *5.

Next, Defendants reflexively argue Plaintiffs cannot establish falsity because the AC does not cite "internal reports[,] metrics" or confidential witnesses (Mot. 7), but such sources are not required, and cases under similar circumstances to those here, are sustained without them.

Plaintiffs' allegations that Defendants admitted to monitoring the Data "closely" (¶¶5, 52, 91, 182, 185), and misconstrued the Data to make Guarantees (¶¶91, 136, 140, 182), readily satisfy the pleading burden. In *Stadium Capital LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745 (S.D.N.Y. Feb. 5, 2024), defendants' statement about being "very confident" about demand was actionable where defendants represented "we are [] able to monitor the daily influx of demand" and "keep a close eye on [inventory] every day." *Id.* at *1, 5. Defendants there, like here, argued plaintiffs failed to "identify any [internal]…documents" to support their claims, but the court flatly rejected that argument,

finding internal sources unnecessary where defendants "acknowledged…[their] access to and review of sales data." *Id.* Likewise here, Defendants acknowledged their access to and "close" review of the Data. *See supra* 6-7. *See also In re Plantronics, Inc. Sec. Litig.*, 2022 WL 3653333, at *15 (N.D. Cal. Aug. 17, 2022) (plaintiffs did not have to "identify specific transactions" to plead falsity of misrepresentations about demand); *Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 2024 WL 3708800, at *13 (D. Ariz. Aug. 7, 2024) (internal reports unnecessary where defendant stopped reporting metric and "other allegations" supported falsity); *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 320 (S.D.N.Y. 2024) (plaintiffs "don't need to" identify specific documents because "Defendants' own statements suggest [] they had access to – and reviewed – such information").

Plaintiffs further satisfy their pleading burden by alleging Defendants fundamentally misrepresented the Data and its significance. *See*, *e.g.*, ¶¶68, 91, 101, 123. Plaintiffs do not need internal sources to support these facts. Internal Backlog reports would be meaningless here because regardless of what they were quarter-to-quarter, they could never show what Defendants claimed they showed. Misstatements based on improper metrics are actionable even when they tangentially relate to the correct metric, like here. *Plantronics*, 2022 WL 3653333, at *15 ("[p]laintiffs are not required to identify specific transactions, because Plaintiffs' theory [] [doesn't] depend on the transactions themselves being fraudulent").

The cases Defendants rely on (Mot. 7-8) are easily distinguished because, unlike here, the plaintiffs in those cases lacked contemporaneous facts supporting falsity. In *Vantive*, the Ninth Circuit rejected plaintiffs' allegations that defendants knew their statements were misleading from their receipt of reports because plaintiffs "failed to include corroborating details of the [] reports." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1088 (9th Cir. 2002). This case is fundamentally different because Defendants

9

1  improperly based demand on Backlog. Thus, Defendants' statements were *per se*
2  misleading regardless of actual Backlog figures.[2]

3         Defendants' attempt to reframe Plaintiffs' allegations as "fraud by hindsight" also
4  fails. Mot. 10. Defendants guaranteed "strong demand" through 2024 based on
5  contemporaneous Data, upon which they built a house of cards vis-a-vis the Roadmap.
6  Courts hold defendants, like those here, liable for misrepresenting plans in the teeth of
7  contemporaneous contradictory knowledge. *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, 592 F.
8  Supp. 3d 919, 927 (N.D. Cal. 2022) (emphasizing plan to achieve positive cash flow based
9  on ramping hiring misleading where hiring was slowing and did not support plan). Thus,
10 Defendants' cache of hindsight and projections cases are inapplicable. *See Roseville*
11 *Emps' Ret. Sys. v. Sterling Fin. Corp.*, 963 F. Supp. 2d 1092, 1109 (E.D. Wash. 2013)
12 (unlike here, allegations "entirely rest[ed] on later contradictory statements"); *Wyatt v.*
13 *Mattel, Inc.*, 2020 WL 364324, at *4-5 (C.D. Cal. Jan. 21, 2020) (court did not reach falsity
14 because, unlike here, Safe Harbor applied).

15        Defendants also cannot immunize themselves by arguing Rivian's "warnings"
16 revealed the facts Plaintiffs allege were misleading. Mot. 9-10. Defendants' generic risk
17 disclosures, which did not mention Backlog or the Roadmap, and were buried in SEC
18 filings, were rendered meaningless, and even misleading, by Defendants' Guarantees. For
19 example, Defendants' "warning" that Rivian's "ability to become profitable in the future
20 will depend on [] our ability to maintain strong demand" (¶¶155, 190) was directly
21 contradicted by repeated Guarantees of demand for the Roadmap's duration. ¶¶156, 191.
22 Such statements are actionable. *See Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 920

---

[2] Defendants' other citations fare no better. *See Ronconi*, 253 F.3d at 430-31, n.12 (statement that "sales growth was accelerating" not supported by "documents or facts suggesting" contemporaneous falsity); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.,* 880 F. Supp. 2d 1045, 1064 (N.D. Cal. 2012) (no "analytical link" to "ultimate conclusion" of falsity); *Xiaojiao Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1278 (N.D. Cal. 2019) (same). Additionally, *Vantive* and *Ronconi* applied too strict a standard when assessing falsity, treating it like scienter. *See Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023) (recognizing different standards).

28

(N.D. Cal. 2012) (risk warnings "were not enough to counter [] more specific professed visibility into customer demand").

Moreover, Defendants' exact argument here already has been rejected. *See Farrar*, 2021 WL 5768479, at *5 (despite disclosing "backlog orders were subject to conditions and not guaranteed", "statements cannot be analyzed in [] isolation…Plaintiff sufficiently alleges [] statements, even taken with the caveats presented, were misleading"); *Nikola*, 2023 WL 1472852, at *11 (statements about backlog misleading despite defendants' "caution that [] reservations [were] non-binding and cancellable at any time"). For Rivian's "warnings" to be effective, Defendants had to admit to groundlessly basing their Guarantees on misinformation. *See Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1148 (9th Cir. 2017) ("Defendants [] told investors [] they could rely on predictions of growth [due to] [] QSI's [in reality, declining] sales pipeline… virtually no cautionary language short of an outright admission [] would have been adequate").

Defendants' case citations on risk warnings are inapposite as they, unlike here, warned of the precise risk at issue. *See McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1055-56 (N.D. Cal. 2019) (statements about "sales capacity" not misleading because defendants warned they were "replac[ing] personnel"); *Reed v. Amira Nature Foods Ltd.*, 2016 WL 6571281, at *8 (C.D. Cal. July 18, 2016) (alleging company did not disclose CEO personally uses funds when defendant warned CEO could be reimbursed for "certain personal expenses").

Finally, Defendants' claim that Rivian's Leaked Figure is inconsistent with falsity is meritless. *See* Mot. 8. Fitting squarely into Scaringe's Strategy, Rivian announced low 2023 Guidance, leaving investors questioning the Roadmap's viability. When the Leaked Figure was mysteriously revealed days later, it placated investors. Defendants were careful not to discredit the figure, spurring optimism that the Roadmap was achievable, and raising $1.5 billion from investors in an offering shortly thereafter. The Leaked Figure supports Plaintiffs' allegations.

11

## B. The Safe Harbor Is Inapplicable

Defendants' statements are not protected by the Safe Harbor, which only protects purely "forward-looking" statements, accompanied by "meaningful cautionary" language, that are not made with knowledge the statements are misleading. 15 U.S.C. § 78u-5(c). Defendants bear the burden to show their statements are protected, which they cannot do. *In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, at *9 (C.D. Cal. June 17, 2011).[3]

First, Defendants broadly argue 23 alleged statements are purely forward-looking (Mot. 15-16), but they lose all credibility by ignoring that many of them are undeniably mixed statements, *e.g.*, "**as we sit here today, we have** a very clear line of sight through 2024 in terms of demand" (¶152) and "we've watch**ed** the demand. …it is a daily thing **that we watch**" (¶182). *See also* ¶¶157, 164, 192; Plaintiffs' Appendix (detailing present-tense aspects of purportedly forward-looking statements). "Where defendants make mixed statements[,] the non-forward-looking statements are not protected" under the Safe Harbor. *Quality Sys.*, 865 F.3d at 1142; *Mulligan v. Impax Labs, Inc.*, 36 F. Supp. 3d 942, 964 (N.D. Cal. 2014); *In re Fibrogen*, 2022 WL 2793032, at *7 (statements based on "allegedly manipulated data" not forward-looking).

Defendants misplace reliance on *Wochos v. Tesla*, 985 F.3d 1180, 1193-94 (9th Cir. 2021), where defendants made a purely forward-looking projection about how many EVs Tesla expected to produce. *See id.* In contrast, Plaintiffs here allege no misleading projection figures, and the Ninth Circuit explained that statements that go "beyond [] 'plans,' … and [] contain an express or implied 'concrete' assertion concerning a specific 'current or past fact[]'" are not forward-looking. *Id.* at 1191. Many of Defendants'

---

[3] Defendants' argument that the bespeaks caution doctrine protects them fails for the same reasons. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 948 (9th Cir. 2005) (bespeaks caution doctrine inapplicable "to statements of historical fact").

Case No. 2.24-cv-04566-CBM-PVC
LEAD PLAINTIFFS' MEMORANDM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

1  statements here contained such "express or implied" assertions concerning "current or past

2  facts". *See id*; *supra* 6-8; Plaintiffs' Appendix.[4]

3      Second, to the extent the Court considers any of Defendants' statements purely

4  forward-looking, those statements are nonetheless actionable because they were not

5  accompanied by "meaningful cautionary language", *i.e.*, language that "precise[ly] and

6  directly address the [] misrepresentations" and "discredit[s] [them] so [] the risk of real

7  deception drops to nil.'" *In re QuantumScape Sec. Class Action Litig*., 580 F. Supp. 3d

8  714, 737 (N.D. Cal. 2022) (discussing risk that has materialized as a "possibility" is

9  misleading, not "meaningful"); *see also Glazer*, 63 F.4th at 781.

10     Defendants make a blanket claim that their "warnings" were sufficient, but that is

11  wrong. Mot. 14-16. Defendants' boilerplate warnings did "not eliminate the risk that" an

12  investor "could have been misled by [] references to the backlog" (*Nikola*, 2023 WL

13  1472852, at *11) and "were not enough to counter [their] more specific professed visibility

14  into [] demand" through 2024. *Murphy v. Precision Castparts Corp.*, 2017 WL 3084274,

15  at *12 (D. Or. June 27, 2017); *El Paso Firemen & Policemen's Pension Fund v. InnovAge

16  Holding Corp*. 709 F. Supp. 3d 1296, 1334 (D. Colo. 2023) (vague disclaimers cannot

17  cure "misinformation"). In sum, Defendants' "warnings" did not come close to reducing

18  to "nil" "the risk of real deception []" concerning Defendants' representations about

19  demand, Backlog, or the Roadmap.  *QuantumScape*, 580 F. Supp. 3d at 737.

20     Significantly, Defendants here did not have to make Guarantees, but "once

21  defendants chose to tout the company's backlog, they were bound to do so" in a manner

22  that wouldn't mislead investors" *Berson,* 527 F.3d at 987; *In re Lucid Grp., Inc. Sec. Litig*.,

23  2024 WL 3745605, at *18 (N.D. Cal. Aug. 8, 2024). Defendants again misplace reliance

24  on *Tesla*. There, the plaintiffs did not challenge "the adequacy of Tesla's cautionary

---

26  [4] Defendants' reliance on *In re Cutera Securities Litigation* fails. That Court noted earnings projections
   – which Plaintiffs do not allege were misleading – were "by definition" forward-looking. 610 F.3d 1103,
27  1111 (9th Cir. 2010).

Case No. 2.24-cv-04566-CBM-PVC
LEAD PLAINTIFFS' MEMORANDM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

statements". 985 F.3d at 1193. Regardless, the warning of "risks of delays" there is irrelevant here because Tesla's plans, unlike here, were not alleged to be based on a fundamentally wrong metric. *Id*. Plaintiffs make that key allegation here and such plans were quintessential to proving Rivian's Fundamentals were sound.

The other "cautionary language" Defendants cite (Mot. 14-15) provides them no shelter either. Defendants claim they "warned" Rivian's statements were "neither promises nor guarantees", that preorders were "cancelable", and that Rivian's ability to manufacture EVs on a large-scale was "unproven" (Mot. 14), but Defendants simultaneously negated those "warnings" by issuing Guarantees about demand and repeatedly stating that the Roadmap, chiefly based on increased production, was on track based on 2023 Guidance figures, not some outlandish number.

Defendants also claim they "warned" Rivian's "pricing decisions" could "negatively" affect demand, production, and profitability, but high inflation and high interest rates were already adversely impacting the EV industry, and causing reduced prices to address softening demand. Defendants repeatedly denied Rivian was negatively impacted by these issues. ¶¶2-5, 53-54. *See Washtenaw Cnty. Emps. Ret. Sys. v. Celera Corp.*, 2012 WL 3835078, at *4 (N.D. Cal. Sept. 4, 2012) ("cautionary statements" inadequate when "some [] potential perils identified have [] been realized"). Further, the risk that Backlog was a fatally flawed basis for demand was ongoing when Defendants made their "warnings". *See supra* 7. Accordingly, Rivian's risk language was not meaningful.

The safe harbor is also inapplicable because Defendants made their statements with actual knowledge that they were false and misleading. *Id*.

### C. Defendants' Statements Were Not Protected Opinions

Again taking a kitchen-sink approach, Defendants claim 26 alleged statements are protected opinions, but that is wrong. In *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 176 (2015), the Supreme Court explained that "[a]

statement of fact expresses certainty about a thing, whereas a statement of opinion conveys only an uncertain view as to that thing." In this context, Defendants' statements here were clearly not opinions.

For example, Defendants incredulously argue the following statement was Scaringe's opinion: "[A]s we think about [industry-wide weakening EV demand], the demand backlog that we have is very robust. It gives us a clear line of sight until well into 2024." ¶164. (Mot. 11). But this was no opinion: Scaringe expressed absolute certainty based on contemporaneous "facts" that "***the demand backlog … is very robust** [and] **it gives us a clear line of sight***" ¶164. His mere use of the word "think" prior to stating these facts does not render this statement an opinion.[5]

Nevertheless, even if the Court treats certain statements here as opinions, opinions are actionable when they contain "embedded statements of fact", convey "facts about how the speaker has formed the opinion", or omit material facts "going to the basis" of the opinion. *Omnicare,* 575 U.S. at 184-88, 196. Thus, even if Scaringe's statement is construed as an opinion, it embedded facts about demand, conveyed that Scaringe formed his opinion by monitoring Backlog, and omitted that Backlog could not inform demand. Thus, Scaringe's statement is actionable either way. The same is true for similar statements. *See* Plaintiffs' Appendix; *Murphy,* 2017 WL 3084274, at *12 ("we now have a clear line of sight to the steady growth" actionable); *DocuSign,* 669 F. Supp. 3d at 880-81 ("[e]ven if any statements about [] demand constitute opinions," they were still misleading).

### D. Defendants' Statements Were Not Puffery

Defendants likewise cannot credibly claim 16 of their statements were mere puffery. "[S]pecific and verifiable" statements are not puffery. *Oh v. Hanmi Fin. Corp.,* 621 F. Supp. 3d 1075, 1087 (C.D. Cal. 2022). Puffery is "generally not capable of

---

[5] Defendants' other purported "opinion" statements fare no better. *See* Plaintiffs' Appendix.

objective verification, and lack[s] a standard against which a reasonable investor could expect them to be pegged." *Knox v. Yingli Green Energy Holding Co. Ltd*., 242 F. Supp. 3d 950, 961 (C.D. Cal. 2017).

Defendants' statements here go far beyond "vague" "feel good" assertions. Mot. 17. For example, Defendants mischaracterize statements like "we have a very clear line of sight through 2024 in terms of demand" and "the demand backlog that we have is very robust" as puffery. These statements are anything but vague optimism; they are specific statements concerning Defendants' knowledge of demand through 2024 that is supposedly supported by objectively verifiable Data (¶¶51-53).[6] *See Murphy*, 2017 WL 3084274, at *12 ("we now have a clear line of sight to the steady growth" not puffery "under the circumstances"); *Fibrogen, Inc.*, 2022 WL 2793032, at *10. Defendants also touted their contemporaneous knowledge of demand, further distancing these statements from generalized corporate optimism. *See supra* 7.

In *Quality Systems,* the Ninth Circuit explained that statements like "[o]ur pipeline is deep" were actionable because they were not "in subjective or emotive terms", but rather provided a "concrete description of the past and present state of the pipeline." 865 F.3d at 1143-44. Likewise, Defendants described the past and present state of the Backlog and demand in concrete terms. *See supra* 8.

Defendants' citations on puffery are inapposite. Unlike here, those cases concerned generalized, unverifiable, corporate optimism. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (company was "in a pretty good position"); *Farhar v. Ontrak, Inc.*, 714 F. Supp. 3d 1198, 1209-10 (C.D. Cal. 2024) (company will "proceed into new heights" puffery because "no objective means to measure a new height"); *Wyatt*, 2020 WL 364324, at *8 (we are "well positioned for 2019"); *Waterford Twp*. *Police & Fire Re. Sys. v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1149

---

[6] Defendants' other purported puffery statements were materially misleading. *See* Plaintiffs' Appendix.

(C.D. Cal. 2018) ("pretty decent shape" not explained "with [] detail that would allow [] investor[s] to rely on these statements").

### III.    PLAINTIFFS ALLEGE A STRONG INFERENCE OF SCIENTER

Plaintiffs adequately allege facts giving rise to a strong inference of scienter. Scienter "means the 'intent to mislead investors' or deliberate recklessness." *Glazer,* 63 F.4th at 765.[7] Courts must analyze scienter allegations "collectively". *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007). The scienter inference "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre.'" *Id.* It must only be "at least as compelling as any opposing inference." *Id.* at 314. Plaintiffs readily satisfy this standard.

#### A. Defendants' Knowledge Supports Scienter

Scienter is satisfied when defendants "bridge the [scienter] gap [] by referencing the data" underlying their misstatements. *Reese*, 747 F.3d at 572 ("[I]t is unclear what further facts plaintiffs would need to plead to create a stronger inference" of scienter). "Scienter can be inferred where a corporate officer states that he or she knew about or was monitoring the subject of the misleading statements". *In re Zillow Grp., Inc. Sec. Litig.*, 2019 WL 1755293, at *19 (W.D. Wash. Apr. 19, 2019); *DocuSign*, 669 F. Supp. 3d at 884 (scienter pled where defendants "made statements [] indicat[ing] [] they closely tracked customer demand data").

Here, Defendants repeatedly assured investors that they monitored the Data "closely" and "daily," and they admittedly and improperly treated the Data as "evidence" of their Guarantees. *See supra* 6. Defendants also repeatedly stated they were intimately familiar with the Backlog, claimed it was singularly resilient to industry-wide macroeconomic pressures, and cited their daily monitoring of the Data to support misstatements about the Roadmap's viability. *Id.*

---

[7] "Deliberate recklessness" is "having reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless fail[ing] to … disclose such facts". *Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014).

17

By "referencing the data" concerning the subject of their misstatements, Defendants "bridge[d] the [scienter] gap". *Reese*, 747 F.3d at 572. Thus, Plaintiffs adequately allege Defendants knew they had no credible basis to make the Guarantees, and, as such, to claim Rivian was on track to prove its Fundamentals. *See supra* 7-8. These allegations remove this case from Defendants' authority, where plaintiffs alleged no facts "about defendants' actual exposure to information". Mot. 22. Defendants here knew Backlog was not a proxy for demand, and knew they were basing their statements on misinformation and unreliable and undisclosed metrics. *See Twitter*, 282 F. Supp. 3d at 1143; *El Paso*, 709 F. Supp. 3d at 1334 (vague disclaimers cannot cure "misinformation").

Defendants' regular colloquies with analysts (¶¶219-221), where Defendants answered pointed questions about the ever-important Roadmap, production ramp, support for Defendants' confidence in demand, and Backlog, further support scienter. *In re Finisar Corp. Sec. Litig.*, 2017 WL 1549485, at *7 (N.D. Cal. May 1, 2017) (analysts' "substantial interest" in topic caused "any statement" on topic to be "of significant []importance"); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1259-60 (W.D. Wash. 2009) (responses to "direct questioning" "allows the Court to infer scienter"); *Longo v. OSI Sys.,* 2021 WL 1232678, at *9-10 (C.D. Cal. Mar. 31, 2021) (same).

The temporal proximity between Defendants' reaffirmations of strong demand in November 2022 and 2023 (¶¶152, 202-206), shortly before Defendants' revelations in February 2023 and 2024, respectively, further supports scienter. *See Berson*, 527 F.3d at 988, n.5 ("temporal proximity" bolsters scienter).

Defendants' admitted monitoring of the Data, knowledge of the disconnect between Backlog and demand, repeated on-point discussions with analysts, and temporal proximity, support a strong inference of scienter.

**B. Two Suspiciously-Timed Bond Offerings Support Scienter**

The uncanny timing of Rivian's capital raises during "the period of the alleged misrepresentations" further supports scienter. *In re QuantumScape Sec. Litig.*, 580 F.

Supp. 3d 714, 741 (N.D. Cal. 2022). Capital raises are particularly suspect when funds are needed to stay in business. *See In re Portal Software, Inc. Sec. Litig.*, 2005 WL 1910923, at \*12 (N.D. Cal. Aug. 10, 2005) (motive to "obtain much-needed capital" supported scienter); *In re Ibis Tech. Secs. Litig.*, 422 F. Supp. 2d 294, 317 (D. Mass. 2006) (capital raise that was "necessary to ensure that [company] would not run out of cash" supported scienter).

Rivian needed constant influxes of cash to support its multi-billion-dollar-per-quarter cash burn. ¶¶227-231. On March 10, 2023, one week after the Leaked Figure, Rivian leveraged the market's optimism and raised $1.5 billion. ¶¶78-79. On October 11, 2023, shortly after modestly increasing 2023 Guidance and providing further optimism for the Roadmap, and four months before revealing the truth, Rivian raised another $1.725 billion. ¶¶109-110. These multi-billion-dollar "infusion[s] of cash" when Defendants knew Rivian "was in a desperate financial situation" are not mere "routine corporate objectives" (Mot. 20), and support scienter. *Abdo v. Fitzsimmons*, 2021 WL 616324, at \*13 (N.D. Cal. Feb. 17, 2021).

Defendants' cases (Mot. 20) are easily distinguishable. *See Solarcity Corp.*, 884 F.3d at 856 (not suspiciously-timed); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) (no desperate need of cash); *Arrowhead*, 2016 WL 6562066, at \*9 (same); *Paddock v. Dreamworks Animation SKG, Inc.*, 2015 WL 12711653, at \*11 (C.D. Cal. Apr. 1, 2015) (same).

**C. Four Suspicious Resignations Support Scienter**

Executive departures under "suspicious circumstances", like here, support scienter. *Fibrogen*, 2022 WL 2793032, at \*25 ("abrupt resignation tends to support scienter"); *In re Impax Labs, Inc. Sec. Litig.*, 2007 WL 7022753, at \*9 (N.D. Cal. July 18, 2007) (resignations "add one more piece to the scienter puzzle").

Four executives in departments relating to the alleged fraud (Growth, Operations, and Finance) abruptly resigned at suspicious times. ¶¶222-226. The Chief Growth Officer

resigned at the pivotal moment between the two disclosures, and three more executives (including the COO and Chief Accounting Officer) resigned shortly after Defendants revealed Rivian would no longer rely on increased production to get to profitability. *Id.*

Defendants wrongly address these allegations in isolation (*Tellabs*, 551 U.S. at 322-23) and claim they are mere "conjecture". Mot. 19. Not so. The AC's allegations of high and suspiciously-timed executive turnover in departments related to the fraud provide "sufficient information" to support these resignations were "suspicious", not "benign". *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2019 WL 4859099, at *5 (N.D. Cal. Oct. 2, 2019) (multiple suspicious resignations "contributes to scienter").[8]

Rivian's string of executive resignations, viewed holistically, support a strong inference of scienter.

## D. Defendants' Compensation Supports Scienter

Exorbitant compensation supports scienter when, like here, "compensation from stock [] far outstrip[s] base salaries." *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 603 (N.D. Cal. 2019); *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *19 (C.D. Cal. Oct. 1, 2013) (same). Here, Scaringe's $13.99 million compensation in 2023 was 5% salary and 95% stock and options. ¶235. McDonough's $4.86 million in compensation in 2023 was 10% salary and 90% stock and options. *Id*. With almost all their compensation in Rivian securities, Defendants had a clear motive to artificially inflate them.

Defendants' claim that these allegations are too "generalized" (Mot. 20) fails. If Rivian did not stop its cash burn, and went bankrupt, Rivian securities would be worthless,

---

[8] Defendants' authority is factually distinct. *M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 WL 5635424, at *13 (C.D. Cal. Aug. 20, 2017) (plaintiffs "speculate[d]" one resignation was driven by "a change of heart about making misrepresentations"; stronger inference was "mismanage[ment]").

causing Defendants to lose 90-95% of their compensation.[9] Defendants also claim holding stock undermines scienter, but there "are several explanations for why [a defendant] would not sell stock even if she knew about alleged fraud [], such as [] avoid[ing] the market's attention to the problem." *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1044 (N.D. Cal. 2016). Defendants needed to instill confidence in Rivian to continue to fund operations, and unloading shares would only hurt this cause. Finally, Defendants contend there are no allegations comparing Class Period to pre-Class Period compensation (Mot. 21), but Defendants ignore that because Rivian went public the year before the Class Period started, and corporate executives invariably receive huge stock packages in IPOs, such a comparison is meaningless here.[10]

### E.  Scaringe's Founder-Status Supports Scienter

As Rivian's founder, Scaringe was singularly motivated to demonstrate Rivian's Fundamentals to keep his company in business. *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1044 (9th Cir. 2011) (scienter bolstered by founder's unique motivation to "keep [company] afloat"). Defendants do not dispute this contributes to a strong inference of scienter.

### F.  An Inference of Scienter Is Stronger Than Innocence

When considered "holistically" (*Tellabs*, 551 U.S. at 324-26), Plaintiffs allege facts supporting an inference of scienter stronger than any competing inference:

- Defendants "closely" and "daily" monitored the Data (*supra* 6);
- Defendants knew Backlog did not equate to demand (*id.*);
- Defendants guaranteed "clear visibility" into demand (¶216);
- Defendants repeatedly discussed the Roadmap, Backlog, and demand with analysts (¶¶219-221);
- The temporal proximity between Defendants' misstatements and the corrective disclosures (*supra* 18);

---

[9] Defendants' reliance on *Zucco Partners, LLC v. Digimarc Corp.*, fails. That case concerned only a "bare assertion that bonuses were 'based in part' on financial performance." 552 F.3d 981, 1005 (9th Cir. 2009).

[10] Regardless, Defendants' pre-Class Period compensation is incorporated by reference in Defendants' Ex. 1, at 92 (ECF No. 66-4).

- Defendants raised billions through suspiciously-timed offerings (¶¶227-231);
- Four senior executives in highly relevant positions resigned at suspicious times (¶¶222-226);
- 90%-95% of Defendants' compensation was in Rivian securities (¶235);
- Defendant Scaringe was singularly motivated as Rivian's founder (¶¶232-234); and
- Defendants were motivated to convince the market that Rivian's Fundamentals would be sound by 2024 (*supra* 1-2).

Defendants claim the inference that Rivian's "production ramp slowed" to improve "manufacturing lines" and "adapt" to macroeconomic conditions (Mot. 22) is stronger than one of scienter. Wrong. Defendants' purported inference directly contradicts the facts. When Rivian announced it was decreasing production in 2024, Defendants explained this was because demand was "negatively impacted", largely by Backlog "cancellations" *i.e.*, weakened demand; thus, Rivian would not prove its Fundamentals in 2024. ¶244. Analysts' reaction shows the market's surprise. ¶126. And the "improvements to manufacturing lines" were disclosed well before Rivian's February 2024 disclosure – they are not causally related as Defendants suggest. ¶162. Also, Defendants represented that Rivian was unscathed by macroeconomic pressures, making the need to adapt to them suddenly in February 2024 a decidedly weak inference. In addition, after the February 21, 2024 disclosure, Defendants pivoted and tried to prop-up Rivian's profit story by selling $300 million in regulatory credits (¶134) – which has nothing to do with the Fundamentals. This further supports an inference that Defendants were motivated to do anything to keep the Roadmap alive, including mislead the market.

Defendants argue that the allegations "make no sense" (Mot. 21), but courts routinely reject Defendants' assertions that the theory is "illogical." *See Skiadas v. Acer Therapeutics Inc*., 2020 WL 4208442 (S.D.N.Y. July 21, 2020) (collecting cases).

Accordingly, the scienter inference is stronger than the inference of innocence.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.[11] If the Court grants any part of the Motion, Plaintiffs respectfully request leave to amend. *See Livid Holding*, 416 F.3d at 946.

Dated: February 4, 2025          Respectfully submitted,

                                    THE BURKE LAW FIRM

                                    */s/ Timothy J. Burke*
                                    Timothy J. Burke (SBN #181866)
                                    1001 Wilshire Drive, #2187
                                    Los Angeles, CA 90017
                                    (302) 984-7199 (phone)
                                    (302) 602-6589 (fax)
                                    tim.burke@burke-law-firm.com

                                    *Liaison Counsel for Lead Plaintiffs and the Proposed Class*

                                    BERNSTEIN LIEBHARD LLP
                                    Laurence J. Hasson
                                    Joseph R. Seidman, Jr.
                                    Jeffrey McEachern
                                    10 East 40th Street
                                    New York, NY  10016
                                    (212) 779-1414 (phone)
                                    (212) 779-3218 (fax)
                                    lhasson@bernlieb.com
                                    seidman@bernlieb.com
                                    jmceachern@bernlieb.com

                                    *Lead Counsel for Lead Plaintiffs and the Proposed Class*

---

[11] Because Plaintiffs allege a violation of §10(b), Plaintiffs state a §20(a) claim. 15 U.S.C. § 78t(a).

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1.


Dated: February 4, 2025


/s/ Timothy J. Burke
Timothy J. Burke

00827420;V1