JORDAN ETH (CA SBN 121617)
JEth@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
HANNA M. LAURITZEN (CA SBN 339895)
HLauritzen@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  415.268.7000
Facsimile:   415.268.7522

*Attorneys for Defendants*
RIVIAN AUTOMOTIVE, INC., ROBERT J.
SCARINGE, and CLAIRE MCDONOUGH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>       v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, and CLAIRE MCDONOUGH,<br><br>       Defendants. | Case No. 2:24-cv-04566-CBM-PVC<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFFS' AMENDED COMPLAINT**<br><br>Date: March 25, 2025<br>Time: 10:00 a.m.<br>Courtroom: 8D<br>Judge: Hon. Consuelo B. Marshall<br><br>Action Filed:  May 31, 2024<br>Trial Date:  None set |

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION .................................................................................................. 1

I.  PLAINTIFFS MISSTATE THE PLEADING STANDARD. ......................... 2

II. PLAINTIFFS FAIL TO PLEAD A MATERIALLY FALSE OR
    MISLEADING STATEMENT. .................................................................... 2

    A.  Plaintiffs do not plead with particularity that any challenged statement
    was materially false or misleading when made. ..................................... 2

        1.  Plaintiffs lack contemporaneous facts showing falsity. .............. 2

        2.  Plaintiffs fail to plead falsity of the opinion statements. ............ 5

        3.  Plaintiffs' attacks on the risk factor disclosures fail.................... 5

    B.  The forward-looking statements are not actionable.............................. 6

    C.  The statements of corporate optimism are not actionable. ................... 7

III. PLAINTIFFS FAIL TO PLEAD A STRONG
     INFERENCE OF SCIENTER.................................................................... 8

    A.  The resignations do not support any inference of scienter. .................. 9

    B.  The bond offerings do not support any inference of scienter. .............. 9

    C.  Plaintiffs do not allege a financial motive for fraud. .......................... 10

    D.  Plaintiffs lack a cogent and compelling theory of fraud...................... 10

CONCLUSION.................................................................................................... 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdo v. Fitzsimmons*,
   Nos. 17-CV-00851-TSH, 17-CV-01232-TSH, 2021 WL 616324
   (N.D. Cal. Feb. 17, 2021) ........................................................................ 9

*Atlas v. Accredited Home Lenders Holding Co.*,
   556 F. Supp. 2d 1142 (S.D. Cal. 2008) ................................................... 3

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) ................................................................... 8

*Borteanu v. Nikola Corp.*,
   No. CV-20-01797-PHX-SPL, 2023 WL 1472852 (D. Ariz. Feb. 2,
   2023) ..................................................................................................... 3-4, 7

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align
   Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ................................................................... 5

*In re Cloudera, Inc. Sec. Litig*,
   121 F.4th 1180 (9th Cir. 2024) ............................................................... 1

*Evanston Police Pension Fund v. McKesson Corp.*,
   411 F. Supp. 3d 580 (N.D. Cal. 2019) .................................................. 10

*Farrar v. Workhorse Grp., Inc.*,
   No. CV 21-02072-CJC (PVCx), 2021 WL 5768479 (C.D. Cal. Dec.
   2, 2021) ................................................................................................... 4

*In re Fibrogen, Inc. Sec. Litig.*,
   No. 21-CV-02623-EMC, 2022 WL 2793032 (N.D. Cal. July 15,
   2022) .................................................................................................... 3, 9

*In re Finisar Corp. Sec. Litig.*,
   No. 5:11-CV-01252-EJD, 2017 WL 1549485 (N.D. Cal. May 1,
   2017) ....................................................................................................... 8

*In re Ibis Tech. Secs. Litig.*,
   422 F. Supp. 2d 294 (D. Mass. 2006) ..................................................... 9

*In re Impax Labs, Inc. Sec. Litig.*,
No. C 04-04802 JW, 2007 WL 7022753 (N.D. Cal. July 18, 2007)...................9

*Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*,
743 F. Supp. 3d 1083 (D. Ariz. 2024)........................................................4

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002).............................................................9-10

*Longo v. OSI Sys., Inc.*,
No. CV 17-8841 FMO (SKx), 2021 WL 1232678 (C.D. Cal. Mar.
31, 2021)........................................................................................8

*Murphy v. Precision Castparts Corp.*,
No. 3:16-CV-00521-SB, 2021 WL 2080016 (D. Or. May 24, 2021).................6

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020).................................................................10

*In re Nielsen Holdings PLC Sec. Litig.*,
510 F. Supp. 3d 217 (S.D.N.Y. 2021).......................................................3

*In re Plantronics, Inc. Sec. Litig.*,
No. 19-CV-07481-JST, 2022 WL 3653333 (N.D. Cal. Aug. 17,
2022)..............................................................................................4

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014)................................................................1

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2005 WL 1910923 (N.D. Cal. Aug. 10,
2005)..............................................................................................9

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017)..............................................................4-7

*In re QuantumScape Sec. Class Action Litig.*,
580 F. Supp. 3d 714 (N.D. Cal. 2022)......................................................7

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014)..................................................................8

*In re Rigel Pharm., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012)................................................................10

*Ronconi v. Larkin,*
    253 F.3d 423 (9th Cir. 2001) ................................................................. 1

*S. Ferry LP #2 v. Killinger,*
    687 F. Supp. 2d 1248 (W.D. Wash. 2009) ............................................. 8

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.,*
    732 F. Supp. 3d 300 (S.D.N.Y. 2024) ................................................... 4

*SEB Inv. Mgmt. AB v. Symantec Corp.,*
    No. C 18-02902 WHA, 2019 WL 4859099 (N.D. Cal. Oct. 2, 2019) ............... 9

*Shenwick v. Twitter, Inc.,*
    282 F. Supp. 3d 1115 (N.D. Cal. 2017) ................................................. 2

*In re Sorrento Therapeutics, Inc. Sec. Litig.,*
    97 F.4th 634 (9th Cir. 2024) .............................................................. 10

*Stadium Cap. LLC v. Co-Diagnostics, Inc.,*
    No. 22-CV-6978 (AS), 2024 WL 456745 (S.D.N.Y. Feb. 5, 2024) ............... 4

*In re Vantive Corp. Sec. Litig.,*
    283 F.3d 1079 (9th Cir. 2002) ............................................................. 1

*Weston v. DocuSign, Inc.,*
    669 F. Supp. 3d 849 (N.D. Cal. 2023) ................................................... 3

*Wochos v. Tesla, Inc.,*
    985 F.3d 1180 (9th Cir. 2021) .......................................................... 1, 6

*Zucco Partners, LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. 2009) ............................................................... 9

**Statutes**

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*:
    §10, 15 U.S.C. § 78j(b) ..................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 8 ..................................................................................... 2

Fed. R. Civ. P. 9 ................................................................................. 1-2

# INTRODUCTION

Plaintiffs' Opposition pretends that the "stringent" pleading standards of the Reform Act and Rule 9(b) do not exist, as Plaintiffs argue, for example, that they do not need to plead facts to support their claims because Rivian's statements were "*per se* misleading." Decades of Ninth Circuit decisions—*Vantive*, *Ronconi*, *Intuitive Surgical*, *Tesla*, *Cloudera*, and many others—say the opposite: Plaintiffs must plead particularized contemporaneous facts showing that the challenged statements were false or misleading when made. The Complaint flunks the test. There are no confidential witnesses. No descriptions of internal reports, meetings, or metrics contradicting the challenged statements. Nothing showing what Defendants knew and when they knew it. Plaintiffs repeatedly reference made-up defined terms—"the Data" and "the Backlog"—but fail to identify what "the Data" showed at any point in the Class Period, much less how it "directly contradicted" the challenged statements. Plaintiffs also argue that any reference to "the Backlog" was misleading, but Plaintiffs fail to cite any facts showing that pre-orders were "not indicative" of demand. That failure is unsurprising, as it is undisputed that Rivian fulfilled tens of thousands of customer pre-orders during the Class Period.

Plaintiffs also argue that the Reform Act's Safe Harbor for forward-looking statements does not apply because Rivian made "Guarantees" (another made-up term) based on current conditions, not projections. Plaintiffs' repetition of the word cannot rewrite Rivian's statements or the Complaint—"guarantee" does not appear a single time in either. In any event, on-point Ninth Circuit authority (*Tesla*) rejects this argument because any projection "*necessarily* reflects an implicit assertion that the goal is achievable based on current circumstances."

Moreover, the absence of a coherent theory of fraud or any alleged personal financial benefit reinforces Plaintiffs' failure to plead a "strong inference" of scienter. The Ninth Circuit has repeatedly affirmed dismissal of complaints, like this one, that lack these critical elements. The Complaint should be dismissed.

## I.    PLAINTIFFS MISSTATE THE PLEADING STANDARD.

Plaintiffs suggest that the pleading standards of Rule 8 apply to this Motion. (Opp. at 5-6.)  But as the Motion showed, Plaintiffs must also meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the even "more exacting pleading requirements" of the Reform Act.  These "stringent" standards require that the Complaint "plead with particularity both falsity and scienter."  (Mot. at 5-6.)

## II.    PLAINTIFFS FAIL TO PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT.

### A.    Plaintiffs do not plead with particularity that any challenged statement was materially false or misleading when made.

#### 1.    Plaintiffs lack contemporaneous facts showing falsity.

Plaintiffs concede that falsity turns on "what [Defendants] knew at the time" the challenged statements were made.  (Opp. at 6.)  Plaintiffs, however, fail to identify *any* contemporaneous factual allegations supporting their falsity theory. Plaintiffs repeatedly assert that Defendants "had access to the Data," but nowhere identify what "the Data" showed or how it "directly contradict[ed]" the challenged statements.  (Mot. at 7.)  Plaintiffs' conclusory assertions that Rivian's backlog "did not. . . support[] ramping production" or "equate[] to strong demand" (Opp. at 6-7) are likewise unsupported by particularized facts.  Plaintiffs fail to allege what "the Backlog" showed at any point of the Class Period, how it changed over time, or how it was inconsistent with the challenged statements.  Rather than offer particularized facts, Plaintiffs present five flawed arguments, each of which fails.

Plaintiffs first argue that the challenged statements are "*per se* misleading" because demand weakened at the end of the Class Period. (Opp. at 7:11-12.)  This is the exact type of fraud-by-hindsight pleading outlawed by the Reform Act thirty years ago. (Mot. at 10.)  Plaintiffs identify no facts showing the "contemporaneous contradictory knowledge" they concede is required.  (Opp. at 10.)

Plaintiffs' cases show what is missing.  In *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1137, 1143 (N.D. Cal. 2017), the court found statements that the

company's engagement metrics had "already turned around" misleading based on particularized allegations that Twitter's "primary" metric had declined.  In *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 879-82 (N.D. Cal. 2023), CWs established "lagging internal metrics" and a "decline in product usage and higher churn rate." Plaintiffs here identify no metrics or other contradictory information of any kind.[1]

Second, Plaintiffs argue that courts have found statements "equating backlog with demand actionable" and that falsity is established here because Rivian's backlog was "disconnected" from demand, rendering the statements "*per se* misleading regardless of actual Backlog figures." (Opp. at 8-10.)  But nowhere do Plaintiffs allege particularized facts showing that Rivian's backlog was "disconnected" from demand.  There is no dispute that pre-orders required a $1,000 customer deposit and that Rivian delivered tens of thousands of EVs to fulfill customer pre-orders (and meet its production guidance) in 2023.  (Mot. at 2-4.)

*Borteanu v. Nikola Corp.*, 2023 WL 1472852, at *10-11 (D. Ariz. Feb. 2, 2023), does not help Plaintiffs.  There, the defendants "touted" a "backlog" of pre-orders "representing $10 billion in potential revenue."  The court found the statements misleading because the company "***had never produced even a single consumer-ready***" vehicle, and the revenue estimate assumed that the company would "succeed in developing" its product when defendants knew "***commercial viability was not achievable***."  The CEO also made "***repeated public assertions that the reservations were binding***" despite their being cancellable.  *Id.*

Third, Plaintiffs argue that they are not required to allege "internal reports, metrics, or confidential witnesses." (Opp. at 8-9.)  Some cases survive a motion to

---

[1] *See also In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 237 (S.D.N.Y. 2021) (statement that regulatory changes were a "non-event" contradicted by allegation that "120 [advertising] campaigns were abruptly shut off" after regulatory changes); *In re Fibrogen, Inc. Sec. Litig.*, 2022 WL 2793032, at *13 (N.D. Cal. July 15, 2022) (pharmaceutical company allegedly "manipulated [drug's] clinical trial data" discussed with investors); *Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1151-52 (S.D. Cal. 2008) (allegations that defendants "manipulated" accounting to "inflate[]" "net income by $19.13 million").

dismiss without all three, but the Complaint here contains no particularized facts from any source.  In *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 310-13 (S.D.N.Y. 2024), the complaint cited the company's internal investigation that found that the company had employed "incorrect accounting. . . related to its sales returns" and "faulted senior leadership." Similarly, in *In re Plantronics, Inc. Sec. Litig.*, 2022 WL 3653333, at *11-12 (N.D. Cal. Aug. 17, 2022), the complaint cited CWs who established undisclosed channel stuffing and that defendants knew distributors were "carrying too much inventory."[2]

Fourth, Plaintiffs argue that Rivian's disclosures addressing risks and uncertainties were "generic" and "buried in SEC filings."  (Opp. at 10-11.) Plaintiffs, however, fail to allege with particularity any contemporaneous facts omitted from these disclosures that would render them materially misleading.  And far from being "boilerplate," Rivian's disclosures were detailed and specific, including explaining that "[b]ecause all of our preorders are cancellable, it is possible that a significant number of customers who submitted preorders for our vehicles may not purchase vehicles."  (Mot. at 9-10; *see* Ex. 1 at 17.)

The cases Plaintiffs cite bear no resemblance to the facts alleged here.  In *Nikola*, the company's CEO directly contradicted the company's risk factor disclosures by making "repeated public assertions that the reservations were binding," when they were not.  Similarly, in *Farrar v. Workhorse Grp., Inc.*, 2021 WL 5768479, at *5 (C.D. Cal. Dec. 2, 2021), the defendants represented that they "had 1,060 units on order that [they were] beginning to deliver" when the company, in fact, "did not have the capacity to produce that many vehicles," the customer "had not actually requested delivery of the vehicles," and the defendants knew it

---

[2] *See also Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, at *2-3 (S.D.N.Y. Feb. 5, 2024) (statement that there was "not necessarily a demand issue" actionable where sales had decreased *75%* in the quarter in which the statement was made); *Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 743 F. Supp. 3d 1083, 1106 (D. Ariz. 2024) (undisclosed "trend" shown by pleading decline in other metrics that "moved practically in lockstep").

was "unlikely that [the customer] would take delivery." *Id.* And in *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130 (9th Cir. 2017), the court found the risk factor disclosures insufficient because the company had affirmatively misstated its sales pipeline. *Id.* at 1147.

Finally, Plaintiffs' arguments about an alleged "leaked" higher 2024 production estimate (Opp. at 11) ignore Ninth Circuit law holding that defendants are liable for a projection published by a third party only where they put their "imprimatur, express or implied, on the projections." (Mot. at 8-9.) Plaintiffs ignore their own allegations showing that Rivian did not endorse the "leaked" figure or any other production forecasts from analysts and, instead, immediately and repeatedly ***reaffirmed*** its (lower) disclosed production guidance. (¶¶ 77, 87.) On this ground alone, Plaintiffs state no claim based on the challenged statements.

### 2.    Plaintiffs fail to plead falsity of the opinion statements.

Plaintiffs also fail to show the falsity of the twenty-six challenged opinion statements. (Mot. at 11-12.) Plaintiffs assert that the statements are facts, not opinions, but fail to explain how statements describing customer demand as "robust" or the anticipated state of demand in the future express a verifiable "fact."

Plaintiffs argue, in the alternative, that the statements contain "embedded statements of fact," convey "facts about how the speaker has formed the opinion," or "omit material facts" going to the basis for the opinions. (Opp. at 15.) Plaintiffs cite no factual allegations supporting these assertions. Plaintiffs' conclusory assertion that "the Backlog could not inform demand" is not enough. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017) (rejecting "conclusion based on [plaintiff's] belief that no set of reasonable assumptions could support" defendants' opinion).

### 3.    Plaintiffs' attacks on the risk factor disclosures fail.

Plaintiffs do not address Defendants' arguments with respect to the four challenged risk factor statements. (Mot. at 12-13; Stmts. 9, 18, 25, 31.) Because

1  there are no particularized allegations that Rivian warned of "hypothetical" risks
2  that had "already come to fruition," Plaintiffs' attacks on these statements fail.

3  **B.    The forward-looking statements are not actionable.**

4  The Motion showed that twenty-three of the thirty-two challenged statements
5  are forward-looking statements protected by the Reform Act's Safe Harbor
6  provision and the bespeaks-caution doctrine.  (Mot. at 13-17.)  Plaintiffs deny the
7  Safe Harbor applies, arguing that the statements are "undeniably mixed
8  statements," because the projections were prefaced by present tense language like
9  "as we sit here today" and "we've watched the demand." (Opp. at 12.)

10  The Ninth Circuit rejected the same argument in *Tesla*.  The plaintiff in *Tesla*
11  also argued that the challenged statements were not "purely forward-looking" (Opp.
12  at 12) because they included present tense language like "as far as we know, there
13  are no issues" and we "remain on track" when reaffirming Tesla's production goals.
14  985 F.3d at 1191-92.  The Ninth Circuit found the statements forward-looking and
15  affirmed dismissal, explaining that "[b]ecause any announced 'objective' for 'future
16  operations' *necessarily* reflects an implicit assertion that the goal is achievable
17  based on current circumstances . . . a simple statement that a company knows of no
18  issues that would make a goal impossible to achieve" is merely an alternative way
19  "of declaring or reaffirming the objective itself."  *Id.*  This holding applies to
20  Rivian's statements here.  In contrast, in *Quality Systems*, the plaintiffs challenged
21  separable statements of "concrete" historical facts, such as that the sales pipeline
22  was "growing," when CW allegations showed that the sales pipeline "had been
23  declining" before the statements were made.  865 F.3d at 1144; *Tesla*, 985 F.3d at
24  1191-92 (distinguishing *Quality Systems* on this ground). *Murphy v. Precision*
25  *Castparts Corp.*, cited by Plaintiffs, illustrates the analysis.  There, the court
26  applied *Tesla* and *Quality Systems* and found the defendants' statements that
27  "nothing has gone negative," "there is no change to the . . . [earnings growth]
28  framework we laid out," and "the framework . . . is all intact" to be protected by the

1    Safe Harbor.  2021 WL 2080016, at *2-5 (D. Or. May 24, 2021).

2           Plaintiffs' arguments that Rivian's forward-looking statements were not

3    accompanied by "meaningful cautionary language" also fail.  Rivian's disclosures

4    were "detailed and specific" (Mot. at 14-15), and there are no particularized

5    contemporaneous facts alleged showing that Rivian's risk factors were misleading

6    or were contradicted in other public statements.  *See Nikola*, 2023 WL 1472852, at

7    *11 (risk factors disclosed pre-orders were cancelable, but CEO made "repeated

8    public assertions that the reservations were binding").  This case is, therefore,

9    nothing like *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d 714, 738

10   (N.D. Cal. 2022), where the court found the company's risk factors misleading

11   because they did not disclose that its product "did not . . . function as promised."

12          Plaintiffs also fail to rebut Defendants' showing that the statements are

13   independently protected under the Safe Harbor's second prong because Plaintiffs do

14   not allege with particularity that Defendants had "***actual knowledge***" of falsity.

15   (Mot. at 15.)  The Opposition—like the Complaint—identifies no facts about how

16   Rivian's projections were developed or what assumptions were made, much less

17   anything showing that the Individual Defendants ***knew*** they were unachievable.

18          **C.      The statements of corporate optimism are not actionable.**

19          Defendants identified sixteen statements that are non-actionable statements

20   of optimism.  (Mot. at 17-18.)  Plaintiffs do not grapple with the actual statements

21   Rivian made and, instead, make conclusory assertions that the statements were

22   "specific statements concerning Defendants' knowledge of demand."  (Opp. at 16.)

23   Plaintiffs do not explain how words like "strong," "robust," "bullish," or "clear"

24   provide any "objectively verifiable" information.  Plaintiffs again rely on *Quality*

25   *Systems*, but the statements there were "concrete" and "verifiable" descriptions that

26   the company's sales pipeline was "unchanged, or even growing, compared to

27   previous quarters," and the complaint cited particularized allegations from

28   numerous confidential witnesses showing that the opposite was true.  *Id.* at 1144.

### III.    PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER.

Plaintiffs' Section 10(b) claim fails for the additional, independent reason that Plaintiffs fail to plead "with particularity facts giving rise to a strong inference" of an "intent to deceive, manipulate, or defraud."  (Mot. at 18-22.)

Plaintiffs identify no particularized factual allegations showing what Defendants knew at the time the challenged statements were made and concede that the Complaint lacks allegations of specific meetings, reports, or data reviewed by the Defendants.  Like the Complaint, the Opposition does not cite a single contemporaneous fact known to Defendants that was inconsistent with the Company's projections or statements regarding customer demand.  (Mot. at 18-19.)

Plaintiffs assert particularized allegations are unnecessary here because they have "bridged the scienter gap" by alleging that the challenged statements referenced data regarding demand for Rivian's products.  (Opp. at 17-18.)  What does that mean?  What did that data show?  When did it show it?  Who reviewed it and how did the data contradict the challenged statements?  Plaintiffs have no answers for these fundamental questions that are essential to meeting their burden.[3]

*Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014), proves Defendants' point.  The plaintiffs there alleged that contemporaneous data showing "objectively high corrosion rates" in the defendants' oil pipelines contradicted the defendants' statements.  They cited the results of investigations and a ***criminal guilty plea*** showing that the company ignored "red flags" in the corrosion data before one of the largest oil spills in history.  *Id.* at 566, 570-71.  There is nothing like that here.[4]

---

[3] Plaintiffs' "temporal proximity" argument also fails.  This is not a case, like *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 988 n.5 (9th Cir. 2008), involving an allegedly misstated historical financial metric and a correction of that metric days or weeks later.

[4] Plaintiffs' cases about "colloquies with analysts" included factual allegations contradicting the challenged statements.  *In re Finisar Corp. Sec. Litig.*, 2017 WL 1549485, at *7 (N.D. Cal. May 1, 2017) (contradictory information "discussed by Defendants during annual client negotiations"); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248 (W.D. Wash. 2009) (facts showing "inaccurate reporting of data critical to hedging operations"); *Longo v. OSI Sys., Inc.*, 2021 WL 1232678, at *2, *5, *9 (C.D. Cal. Mar. 31, 2021) (facts showing contract "was obtained through corruption").

**A.    The resignations do not support any inference of scienter.**

Plaintiffs insist that the resignations of ***non-defendant*** executives show scienter because those individuals were "in departments" relating to "growth, operations, and finance." (Opp. at 19-20.) That conclusory assertion fails under the authorities cited in the Motion, which require that Plaintiffs "allege sufficient information to differentiate between a suspicious change in personnel and a benign one." (Mot. at 19, citing *Zucco*, 552 F.3d at 1002.) Plaintiffs ignore *Zucco*, and the cases they cite are inapposite, as each involved the resignation of an individual defendant. *In re Impax Labs, Inc. Sec. Litig.*, 2007 WL 7022753, at *9-10 (N.D. Cal. July 18, 2007); *SEB Inv. Mgmt. AB v. Symantec Corp.*, 2019 WL 4859099, at *4 (N.D. Cal. Oct. 2, 2019); *Fibrogen*, 2022 WL 2793032, at *25.

**B.    The bond offerings do not support any inference of scienter.**

Plaintiffs argue that the numerous cases cited in the Motion holding that "routine corporate objectives such as the desire to obtain good financing" do not support an inference of scienter (Mot. at 19-20) are "easily distinguishable" because Rivian was "in a desperate financial situation." (Opp. at 19.) But all that Plaintiffs allege is that Rivian—like most rapidly growing companies—was "in a perpetual state of raising capital" and was "burning" cash as it rapidly ramped up its production. (*See* ¶ 227-28.) There are no particularized allegations suggesting that Rivian's future as a going concern was threatened or in doubt, much less that it was in a "desperate" financial situation. This case is, therefore, nothing like *In re Portal Software, Inc. Sec. Litig.*, 2005 WL 1910923, at *12 (N.D. Cal. Aug. 10, 2005); *In re Ibis Tech. Secs. Litig.*, 422 F. Supp. 2d 294, 317 (D. Mass. 2006); or *Abdo v. Fitzsimmons*, 2021 WL 616324, at *13, *16 (N.D. Cal. Feb. 17, 2021), which involved companies that were "going broke" and whose ability to "fund ongoing operations" was in doubt.

Moreover, the Ninth Circuit rejected Plaintiffs' argument in *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002), where the plaintiff argued that

the company's efforts to "secure a line of credit" that it needed to "expand" its operations were probative of scienter.  The Ninth Circuit disagreed: "[T]he alleged desires to obtain favorable financing and to expand . . . [are] ordinary and appropriate corporate objectives." *Id.*  That is all Plaintiffs allege here.

### C.    Plaintiffs do not allege a financial motive for fraud.

Plaintiffs concede that the Individual Defendants are not alleged to have engaged in suspicious stock trading during the Class Period.  (Mot. at 19.)  Nevertheless, Plaintiffs argue that because Defendants' stock-based compensation "outstrip[ped]" their base salaries, the Court can infer scienter.  This argument ignores the Ninth Circuit's analysis in *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012).  "Inflating" the stock price would only affect Defendants' finances if they ***sold*** stock at the inflated prices.  Receiving and continuing to hold stock does not support Plaintiffs' theory; it undermines it.[5]  (Mot. at 21.)

### D.    Plaintiffs lack a cogent and compelling theory of fraud.

Plaintiffs offer no theory of fraud, much less one that "makes sense." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020).  Lacking any allegations that Defendants "sought to profit from" the alleged "scheme, such as by selling off their stock or selling the company at a premium," *id.*, Plaintiffs are left with the theory that Defendants were motivated to raise capital to "keep Rivian afloat."  (Opp. at 21.)  That theory has been rejected by the Ninth Circuit:  "This may well have helped [the Company's] efforts to raise capital, but as [Plaintiffs] ha[ve] failed to point to any particular sales or purchases by [the Company] or its officers, there is size no inference of intent to manipulate." *Sorrento*, 97 F.4th at 643.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

---

[5] In *Evanston Police Pension Fund v. McKesson Corp.*, 411 F. Supp. 3d 580, 603 (N.D. Cal. 2019), the court found that incentive-based compensation could provide a motive to manipulate results where the size of the awards was based on the company's financial performance.  There are no allegations here that Rivian's financial performance was manipulated and no allegations that the number of shares or options received depended on Rivian's stock price.  (Mot. at 21.)

1    Dated: February 18, 2025                    MORRISON & FOERSTER LLP

2

3                                               By: */s/ Jordan Eth*

4                                                   Jordan Eth

5                                                   *Attorneys for Defendants*
                                                    RIVIAN AUTOMOTIVE, INC.,
6                                                   ROBERT J. SCARINGE, and
                                                    CLAIRE MCDONOUGH

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2        The undersigned, counsel of record for Defendants Rivian Automotive, Inc.,

3  Robert J. Scaringe, and Claire McDonough, certifies that this brief contains 3,432

4  words, which complies with the word limit of L.R. 11-6, and is ten pages in length,

5  in compliance with § 7(c) of this Court's standing order.

6

7  Dated: February 18, 2025          MORRISON & FOERSTER LLP

8

9                     By: */s/ Jordan Eth*
                                Jordan Eth

10                      *Attorneys for Defendants*
                      RIVIAN AUTOMOTIVE, INC.,
11                      ROBERT J. SCARINGE, and
                      CLAIRE MCDONOUGH
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28