JORDAN ETH (CA SBN 121617)
JEth@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
CHRISTINA E. DIEROLF (CA SBN 335258)
CDierolf@mofo.com
HANNA M. LAURITZEN (CA SBN 339895)
HLauritzen@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522

*Attorneys for Defendants*
RIVIAN AUTOMOTIVE, INC., ROBERT J.
SCARINGE, and CLAIRE MCDONOUGH

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, and CLAIRE MCDONOUGH,<br><br>Defendants. | Case No. 2:24-cv-04566 CBM (JPR)<br><br>**DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT**<br><br>Dept.:  8D<br>Judge:  Hon. Consuelo B. Marshall |

Defendants Rivian Automotive, Inc., Robert J. Scaringe, and Claire McDonough (together "Defendants"), by and through their undersigned counsel, hereby answer and respond as follows to the Lead Plaintiffs' Amended Complaint (the "Amended Complaint") filed by Lead Plaintiffs Kamil Kirio and Nada Badr-Kirio (together "Plaintiffs") in the above-captioned action (the "Action").

Except as expressly admitted herein, Defendants deny each and every allegation set forth in the Amended Complaint. Paragraph numbers in this Answer and the responses contained herein correspond and respond to the allegations in the like-numbered paragraphs of the Amended Complaint. To the extent the paragraphs in the Amended Complaint are grouped under headings and sub-headings, Defendants respond generally that such headings and sub-headings state unsupported legal conclusions as to which no response is required. To the extent a response is necessary, Defendants deny each heading and sub-heading in the Amended Complaint and incorporate by reference this response in each paragraph below as if fully set forth therein.

To the extent Defendants refer the Court to a document for its complete and accurate contents, such an assertion shall not be deemed an admission that the contents of any such document are accurate or complete unless so stated expressly. Any allegations in the Amended Complaint that state a legal conclusion do not require a response and, to the extent that any response is required, such allegations are denied. Defendants generally and specifically deny any averments in the Amended Complaint's unnumbered paragraphs, footnotes, and prayer for relief except as expressly admitted herein, and specifically deny that Plaintiffs are entitled to the relief sought in their Prayer for Relief. Defendants deny any characterizations, including bolding, italics, or paraphrasing of any alleged statement, or any characterization that is not a full and accurate quote of the actual complete statement in context. Defendants reserve the right to amend and/or supplement this Answer.

## I.     NATURE OF THE ACTION[1]

1.      This case is about Rivian, a start-up electric vehicle ("EV") company founded by Defendant Scaringe, racing against time to desperately try and stop its relentless hemorrhaging of cash and prove to the market that it could emerge from its growth phase as a sustainable company based on the fundamentals of its business – producing and selling a high volume of EVs at profit. As Defendants themselves acknowledged in a May 2023 letter to shareholders, "Our long-term success as a business will be determined by our ability to produce high volumes of vehicles profitably."

**Answer:** Defendants admit that Rivian develops and manufactures electric vehicles, and was founded by Robert J. Scaringe ("Dr. Scaringe").  The last sentence of Paragraph 1 purports to characterize and selectively quote certain portions of Rivian's Q1 2023 Shareholder Letter dated May 9, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 1.

2.      Throughout the Class Period, Defendants materially misrepresented that Rivian was on track to achieve gross margin profits in 2024, chiefly by increasing the production and sales of its EVs. Beginning in August 2022, Defendants repeatedly excited the market about Rivian's long-anticipated profit roadmap with data that they "closely watched" "daily" (but did not disclose), which they confidently claimed gave them "clear visibility" into the "strong demand" for Rivian EVs that lasted "deep into 2024". At the same time, Defendants repeatedly reassured the market that Rivian was unscathed by macroeconomic factors impacting the EV industry, which had weakened demand and reduced prices for competitors. When the truth came out that after already disappointing production in 2023, Rivian's production in 2024 would be even worse; the long-touted "strong" and "resilient" demand for Rivian EVs had evaporated and would not last "deep into 2024"; Rivian was, in fact, suffering from the same macroeconomic factors as its peers; and thus Rivian had to change its profit roadmap by materially reducing the role of production, conceding that its fundamentals still could not demonstrate a sustainable business model in 2024, Rivian's stock plummeted, erasing billions of dollars in shareholder value.

**Answer:** Defendants deny the allegations in Paragraph 2.

3.      Since its founding as a private company, Rivian leveraged the hype surrounding its luxury EVs to raise more than $22 billion to fund its operations. But after going public in 2021, investors became acutely aware that Rivian was swiftly

---

[1] Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations in the prefatory paragraph found at page 1, lines 1 through 20, and on that basis deny each and every allegation therein.

burning through cash (on average more than $1 billion+ per quarter) without ever turning a profit. Although Defendant Scaringe openly claimed Rivian's approach was to "underpromise" and "overdeliver", Defendants, unbeknownst to investors, took the very opposite approach when it came to addressing Rivian's profit prospects and viability. To mollify investors' concerns about whether Rivian had a sustainable business model, and, if so, when it would come to fruition, Defendants unveiled a roadmap in August 2022 for the Company to achieve positive gross margin profits by 2024 (the "Roadmap").

**Answer:** Defendants admit that Rivian completed its initial public offering ("IPO") in 2021. The last sentence of Paragraph 3 purports to characterize certain portions of Rivian's Q2 2022 Earnings Conference Call, held on August 11, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 3.

4.    The Roadmap was based on three key drivers: ramping production, reducing costs, and increasing pricing. At all times relevant, Defendants stressed that production was by far the most important driver for Rivian to achieve gross margin profits, accounting for two-thirds of the equation for most of the Class Period and never less than half. Defendants explained that increasing production was vital because it would reduce the costs associated with producing EVs through economies of scale, and allow Rivian to generate more revenue by selling more EVs at higher prices. However, for production to have its desired impact on gross margins, two things had to happen: first, there had to be sufficient demand for Rivian EVs such that the increased production made economic sense at scale; and second, Rivian had to be able to sell the EVs it produced at a profit.

**Answer:** Paragraph 4 purports to characterize and/or paraphrase certain portions of Rivian's Q2 2022 Earnings Conference Call, held on August 11, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 4.

5.    At all times relevant, Defendants materially misrepresented that they had "clear visibility" into the "strong" demand for Rivian EVs which went "deep into 2024" (*i.e.* covering the duration of the Roadmap to profit). More specifically, Defendants told investors with "high confidence" that demand was "strong", "stable", resilient against macroeconomic factors, and supported the Roadmap. In fact, Defendants knew or recklessly disregarded that Rivian did not have a credible basis to claim it had the necessary demand to support the Roadmap. Defendants principally based Rivian's planned production ramp on the Company's backlog of preorders (the "Backlog"), which they admittedly "closely" watched – along with cancellation rates and macroeconomic factors – "daily". Defendants repeatedly

touted Rivian's "really robust" and "growing" Backlog as a proxy for demand, and as a reliable metric which they could confidently deploy when addressing Rivian's progress on the Roadmap. In reality, Rivian's Backlog was merely a highly volatile list of sales leads, comprised of preorders that were fully cancelable at any time and for whatever reason without penalty. Moreover, the approximate two-year wait period that potential buyers spent on the Backlog significantly increased the rate of cancellations. Starting in November 2022, Defendants stopped reporting Rivian's Backlog to the public, and they never reported Rivian's cancellation rates, leaving investors with no choice but to trust that when Defendants confidently spoke about having "clear visibility" into Rivian's "strong" demand through 2024, which they did regularly, they did so based on credible data that they watched closely.

**Answer:** Defendants deny the allegations in Paragraph 5.

6. At all times relevant, Defendants also knew or recklessly disregarded that Rivian was still nowhere near selling its EVs at a profit given, among other things, the extraordinarily high cost of the bill of materials necessary to produce the EVs, regular and ongoing supply-chain issues, and the extraordinary fixed costs associated with operating its large-scale manufacturing facility to produce only a small volume of EVs. Worse, Rivian's Backlog was still materially comprised of early preorders for which the Company had committed to honoring its original low pricing, which was profoundly unprofitable for the Company.

**Answer:** Defendants deny the allegations in Paragraph 6.

7. On February 28, 2023, six months after announcing the Roadmap, Rivian stunned the market by reporting extremely disappointing production guidance of just 50,000 vehicles for 2023, which was 20% less than analysts' consensus of 60,000+, and which raised serious questions about the Roadmap, chiefly based on production ramp. On this news, Rivian's stock price plummeted $3.54 per share – or more than 18% – to close at $15.76 per share on March 1, 2023. Defendants, nevertheless, tempered this bad news about 2023 production volume by affirming that the Roadmap remained fully intact and that the Company was still on track to achieve profit in 2024 based on its fundamentals.

**Answer:** The first sentence of Paragraph 7 purports to characterize and/or paraphrase certain portions of Rivian's Q4 2022 Shareholder Letter dated February 28, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. The second sentence of Paragraph 7 purports to describe the price of Rivian's stock, and Defendants therefore respectfully refer the Court to the publicly available daily closing prices and trading volume information for the price and trading volume of Rivian stock. Defendants otherwise deny the allegations in Paragraph 7.

8.     Days later, on March 3, 2023, a *Bloomberg* article by Ed Ludlow titled *Rivian Tells Staff 62,000 EV Production Possible This Year* – citing an internal source at Rivian who attended an all-hands meeting with executives – reported that the Company was, in fact, internally projecting to produce 62,000 EVs in 2023. This leaked figure was 20% more than what Rivian told the market it would produce in 2023 days prior and was directly in line with what analysts had initially modeled for the Company's Roadmap.

**Answer:**  The first sentence of Paragraph 8 purports to characterize and/or paraphrase an article dated March 3, 2023, published by *Bloomberg* titled *Rivian Tells Staff 62,000 EV Production Possible This Year*, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 8.

9.     Rivian responded to the *Bloomberg* article, but in its response it did not deny that the internal meeting happened or that the leaked figure was real. Instead, Rivian only cryptically stated that it had already issued its guidance for 2023. By not dismissing the leaked figure, Rivian left the market without any clarity on what the true number was for expected 2023 production. Given that Defendant Scaringe openly promoted a culture of underpromising and overdelivering, the leaked figure kept investors optimistic about the Roadmap. Rivian would later modestly increase its 2023 guidance from 50,000 to 52,000 in August 2023, and increase it again to 54,000 in November 2023, lending additional credibility that the leaked figure was real.

**Answer:**  The first and second sentences of Paragraph 9 purport to characterize and/or paraphrase an article dated March 3, 2023, published by *Reuters* titled *Rivian stands by 2023 production target despite media report*, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  The last sentence of Paragraph 9 purports to characterize and/or paraphrase certain portions of Rivian's Q2 2023 Shareholder Letter dated August 8, 2023, and Rivian's Q3 2023 Shareholder Letter dated November 7, 2023, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 9.

10.     Each quarter throughout the Class Period, Defendants tirelessly trumpeted Rivian's Roadmap, chiefly based on production, and touted the "stable"

and "strong" demand for Rivian EVs. Defendants also confidently claimed this "strong" demand lasted "deep into 2024" despite macroeconomic factors (like inflation and interest rates) that were impacting other EV companies. These topics became the centerpiece of every earnings conference call and investor conference attended by the Defendants, and for good reason.

**Answer:** Paragraph 10 purports to characterize and selectively quote certain portions of the transcripts of Rivian's earnings conference calls during the alleged Class Period, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 10.

11.    Buoyed by the Roadmap and bullish reports of "strong" demand, Defendants were able to conduct two bond offerings during the Class Period, raising $1.5 billion in March 2023, and then another $1.725 billion in October 2023, which temporarily helped mitigate Rivian's relentless cash burn.

**Answer:** Defendants admit that in March 2023, Rivian issued $1,500 million principal amount of green convertible unsecured senior notes due March 2029 at a discount of $15 million in a private offering to qualified institutional buyers, and that in October 2023, Rivian issued $1,725 million principal amount of green convertible unsecured senior notes due October 2030 at a discount of $15 million in a private offering to qualified institutional buyers. Defendants otherwise deny the allegations in Paragraph 11.

12.    Then, on February 21, 2024, the full truth finally came to light. On that day, Defendants stunned the market by announcing that Rivian's 2024 production was not growing but, in fact, diminishing. Specifically, Defendants announced wildly disappointing production guidance for 2024 of just 57,000 EVs, which was lower than what the Company produced in 2023 (57,232 EVs), far less than Rivian's internal target of 62,000 EVs for 2023, and approximately 15% below analysts' consensus estimates of 65,000 EVs for 2024. Defendants' disclosure directly contradicted their prior assertions that the key to achieving the Roadmap (and profitability) was ramping production and that the Roadmap was on track. In short, the news revealed that Rivian's fundamentals still would not support gross margin or long-term profitability in 2024. Adding insult to injury, Defendants also disclosed that the demand for Rivian EVs had also weakened despite relentless claims of its resilience, and that the Company would be laying off 10% of its workforce.

**Answer:** Portions of the third and sixth sentences of Paragraph 12 purport to characterize and paraphrase certain portions of Rivian's Q4 2023 Shareholder Letter

dated February 21, 2024 and the transcript of Rivian's Q4 2023 earnings conference call, held on February 21, 2024, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 12.

13. Defendants' disclosure of suddenly weakened demand astonished the market because Defendants repeatedly assured investors they had a "high degree of confidence" and "clear visibility" into demand well into 2024. Defendants' revelation that demand had suddenly plummeted contradicted these representations. Such disclosure was also suspicious given Defendants' decision in November 2022 to stop disclosing Backlog data to investors.

**Answer:** Defendants deny the allegations in Paragraph 13.

14. In light of the foregoing, Defendants had to change the Roadmap they had long touted – most significantly by materially reducing the role of production. Rivian now stated that "[t]he key drivers to bridge the fourth quarter 2023 to the fourth quarter of 2024 are: 50% Variable cost per unit, 35% Fixed/semi-fixed cost efficiencies, and 15% Non-vehicle revenue."

**Answer:** The second sentence of Paragraph 14 purports to characterize and selectively quote certain portions of Rivian's Q4 2023 Shareholder Letter dated February 21, 2024, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 14.

15. After this devastating news on February 21, 2024, Rivian's stock price plunged $3.94 per share, or more than 25%, to close at $11.45 per share on February 22, 2024. Rivian lost over $750,000,000 in market capitalization in a single day.

**Answer:** Paragraph 15 purports to describe the price of Rivian's stock, and Defendants therefore respectfully refer the Court to the publicly available daily closing prices and trading volume information for the price and trading volume of Rivian stock. Defendants otherwise deny the allegations in Paragraph 15.

16. After the Class Period, on October 4, 2024, Rivian updated its 2024 production guidance, reducing its already disappointing 57,000 figure further to between 47,000 and 49,000 EVs. Shortly thereafter, on November 7, 2024, Rivian announced that it still hoped to achieve gross margin profits by the end of 2024, despite declining revenues and continued gross margin and net losses for the quarter (even as compared to the same quarter a year earlier). But to achieve this outcome,

Rivian would now have to buy its way to profit by selling approximately $300 million in regulatory credits in 2024.

**Answer:**   The first sentence of Paragraph 16 purports to characterize and paraphrase Rivian's Form 8-K, filed with the SEC on October 4, 2024, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  The second sentence of Paragraph 16 purports to characterize and paraphrase Rivian's Form 8-K, filed with the SEC on November 7, 2024, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 16.

17.   All told, Rivian investors lost billions of dollars due to Defendants' misstatements and omissions of material fact to the market.

**Answer:**  Defendants deny the allegations in Paragraph 17.

## II.   JURISDICTION AND VENUE

18.   The claims asserted herein arise under and pursuant to the Exchange Act and certain rules promulgated by the SEC. Specifically, this Complaint asserts claims under: (1) Section 10(b) of the Exchange Act ("§10(b)") and Rule 10b-5 promulgated thereunder by the SEC, see 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; and (2) Section 20(a) of the Exchange Act ("§20(a)"), see 15 U.S.C. § 78t(a)).

**Answer:**   The allegations in Paragraph 18 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 18, except admit that Plaintiffs purport to sue under Section 10(b) of the Securities Exchange Act of 1934, Rule 10b-5 promulgated thereunder by the SEC, and Section 20(a) of the Securities Exchange Act of 1934.

19.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

**Answer:** The allegations in Paragraph 19 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 19, except admit that Plaintiffs assert that this Court has jurisdiction over the subject matter of this action under Section 27 of the Securities Exchange Act of 1934 and 28 U.S.C. § 1331.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)) because Rivian is headquartered in Irvine, California.

**Answer:** Defendants admit that Rivian's principal executive offices are located in Irvine, California. The remaining allegations in Paragraph 20 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the remaining allegations in Paragraph 20, except admit that Plaintiffs assert that venue in this District is proper under Section 27 of the Securities Exchange Act of 1934 and 28 U.S.C. § 1391(b).

21. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**Answer:** The allegations in Paragraph 21 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 21.

## III.   PARTIES

22. Lead Plaintiffs Kamil Kirio and Nada Badr-Kirio, as Trustees of the Kirio Family Trust Dated September 21, 2015 bought Rivian securities during the Class Period. *See* Exhibit A. The Kirios live in California.

**Answer:** Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 22, and, on that basis, deny them.

23. Defendant Rivian is a Delaware corporation with principal executive offices at 14600 Myford Road, Irvine, California. Rivian designs, develops, and manufactures EVs and accessories and sells them directly to consumer and commercial customers. Rivian also offers its customers a full suite of proprietary

services addressing the entire lifecycle of the Company's EVs, including, among other things, financing, insurance, software, vehicle charging, and vehicle service.

**Answer:** Defendants admit that Rivian is a Delaware corporation with principal executive offices at 14600 Myford Road, Irvine, California. The second and third sentences of Paragraph 23 purport to describe Rivian's business, which is described in Rivian's IPO Prospectus filed with the SEC pursuant to Rule 424(b)(4) on November 12, 2021 and Rivian's Form 10-K for fiscal year ended December 31, 2023 filed with the SEC on February 26, 2024, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 23.

24. Defendant Scaringe has served as Rivian's Chief Executive Officer at all relevant times. Defendant Scaringe is also the Company's founder.

**Answer:** Defendants admit that Dr. Scaringe founded Rivian and has been Rivian's Chief Executive Officer since it was founded. Defendants otherwise deny the allegations in Paragraph 24.

25. Defendant McDonough has served as the Company's Chief Financial Officer at all relevant times. She joined the Company in January 2021.

**Answer:** Defendants admit that Ms. McDonough joined Rivian in January 2021 and is, and during the purported Class Period was, Rivian's Chief Financial Officer. Defendants otherwise deny the allegations in Paragraph 25.

26. Defendants Scaringe and McDonough (the "Individual Defendants"), because of their positions with the Company, made public statements to the market and possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

**Answer:** The allegations in Paragraph 26 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 26.

## IV.   SUBSTANTIVE ALLEGATIONS

### A.   Background About Rivian

27.   In 2009, Defendant Scaringe founded Mainstream Motors, Inc. in Florida as a private company. The company's name was changed shortly thereafter to Avera Motors Inc., and in 2011, it was renamed Rivian. After receiving a large investment in 2015, Rivian focused on developing autonomous vehicles and EVs, and it began searching for a production facility to build them.

**Answer:** Defendants admit that Dr. Scaringe founded Rivian in Florida in 2009 and that it has been previously known as Mainstream Motors, Inc. and Avera Motors Inc. Defendants otherwise deny the allegations in Paragraph 27.

28.   In January 2017, Rivian purchased a former Mitsubishi Motors manufacturing plant in Normal, Illinois (the "Normal Facility") for $16 million. Since buying the Normal Facility, Rivian has invested significantly in it, spending billions of dollars on upgrades, equipment, and workforce expansions. The Normal Facility is a large-scale manufacturing facility which, during the Class Period, had the capacity to produce 150,000 EVs annually, but Rivian never came close to reaching that capacity.

**Answer:** Defendants admit that Rivian purchased a manufacturing facility in Normal, Illinois in January 2017. Defendants admit that Rivian has invested in the "Normal Facility" since purchasing it in January 2017. Defendants otherwise deny the allegations in Paragraph 28.

29.   Rivian's purchase of the Normal Facility was widely viewed as a significant first step for the Company, but until Rivian could run the Normal Facility efficiently and maximize its capacity, the cost of running the plant was onerous and resulted in a massive annual cash burn for the Company. At all times relevant, the Normal Facility was Rivian's only operational manufacturing facility.

**Answer:** Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 29, and, on that basis, deny them. Defendants admit that, during the purported Class Period, the

"Normal Facility" was Rivian's sole operational manufacturing plant.  Defendants otherwise deny the allegations in Paragraph 29.

30.    In December 2017, Rivian announced plans to produce its first EVs and introduced the R1 platform, which included the R1T, a two-row, five passenger pickup truck, and the R1S, a three-row, seven-passenger SUV.

**Answer:**  Defendants admit that in December 2017, Rivian announced plans to introduce an electric five-passenger truck and an electric seven-passenger SUV. Defendants otherwise deny the allegations in Paragraph 30.

31.    In 2018, Rivian began accepting preorders for its EVs in exchange for a no strings attached, fully refundable $1,000 deposit. Those potential consumers who made this deposit were placed on Rivian's Backlog, and would typically remain there for years until they either removed themselves or Rivian could fill their orders. As detailed *infra*, Defendants initially reported the number of preorders on the Backlog; however, in November 2022, Rivian stopped this practice. Thereafter, instead of reporting Backlog metrics, Defendants simply made representations about the Backlog, claiming to have "clear visibility" into "strong" demand for Rivian EVs that extended "well into 2024". *See* ¶¶150, 152, 157, 163, 181, 191, 184. Thus, after November 2022, investors were left with no choice but to trust Defendants.

**Answer:**  Defendants admit that Rivian began accepting preorders for the R1T and R1S in exchange for a refundable deposit of $1,000 beginning in November 2018.  Defendants also incorporate and reassert their responses to Paragraphs 150, 152, 157, 163, 181, 184, and 191, inclusive, as if set forth fully herein.  Defendants otherwise deny the allegations in Paragraph 31.

32.    In February 2019, Defendant Scaringe was interviewed by the *Detroit Free Press* regarding an investment that Amazon.com Inc. ("Amazon") had recently made in Rivian and the Company's planned growth strategy. During the interview, Defendant Scaringe highlighted to the market that the culture he had instilled at Rivian was to "underpromise and overdeliver". *See* Eric D. Lawrence, *Rivian, in Detroit's backyard, nabs $700M Amazon investment. Now what?*, Detroit Free Press (Feb. 24, 2019), https://www.freep.com/story/money/cars/2019/02/24/rivian-founder-amazon-tesla/2915832002/.

**Answer:**  Paragraph 32 purports to characterize and selectively quote certain portions of an article published by the *Detroit Free Press* dated February 24, 2019, titled *Rivian, in Detroit's backyard, nabs $700M Amazon investment. Now what?* and Defendants therefore respectfully refer the Court to that document for its complete

and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 32.

33.    Later that year, in September 2019, Rivian entered into an agreement with Amazon, whereby Rivian would potentially sell 100,000 commercial electric delivery vans ("EDVs") to Amazon (the "Amazon Deal"). Under the Amazon Deal, once Rivian began delivery of the EDVs, Amazon had exclusive rights to purchase the EDVs from Rivian for four years, and the right of first refusal for two additional years (provided that Amazon purchased a minimum of 10,000 EDVs per year).

**Answer:**  Defendants admit that Rivian entered into agreements with Amazon in September 2019 and that copies of those agreement were disclosed in Rivian's SEC filings, including its Form 10-K filed with the SEC on March 31, 2022, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 33.

34.    On September 14, 2021, Rivian completed production of its first EVs, which was largely a symbolic proof of concept as Rivian still faced the real challenges of scaling up production, reducing its out-of-control costs, and increasing demand to demonstrate it was not merely a hyped-up startup destined to fail.

**Answer:**  Defendants admit that Rivian produced its first customer vehicle on September 14, 2021.  Defendants otherwise deny the allegations in Paragraph 34.

35.    As a private company, Rivian secured over $10.5 billion in funding from investors before completing production on a single EV. At the same time, Rivian also perpetually operated at a loss and spent prolifically on its research and development, production ramp-up, and raw materials. With billions in capital raised from large private investment funds and corporate entities, Rivian now had to stop hemorrhaging money and demonstrate that it could produce, scale, and sell its EVs in a profitable manner. In other words, Defendants had to prove that Rivian had a sustainable business model.

**Answer:**  Defendants admit that Rivian secured approximately $10.5 billion in funding from investors before its IPO.  Defendants otherwise deny the allegations in Paragraph 35.

**B.    Rivian Avails Itself of the Public Markets, Selling Billions of Dollars of Shares to Investors**

36.    At the extraordinary rate that Rivian was burning cash, Rivian needed additional funding to survive, which it ultimately secured from the public markets by

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT

13

CASE NO.: 2:24-CV-04566 CBM (JPR)

commencing an Initial Public Offering ("IPO"). On November 15, 2021, Rivian concluded its IPO, raising gross proceeds of more than $13.7 billion. On the first day of trading, November 10, 2021, Rivian's shares rose to over $100 per share and on November 17, 2021, Rivian's share price peaked at $179.47.

**Answer:** Paragraph 36 purports to describe Rivian's IPO. Defendants admit that Rivian's common stock began trading on the Nasdaq Global Select Market on November 10, 2021 with the ticker symbol "RIVN" following the completion of its IPO. Defendants admit that the gross proceeds to Rivian from its IPO were $13,724,100,000 before deducting underwriting discounts and commissions and estimated offering expenses payable by the Company. The last sentence of Paragraph 36 purports to describe the price of Rivian's stock, and Defendants therefore respectfully refer the Court to the publicly available daily closing prices and trading volume information for the price and trading volume of Rivian stock. Defendants otherwise deny the allegations in Paragraph 36.

37.  In Rivian's Registration Statement, which was filed with the SEC in connection with Rivian's IPO, the Company reported that in 2021 it produced only 1,015 EVs and delivered only 920 EVs; had an operating loss of approximately $4.2 billion; and had spent $2.6 billion net cash on operations.

**Answer:** Paragraph 37 purports to characterize and paraphrase certain portions of Rivian's SEC filings, including its Registration Statement and Form 8-K filed with the SEC on January 10, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 37.

38.  Since Rivian's IPO, the Company has consistently burned over $1 billion in cash per quarter. At this prolific rate, Rivian could run through its billions of IPO capital in less than three years. To avoid panic, Rivian, among other things, reassured investors that there was significant demand for its EVs and thus its business would be able to grow to profitability. In its IPO documents, Rivian represented that it had 55,400 R1 preorders in its Backlog and that it expected the Normal Facility to reach its capacity of producing 150,000 R1 vehicles per year in 2023.

**Answer:** The last sentence of Paragraph 38 purports to characterize and paraphrase certain portions of Rivian's Registration Statement, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 38.

39. Shortly after its IPO, Rivian was embroiled in controversy surrounding the pricing for its EVs, exposing that the cost of producing its EVs was a big problem. Specifically, Rivian had priced the R1T and R1S at $69,000 and $72,500, respectively. However, at that time, the cost to produce each R1 made the sale of each unit highly unprofitable for the Company. By the start of the Class Period, even with an average sales price of over $93,000, Rivian was poised to lose over $139,000 on the sale of each EV it produced.

**Answer:** Defendants admit that, in November 2018, Rivian announced its anticipated pricing for the R1T and R1S starting at $69,000 and $72,500, respectively, depending on configuration, and that Rivian accepted preorders from customers for a refundable $1,000 deposit. Defendants otherwise deny the allegations in Paragraph 39.

40. On March 1, 2022, in an email to Backlog customers, Rivian tried to fix the problem by announcing eye-popping price hikes of approximately 20% that were applicable to the more than 83,000 confirmed R1 preorders as of that date. Numerous media outlets and analysts reported on what enraged pre-order customers described as a "bait and switch." For example, *Vice* reported that "people who thought they were buying a car for approximately $75,000 are finding that car now costs closer to $100,000. Customers are furious, obviously." Likewise, a March 4, 2022 report by Deutsche Bank, noted that the price increases led to "a very negative reaction in the market in which many reservation holders cancelled their orders."

**Answer:** The first sentence of Paragraph 40 purports to characterize and paraphrase a March 1, 2022 email and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 40, and, on that basis, deny them. The third sentence of Paragraph 40 purports to characterize and selectively quote certain portions of an article dated March 2, 2022, published by *Vice* titled *Rivian Jacks Up Vehicle Prices for Preorders*

*Placed Years Ago, Enraging Customers*, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  The fourth sentence of Paragraph 40 purports to characterize and selectively quote certain portions of an analyst report published by Deutsche Bank on March 4, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 40.

41.    In response to this backlash, and to avoid the mass exodus of its high-end consumer base, Rivian quickly reversed course and committed to filling Backlog orders that were placed before March 1, 2022 at the original pricing. A March 3, 2022 analyst report from RBC estimated that "[t]he roll-back on pricing is costing [Rivian] ~$850mm in revenue (assuming no cancellations)." The ordeal was a significant blow to Rivian, which now had to prove more than ever (to investors and consumers too) that its business was sustainable and could stop bleeding cash and become profitable before it was too late. Thus, top of mind to investors and analysts alike was "when" and "how" this would happen (if it could happen).[2]

**Answer:**  Defendants deny the allegations in Paragraph 41.

**C.    The Class Period Begins: Defendants Announce a Long-Awaited Profit Roadmap Chiefly Based On Production Ramp**

42.    On August 11, 2022, the start of the Class Period, Rivian announced its financial results for the second quarter of 2022. The Company reported its results in a Form 10-Q signed by the Individual Defendants and filed with the SEC. Rivian also published its quarterly shareholder letter, which was signed by Defendant McDonough and filed with the SEC as an exhibit to a Form 8-K (the "2Q 2022 Shareholder Letter"). The 2Q 2022 Shareholder Letter touted the strong demand for Rivian EVs, noting that as of June 30, 2022, the Company had approximately 98,000 preorders for the R1 in its Backlog, which was in addition to the potential 100,000

---

[2] Defendants Rivian, Scaringe, and McDonough are defendants in another securities class action alleging violations of the Exchange Act and the Securities Act of 1933, based on alleged misstatements in Rivian's IPO offering documents. That case is currently pending before Judge Josephine Staton in the United States District Court for the Central District of California. On July 3, 2023, Judge Staton denied the defendants' motion to dismiss the amended consolidated complaint. *See Crews v. Rivian Auto., Inc.*, No. 2:22-CV-01524-JLS-E, 2023 WL 4361098 (C.D. Cal. July 3, 2023). On July 17, 2024, Judge Staton also granted plaintiff's motion for class certification. *See Crews v. Rivian Auto., Inc.*, No. 2:22-CV-01524-JLS-E, 2024 WL 3447988 (C.D. Cal. July 17, 2024).

**Answer:**  Defendants admit that they are named as defendants in the case captioned *Crews v. Rivian Auto., Inc.*, No. 2:22-CV-01524-JLS-E.  Defendants deny the claims asserted in that lawsuit.

EDV preorder from the Amazon Deal. When reporting the Backlog, Rivian represented that the preorder figure it reported was "net of cancellations", signaling to investors that any cancellations had already been factored in. Rivian never reported its cancelations rates to investors.

**Answer:** Defendants admit that Rivian announced its financial results for the second quarter of 2022 in a Form 10-Q filed with the SEC on August 11, 2022. Defendants admit that Rivian published its Q2 2022 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on August 11, 2022. The third, fourth, and fifth sentences of Paragraph 42 purport to characterize and selectively quote certain portions of Rivian's 2Q 2022 Shareholder Letter dated August 11, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 42.

43. Rivian also reported that for the second quarter of 2022, it produced 4,401 vehicles and delivered 4,467 vehicles, and that its total cost of revenues was $1.07 billion, and with $364 million in revenues, its gross margins were ($704 million). During the same period, Rivian's free cash flow, or its use of cash for operating activities minus capital expenditures (cash burn rate) was ($1.6 billion).

**Answer:** Paragraph 43 purports to characterize and paraphrase certain portions of Rivian's Form 10-Q filed with the SEC on August 11, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 43.

44. That same day, Rivian held its quarterly earnings conference call. During prepared remarks, Defendant McDonough began to address investors' profitability concerns and bullishly stated that Rivian sees a "clear path to our approximately 25% [long-term] gross margin target." An analyst with Wolfe Research pressed Defendant McDonough to expand on Rivian's timing and path to profitability. In response, Defendant McDonough introduced the Roadmap, and stated, in relevant part, that 2024 "[is] really that pivotal year for us in driving a step change in terms of the underlying gross margin expectations within the business." Defendant McDonough then detailed the Roadmap's three key drivers: (1) increasing production; (2) introducing new technologies to reduce costs; and (3) increasing average sales price. *See* ¶142.

**Answer:** Defendants admit that Rivian held its Q2 2022 earnings conference call on August 11, 2022. Paragraph 44 purports to characterize and selectively quote portions of the transcript for Rivian's Q2 2022 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 44.

45. Throughout the Class Period, Defendants repeatedly stressed that ramping production was by far the single most important factor for Rivian to achieve gross margin profitability in 2024. Significantly, gross margin profit demonstrates the profit (if any) that remains after subtracting the costs of goods sold. *See* Accounting Standards Codification ("ASC") Master Glossary. Thus, gross margins and the timeline for gross margin profitability are particularly important metrics to investors for evaluating growth-stage companies like Rivian. These metrics reveal whether, how efficiently, and how near in the future, a company can turn revenue into profit through its manufacturing and delivery processes. The trajectory towards positive gross margins signifies that a company is moving towards financial viability, can obtain materials and labor and synthesize its manufacturing processes in an efficient and profitable way, and that a company has the potential for sustainable growth. If a growth-stage company cannot begin to turn a profit in the near-term, it is often not operating a sustainable business model based on the fundamentals of the business (*i.e.*, production and delivery of its goods) and, therefore, may not have long-term investment potential. *See* www.investopedia.com/terms/g/grossmargin.asp. Gross margins and the timeline for gross margin profitability become even more important when a company, like Rivian, burns through a lot of cash quickly.

**Answer:** The allegations in Paragraph 45 consist of assertions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 45.

46. Increased production can positively impact gross margins in two distinct ways: by (1) increasing revenues (*i.e.*, producing more goods to increase sales of those goods); and (2) decreasing expenses (*i.e.*, producing more goods to decrease production costs per each unit produced). However, increasing production could only increase Rivian's revenues if there was enough demand to purchase the Rivian EVs produced, and if Rivian manufactured its EVs in a cost-effective manner that enabled them to be sold at a profit. This was particularly pertinent for Rivian given the excess capacity at the Normal Facility, and the high fixed costs per vehicle[3] stemming from operating that facility at production rates significantly less than capacity. Similarly,

[3] For ease of reference, 'fixed costs' will refer to fixed costs per vehicle.

**Answer:** The allegations in Footnote 3 consist of assertions to which no response is required. To the extent a response is required, Defendants deny the allegations in Footnote 3.

arriving at and sustaining the proper price point, based on what customers are willing to pay for Rivian's vehicles, was central to the question of when Rivian would achieve gross margin profitability, if at all.

**Answer:**  The allegations in Paragraph 46 consist of assertions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 46.

47.    In light of the foregoing, Rivian's Roadmap was vital to investors, and updates on the Company's execution on it became the centerpiece of virtually every earnings call and investor conference that Defendants participated in during the Class Period. As a means to evaluate Rivian's path to profitability, investors and analysts were keyed into Rivian's actual and expected quarterly and annual production and delivery figures, production costs, supply chain issues, interest rates, and of course the level of demand for Rivian's EVs. Analysts covering Rivian routinely provided estimates, based on Defendants' representations in SEC filings and during conference calls, of Rivian's expected vehicle production, expected vehicle deliveries/sales, or both for a given time period.[4]

**Answer:**  Paragraph 47 purports to refer to the statements of unnamed analysts and investors.  The identities, credibility, reliability, and accuracy of these unnamed analysts and investors have not been established and Defendants, therefore, lack information or knowledge sufficient to form a belief as to the truth of their alleged statements, and allegations based on these statements are therefore denied.

48.    After the August 11, 2022 conference call, a Deutsche Bank analyst published a report on August 12, 2022 titled *Supply Chain Improving and Continued Focus on Cash, But With Growth Payback*. Relying on Rivian's Roadmap, the report forecasted that Rivian would deliver 90,000 EVs in 2023, and 150,000 EVs in 2024. Other analysts modeled similar outcomes based on Defendants' representations that a steep ramp up in EV production was the key determinative factor for Rivian to bridge the gap to profitability. For example, an August 12, 2022 analyst report published by J.P. Morgan titled *Expect Mostly Neutral Reaction and Price Target Unchanged After In Line 2Q and Mixed Full Year Outlook Update*, projected over 67,000 vehicle sales in 2023 and over 126,000 in 2024. Similarly, an August 11, 2022 analyst report published by RBC Capital Markets titled *Rivian Automotive Inc., Little Drama; Focus Remains on Ramp*, forecasted sales of 80,000 vehicles in 2023 and 142,750 vehicles in 2024. For frame of reference, Rivian had only produced 1,015

---

[4] During the Class Period the number of vehicles Rivian delivered was slightly lower than the number of vehicles Rivian produced. *See, e.g.*, ¶¶43, 49, 62, 86, 99, 112. While the delivery figure lagged slightly behind the production figure, the two figures are invariably close to one another, and are frequently used interchangeably by analysts when establishing a consensus during the Class Period.

**Answer:**  Defendants incorporate and reassert their responses to Paragraphs 43, 49, 62, 86, 99, and 112, inclusive, as if set forth fully herein.

EVs in 2021 and was expected to produce 25,000 in 2022. Thus, the expected ramp up was steep, year-over-year.

**Answer:** The first and second sentences of Paragraph 48 purport to characterize and paraphrase certain portions of an analyst report published by Deutsche Bank on August 12, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. The fourth sentence of Paragraph 48 purports to characterize and paraphrase certain portions of an analyst report published by J.P. Morgan on August 12, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. The fifth sentence of Paragraph 48 purports to characterize and paraphrase certain portions of an analyst report published by RBC Capital Markets on August 11, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 48.

### D. Rivian Stops Reporting Backlog Figures – But Reiterates Its Roadmap to Profit and Reassures the Market Demand Is Strong

49. On November 9, 2022, Rivian announced its results for the third quarter of 2022 in its Form 10-Q and shareholder letter as an exhibit to a Form 8-K (the "3Q 2022 Shareholder Letter"), both of which were filed with the SEC. The Form 10-Q was signed by the Individual Defendants and the 3Q 2022 Shareholder Letter was attached as an exhibit to a Form 8-K signed by Defendant McDonough. In these filings, Rivian reported that it had produced 7,363 vehicles and delivered 6,584 vehicles for the quarter. Additionally, Rivian reported that its total cost of revenues was $1.45 billion and with revenues of $536 million, its gross profit was ($917 million). During the same period, Rivian reported that its free cash flow was ($1.7 billion).

**Answer:** Defendants admit that Rivian disclosed its financial results for the third quarter of 2022 in a Form 10-Q filed with the SEC on November 9, 2022. Defendants admit that Rivian published its Q3 2022 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on November 9, 2022. The third, fourth, and fifth sentences of Paragraph 49 purport to characterize and

selectively quote certain portions of Rivian's Q3 2022 Shareholder Letter dated November 9, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 49.

50.    Rivian's 3Q 2022 Shareholder Letter highlighted the negative impact that low production was having on the Company's gross margins and stated: "As we produce vehicles at low volumes on production lines designed for higher volumes, we have and will continue to experience negative gross profit related to labor, depreciation, and overhead costs." Notably, the 3Q 2022 Shareholder Letter further explained that low production and the inefficient costs associated with it was merely a short term issue that Rivian was already addressing and improving on, stating that "[t]his dynamic will continue in the near term, … but as we have already started to experience, we expect it will improve on a per vehicle basis as production volumes ramp up faster than future labor and overhead costs increase."

**Answer:** Paragraph 50 purports to characterize and selectively quote portions of Rivian's Q3 2022 Shareholder Letter dated November 9, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 50.

51.    Rivian's 3Q 2022 Shareholder Letter also supported the Roadmap, and more specifically Rivian's plans to ramp up production by reassuring investors in a dedicated section titled "Demand Remains Strong" that as of November 7, 2022, Rivian had approximately 114,000 preorders ("net of cancellations") for the R1 in its Backlog in addition to the potential 100,000 EDV order from Amazon.

**Answer:** Paragraph 51 purports to characterize and selectively quote portions of Rivian's Q3 2022 Shareholder Letter dated November 9, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 51.

52.    That same day, Rivian conducted an earnings conference call to discuss its third quarter 2022 results. During the call, Defendant Scaringe confidently claimed that "[w]e have significant demand visibility as evidenced by our consumer and commercial backlog." Defendant Scaringe also highlighted that, despite not being able to sell vehicles broadly to the commercial sector for several more years due to restrictions posed by the Amazon Deal, demand was still strong "across all segments." During the same call, Defiant McDonough announced that Rivian would no longer report Rivian's Backlog figures to investors because "[a]s we ramp

our production, we believe preorders will become an increasingly less important measure of our fundamental progress as a business".

**Answer:** Defendants admit that Rivian held its Q3 2022 earnings conference call on November 9, 2022. Paragraph 52 purports to characterize and selectively quote portions of the transcript for Rivian's Q3 2022 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 52.

53.    Nevertheless, throughout the Class Period, Defendants continued to reassure investors that they were still watching Rivian's Backlog and cancellation rates very "closely" – "daily" even. *See* ¶¶150, 152, 163, 181, 184, 191. And, based on their "high confidence" in the strength of these and other data points, which never seemed to lose importance, Defendants repeatedly and confidently touted that they had "clear visibility" into the "strong" demand for Rivian EVs, which extended "deep into 2024" and would carry the Roadmap through to fruition. *See id*. With no publicly reported data points to verify Defendants' assertions, and Defendants' consistent denial that industry-wide macroeconomic factors were impacting Rivian, investors had no choice but to take Defendants at their word.

**Answer:** Defendants incorporate and reassert their responses to Paragraphs 150, 152, 163, 181, 184, and 191, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 53.

54.    But as Defendants knew all along, Rivian's Backlog was not a reliable indicator of demand, and it certainly was not a proxy for demand. Indeed, the Backlog, which is essentially a highly volatile sales lead list, could not provide any meaningful visibility, let alone "significant" visibility, into demand for the Company's EVs. First, preorders were fully refundable, cancelable at any time and for whatever reason, without penalty. Second, would-be Rivian purchasers routinely sat on the Backlog for years, which increased the risk that they would lose interest, purchase a different car based on immediate needs, or be impacted by personal or macroeconomic factors that would make purchasing a Rivian EV less attractive (like increased interest rates). *See infra* ¶¶ 2-5, 31, 39-41. Nevertheless, when Defendants spoke to the market about demand, which they did regularly, they spoke about it in terms of Rivian's Backlog and cancellation rates, which they misleadingly translated into very confident and far-reaching statements about the strength and resilience of demand for Rivian EVs through 2024.

**Answer:** Defendants incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 54.

DEFENDANTS' ANSWER TO LEAD
PLAINTIFFS' AMENDED COMPLAINT

22

CASE NO.: 2:24-CV-04566 CBM (JPR)

55.   Based on Defendants' representations about the Roadmap and strong demand, a November 10, 2022 Deutsche Bank analyst report titled *Margin Improvement Underway, But Volume Ramp Further Delayed*, citing strong demand, projected ***60,000 deliveries for 2023*** and 105,000 deliveries for 2024. Likewise, a November 11 analyst report from BNP Paribas titled *Georgia on My Mind*, expected ***69,116 vehicles in 2023*** and 127,000 vehicles in 2024.

**Answer:**   The first sentence of Paragraph 55 purports to characterize and paraphrase certain portions of an analyst report published by Deutsche Bank on November 10, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  The second sentence of Paragraph 55 purports to characterize and paraphrase certain portions of an analyst report published by BNP Paribas on November 11, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 55.

56.   On November 29, 2022, Rivian participated in a Redburn CEO conference. During that conference, Defendant Scaringe continued to emphasize the importance of demand to the Company, stating that it was "***foundational*** to the business." He also highlighted the significance of the relationship between improving gross margins by increasing production and demand, explaining that demand needed to "continue[] to exceed our production capacity."

**Answer:**   Defendants admit that Dr. Scaringe participated in Redburn's 2022 CEO Conference on November 29, 2022.  Paragraph 56 purports to characterize and selectively quote portions of the transcript of Dr. Scaringe's presentation at Redburn's 2022 CEO Conference on November 29, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 56.

57.   On the quality of the demand for Rivian EVs, Defendant Scaringe definitively stated that Rivian had a "clear line of sight through 2024 in terms of demand." Without any objectively verifiable metric or data to quantify demand, investors relied heavily on Defendant Scaringe's representations.

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT

23

CASE NO.: 2:24-cv-04566 CBM (JPR)

**Answer:** The first sentence of Paragraph 57 purports to characterize and selectively quote portions of the transcript of Rivian's presentation at Redburn's 2022 CEO Conference on November 29, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 57.

58. During the same conference, a Redburn analyst pointedly asked Defendant Scaringe if demand for Rivian EVs was being impacted by the increasingly tough macroeconomic climate, and more specifically, whether Rivian was experiencing a reduction in new "order intake" like "other EV names". In response, Defendant Scaringe doubled down and represented that Rivian had not seen the weakening demand that other EV manufacturers had seen. To the contrary, he represented that "we continue to see our backlog grow even as we're ramping deliveries." These and Defendants' other confident representations about the strength of Rivian's demand in the face of other EV manufacturers experiencing softening demand, painted the rosy picture that Rivian's Backlog was unscathed by macroeconomic pressures, and thus Rivian's path to profitability remained uncompromised. These misrepresentations materially misled investors and analysts. Indeed, the consensus of analysts covering Rivian projected that the Company would produce and/or deliver more than 60,000 vehicles in 2023 and significantly more vehicles in 2024.

**Answer:** The first, second, and third sentences of Paragraph 57 purport to characterize and selectively quote portions of the transcript of Rivian's presentation at Redburn's 2022 CEO Conference on November 29, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. The sixth sentence of Paragraph 57 purports to refer to the statements of unnamed analysts and investors. The identities, credibility, reliability, and accuracy of these unnamed analysts and investors have not been established and Defendants, therefore, lack information or knowledge sufficient to form a belief as to the truth of their alleged statements, and allegations based on these statements are therefore denied. Defendants otherwise deny the allegations in Paragraph 58.

59. A November 29, 2022 analyst report from Evercore titled *RIVN – Initiate in Line; $35 Target*, projected Rivian to **produce 60,000 vehicles in 2023 and 103,000 vehicles in 2024**. (Page 120). A December 22, 2022 analyst report from Cantor Fitzgerald titled *Takeaways from our Initiation of Rivian (RIVN)*, stated that

"[w]e expect strong customer demand for the R1T and R1S. … we model the company *delivering 64,500 vehicles in 2023E and ~131,000 vehicles in 2024E.*" Months later, a February 24, 2023 analyst report from Wells Fargo titled *RIVN 2023 Outlook: Back to the Basics*, similarly projected *63,000 vehicles delivered in 2023 and over 100,000 vehicles produced for 2024*.

**Answer:** The first sentence of Paragraph 59 purports to characterize and selectively quote certain portions of an analyst report published by Evercore ISI on November 29, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. The second sentence of Paragraph 59 purports to characterize and selectively quote certain portions of an analyst report published by Cantor Fitzgerald on November 29, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. The third sentence of Paragraph 59 purports to characterize and selectively quote certain portions of an analyst report published by Wells Fargo on February 24, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 59.

**E.    Rivian Shocks the Market By Announcing Low Production Guidance – 20% Below Analysts' Consensus For 2023 – Leading to Questions About the Roadmap Chiefly Based on Production**

60.    Given that 2022 was Rivian's first full year producing EVs, investors were on bated breath to see whether Rivian would execute on its Roadmap to reach gross margin profitability, chiefly by significantly ramping up production. On February 28, 2023, six months after announcing the Roadmap, Rivian stunned the market by reporting a disappointing low production estimate of only 50,000 vehicles for 2023. This figure was 20% less than analysts' consensus of 60,000+. Far from the steep ramp up of production in 2023 that Rivian signaled to the market, the 50,000 figure amounted to only a marginal increase in production from Rivian's fourth quarter of 2022 production rate.

**Answer:** The second and third sentences of Paragraph 60 purport to characterize and paraphrase certain portions of Rivian's Q4 2022 Shareholder Letter dated February 28, 2022, and Defendants therefore respectfully refer the Court to that

DEFENDANTS' ANSWER TO LEAD
PLAINTIFFS' AMENDED COMPLAINT
25
CASE NO.: 2:24-CV-04566 CBM (JPR)

document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 60.

61.    After the stunning February 28, 2023 news, Rivian's stock price plunged $3.54 per share – or more than 18% – to close at $15.76 per share on March 1, 2023.

**Answer:** Paragraph 61 purports to describe the price of Rivian's stock, and Defendants therefore respectfully refer the Court to the publicly available daily closing prices and trading volume information for the price and trading volume of Rivian stock. Defendants otherwise deny the allegations in Paragraph 61.

62.    Also on February 28, 2023, after the close of trading, Rivian reported its financial results for the fourth quarter and full year 2022. As part of these results, Rivian filed its Form 10-K and its quarterly letter to shareholders attached as an Exhibit to its Form 8-K (the "4Q 2022 Shareholder Letter"). In the 4Q 2022 Shareholder Letter, Rivian reported that it produced 10,020 vehicles and delivered 8,054 vehicles during the fourth quarter of 2022, and for the full year 2022 Rivian produced 24,337 vehicles and delivered 20,332 vehicles. Additionally, Rivian reported that for the fourth quarter of 2022, its total cost of revenues was $1.66 billion and with revenues of $663 million, its gross profit was ($1 billion). For the full year 2022, Rivian reported that its total cost of revenues was $4.78 billion and with revenues of $1.66 billion, its 2022 gross profit was ($3.12 billion). Additionally, Rivian's free cash flow for the fourth quarter of 2022 was ($1.5 billion) and for the full year of 2022 was ($5.9 billion). Notably, for the full year 2022, Rivian burned through approximately half a billion dollars in cash every month to produce an average of just 2,028 vehicles.

**Answer:** Defendants admit that Rivian announced its financial results for the fourth quarter and full year 2022 in a Form 10-K filed with the SEC on February 28, 2023. Defendants admit that Rivian published its Q4 2022 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on February 28, 2023. The third, fourth, fifth, sixth, and seventh sentences of Paragraph 62 purport to characterize and selectively quote certain portions of Rivian's Q4 2022 Shareholder Letter dated February 28, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 62.

63.    Following the February 28, 2023 disclosure, Rivian conducted its earnings call during which analysts questioned the Individual Defendants at length

about the viability of the Roadmap and the strength of demand. Defendant Scaringe reiterated that notwithstanding Rivian's low production guidance figure for 2023, the Roadmap was still alive and well, explaining that Rivian's "core priorities for 2023"; namely, to "ramp production," remained unchanged and that the Company just needs to "execute against our robust customer backlog."

**Answer:** Defendants admit that Rivian held its Q4 2022 earnings conference call on February 28, 2023. Paragraph 63 purports to characterize and selectively quote portions of the transcript for Rivian's Q4 2022 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 63.

64. An analyst with J.P. Morgan followed up on Defendant Scaringe's comments about Rivian's purported "robust" Backlog and inquired how the pace of new orders was holding up in light of Tesla reducing prices to bolster weakening demand in a challenging macroeconomic environment for EV manufacturers. Defendant Scaringe replied that Rivian felt "very strong about where we position the products," and was "confident" about demand notwithstanding Rivian's higher priced vehicles. Underscoring the weakening demand across the EV industry as a whole, another analyst directly asked, given the "weakening environment for demand, particularly for EVs… [how have Rivian's] net preorders been tracking?" Defendant Scaringe once again signaled that Rivian was not seriously impacted by the same macroeconomic pressures adversely impacting its competitors, repeating that the "demand backlog [] is very robust", and "[i]t gives us a clear line of sight well into 2024."

**Answer:** Paragraph 64 purports to characterize and selectively quote portions of the transcript for Rivian's Q4 2022 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 64.

65. During the same conference call, Defendant McDonough reiterated the Roadmap's "3 key levers" (increasing production, reducing costs, and increasing selling price), and provided additional color on the second factor, noting that it would be implemented as "engineering changes to drive the material cost reduction", meaning the Company's ramp in production, in addition to being the most important driver, also played a considerable role in the second driver of the Roadmap.

**Answer:** Paragraph 65 purports to characterize and selectively quote portions of the transcript for Rivian's Q4 2022 earnings conference call, and Defendants

therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 65.

66. In her discussion of the Roadmap, Defendant McDonough also quantified the role of each of the three Roadmap factors: Increasing production, accounted for 2/3 of the Roadmap, while the remaining two factors collectively accounted for the remaining 1/3. Accordingly, investors and the market continued to place their greatest focus on production ramp since it was the lynchpin for Rivian's profit thesis staked on the Company's fundamentals.

**Answer:** The first sentence of Paragraph 66 purports to characterize and selectively quote portions of the transcript for Rivian's Q4 2022 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 66.

67. During the same call, an analyst with Wolfe Research asked, in the context of achieving profitability, "what kind of volume targets are you thinking about as you look out to 2024?" In response, Defendant McDonough confusingly stated that Rivian already had the capacity at its Normal Facility to produce 65,000 units annually, and with improvements, that capacity would increase to 85,000 units by "midyear next year." The analyst asked for clarification: "[A]re you saying that you're not going to have the 85,000 units of R1 capacity available for 2024?" Defendant McDonough clarified, explicitly stating that she was talking about the capacity to produce 85,000 units in 2024 at the Normal Facility: "It will be available."

**Answer:** Paragraph 67 purports to characterize and selectively quote portions of the transcript for Rivian's Q4 2022 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 67.

68. Trying to make sense of how increasing capacity to produce 35,000 more EVs than the 50,000 projected for 2023 would result in realizing over $2 billion in increased profits/reduced expenses and reach positive gross margins, the analyst further asked: "[D]espite that, you're still thinking that you can get to gross profit in 2024?" Defendant McDonough was crystal clear: "That's right. … it's a combination of increased volumes that are driving significant fixed cost leverage within the business as we're continuing to ramp up production levels." At the time, Rivian had no reasonable basis to claim there was sufficient demand to warrant increased EV production in 2024 or that such EVs would then be sold at a profit.

**Answer:** The first and second sentences of Paragraph 68 purport to characterize and selectively quote portions of the transcript for Rivian's Q4 2022 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 68.

69. An analyst from Evercore followed up with more questions about long-term gross profit margins. Defendant McDonough responded, stating that Rivian would reach the Company's 25% gross margin target in 2025, and "through the continued ramp of the R1 and EDV in Normal, we can certainly arrive at our target vehicle margin." Despite Rivian's prolific cash burn rate and coming off a quarter where its gross profit margins were negative 59%, Defendant McDonough expressed great confidence in not just stopping the burn and getting margins to breakeven, but reaching a stellar, positive 25% profit margin in 2025.

**Answer:** Paragraph 69 purports to characterize and selectively quote portions of the transcript for Rivian's Q4 2022 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 69.

70. As noted *supra*, the February 28, 2023 news of Rivian's wildly disappointing 2023 production guidance, caused Rivian's stock price to fall more than 18%. Rivian's stock price would have fallen even further if Defendants did not reiterate their misrepresentations about the Roadmap, stress that increased production was supposedly well under way, and tout strong demand as well as the lofty profit multiplier it expected shortly after achieving positive gross profit margins in 2024.

**Answer:** The first sentence of Paragraph 70 purports to describe the price of Rivian's stock, and Defendants therefore respectfully refer the Court to the publicly available daily closing prices and trading volume information for the price and trading volume of Rivian stock. Defendants otherwise deny the allegations in Paragraph 70.

71. Following Rivian's February 28, 2023 revelation, analysts adjusted their reports to account for the 2023 production guidance disappointment. In light of the foregoing, which was tempered by Defendants' confident statements that strong demand kept the Roadmap intact and on track, analysts widely expected to see a significant jump in Rivian's production in 2024.

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT

29

CASE NO.: 2:24-CV-04566 CBM (JPR)

**Answer:** Paragraph 71 purports to refer to the statements of unnamed analysts and investors. The identities, credibility, reliability, and accuracy of these unnamed analysts and investors have not been established and Defendants, therefore, lack information or knowledge sufficient to form a belief as to the truth of their alleged statements, and allegations based on these statements are therefore denied.

72. On March 1, 2023, an analyst report by Cantor Fitzgerald titled *Initiating FY23 Production Guidance of 50,000 Vehicles; Targeting Positive GMs in 2024*, expressed disappointment in Rivian's 2023 production guidance, but noted that based on "management's expectations to [still] achieve gross profit margins in 2024", Cantor Fitzgerald was modeling Rivian to produce 49,750 vehicles in 2023 and 94,525 in 2024. This represented a significant step down from its previous analysis in December 23, 2022 which modeled 64,500 vehicles in 2023 and 131,000 vehicles in 2024.

**Answer:** The first sentence of Paragraph 72 purports to characterize and selectively quote certain portions of an analyst report published by Cantor Fitzgerald on March 1, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. The second sentence of Paragraph 72 purports to characterize and selectively quote certain portions of an analyst report published by Cantor Fitzgerald on December 22, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 72.

73. Likewise, a March 1 analyst report by Wolfe Research, titled *RIVN's 2023 Targets, and a Long Bridge to 2024; Monitoring Steel Prices; TSLA's Material Deal*, modeled similarly high production figures for Rivian in 2024 to make up for the 2023 shortfall. The report explained that for Rivian to breakeven in 2024, the Company would need to produce 90,000 vehicles. The analyst wrote that Rivian "still expect[s] gross profit to turn positive by next year" and that "2/3 of the bridge to breakeven (~\$2.6 bn annualized) will come from higher volume and 1/3 (\$1.4 bn annualized) will come from higher pricing + lower [materials] costs (partly driven by engineering changes)."

**Answer:** Paragraph 73 purports to characterize and selectively quote certain portions of an analyst report published by Wolfe Research on March 1, 2023, and

Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 73.

74.    Yet another March 1, 2023 analyst report, this time from Deutsche Bank titled *Disappointing 2023 Outlook; Clarity Needed on Trajectory Beyond 2026*, likewise adjusted the firm's prior production estimates – but still, like almost all other analysts, projected a 50% increase in EVs produced in 2024 than what Rivian projected for 2023: "All in, we now model 90k units in delivery for 2024." Notably, this figure was revised down from Deutsche Bank's November 10, 2023 report which projected 105,000 vehicles delivered in 2024.

**Answer:**  The first sentence of Paragraph 74 purports to characterize and selectively quote certain portions of an analyst report published by Deutsche Bank on March 1, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  The second sentence of Paragraph 74 purports to characterize and selectively quote certain portions of an analyst report published by Deutsche Bank on November 10, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 74.

75.    Finally, a March 2, 2023 analyst report by BNP Paribas, titled *Heading in the Right Direction*, also adjusted projection figures for Rivian's EV production to 49,679 total vehicles for 2023 and 103,000 total vehicles for 2024. Like other analysts, this was also a significant reduction from BNP Paribas' November 11, 2022 report which projected 65,889 vehicles for 2023 and 122,988 vehicles for 2024.

**Answer:**  The first sentence of Paragraph 75 purports to characterize and selectively quote certain portions of an analyst report published by BNP Paribas on March 2, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  The second sentence of Paragraph 75 purports to characterize and selectively quote certain portions of an analyst report published by BNP Paribas on November 11, 2022, and Defendants therefore respectfully refer the Court to that

document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 75.

**F.     A Leaked Rivian Meeting Reveals an Internal 62,000 Production Figure For 2023 – 20% Higher Than the Company's Guidance – And Defendants Do Not Deny It**

76.     Days after Rivian reported extremely disappointing 2023 production guidance, on March 3, 2023, Bloomberg News published an article by Ed Ludlow entitled *Rivian Tells Staff 62,000 EV Production Possible This Year, Rivian Said Earlier This Week it Would Produce 50,000; EVs Company Told Staff New Production Number at Internal Meting*. This article stated, *inter alia*, that "according to people familiar with [Rivian's] master plan[,]" Rivian actually planned "to build as many as 62,000 units" in 2023. This article cited a source who attended an all-hands meeting led by Rivian's executives on March 3, 2023. This news, which showed that analysts' original 60,000+ production models for 2023 were on the mark, also seemingly showed Defendant Scaringe's "underpromise" culture in action.

**Answer:**  Paragraph 76 purports to characterize and selectively quote certain portions of an article dated March 3, 2023, published by *Bloomberg* titled *Rivian Tells Staff 62,000 EV Production Possible This Year*, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 76.

77.     Adding to the confusion caused by this leaked internal production number, Rivian responded to the leak but did not deny that the 62,000 figure was real. Nor did Rivian deny that the all-hands meeting took place. Instead, a spokesperson for Rivian cryptically stated that "[t]his was something discussed at an internal meeting. We already gave our production guidance on Tuesday during our earnings call." This left investors and analysts optimistic that 62,000 was a real and achievable number for Rivian.

**Answer:**  The first, second, third, and fourth sentences of Paragraph 77 purport to characterize and selectively quote certain portions of an article dated March 3, 2023, published by *Bloomberg* titled *Rivian Tells Staff EV Output May Be 24$ More than Forecast*, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 77.

**G.     Rivian Seeks Additional Funding and Issues $1.5 Billion in Bonds**

78.     On March 10, 2023 – a week after Rivian's internal production target figure of 62,000 vehicles became public and was never denied – the Company issued $1.5 billion in 4.625% convertible bonds due 2029. With Rivian's free cash flow hovering around negative $1.5 billion per quarter, the bond offering and capital raise were a mere band-aid for Rivian's cash burn, not a long-term solution addressing the onerous cost of the Company's business operations.

**Answer:**  Defendants admit that in March 2023, Rivian issued $1,500 million principal amount of green convertible unsecured senior notes due March 2029 at a discount of $15 million in a private offering to qualified institutional buyers.  The first sentence of Paragraph 78 purports to characterize and paraphrase Rivian's SEC filings, such as Rivian's Form 10-Q for the quarterly period ended September 30, 2023, filed with the SEC on November 7, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 78.

79.     Following the $1.5 billion bond offering, by March 2023, Rivian had raised a total of approximately $33.5 billion in funding from investors to support its operations. But the Company continued to blow through hundreds of millions of dollars in operating capital every single month – an alarming figure for investors that Defendants only mollified by representing that Rivian would soon achieve gross margin profitability in 2024 through the Roadmap and, thus, prove that its business model was sustainable.

**Answer:**  Defendants admit that Rivian raised funding from investors as disclosed in its SEC filings, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 79.

**H.     Defendants Continue To Tell the Market That the Roadmap Was Intact and Was Mainly Driven By Ramping Production**

80.     On April 4, 2023, Defendant McDonough participated in a Bank of America summit. During the summit, Defendant McDonough fielded pointed questions about what was on "top of everyone's mind" – "the ramp of production" and "getting the gross margin breakeven."

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT         33         CASE NO.: 2:24-CV-04566 CBM (JPR)

**Answer:** Defendants admit that Ms. McDonough participated in the Bank of America Securities 2023 Global Automotive Summit on April 4, 2023. Paragraph 80 purports to characterize and selectively quote portions of the transcript of Ms. McDonough's presentation at the Bank of America Securities 2023 Global Automotive Summit on April 4, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 80.

81. Significantly, the analyst also inquired about the leaked report that Rivian internally intended to produce more vehicles in 2023 than what it publicly disclosed in its guidance. Like the Rivian spokesperson in the March 3, 2023 article, Defendant McDonough did not deny that Rivian was internally projecting to produce 62,000 vehicles in 2023, and instead gave a cagey response, explaining that the "gating factor" of "production" was "supply" chain issues. In other words, the only thing holding Rivian back from ramping production was its ability to procure parts. This signaled that demand for Rivian EVs was so strong that it was a non-issue for Rivian through the duration of the Roadmap. Defendant McDonough then boasted that Rivian saw "meaningful growth in the production quarter-over-quarter", that "the final capacity [of the Normal Facility] is 150,000 units", and that Rivian's present capacity was 65,000 units. Thus, far from characterizing the leaked 62,000 units as inaccurate, Defendant McDonough lent even further credibility to the 62,000 units figure by showing it was possible.

**Answer:** The first, second, and fifth sentences of Paragraph 81 purport to characterize and selectively quote portions of the transcript of Rivian's presentation at the Bank of America Securities 2023 Global Automotive Summit on April 4, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. The second sentence of Paragraph 81 further purports to characterize and paraphrase an article dated March 3, 2023, published by *Bloomberg* titled *Rivian Tells Staff EV Output May Be 24$ More than Forecast*, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 81.

82.    During the same conference, Defendant McDonough also addressed the dual benefits of improving gross margins through increasing production (increased revenue and decreased fixed costs), stating that doubling production from 2022 to 2023 "will result in significantly lower fixed cost per vehicle." Relatedly, Defendant McDonough also represented that the year over year doubling of production capacity would carry into 2024, stating that "we expect production volumes to increase further in 2024." While Defendants couched the year-over-year production growth as a positive, Defendants knew or were reckless in not knowing that to get to gross margin profitability using the fundamentals of its business, 50,000 EVs was not going to cut it and they needed to produce significantly more EVs than what they publicly stated.

**Answer:**    The first and second sentences of Paragraph 82 purport to characterize and selectively quote certain portions of the transcript of Rivian's presentation at the Bank of America Securities 2023 Global Automotive Summit on April 4, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 82.

83.    The analyst further queried whether achieving positive gross margins in 2024 was "purely a question of scale and in a certain level of production that's significantly above 50,000 units?" In response, Defendant McDonough reiterated that "***2/3 of the overall bridge***" to profitability comes from "***having greater levels of volume running through our plant in Normal, Illinois.***" Defendant McDonough also reiterated that increased production was the "true step-change" to bring the Company to "positive [gross margin] territory". In light of Rivian's culture of underpromising (*see* ¶¶33, 76-77) and Defendants' calculated decision not to dispel the *Bloomberg* article's leaked production figure (*see* ¶¶76-77), the leaked 62,000 figure was every bit as relevant and, in fact, more believable than Rivian's other publicly released production figures to achieve profit under the Roadmap.

**Answer:**    The first, second, and third sentences of Paragraph 83 purport to characterize and selectively quote certain portions of the transcript of Rivian's presentation at the Bank of America Securities 2023 Global Automotive Summit on April 4, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 83.

84.    Finally, Defendant McDonough also reiterated that Rivian was sticking to its decision not to "disclose the order book on an ongoing basis going forward" because reporting specifics of the Backlog, while helpful to investors and analysts, supposedly hindered demand: "[T]he single-biggest deterrent to putting in an order is how long the waitlist is." But, of course, concealing the total number of Backlog orders from investors does not stop potential consumers from asking how long the

DEFENDANTS' ANSWER TO LEAD
PLAINTIFFS' AMENDED COMPLAINT                35                CASE NO.: 2:24-CV-04566 CBM (JPR)

wait time is when putting their name on the list for a Rivian EV. It merely left investors unable to verify key information that Defendants were citing to support their lofty claims that they had "clear visibility" into "strong" demand.

**Answer:** The first sentence of Paragraph 84 purports to characterize and selectively quote certain portions of the transcript of Rivian's presentation at the Bank of America Securities 2023 Global Automotive Summit on April 4, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 84.

**I.    Rivian Announces Q1 2023 Results and Continues To Reiterate Its Roadmap**

85.    On May 9, 2023, Rivian announced its results for the first quarter of 2023, and filed its Form 10-Q, which was signed by the Individual Defendants, and its quarterly shareholder letter (the "1Q 2023 Shareholder Letter"), which was attached as an exhibit to a Form 8-K, which was signed by Defendant McDonough. The 1Q 2023 Shareholder Letter stated that in the first quarter of 2023, Rivian produced 9,395 vehicles and delivered 7,946 vehicles.

**Answer:** Defendants admit that Rivian announced its financial results for the first quarter of 2023 in a Form 10-Q filed with the SEC on May 9, 2023. Defendants admit that Rivian published its Q1 2023 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on May 9, 2023. The second sentence of Paragraph 85 purports to characterize and selectively quote certain portions of Rivian's Q1 2023 Shareholder Letter dated May 9, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 85.

86.    The 1Q 2023 Shareholder Letter also reported that for the first quarter of 2023, Rivian's cost of revenues were $1.2 billion; with revenues of $661 million, its gross profit was ($535 million); and it continued to burn through cash, with free cash flow of ($1.8 billion).

**Answer:**    Paragraph 86 purports to characterize and paraphrase certain portions of Rivian's Q1 2023 Shareholder Letter dated May 9, 2023, and Defendants

therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 86.

87. That same day, Rivian held its earnings conference call to discuss the results for the first quarter of 2023. In his prepared remarks, Defendant Scaringe told investors what they wanted to hear – that Rivian was executing on its Roadmap. Specifically, Defendant Scaringe stated that "[p]roduction during this quarter was in line with our expectations, and as a result, we are reaffirming our production outlook for the year of 50,000 total units." Defendant Scaringe similarly noted that Rivian's "core priorities for 2023", namely, increasing production, were "unchanged" and reiterated that consumer demand for Rivian's EVs supported increased production as the "backlog still extends well into 2024." During the same conference call, Defendant McDonough echoed that Rivian would still get to positive gross margins and profitability by the fourth quarter of 2024, chiefly through ramping production.

**Answer:** Defendants admit that Rivian held its Q1 2023 earnings conference call on May 9, 2023. Paragraph 87 purports to characterize and selectively quote portions of the transcript for Rivian's Q1 2023 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny all allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 87.

88. Analysts took careful note of Defendants' statements and reached the near-unanimous conclusion that Rivian's 2024 production figures had to be significantly greater than 2023's production to achieve profit. For example, on May 10, 2023, Deutsche Bank issued an analyst report titled *Encouraging Traction On Bridge to Positive Gross Margin*. The report stated that "we found management's reiteration of positive gross margin for the full year 2024 to be encouraging." The report further noted that Defendants had represented that the Company's production ramp up would fuel half of the distance to "positive gross profit in Q4 of 2024" and that as a result, "we still model 90k units in delivery for 2024." Similarly, a May 10, 2023 analyst report from BNP Paribas, titled *If You're Going Through Hell, Keep Going*, projected Rivian to make "78,607 total deliveries for FY 2024", and an analyst report from JP Morgan that same day titled *In-Line 1Q & Reiterated Full Year Outlook Amidst Deteriorating Industry Backdrop Could Come as a Relief to Investors*, modeled 92,500 vehicle deliveries in 2024 to achieve positive gross margins.

**Answer:** The second, third, and fourth sentences of Paragraph 88 purport to characterize and selectively quote certain portions of an analyst report published by Deutsche Bank on May 10, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any

allegations inconsistent therewith.  The fifth sentence of Paragraph 88 purports to characterize and selectively quote certain portions of an analyst report published by BNP Paribas on May 10, 2023 and an analyst report published by J.P. Morgan on May 10, 2023, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 88.

89.    On June 2, 2023, Rivian participated in the Sanford C. Bernstein Strategic Decisions Conference. During the conference, Defendant Scaringe continued to stress that the "biggest driver towards healthy margin structure on R1 is volume". Defendant Scaringe elaborated that the Normal Facility is a "large scale plant" and operating it at "half capacity" or "well under" its capacity created variable cost and fixed cost inefficiencies. He further explained that the fixed cost to produce vehicles would see a significant reduction when the Normal Facility was running at full capacity.

**Answer:**  Defendants admit that Dr. Scaringe participated in the Sanford C. Bernstein Strategic Decisions Conference on June 2, 2023.  The second, third, and fourth sentences of Paragraph 89 purport to characterize and selectively quote certain portions of the transcript of Dr. Scaringe's presentation at the Sanford C. Bernstein Strategic Decisions Conference on June 2, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 89.

90.    Hand in hand with increasing production for the purpose of reducing costs is increasing production for the purpose of generating more revenue by selling more EVs. Producing more EVs without the demand to sell them might result in reducing the average cost to make each EV, but without a corresponding increase in EV sales (at profit), increasing production would not help but hinder Rivian in achieving gross margin profitability.

**Answer:**  The allegations in Paragraph 90 consist of assertions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 90.

91.    Commenting on the state of demand for Rivian EVs, which was always critical to the Roadmap, Defendant Scaringe stressed that tracking consumer demand and order flow "is a daily thing that [Rivian] watch[es]". Defendant Scaringe further

stated that "a metric that we actually pay even closer attention to [track demand] is cancellation rate". Although Rivian no longer reported any quantifiable metrics related to its Backlog, Defendant Scaringe, who did have these metrics, expressed high confidence in the state of demand for Rivian EVs. Moreover, he stated that the Company was "watching really closely" what is happening with the macroeconomic environment and industry-wide demand for EVs, and that Rivian "continue[s] to see demand for the products" because consumer demand for Rivian EVs is "more resilient" than Rivian's competitors. These representations misled investors to believe that Defendants could accurately assess the demand for Rivian's EVs through the duration of the Roadmap.

**Answer:** The first, second, third, and fourth sentences of Paragraph 91 purport to characterize and selectively quote certain portions of the transcript of Rivian's presentation at the Sanford C. Bernstein Strategic Decisions Conference on June 2, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 91.

92.    On June 15, 2023, Deutsche Bank held an auto industry conference in which Rivian participated. During that conference, Defendant McDonough once again stressed that demand for Rivian EVs remained strong and would continue through 2024: "[W]e continue to have a really robust backlog of preorders that extends into 2024."

**Answer:** Defendants admit that Ms. McDonough participated in Deutsche Bank's Global Auto Industry Conference on June 15, 2023. The second sentence of Paragraph 92 purports to characterize and selectively quote certain portions of the transcript of Ms. McDonough's presentation at Deutsche Bank's Global Auto Industry Conference on June 15, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 92.

93.    During this conference, Defendant McDonough also addressed increasing pricing for Rivian EVs to bridge the gap to profitability, and explained that Rivian was "still in the process of working through the backlog of pre-March 1, 2022 preorders." Thus, in June 2023, over a year after Rivian severely underpriced its EVs but was shamed into honoring those original prices, Rivian was still filling those preorders and suffering massive losses on each EV it sold. With Rivian's hands tied by its inability to implement widespread price increases on Backlog orders, the market knew increasing production was all the more important to Rivian's ability to

achieve gross margin profitability based on the fundamentals of its business. In fact, Defendant McDonough confirmed that was exactly the case. *See* ¶177. Additionally, Defendant McDonough candidly explained that rather than getting the older preorders out of the way and shift towards widespread price increases, Rivian was "feathering in [] some new post-March 1st orders" with older orders. By this tactic, Rivian could manipulate the average sale price of its EVs. Strikingly, even with this tactic, in the first quarter of 2023, Rivian was still losing over $67,000 on each EV sold.

**Answer:** The first and fourth sentences of Paragraph 93 purport to characterize and selectively quote certain portions of the transcript of Rivian's presentation at Deutsche Bank's Global Auto Industry Conference on June 15, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 93.

94.    Defendants' repeated assurances that Rivian's Roadmap was still on track and on a clear path to achieve profit, chiefly based on a production ramp, materially misled investors and analysts to believe that Rivian would stop its cash bleed and demonstrate that the fundamentals of its business were sound in 2024.

**Answer:** Defendants deny the allegations in Paragraph 94.

**J.      Defendant Scaringe Again Teases Rivian's Culture of "Underpromising"**

95.    In a July 7, 2023 interview reported on www.insideevs.com, Defendant Scaringe was "[a]sked about why Rivian hasn't updated its production and delivery guidance figures to more optimistic figures, considering it has had a record second quarter[.]" *Id.* Echoing his long-held strategy, Defendant Scaringe again stated that he preferred to "underpromise and overdeliver so that all the risk factors that could potentially disturb production are taken into account." *See* Iulian Dnistran, *Rivian CEO Talks About European Expansion, Underpromising, And Overdelivering*, INSIDEEVS, July 7, 2023 available at: www.insideevs.com/news/675687/rivian-europe-expansion.

**Answer:** Paragraph 95 purports to characterize and selectively quote certain portions of an article dated July 7, 2023, published by *Inside EVs* titled *Rivian CEO Talks About European Expansion, Underpromising, and Overdelivering*, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 95.

96. Later in the article, Defendant Scaringe further emphasized Rivian's practice of purposefully issuing low guidance figures:

One of the other things we've gone through is just being, you know, very much thoughtful in not wanting to overpromise. We want to make sure that we overdeliver on our numbers, overdeliver on our targets[.]

**Answer:** Paragraph 96 purports to characterize and selectively quote certain portions of an article dated July 7, 2023, published by *Inside EVs* titled *Rivian CEO Talks About European Expansion, Underpromising, and Overdelivering*, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 96.

97. Defendant Scaringe's admission that Rivian employs a deliberate strategy of publicly reporting production figures that are below internal targets, coupled with the fact that Defendants represented that the main driver of Rivian's 2024 Roadmap was increased production, led analysts to conclude that Rivian would produce significantly more EVs in 2024 than in 2023. *See* ¶119.

**Answer:** Paragraph 97 purports to refer to the statements of unnamed analysts. The identities, credibility, reliability, and accuracy of these unnamed analysts have not been established and Defendants, therefore, lack information or knowledge sufficient to form a belief as to the truth of their alleged statements, and allegations based on these statements are therefore denied. Defendants otherwise deny the allegations in Paragraph 97.

**K.** **Rivian Reports Its Q2 2023 Results, Modestly Increases Guidance, and Continues To Sell the Market On Its Profit Roadmap**

98. On August 8, 2023, Rivian announced its financial results for the second quarter of 2023, and the Company filed its Form 10-Q, which was signed by the Individual Defendants. Rivian also filed its quarterly shareholder letter as an Exhibit to a Form 8-K signed by Defendant McDonough (the "2Q 2023 Shareholder Letter"). In the 2Q 2023 Shareholder Letter, Rivian announced that in the second quarter of 2023 it produced 13,992 vehicles and delivered 12,640 vehicles; its cost of revenues was $1.5 billion; with revenues of $1.1 billion, Rivian's gross margins for the quarter were ($412 million); and its free cash flow was ($1.61 billion).

**Answer:** Defendants admit that Rivian announced its financial results for the second quarter of 2023 on a Form 10-Q filed with the SEC on August 8, 2023. Defendants admit that Rivian published its Q2 2023 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on August 8, 2023. The third sentence of Paragraph 98 purport to characterize and selectively quote certain portions of Rivian's Q2 2023 Shareholder Letter dated August 8, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 98.

99. The 3Q 2023 Shareholder Letter slightly revised Rivian's 2023 production estimate upwards from 50,000 units to 52,000 units for the year. This modest increase, which was likely a byproduct of Defendant Scaringe's underpromise strategy, was still significantly less than the 62,000 production figure that Rivian kept internally. *See* ¶¶76-77. The 52,000 unit figure was also significantly lower than analysts' initial consensus for 2023 production. *See* ¶¶48, 54-55, 59.

**Answer:** Paragraph 99 purports to characterize and paraphrase certain portions of Rivian's Q2 2023 Shareholder Letter dated August 8, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants also incorporate and reassert their responses to Paragraphs 48, 54-55, 59, and 76-77, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 99.

100. On August 8, 2023, Rivian also held its quarterly earnings conference call with analysts and investors to discuss the Company's financial results. During the call, Defendant McDonough represented that Rivian was executing on its Roadmap, stating that "we have seen progress in all 3 aspects of our path to generate positive gross margin, ramping production, driving material cost down and increasing average selling price." She further commented that the progress the Company had made in the second quarter of 2023, when combined with the Company's planned ramp up in capacity to "85,000 units per year" in 2024, "reinforces our confidence in our long-term financial targets. We see a clear path to our approximately 25% gross margin target."

**Answer:** Defendants admit that Rivian held its Q2 2023 earnings conference call on August 8, 2023. Paragraph 100 purports to characterize and selectively quote

certain portions of the transcript for Rivian's Q2 2023 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 100.

101.   During the same call, Defendant Scaringe emphasized that the Roadmap was fully intact, and stressed that increased production volume was leading to "fixed cost absorption improvements." Importantly, Defendant Scaringe also reiterated that Rivian still had "clear visibility" into the strong demand for Rivian's EVs, stating that "[w]e feel very confident in the continued backlog that we have" and "[we] have clear visibility into – deep into 2024 with that backlog that's established." Defendant Scaringe further stated that Rivian would increase capacity at the Normal Facility from "65,000 units on an annual basis to 85,000 units."

**Answer:**  Paragraph 101 purports to characterize and selectively quote certain portions of the transcript for Rivian's Q2 2023 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 101.

102.   Blowing through $1.6 billion in cash in the previous quarter and selling Rivian's flagship product at a loss of tens of thousands of dollars per sale, should have alarmed investors, but Defendants' reassurances that strong demand and a significant ramp up in production were propelling Rivian to profitability very soon greatly alleviated any such concerns.

**Answer:**  Defendants deny the allegations in Paragraph 102.

**L.    Rivian's Chief Growth Officer Abruptly Resigns**

103.   On August 31, 2023, Jiten Behl, who joined Rivian in 2016 as its Chief Strategy Officer, and who had served as the Company's Chief Growth Officer since October 2020, abruptly resigned from the Company. The resignation of Rivian's Chief Growth Officer in the middle of the Company's purported Roadmap to profitability and growth is suspicious.

**Answer:**  Defendants admit that Jiten Behl, Rivian's former Chief Growth Officer, separated from the Company effective August 31, 2023 and, in connection with his separation, Mr. Behl entered into a consulting agreement with the Company, pursuant to which Mr. Behl will provide advisory and consulting services to the

Company for a term beginning on September 1, 2023 and continuing until November 30, 2025. Defendants otherwise deny the allegations in Paragraph 103.

104. On September 1, 2023, Rivian announced the appointment of Kjell Gruner as the Company's Chief Commercial Officer and President, Business Growth. The Company announced that Gruner would report directly to Defendant Scaringe.

**Answer:** Defendants admit the allegations in Paragraph 104.

**M.    Defendants Attend A Series Of Investor Conferences Where They Continue to Tout Strong Demand And That Production Ramp-up Is Still the Key Driver For Positive Gross Profit**

105. On September 7, 2023, Rivian participated in an investor conference with Goldman Sachs. During that conference, Defendant McDonough once again stressed that ramping production is "the single largest driver as we think about the path to positive gross profit for us." Defendant McDonough also reiterated that unlike other EV manufacturers experiencing softening demand due to macroeconomic pressures, the consumer demand for Rivian EVs was sound and the "backlog has been holding up well". Defendant McDonough reiterated the strength of demand notwithstanding her admission that based on Defendants' clear visibility into demand, they already knew that "one of the biggest inhibitors to purchase or the reason why someone cancels is wait time."

**Answer:** Defendants admit that Ms. McDonough participated in the 2023 Goldman Sachs Communacopia + Technology Conference on September 7, 2023. The second, third, and fourth sentences of Paragraph 105 purport to characterize and selectively quote certain portions of the transcript of Ms. McDonough's presentation at the 2023 Goldman Sachs Communacopia + Technology Conference on September 7, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 105.

106. On September 12, 2023, a UBS analyst report accepted Defendants' representations that there was strong enough demand to support increased production for the duration of the Roadmap. Indeed, the analyst report, implying that sufficient demand was a foregone conclusion, framed the question as whether Rivian's production could keep up with its strong demand, not whether demand could keep up with a ramp in production. *Id.* at page 12. The analyst report further explained that based on Defendants' representations, Rivian would become profitable in the fourth quarter of 2024, noting that "[w]e can see 4Q24 gross margin reaching [approximately] 6.5% setting of a positive 2024 exit rate for further gross margin expansion ahead as the company grows."

**Answer:** Paragraph 106 purports to characterize and selectively quote certain portions of an analyst report published by UBS on September 12, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 106.

107. On September 14, 2023, Rivian participated in Morgan Stanley's Laguna conference. During that conference, Defendant Scaringe continued to underline the importance of increased production for Rivian's "pathway to profitability". Defendant Scaringe stated: "[N]umber one, we continue to focus on ramping production…. That's really critical to achieve the level of fixed cost leverage or fixed cost absorption we need on the pathway to profitability."

**Answer:** Defendants admit that Dr. Scaringe participated in Morgan Stanley's 11th Annual Laguna Conference on September 14, 2023. The second and third sentences of Paragraph 107 purport to characterize and selectively quote certain portions of the transcript of Dr. Scaringe's presentation at Morgan Stanley's 11th Annual Laguna Conference on September 14, 2023, and Defendants therefore respectfully refer the court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 107.

108. Defendant Scaringe then touted Rivian's bright future, stating that "we've rounded the corner. You're starting to see that in our numbers. ***The production numbers are going up***." As in previous quarters, despite reporting financial figures that showed Rivian was blowing through cash and ramping up vehicle production much slower than analysts (and even the Company itself internally) projected, Defendants' repeated representations that the Roadmap was still on track dispelled any concerns.

**Answer:** The first sentence of Paragraph 108 purports to characterize and selectively quote certain portions of the transcript of Rivian's presentation at the Morgan Stanley conference on September 14, 2023, and Defendants therefore respectfully refer the court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 108.

**N.     Rivian Sells More Bonds, Buying More Time To Reach Profitability**

109. Despite presenting a rosy picture of progress on the Roadmap, Defendants knew Rivian's cash burn problem and massive operating losses were not improving fast enough. On the heels of bumping up the Company's 2023 guidance to 52,000 EVs in August 2023, Rivian conducted another bond offering to raise much-needed cash.

**Answer:**     Defendants admit that in October 2023, Rivian issued $1,725 million principal amount of green convertible unsecured senior notes due October 2030 at a discount of $15 million in a private offering to qualified institutional buyers. Defendants otherwise deny the allegations in Paragraph 109.

110. On October 11, 2023, Rivian issued $1.725 billion in 3.625% Green Convertible Senior Notes due 2030.

**Answer:**     Defendants admit that in October 2023, Rivian issued $1,725 million principal amount of green convertible unsecured senior notes due October 2030 at a discount of $15 million in a private offering to qualified institutional buyers. Defendants otherwise deny the allegations in Paragraph 110.

111. By executing its second capital raise of more than $1.5 billion in seven months, Rivian brought its total investor funding raised since the IPO to over $15 billion. Nevertheless, despite these repeated and massive influxes in cash, the Company was still racing against time to slow its bleeding of cash and to finally generate a profit.

**Answer:**     Defendants admit that Rivian raised funding from investors as disclosed in its SEC filings, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 111.

**O.     Rivian Announces Its 3Q 2023 Results, Modestly Bumps Up Guidance Again, And Doubles Down On The "Strong" Demand For Rivian EVs**

112. On November 7, 2023, Rivian announced its financial results for the third quarter of 2023 and published its quarterly shareholder letter for the third quarter of 2023 (the "3Q 2023 Shareholder Letter"). The 3Q 2023 Shareholder Letter was attached as an exhibit to a Form 8-K, which was signed by Defendant McDonough. The 3Q 2023 Shareholder Letter reported that for the third quarter of 2023, Rivian produced 16,304 vehicles and delivered 15,564 vehicles; Rivian's cost of revenues were $1.8 billion; with revenues of $1.34 billion, Rivian's gross profit

was ($477 million); and Rivian's free cash flow was (1.07 billion). The 3Q23 Shareholder Letter also noted that the "[t]otal revenues from the sale of regulatory credits were de minimis for the quarter."

**Answer:** Defendants admit that Rivian announced its financial results for the third quarter of 2023 in a Form 10-Q filed with the SEC on November 7, 2023. Defendants admit that Rivian published its Q3 2023 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on November 7, 2023. The third and fourth sentences of Paragraph 112 purport to characterize and selectively quote certain portions of Rivian's Q3 2023 Shareholder Letter dated November 7, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 112.

113. On the same day, November 7, 2023, Rivian held its quarterly earnings call. During that call, and consistent with Defendant Scaringe's mantra of underpromising, Defendant Scaringe announced that due to "progress across our production lines", Rivian was again "raising our production guidance for the year [from 52,000] to 54,000 total units." While the Company framed this as a positive development, this figure was still 8,000 units less than Rivian's internal projection, and significantly less than what analysts projected in late 2022 based on the Roadmap. *See* ¶¶76-77. Additionally, the Company's 54,000 figure implied that Rivian would produce just 14,309 vehicles in the fourth quarter of 2023, or approximately 2,000 less vehicles than it produced in the third quarter of 2023.

**Answer:** Defendants admit that Rivian held its Q3 2023 earnings conference call on November 7, 2023. Paragraph 113 purports to characterize and selectively quote portions of the transcript of Rivian's Q3 2023 earnings conference call on November 7, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants also incorporate and reassert their responses to Paragraphs 76-77, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 113.

114. During the earnings call, a Goldman Sachs analyst asked Defendant Scaringe for an update on the status of Rivian's execution on its Roadmap and whether weakening demand across the EV industry was now impacting Rivian. Defendant Scaringe stressed that "the continued ramp-up of our production facility

and the fixed cost absorption that comes with that" was driving Rivian's "high degree of confidence in [the] long-term gross margin for the business."

**Answer:** Paragraph 114 purports to characterize and selectively quote portions of the transcript of Rivian's Q3 2023 earnings conference call on November 7, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 114.

115.   Defendants continued to remain opaque with investors as to specifics surrounding Rivian's Backlog, yet expressed high confidence in demand based on the Backlog and cancellation rate metrics the Company held close to its vest. Defendant Scaringe stated that the Company still had clear visibility on Backlog and that, as a result, "we remain very bullish on R1 program and its long-term demand."

**Answer:**  The second sentence of Paragraph 115 purports to characterize and selectively quote portions of the transcript of Rivian's Q3 2023 earnings conference call on November 7, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 115.

116.   Analysts were particularly keyed into how many orders in the Backlog were new versus pre-March 2022 orders because Rivian was still honoring the original selling price when filling the pre-March 2022 orders and, thus, losing considerably more on those orders, increasing the gap that Rivian needed to bridge to profitability. On this topic, Defendant McDonough did not give any specifics but again noted that pre-March 2022 Backlog orders would "be feathered in" with the newer Backlog orders.

**Answer:**   The first sentence of Paragraph 116 purports to refer to the statements of unnamed analysts.  The identities, credibility, reliability, and accuracy of these unnamed analysts have not been established and Defendants, therefore, lack information or knowledge sufficient to form a belief as to the truth of their alleged statements, and allegations based on these statements are therefore denied.  The second sentence of Paragraph 116 purports to characterize and selectively quote portions of the transcript of Rivian's Q3 2023 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete

and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 116.

117.    Rivian also announced with its third quarter 2023 results that it was amending the Amazon Deal after Amazon reportedly placed only the bare minimum order of 10,000 EDVs. *See* Emma Roth, *Amazon and Rivian's Exclusive Deal For Electric Vans Might Not Last Much Longer*, The Verge (Mar. 13, 2023), www.theverge.com/2023/3/13/23637439/amazon-rivian-exclusive-deal-electric-vans-shaky-start. Rivian stated that the amendment to the Amazon Deal modified the "exclusivity provisions and allows us to sell commercial vans, which contain jointly-owned intellectual property, to third-parties, subject to distribution fees and certain limitations related to customer type and vehicle volume." Defendants tried to frame the termination of the exclusivity clause of the Amazon Deal as a windfall for Rivian which could now tap the commercial sector more broadly. Far from a windfall, if Rivian was unable to execute on converting a large preorder from one of the world's largest vehicle purchasers, which was also a Rivian investor, into actual purchases of its EDVs, it was far from certain that Rivian could secure increased demand for EDV purchases from other purchasers in the commercial sector. Indeed, the commercial side of the business never became a major driver of demand during the Class Period.

**Answer:**  Paragraph 117 purports to characterize and selectively quote certain portions of an article dated March 13, 2023, published by *The Verge* titled *Amazon and Rivian's exclusive deal for electric vans might not last much longer*, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 117.

118.    The day after Rivian's earnings call, an article in *Reuters* highlighted that the strong demand for Rivian EVs stood out from other EV manufacturers that had acknowledged ongoing demand problems. The article noted that Rivian raised its production forecast for 2023, "on the back of sustained demand for its trucks and SUVs on Tuesday, sending its shares up 4%. … Rivian's upbeat forecast is a small positive for an industry reeling from the double whammy of high inflation that has dulled buyer appetite and price cuts at market leader Tesla to stimulate demand." *See* Abhirup Roy and Akash Sriram, *Rivian Raises Production Target Amid Broader EV Demand Fears,* Reuters (Nov. 8, 2023), https://www.reuters.com/business/autos-transportation/rivian-beats-quarterly-revenue-estimate-raises-full-year-production-forecast-2023-11-07/.

**Answer:**  Paragraph 118 purports to characterize and selectively quote certain portions of an article dated November 8, 2023, published by *Reuters* titled *Rivian Raises Production Target Amid Broader EV Demand Fears*, and Defendants therefore respectfully refer the Court to that document for its complete and accurate

contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 118.

### P.   Based Upon Defendants' Misrepresentations, Analysts Estimate Rivian Will Produce 65,000 EVs in 2024

119.   In light of Defendants' continued drumbeat to the market about the viability of the Roadmap, the strength of, and "clear visibility" into, demand, and Rivian's corporate culture and strategy of providing the public with lower production figures than the Company's actual figures, analysts unanimously reported that the Company would produce substantially more vehicles in 2024 than it had in 2023. The chart below summarizes analysts' consensus following the November 7, 2023 conference call:

| Date | Analyst | Production Figure for 2024 |
|---|---|---|
| November 7, 2023 | UBS Securities | 65,000 |
| November 7, 2023 | Wells Fargo | 65,000 |
| November 7, 2023 | RBC Capital Markets | 65,000 |
| November 8, 2023 | BNP Paribas | ~65,000 |
| November 8, 2023 | Cannacord Genuity | ~65,000 |
| November 8, 2023 | Needham & Co | 74,737 (deliveries) |
| November 8, 2023 | J.P. Morgan | 64,060 |
| November 8, 2023 | Deutsche Bank | 65,000 |
| November 8, 2023 | Wedbush Securities | 65,000 |
| November 9, 2023 | Barclays | 65,000 |

**Answer:**  Paragraph 119 purports to characterize and paraphrase ten analyst reports published by UBS Securities, Wells Fargo, RBC Capital Markets, BNP Paribas, Cannacord Genuity, Needham & Co., J.P. Morgan, Deutsche Bank, Wedbush Securities, and Barclays between November 7, 2023 and November 9, 2023, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 119.

### Q.   The Truth is Revealed: Rivian's Stock Plummets 25% As The Company Announces That Its Production Story Has Crumbled And That Demand Has Fallen

120.   On February 21, 2024, Rivian announced its financial results for the fourth quarter and full year of 2023 and published its quarterly shareholder letter (the "2023 Shareholder Letter"). The 2023 Shareholder Letter was attached as an exhibit

to a Form 8-K, which was signed by Defendant McDonough. In its 2023 Shareholder Letter, published after market close, Rivian dropped a bombshell and stunned the market by announcing the wildly disappointing news that the Company would produce just 57,000 EVs in 2024. Indeed, Rivian's 2024 production estimate was less than what the Company actually produced in 2023 (57,232 EVs), was far less than analysts' consensus of 65,000 EVs, which was informed by what the Company had signaled towards just three months earlier, and even fell well short of the Company's internal production figure for 2023 (62,000 EVs). Far from ramping up production as Defendants represented throughout the Class Period, ***Rivian was now decreasing production***.

**Answer:** Defendants admit that Rivian announced its financial results for the fourth quarter and full year of 2023 in a Form 10-K filed with the SEC on February 26, 2024. Defendants admit that Rivian published its Q4 2023 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on February 21, 2024. The third and fourth sentences of Paragraph 120 purport to characterize and paraphrase Rivian's Q4 2023 Shareholder Letter dated February 21, 2024, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 120.

121. The same day, on February 21, 2024, Rivian also held its quarterly investor conference call for the fourth quarter and full year of 2023. During the call, Defendants further shocked investors by revealing that Rivian was dramatically changing its long-touted Roadmap – which was supposed to demonstrate a sustainable business model – by materially slashing the role of increased production to achieve positive gross margins and profitability in 2024. Rather than improving the fundamentals of Rivian's business (producing and selling a high volume of EVs at profit), the new "key driver" was saving on "variable costs" which would now account for 50% of the newly rewritten Roadmap. The remaining 50% of the new Roadmap would now be comprised of improved efficiency at the Normal Facility and non-vehicle revenue, which would represent 35% and 15% of the Roadmap, respectively.

**Answer:** Defendants admit that Rivian held its Q4 2023 earnings conference call on February 21, 2024. Paragraph 121 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q4 2023 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 121.

122. Defendant McDonough's admission that Rivian would now attempt to get to profitability chiefly by reducing variable costs stands in stark contrast with the Roadmap Rivian reiterated as recently as the previous quarter. *See* ¶¶112-119. Increasing production and building out its dual benefits of increasing revenue and decreasing costs through economies of scale was conspicuously absent. Now, with production suddenly ramping down in 2024, the only role in achieving positive gross margins that production would play was through cost savings. The shift in Roadmap also signaled another key problem – a lack of demand.

**Answer:** Defendants deny the allegations in Paragraph 122. Defendants also incorporate and reassert their responses to Paragraphs 112-119, inclusive, as if set forth fully herein.

123. During the same call, despite repeatedly boasting of "clear visibility" into the "strong" demand for Rivian's EVs which supposedly lasted "deep into 2024" and was singularly "resilient" against macroeconomic pressures, Defendant Scaringe now admitted that demand for Rivian's EVs had been "negatively impacted," and that the once "robust" Backlog was now dwindling due largely to "the impact of cancellations" (the very metric he reportedly watched "daily"). *See* ¶¶150, 152, 163, 181, 184, 191. Defendant Scaringe admitted that this "new" weakened demand, which somehow materialized in the span of one quarter, was due to macroeconomic pressures such as high interest rates. This was a complete about-face as Defendant Scaringe was forced to admit that the "strong demand" (*see* ¶¶42, 101, 142, 145) and "robust backlog" (*see* ¶¶63, 64, 92) that Rivian relentlessly touted was hardly immune from macroeconomic factors and provided no visibility even quarter to quarter regarding demand. They were illusory.

**Answer:** Paragraph 123 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q4 2023 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants also incorporate and reassert their responses to Paragraphs 42, 63-64, 92, 101, 142, 145, 150, 152, 163, 181, 184, and 191, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 123.

124. In light of the foregoing, and as part of Rivian's new "focus on driving cost efficiency", the Company also announced that it would "reduce the number of salaried employees by approximately 10%". Instead of improving gross margins by growing as Rivian claimed it would, Rivian was attempting to improve gross margins by shrinking, in both EV production and workforce.

**Answer:** The first sentence of Paragraph 124 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q4 2023 earnings

conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 124.

125. The market was floored. On this news, Rivian's stock price plunged $3.94 per share, *or more than 25%*, to close at $11.45 per share on February 22, 2024. Rivian lost over $750,000,000 in market capitalization in a single day.

**Answer:** The second and third sentences of Paragraph 125 purport to describe the price of Rivian's stock, and Defendants therefore respectfully refer the Court to the publicly available daily closing prices and trading volume information for the price and trading volume of Rivian stock. Defendants otherwise deny the allegations in Paragraph 125.

126. After Defendants revealed the truth about decreasing production, weak demand, and radical changes to the Roadmap, which contradicted Defendants' earlier representations, analysts expressed new skepticism of the Company's path forward. For example, a February 21, 2024 analyst report from UBS realized that Defendants' long-promised 2024 positive gross margins now lacked credibility since the Roadmap was no longer built on improving the fundamentals of the business by increasing vehicle production. The UBS report stated that "[Rivian] did hold onto their target of (modest) gross profit in 4Q24 but *we believe the market is highly skeptical of achieving this goal.*" This stands in stark contrast with UBS's report from the prior quarter, which stated that because Rivian was "[c]onfident on retail demand" and could produce 65,000 vehicles in 2024, there was "increased confidence on path to gross profit positive by 4Q24." *See* ¶106. Likewise, a February 21, 2024 analyst report from Wells Fargo bluntly stated that "we are skeptical RIVN can hit its positive gross margins/unit target. Cash burn likely accelerates. … [there are] new demand concerns."

**Answer:** The second and third sentences of Paragraph 126 purport to characterize and selectively quote from certain portions of an analyst report published by UBS on February 21, 2024, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. The fourth sentence of Paragraph 126 purports to characterize and selectively quote certain portions of an analyst report published by UBS on September 12, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. The fifth sentence of Paragraph 126 purports to characterize

and selectively quote certain portions of an analyst report published by Wells Fargo on February 21, 2024, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 126.

127. Market commentators also seized on Rivian's surprising news. A February 22, 2024 Seeking Alpha article entitled *Rivian Guidance Was Shocker* by Mario Tama noted that Rivian's "production outlook for 2024 was a shocker, as it assumes a total volume of only 57K electric vehicles. In 2023, Rivian Automotive produced 57,232 vehicles, so the outlook is specifically not factoring in any real growth in the company's production." Similarly, a February 23, 2024 Seeking Alpha article entitled *Rivian: Smart Investors Avoided This Unprofitable EV Maker* by Justin Sullivan stated that "Rivian's lack of profitability and poor fundamentals are coming home to roost" and that "Rivian guided to a markedly lower-than-expected Q1 production outlook."

**Answer:** The second sentence of Paragraph 127 purports to characterize and selectively quote from certain portions of an article dated February 22, 2024, published by *Seeking Alpha* titled *Rivian Automotive Q4: Guidance Is A Shocker*, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. The third sentence of Paragraph 127 purports to characterize and selectively quote from certain portions of an article dated February 23, 2024, published by *Seeking Alpha* titled *Rivian: Smart Investors Avoided This Unprofitable EV Maker*, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 127.

### R.    Post-Class Period Facts

#### 1.    Rivian Cancels the Planned Georgia Facility

128. On March 7, 2024, in the immediate aftermath of Defendants shocking the market by announcing the stunning failure of the Roadmap to profit, Rivian issued a press release further confirming that its growth had stalled and stating that it would "pause" construction of its planned $5 billion manufacturing facility in Georgia, which would have been the Company's second manufacturing facility.

**Answer:** Paragraph 128 purports to characterize and paraphrase a March 7, 2024 press release issued by Rivian, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 128.

### 2. Three Senior Finance and Growth Officers Resign Within Two Months

129. On May 3, 2024, Chief Operating Officer Frank Klein resigned.

**Answer:** Defendants admit that Chief Operating Officer Frank Klein separated from the Company effective May 17, 2024. Defendants otherwise deny the allegations in Paragraph 129.

130. On the same date, Barclays issued an analyst report titled *COO Frank Klein To Step Down, Replaced By Javier Varela, Former COO and Deputy CEO of Volvo*. This report linked Klein's resignation to Rivian's failed attempt at increasing production. A Barclays analyst wrote in the report that "Klein joined RIVN in Jun'22 and was a key part in getting prod. at Normal to more stable / efficient levels." The analyst stated that Klein's resignation showed Rivian's continuing "challenge[s] in cost management": "[Rivian's] [t]iming of departure aligns with recently ended R1 re-rate at Normal, plans to bring R2 to Normal in 2026. Potentially reflects ongoing challenge in cost management."

**Answer:** Paragraph 130 purports to characterize and selectively quote certain portions of an analyst report published by Barclays on May 3, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 130.

131. On July 1, 2024, Rivian announced that Jeffrey Baker, the Chief Accounting Officer resigned, effective July 27, 2024.

**Answer:** Defendants admit that on July 1, 2024, Jeffrey Baker, Rivian's Chief Accounting Officer notified Rivian of his decision to resign effective July 27, 2024.

132. On July 24, 2024, Dr. Kjell Gruner, Chief Commercial Officer and President, Business Growth, also resigned. This resignation is particularly suspicious because it occurred only five months after Rivian's growth was crippled by the Company's February 21, 2024 announcement of flat production year-over-year,

rather than the growth the market was expecting. Additionally, this was the second time an executive overseeing Rivian's "Growth" department resigned in a year.

**Answer:** Defendants admit that Dr. Kjell Gruner, Rivian's former Chief Commercial Officer and President, Business Growth, notified Rivian of his decision to resign to pursue other opportunities on July 24, 2024. Portions of the second sentence of Paragraph 132 purport to characterize and selectively quote certain portions of Rivian's Q4 2023 Shareholder Letter dated February 21, 2024, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 132.

### 3. Rivian Massively Decreases 2024 Production Guidance And Pivots To Rely On Regulatory Credits As A White Knight To Achieve Profit

133. On October 4, 2024, Rivian announced in a press release, which was also filed as a Form 8-K that was signed by Defendant McDonough, that it was no longer going to produce 57,000 vehicles in 2024 and instead would produce just 47,000-49,000 vehicles. Vehicle production for 2024 was no longer just slightly down from 2023, as the Company had announced in February 2024, the Company would now produce 15% fewer vehicles in 2024 than it had in 2023.

**Answer:** Defendants admit that it filed a Form 8-K, attaching a press release dated October 4, 2024, with the SEC on October 4, 2024. Paragraph 133 purports to characterize and paraphrase Rivian's October 4, 2024 press release, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 133.

134. On November 7, 2024, Rivian announced its financial results for the third quarter of 2024 and the same day held a conference call with investors. During that call, Defendant McDonough announced that "approximately $300 million of regulatory credit sales in 2024" would be a key component of the Company's annual revenue. Far from the first iteration of the Roadmap, in which Defendant McDonough represented that increased production and sales of EVs would account for 66% of the Company's bridge to positive gross profit, Rivian would now produce and sell far fewer vehicles than in 2023 and, instead, attend to its multi-billion dollar cash burn problem by increasing revenues through large sales of banked regulatory credits.

**Answer:** Defendants admit that Rivian announced its financial results for the third quarter of 2024 in a Form 10-Q filed with the SEC on November 7, 2024. Defendants admit that Rivian held its Q3 2024 earnings conference call on November 7, 2024. The second and third sentences of Paragraph 134 purport to characterize and selectively quote certain portions of the transcript of Rivian's Q3 2024 earnings conference call, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 134.

## V. DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS

### A. August 11, 2022 – Rivian Announces Results For The Second Quarter of 2022 And Unveils The Profit Roadmap

135. The Class Period begins on August 11, 2022. On that date, Rivian filed its Form 10-Q reporting its financial results for the second quarter of 2022 (the "2Q 2022 Form 10-Q"). The 2Q 2022 Form 10-Q was signed by the Individual Defendants. Rivian also filed its 2Q 2022 Shareholder Letter that same day, which was an exhibit to a Form 8-K signed by Defendant McDonough.

**Answer:** Defendants admit that Plaintiffs allege that the purported Class Period begins on August 11, 2022. Defendants admit that Rivian filed a Form 10-Q with the SEC on August 11, 2022. Defendants admit that Rivian published its Q2 2022 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on August 11, 2022. Defendants otherwise deny the allegations in Paragraph 135.

136. Hinting to the Roadmap that Rivian would unveil later that day, the 2Q 2022 Shareholder Letter highlighted Rivian's ability, and need, to ramp production to address the supposedly "strong" demand for its EVs as demonstrated by the Company's "increasing" Backlog. The letter stated, in relevant part, that "[w]e remain focused on *fully ramping our 150,000 installed annual units of capacity in Normal, Illinois to meet the strong demand for our products. Our net consumer preorder backlog as of June 30, 2022 was approximately 98,000 and momentum continues to increase*."

**Answer:** Paragraph 136 purports to characterize and selectively quote certain portions of Rivian's Q2 2022 Shareholder Letter dated August 11, 2022, and

Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 136.

137.   This statement was materially false and misleading and omitted material facts when made because Defendants Rivian and McDonough knew or recklessly disregarded that the 98,000 preorder Backlog figure was not a credible indicator of "strong demand," or of actual purchase orders, upon which Rivian could reasonably rely or use to model a Roadmap chiefly based on ramping production because:

    a.   Rivian's Backlog was based on fully refundable $1,000 deposits that required no purchase commitment on the part of the potential consumer, and could be canceled at any time for any reason without penalty, which rendered the Backlog highly volatile and unreliable. *See* ¶¶ 5, 31, 52-54, 91, 116, 123.

    b.   Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, significantly increasing the risk of cancellations, which, in turn, reduced the Backlog and the supposed demand for Rivian EVs. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

    c.   A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low purchase price relative to cost, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

**Answer:**   The allegations in Paragraph 137 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 137.  Defendants also incorporate and reassert their responses to Paragraphs 5, 31, 39, 41, 52-54, 84, 91-93, 116, and 123, inclusive, as if set forth fully herein.

138.   While simultaneously and confidently touting that the "strong" and "increasing" demand for Rivian EVs warranted a massive production ramp (based on the Backlog), Defendants stated in an apparently self-contradictory boilerplate risk disclosure in Rivian's 2Q 2022 Form 10-Q that Rivian "may not be able to accurately estimate supply and demand":

We may not be able to accurately estimate the supply and demand for our vehicles, which could result in a variety of inefficiencies in our business and hinder our ability to generate revenue and profits. If we fail to accurately predict our manufacturing requirements, we could incur additional costs or experience delays.

**Answer:** Paragraph 138 purports to characterize and selectively quote certain portions of Rivian's Form 10-Q filed with the SEC on August 11, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 138.

139. In context, this statement was materially false and misleading when made because Defendants knew they were simultaneously telling investors, in powerful terms and without qualification, that Rivian had "strong" (and still "increasing") demand that warranted a large ramp in the Company's production – hence eliminating any uncertainty about their ability to estimate demand (*see* ¶¶ 31, 39-41, 45-47, 53-54). Defendants further represented that their confidence in the demand for Rivian EVs was based on current and verifiable data that they closely tracked, including, but not limited to, Backlog, order rates, cancellation rates, and macroeconomic factors impacting the EV industry. *See* ¶¶ 2-5, 53-54.

**Answer:** The allegations in Paragraph 139 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 139. Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, and 53-54, inclusive, as if set forth fully herein.

140. Later that same day, after the market closed (at 7:58 p.m. EST), Rivian held its quarterly earnings conference call. During the call, Defendant Scaringe linked Rivian's "key focus" of ramping production with the "continued strong demand for [Rivian's] products," which he again based on the Backlog:

> The Rivian team delivered strong second quarter results despite the challenging supply chain environment. We produced and delivered over 4,400 vehicles across the R1T, R1S, and EDV 700. We have also recently started production validation builds of our EDV 500, which is a narrower and shorter version of the EDV and well-positioned for markets and applications where smaller form factors are needed. ***Our key focus remains ramping our normal facility to its full 150,000 units of installed capacity.*** While we continue to manage supply chain constraints, we are encouraged by the progress we are making, which is important for us to be able to add a second shift for general assembly towards the end of this quarter.
>
> ***Equally as important is the continued strong demand for our products. As of June 30, we had about 98,000 net preorders and reservations for our R1 vehicles. Our daily preorder rate accelerated in the second quarter compared to the first quarter, and as a reminder, these orders are for the United States and Canada only and are net of deliveries and cancellations.*** In June, we hosted a media venture showcasing the capabilities of our R1S in both on and off-road settings. It has been great to see the feedback from various media sources and customers as more of our R1S vehicles get out on the road.

**Answer:** Paragraph 140 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q2 2022 earnings conference call on August 11, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 140.

141.    This statement was materially false and misleading and omitted material facts when made because Defendant Scaringe knew or recklessly disregarded that Defendants had no basis to claim Rivian's demand was "strong" or that it supported Rivian's "key focus" of ramping production based on the Backlog because:

   a.    Claiming production ramp was a "key focus" presupposed that there was sufficient demand to increase production, and that produced units would be sold at a profit. *See* ¶¶ 31, 39-41, 45-47, 53-54, 90.

   b.    The Backlog was not a valid proxy for demand, nor directly correlated to actual vehicle purchases. *See* ¶¶ 31, 39-41, 45-47, 53-54.

   c.    Rivian's Backlog was based on $1,000 deposits that required no purchase commitment on the part of the potential consumer and could be canceled at any time without penalty for any reason, which rendered the Backlog highly volatile and unreliable. *See* ¶¶ 5, 31, 52-54, 91, 116, 123.

   d.    Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, significantly increasing the risk of cancellations, and, in turn, the Backlog and the supposed demand for Rivian EVs. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

   e.    A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price relative to cost, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

   f.    Stating that the 98,000 preorder Backlog was "net" of cancelations misleadingly implied that all cancelations had already been accounted for and ignored the high risk of future cancelations. *See* ¶¶ 31, 39-42, 45-47, 53-54.

**Answer:** The allegations in Paragraph 141 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 141. Defendants also incorporate and reassert their responses to Paragraphs 5, 31, 39-42, 45-47, 52-54, 90-93, 116, and 123, inclusive, as if set forth fully herein.

142. During the earnings call, an analyst from Wolfe Research asked Defendant McDonough the burning questions on investors' minds: when and how was Rivian going to achieve gross margin profitability and demonstrate that it had a sustainable business model. In response, Defendant McDonough unveiled a three-pronged Roadmap that focused "first and foremost" on ramping production. In the same breath, she claimed that Rivian would start to become profitable in 2024:

**Rod Lache**

Hi, everybody. I'd like to just ask two questions. One is for Claire. A lot has obviously happened financially over the past year or so with inflation and supply chain issues. But could you maybe take a minute and maybe just take a step back and talk to us about the bridge to achieving positive gross margin from where we are at right now? We know that it consists of pricing and cost and volume, but if you could give us some thoughts on the components of that and the timing?...

**Defendant McDonough**

Thanks, Rod. This is Claire speaking. ***And I wanted to hit on your first question in terms of what that path to positive gross profit and positive unit economics looks like for Rivian in particular***. As you called out, right, we have seen unprecedented levels of inflation, especially across our raw material inputs and lithium prices that have gone up north of 115% over – since the start of this year, in particular, coupled with COVID and other factors that have driven a challenging supply chain and inflationary environment as well as part of that. But as we look out to the future, as I mentioned in my prepared remarks, ***we have significant confidence in the long-term gross profit margin targets that we've set out for ourselves of approximately 25%. And I will give you a little bit of that path as we see from today going from our current state to that future state of positive unit economics. We see 2024 as really that pivotal year for us in driving a step change in terms of the underlying gross margin expectations within the business, as we have a couple of significant factors that are starting to impact our underlying unit economics. First and foremost, it's really driven by us ramping our plants and our productivity within our 150,000 units of installed capacity within Normal that allows us to really leverage all of those fixed overhead and costs associated with our large-scale production facility.***

Second, it's also our ability to introduce our next-generation technologies into our vehicles, first in our R1 products as well as in our EDVs. So those are things like in-sourcing of our motors, the introduction of our LFP pack, which will be introduced first in our commercial vehicles, that allow us to really drive a step change in terms of vehicle performance in that time frame, which enables us to increase pricing on the vehicles, given the fact we will have

vehicles with added range and added performance and capabilities, but they also importantly drive significant cost-downs within our bill of materials as we look at that roadmap ahead.

And then finally, the other core factor as we think about that step-stone from a gross profit perspective is also really the anniversarying or moving beyond those pre-March 1 pre-orders as well that allow us to move into our current ASPs. And as we reiterated our last earnings call, we have seen $93,000 plus ASPs with the preorders that we have had post pricing change.

**Answer:** Paragraph 142 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q2 2022 earnings conference call on August 11, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 142.

143.   This statement was materially false and misleading and omitted material facts when made because Defendant McDonough knew or recklessly disregarded that Defendants had no reasonable basis to claim Rivian could achieve, let alone have "significant confidence" to achieve, positive gross profit margins in 2024, chiefly through a Roadmap staked on production ramp because:

      a.    Ramping production to achieve positive gross profit margins presupposed that there was sufficient demand to warrant increased production, and that produced units would be sold at a profit. At the time, Defendants had no reasonable basis to assume either would be possible in time to deliver on the Roadmap. *See* ¶¶ 31, 39-41, 45-47, 53-54, 90.

      b.    Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

      c.    Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, significantly increasing the risk of cancellations, and, in turn, the Backlog and the supposed demand for Rivian EVs. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

      d.    A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price relative to cost, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.  Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶4-6, 31, 39-41, 45-47.

f.  Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶2-5, 53-54.

**Answer:** The allegations in Paragraph 143 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 143. Defendants also incorporate and reassert their responses to Paragraphs 2-6, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

**B.     November 9, 2022 – Rivian Announces Financial Results for the Third Quarter of 2022**

144.   On November 9, 2022, Rivian published its 3Q 2022 Shareholder Letter, which was an exhibit to a Form 8-K signed by Defendant McDonough. On that date, the Company also filed its Form 10-Q reporting its financial results for the third quarter of 2022 (the "3Q 2022 Form 10-Q"), which was signed by the Individual Defendants.

**Answer:** Defendants admit that Rivian announced its financial results for the third quarter of 2022 in a Form 10-Q filed with the SEC on November 9, 2022. Defendants admit that Rivian published its Q3 2022 Form 10-Q, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on November 9, 2022. Defendants otherwise deny the allegations in Paragraph 144.

145.   The 3Q 2022 Shareholder Letter boasted, in relevant part, that Rivian's "robust" Backlog indicated "strong demand" for Rivian EVs despite the economic uncertainty facing the EV industry, and served as the backbone of the Company's production ramp and bridge to profitability in 2024:

Over the recent months, we achieved key operational and strategic milestones. Production continued to ramp on our R1 and RCV platform lines; we produced 7,363 total vehicles during the quarter representing a 67% increase as

compared to the second quarter of 2022. *We recently initiated our second manufacturing shift and remain focused on ramping production to meet the strong demand for our products. As we navigate through these uncertain economic times, we are encouraged by the strong demand for our products as evidenced by our robust preorder backlog*.

**Answer:** Paragraph 145 purports to characterize and selectively quote certain portions of Rivian's Q3 2022 Shareholder Letter dated November 9, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 145.

146. This statement, which continued to confidently justify ramping production in the face of economic pressures impacting the EV industry, due to the supposedly "strong demand" for Rivian EVs (as evidenced by the Company's "robust preorder" Backlog), was materially false and misleading and omitted material facts when made because Defendants Rivian and McDonough knew or recklessly disregarded that:

a.    "Ramping production" to achieve positive gross margins presupposed that there was sufficient demand to warrant increased production, and that produced units would be sold at a profit. At the time, Defendants had no reasonable basis to assume either would be possible in time to deliver on the Roadmap. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

b.    Rivian's support for confidently claiming it had "strong demand" was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog was not directly correlated to demand or actual EV purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

c.    Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 4-6, 31, 39-41, 45-47.

d.    A material portion of Rivian's "robust backlog" was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price relative to cost, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.    Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 2-5, 53-54.

**Answer:**    The allegations in Paragraph 146 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 146.  Defendants also incorporate and reassert their responses to Paragraphs 2-6, 31, 39-41, 45-47, 53-54, 90, 93, 116, and 123, inclusive, as if set forth fully herein.

147.    Despite Defendants' continued confident and unqualified claims about the "strong demand" for Rivian EVs, which supposedly supported a massive production ramp, Rivian's 3Q 2022 Form 10-Q still included the same self-contradictory and boilerplate risk disclosure as the previous 2Q 2022 Form 10-Q:

We may not be able to accurately estimate the supply and demand for our vehicles, which could result in a variety of inefficiencies in our business and hinder our ability to generate revenue and profits. If we fail to accurately predict our manufacturing requirements, we could incur additional cost or experience delays.

**Answer:**  Paragraph 147 purports to characterize and selectively quote certain portions of Rivian's Form 10-Q filed with the SEC on November 9, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 147.

148.    In context, this statement was materially false and misleading when made because Defendants knew they were simultaneously telling investors, in powerful terms without qualification, that Rivian had such "strong" (and still "increasing") demand that it warranted a large ramp in the Company's production – hence eliminating any uncertainty about their ability to estimate demand (*see* ¶¶ 31, 39-41, 45-47, 53-54). Defendants further represented that their confidence in the demand was based on current and verifiable data that they closely tracked, including, but not limited to, Rivian's Backlog, order rates, cancellation rates, and macroeconomic factors impacting the EV industry. *See* ¶¶ 2-5, 53-54.

**Answer:**    The allegations in Paragraph 148 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 148.  Defendants also incorporate and

reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, and 53-54, inclusive, as if set forth fully herein.

149. On November 9, 2022, Rivian also held its 3Q 2022 conference call with analysts. During that call, Defendant McDonough announced that Rivian would no longer publicly report its Backlog figures, forcing investors to trust Defendants going forward about the supposed strength of the Backlog and its supposed relation to demand. At all times relevant, Defendants represented that Rivian was closely watching demand (*see* ¶¶ 2-5, 31, 39-41, 45-47, 53-59) and, thus, could accurately assess it based on credible metrics.

**Answer:** Defendants admit that Rivian held its Q3 2022 earnings conference call on November 9, 2022. The second sentence of Paragraph 149 purports to characterize and paraphrase certain portions of the transcript of Rivian's Q3 2022 earnings conference call on November 9, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, and 53-59, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 149.

150. During the Q&A portion of the earnings call, a Deutsche Bank analyst asked Defendants what "production rate" Rivian "need[ed] to achieve" profit under the Roadmap. Defendant McDonough did not commit to a specific figure, but stressed that production ramp accounted for "two-thirds" of the Roadmap and, thus, played an outsized role in Rivian achieving positive gross margins and profitability in 2024:

> *[A]s we've talked about in the past, we expect to see a material step change in gross margin in that walk from current state to that 2024-time frame. And the biggest lever, not surprisingly, is really that fixed cost leverage* as well as our opportunity to move beyond some of the start-up-related costs that you heard RJ and myself talk a bit about that we've already seen from a process perspective, Q3 versus Q2. *That reflects about two-thirds of the margin walk. So just wanted to make sure that you had a sense for just the magnitude of how important ramp is from an overall unit economic perspective*.

> *The second key driver for us is associated with pricing. As we've talked about in the past, the post-March 1 configured preorders that we have in our order book reflect a $93,000 average ASP.* And we've got a lot of really exciting next-generation technologies that will be coming into the fold as well that allows us to believe that, that ASP could even drive meaningfully higher on a go-forward basis as well. So that's the second core lever in that economic walk. And then finally, last but certainly not least, is really all of the core focus and work that we're doing right now around the reduction of our bill of materials. So importantly, the engineering and design changes and the road map we have

DEFENDANTS' ANSWER TO LEAD
PLAINTIFFS' AMENDED COMPLAINT
66
CASE NO.: 2:24-cv-04566 CBM (JPR)

in place to drive meaningful cost savings within that bill of materials over the next couple of years.

And then finally, all of the work that our procurement teams are doing around commercial cost-down opportunities as we continue to scale the business and importantly, work hand-in-hand with our supply chain partners and as Rivian continues to grow out its own manufacturing capacity and drive better unit economics for the business….

We'll continue to see ongoing performance and improvement as we scale, *especially given the magnitude of how important ramp is across the board*. And so the important piece here is that in 2024, you see each of these key levers really in place as it pertains to production ramp, as it pertains to Rivian moving to those post-March 1 preorder base, and importantly, as you think about the composition of a lot of the engineering design changes that we have from a road map perspective, that all come together to drive that meaningful step change in gross profit.

**Answer:** Paragraph 150 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q3 2022 earnings conference call on November 9, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 150.

151. These statements were materially false and misleading and omitted material facts when made because Defendant McDonough knew or recklessly disregarded that:

    a.    Defendants had no credible basis to claim production ramp could account for "two-thirds" of the Roadmap to profit in 2024 given the Company's lack of clarity into demand, highly unprofitable sales prices, and existing supply chain and macroeconomic constraints. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

    b.    Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog was not directly correlated to demand or actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 2-5, 31, 52-54, 91, 116, 123.

    c.    Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens

of thousands of dollars on the sale of each EV produced. *See* ¶¶4-6, 31, 39-41, 45-47.

d.   A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price relative to cost, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 31, 52-54, 91, 116, 123.

e.   Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 2-5, 53-54.

f.   Macroeconomic factors, including high inflation and high interest rates were already impacting the EV industry as a whole, and softening demand. Rivian was not immune to these factors, nor was its Backlog. *See* 2-5, 53-54.

**Answer:**   The allegations in Paragraph 151 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 151.  Defendants also incorporate and reassert their responses to Paragraphs 2-6, 31, 39-41, 45-47, 52-54, 91, 116, and 123, inclusive, as if set forth fully herein.

**C.   November 29, 2022 – Rivian Attends Redburn CEO Conference**

152.   On November 29, 2022, Rivian participated in a Redburn CEO conference. During that conference, Defendant Scaringe stressed that demand was "foundational to the business" and that Rivian had "to make sure that demand continues to exceed our production capacity". When confronted by a Redburn analyst about weakened demand for Lucid and Tesla EVs due to macroeconomic factors, and whether Rivian could still support its massive production ramp, Defendant Scaringe shrugged off any concerns and confidently explained that Rivian had a "clear line of sight through 2024 in terms of demand" that was continuing to balloon:

**Charles Coldicott** - Redburn (Europe) Limited

But RJ, I think where I'd like to kick off is asking about demand. So obviously, we've seen order intake slow materially at some other EV names, people like Lucid, even Tesla in certain regions. And a lot of customers are having a tough time right now. Are you confident that Rivian can sell everything it produces whatever the macro backdrop?

**Defendant Scaringe**

Yes. So it's a great question. ***It's foundational to the business to make sure that demand continues to exceed our production capacity. What we've been challenged with, really, over the last year that we've had such a large and growing demand backlog*** that managing customer expectations and making sure we're communicating appropriately to customers, ***some of which were going to be in the backlog or a line for over 2 years.*** That's been a really core focus. ***And as we sit here today, we have a very clear line of sight through 2024 in terms of demand, so we feel very confident about that, and we continue to see – and we talked about this on our last earnings call, we continue to see our backlog grow even as we're ramping deliveries***.

**Answer:**  Defendants admit that Rivian participated in Redburn's 2022 CEO Conference on November 29, 2022.  Paragraph 152 purports to characterize and selectively quote portions of the transcript of Rivian's presentation at Redburn's 2022 CEO Conference on November 29, 2022, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 152.

153.  These statements were materially false and misleading and omitted material facts when made because Defendant Scaringe knew or recklessly disregarded that:

a. Defendants had no credible basis to be "very confident" about a "clear line of sight through 2024 in terms of demand" to deliver on the Roadmap given the Company's lack of clarity into demand, highly unprofitable sales prices, and existing supply chain and macroeconomic constraints. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

b. Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog was not directly correlated to demand or actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

c. Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 4-6, 31, 39-41, 45-47.

d.   A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price relative to cost, further undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.   Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 5, 39, 41, 93, 116, 123.

f.   By claiming Rivian had "clear" sight into demand "through 2024", Defendant Scaringe signaled that Defendants already knew Rivian had sufficient demand to deliver on the Roadmap to become profitable in 2024. But Defendant Scaringe had no basis for this claim for the reasons given in (a)-(e).

**Answer:**   The allegations in Paragraph 153 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 153.  Defendants also incorporate and reassert their responses to Paragraphs 2-6, 31, 39-41, 45-47, 53-54, 90, 93, 116, and 123, inclusive, as if set forth fully herein.

**D.   February 28, 2023 – Rivian Files its Shareholder Letter and Financial Results for the Fourth Quarter of 2022, Including Very Disappointing 2023 Production Guidance That Raised Questions About the Roadmap**

154.   On February 28, 2023, Rivian filed its 4Q 2022 Shareholder Letter, which was an exhibit to a Form 8-K signed by Defendant McDonough. The 4Q 2022 Shareholder Letter announced Rivian's disappointing 2023 production guidance of just 50,000 vehicles.

**Answer:**   Defendants admit that Rivian published its Q4 2022 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on February 28, 2023.  The second sentence of Paragraph 154 purports to characterize and paraphrase certain portions of Rivian's Q4 2022 Shareholder Letter dated February 28, 2023, and Defendants therefore respectfully refer the Court to that

document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 154.

155. On February 28, 2023, Rivian also filed its Form 10-K for 2022 (the "2022 Form 10-K"), which was signed by the Individual Defendants. In the 2022 Form 10-K, Defendants included the following boilerplate risk disclosure, which was notably different than the risk disclosure Rivian previously used in its 10-Qs in that it no longer doubted Rivian's ability to estimate demand. Instead, the disclosure raised a new contradiction by warning about Rivian's ability to maintain demand, despite Defendants' confident assurances that demand was very strong and they had a clear line of sight into it through 2024:

> Our ability to become profitable in the future will depend on the continued successful development and commercial production and acceptance of our vehicles and services, our ability to maintain strong demand and average selling prices for our vehicles, as well as our capability to manufacture our vehicle portfolio efficiently and estimate and effectively manage both our operating expenditures and our capital expenditures.

**Answer:** Defendants admit that Rivian filed its Form 10-K for 2022 with the SEC on February 28, 2023. Paragraph 155 purports to characterize and selectively quote from certain portions of Rivian's Form 10-K filed with the SEC on February 28, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 155.

156. This statement was materially false and misleading when made because Defendants knew or recklessly disregarded that:

    a. Defendants had repeatedly assured investors that demand would not be an issue for the duration of the Roadmap because Defendants had a "clear" line of sight into demand that lasted into 2024 (*i.e.* covering the path to profit), based on current and verifiable data that they closely tracked, including Rivian's Backlog, order rates, and cancellation rates. Unbeknownst to investors, this claim was baseless and it further voided the significance of Rivian's risk disclosure. *See* ¶¶ 31, 39-41, 45-47, 53-54.

    b. Rivian improperly based demand on its Backlog, which was not a valid proxy for demand. Rivian's Backlog was based on $1,000 deposits that required no purchase commitment on the part of the potential consumer and could be canceled at any time without

penalty for any reason, which rendered the Backlog highly volatile. *See* ¶¶ 5, 31, 52-54, 91, 116, 123.

c.  Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, which led to significant cancellations, and, in turn, reduced the Backlog and the supposed demand for Rivian EVs. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

d.  A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.  Macroeconomic factors, including high inflation and high interest rates were already adversely impacting the EV industry as a whole and causing competing EV manufacturers to reduce prices to address softening demand. Rivian was not immune to these factors, but Defendants claimed it was not similarly impacted by them. *See* ¶¶ 2-5, 53-54, 64-71.

**Answer:**  The allegations in Paragraph 156 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 156.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 91-93, 116, and 123, inclusive, as if set forth fully herein.

157.  On February 28, 2023, Rivian also held an earnings conference call to discuss the Company's quarterly results. In his prepared remarks, Defendant Scaringe doubled down on his earlier claim that Defendants had "clear" visibility into the strong demand for Rivian EVs "well into 2024" based on the Backlog, which, in turn, supported the Company's production-focused Roadmap to achieve profit in 2024. Defendant Scaringe stated, in relevant part, as follows:

In the fourth quarter, we increased production over 10,000 units. This represents a 36% increase over the third quarter of 2022. ***We maintain a vehicle backlog that provides clear demand visibility well into 2024***.

**Answer:**  Defendants admit that Rivian held its Q4 2022 earnings conference call on February 28, 2023.  Paragraph 157 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q4 2022 earnings conference call on February 28, 2023, and Defendants therefore respectfully refer the Court to that

document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 157.

158. This statement made by Defendant Scaringe was materially false and misleading and omitted material facts when made because Defendant Scaringe knew or recklessly disregarded that:

   a. The Backlog was not a valid proxy for demand, nor directly correlated to actual vehicle purchases, or the expected delivery of vehicles to generate revenue. Thus it could not provide "clear demand visibility well into 2024". *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

   b. Rivian's Backlog was based on fully refundable $1,000 deposits that required no purchase commitment on the part of the potential consumer, and could be canceled at any time for any reason without penalty, which rendered the Backlog highly volatile and unreliable. *See* ¶¶ 5, 31, 52-54, 91, 116, 123.

   c. Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, which led to significant cancellations, and, in turn, reduced the Backlog and the supposed demand for Rivian EVs. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

   d. A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low purchase price relative to cost, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

   e. Macroeconomic factors, including high inflation and high interest rates were already adversely impacting the EV industry as a whole and causing competing EV manufacturers to reduce the price to purchase an EV to address softening demand. Rivian was not immune to these factors. *See* ¶¶ 2-5, 53-54.

   f. By claiming Rivian had "clear" visibility into demand through 2024, Defendant Scaringe signaled that Defendants already knew Rivian had sufficient demand to deliver on the Roadmap, under which Rivian would become profitable in 2024. But Defendant Scaringe had no basis for this claim for the reasons given in (a)-(e).

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT

73

CASE NO.: 2:24-CV-04566 CBM (JPR)

**Answer:** The allegations in Paragraph 158 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 158. Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 91-93, 116, and 123, inclusive, as if set forth fully herein.

159. In Defendant McDonough's prepared remarks to the February 28 earnings call, she reiterated that Rivian would still achieve gross margin profit by 2024. Defendant McDonough also maintained that production ramp accounted for 66% or "two-thirds" of the equation to achieving profit in 2024, and was still very well supported by the strong demand for Rivian EVs:

**Defendant McDonough**:

*I want to reinforce the important steps we took during 2022 to drive towards profitability…*

*We forecast reaching positive gross profit in 2024* and therefore expect by the end of 2024, we will no longer have material LCNRV inventory charges and losses on firm purchase commitments associated with the production at our Normal plant.

In addition to LCNRV, there were factors which negatively impacted our cost of goods sold that we do not believe are reflective of our long-term cost structure. *The most significant driver continues to be our production levels.*

*The largest lever in our forecast is the swing from negative $1 billion of gross profit in Q4 2022 to a step change in positive gross margin in 2024.*

There are 3 key levers that enable this improvement.

*First, the most impactful driver is the per-unit reduction of labor overhead and ramp expenses as our large-scale plant produces a greater number of units*. With the addition of our second shift, the plant in Normal is currently staffed to produce *a significantly higher number of units than our current run rate. For context, these expenses represent 2/3 of the bridge from our current COGS per unit to what we expect by the end of 2024.*

The second area is our material costs. We have a detailed road map of both engineering and commercial cost downs. As RJ mentioned, our recent Supplier Day demonstrated the win-win opportunity for our suppliers to participate in Rivian's growth. The final bucket is price. The implementation of our reservation system in early 2022 provides us the pricing flexibility to accommodate the introduction of new products, technologies and inflationary pressures.

The final bucket is price.

**Answer:** Paragraph 159 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q4 2022 earnings conference call on February

28, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 159.

160. These statements were materially false and misleading and omitted material facts when made because Defendant McDonough knew or recklessly disregarded that:

    a.    Defendants had no credible basis to claim production ramp could account for "two-thirds" of the Roadmap to profit in 2024 given the Company's lack of clarity into demand, highly unprofitable sales prices, and existing supply chain and macroeconomic constraints. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

    b.    Rivian's volatile Backlog was not a valid proxy for demand and could not show "strong demand" or provide a "very clear line of sight" into demand in 2024. Thus, the Backlog did not support Rivian's Roadmap thesis, which was based chiefly on production ramp. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

    c.    Rivian's Backlog was based on $1,000 deposits that required no purchase commitment on the part of the potential consumer and could be canceled at any time without penalty for any reason, which rendered the Backlog highly volatile. *See* ¶¶ 5, 31, 52-54, 91, 116, 123.

**Answer:** The allegations in Paragraph 160 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 160. Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 90-91, 116, and 123, inclusive, as if set forth fully herein.

161. Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, which led to significant cancellations, and, in turn, reduced the Backlog and the supposed demand for Rivian EVs. *See* ¶¶ 5, 31, 52-54, 91, 116, 123.

    a.    Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 5, 39, 41, 93, 116, 123.

    b.    Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 4-6, 31, 39-41, 45-47.

    c.    A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price relative to cost, further undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

**Answer:** Defendants incorporate and reassert their responses to Paragraphs 4-6, 31, 39-41, 45-47, 52-54, 91, 93, 116, and 123, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 161.

162. During the same earnings call, Defendant McDonough boasted to a Wolfe Research analyst that Rivian was so well-positioned, in fact, that it would reach gross margin profitability by 2024 chiefly based on production ramp – despite having to shut production down for some time to increase capacity at the Normal Facility in 2024:

**Rod Lache**

[D]o you have any color on – as we're sort of bridging to profitability, for gross profit profitability, what kind of volume targets are you thinking about as you look out to 2024? You mentioned the 150,000 units of capacity, but do you think you can get to at least 100,000 in that time frame?...

**Defendant McDonough**

(Inaudible) directly on the volume question that you have there as well. As I talked about in my prepared remarks, today we have 65,000 units of R1 capacity in the plant at Normal, and we're increasing that capacity so that 55% or call it, 85,000 units will become R1 capacity as we re-rate the lines midyear next year. ***And so next year, we'll have both the impact of having a multi-week shutdown as we re-rate the plant to add that incremental R1 capacity.*** And at that same time, we'll be introducing a number of the next generation technologies that RJ just talked about as well. ***And so we'll still be in a period whereby we'll be continuing to ramp out of that shutdown in midyear to produce more units in the back half of the year***, but it really won't be until full year 2025, where we'll be ramping up the then re-rated capacity from an R1 perspective.

**Rod Lache**:

So just to clarify what you're saying, are you saying that you're not going to have the 85,000 units of R1 capacity available for 2024? Or will you?

**Defendant McDonough**

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT    76    CASE NO.: 2:24-CV-04566 CBM (JPR)

It will be available. We're re-rating the lines midyear in 2024. And so from a full year perspective, we won't have the full year impact of that re-rate as we go through the process of a couple of weeks shutdown and then ramps back out of that shutdown in the back half of the year.

**Rod Lache**:

Okay. But despite that, you're still thinking that you can get to gross profit in 2024?

**Defendant McDonough**:

*That's right*.

**Answer:** Paragraph 162 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q4 2022 earnings conference call on February 28, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 162.

163.   These statements were materially false and misleading and omitted material facts when made because Defendant McDonough knew or recklessly disregarded that:

a.   Ramping production to achieve positive gross profit margins presupposed that there was sufficient demand to increase production, and that the EVs produced would be sold at a profit. Defendants had no reasonable basis to claim either would be possible in time to deliver on the Roadmap. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

b.   Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants closely watched. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

c.   Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 5, 39, 41, 93, 116, 123.

d.   A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price, undermining profitability and the

rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e. Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 2-5, 53-54.

f. Rivian's planned production shutdown to re-rate the Normal Facility in 2024 only exacerbated the aforementioned problems. By claiming Rivian would still achieve profit in 2024 despite the planned shutdown, Defendant McDonough signaled that Rivian was so well positioned to achieve profit that even a production shutdown would not matter, which was untrue.

**Answer:**    The allegations in Paragraph 163 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 163.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

164.   During the same call, in a colloquy with a Cannacord Genuity analyst, Defendant Scaringe once again touted Rivian's "very robust" "demand backlog" and "clear line of sight until well into 2024", which covered the duration of the Roadmap to achieve profit. Defendant Scaringe also again flatly rejected concerns raised by the analyst that demand for Rivian EVs might be impacted by macroeconomic factors affecting other EV companies:

**George Gianarikas**

I'd just like to piggyback on the previous demand question, that preorder question. I know you're not disclosing the preorders, but given there have been so many high-profile admissions of a weakening environment for demand, particularly for EVs, I'm curious as to whether you could shed any light or color as to how your net preorders have been tracking?

**Defendant Scaringe**

Certainly what we're witnessing in the macro and what we're seeing in terms of interest rate is, I think, across the industry, having an effect of moderating overall demand. ***But what we would say is, and as we think about it, the demand backlog that we have is very robust. It gives us a clear line of sight until well into 2024***.

**Answer:**  Paragraph 164 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q4 2022 earnings conference call on February 28, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 164.

165.   This statement was materially false and misleading and omitted material facts when made because Defendant Scaringe knew or recklessly disregarded that:

a.   The Backlog was not a valid proxy for demand, nor directly correlated to demand or actual vehicle purchases. Thus, it could not provide a "clear line of sight" on demand and certainly not "well into 2024". *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

b.   Rivian's Backlog was based on fully refundable $1,000 deposits that required no purchase commitment on the part of the potential consumer, and could be canceled at any time for any reason without penalty, which rendered the Backlog highly volatile and unreliable. *See* ¶¶ 5, 31, 52-54, 91, 116, 123.

c.   Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, which led to significant cancellations, and, in turn, reduced the Backlog and the supposed demand for Rivian EVs. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

d.   A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low purchase price relative to cost, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.   Macroeconomic factors, including high inflation and high interest rates were adversely affecting the EV industry and Rivian was far from immune to these issues. Defendant Scaringe's representation that Rivian's "very robust" Backlog which went "well into 2024" somehow eliminated the adverse effects of industry-wide macroeconomic conditions was simply untrue. *See* ¶¶ 2-5, 53-54.

f.   By again claiming Rivian had "clear" sight into demand though 2024, Defendant Scaringe signaled that Defendants already knew Rivian had sufficient demand to deliver on the Roadmap, under

which Rivian would become profitable in 2024. But Defendant Scaringe had no basis for this claim for the reasons given in (a)-(e).

**Answer:** The allegations in Paragraph 165 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 165. Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 91-93, 116, and 123, inclusive, as if set forth fully herein.

166. Later in the call, Defendant McDonough again highlighted Rivian's Roadmap. She reiterated that the "largest lever" for achieving positive gross margins and the "most impactful driver," accounting for 2/3 of the equation, was production ramp:

There are 3 key levers that enable this improvement. ***First, the most impactful driver is the per-unit reduction of labor overhead and ramp expenses as our large-scale plant produces a greater number of units***. With the addition of our second shift, the plant in Normal is currently staffed to produce a significantly higher number of units than our current run rate. ***For context, these expenses represent 2/3 of the bridge from our current COGS per unit to what we expect by the end of 2024***. The second area is our material costs. We have a detailed road map of both engineering and commercial cost downs. As RJ mentioned, our recent Supplier Day demonstrated the win-win opportunity for our suppliers to participate in Rivian's growth. The final bucket is price. The implementation of our reservation system in early 2022 provides us the pricing flexibility to accommodate the introduction of new products, technologies and inflationary pressures.

**Answer:** Paragraph 166 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q4 2022 earnings conference call on February 28, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 166.

167. These statements were materially false and misleading and omitted material facts when made because Defendant McDonough knew or recklessly disregarded that:

   a. Defendants had no credible basis to claim production ramp could account for "two-thirds" of the Roadmap to profit in 2024 given the Company's lack of clarity into demand, highly unprofitable sales prices, and existing supply chain and macroeconomic constraints. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

b. Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog was not directly correlated to demand or actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

c. Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 5, 39, 41, 93, 116, 123.

d. A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e. Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 2-5, 53-54.

**Answer:** The allegations in Paragraph 167 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 167. Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

168. After the February 28, 2023 news of Rivian's plans to produce just 50,000 vehicles in 2023 surprised analysts and investors, Rivian's stock price fell $3.54 per share – more than 18 % – to close at $15.76 per share on March 1, 2023. Rivian stock would have fallen further if Defendants did not continue to misrepresent that Rivian would still reach positive gross profit margins in 2024, chiefly based on ramping up production.

**Answer:** Paragraph 168 purport to describe the price of Rivian's stock, and Defendants therefore respectfully refer the Court to the publicly available daily

closing prices and trading volume information for the price and trading volume of

Rivian stock. Defendants otherwise deny the allegations in Paragraph 168.

**E. April 4, 2023 – Rivian Attends Bank of America Automotive Summit**

169. Rivian attended a Bank of America Automotive Summit on April 4, 2023. During the conference, an analyst asked about Rivian's Roadmap. Defendant McDonough provided a break-down of the contributing factors to achieving 2024 profit – including, once again, attributing 66% of the Company's movement towards profitability to increased production:

**John Murphy - BofA Securities**

One of the big things is getting the gross margin breakeven, right? I think you're talking about that and getting actually into positive territory into 2024. Is that purely a question of scale and in a certain level of production that's significantly above 50,000 units? I mean, how do you kind of envision getting there?

**Defendant McDonough**

As we think about the gross profit bridge from Q4 2022 to Q4 of 2024, as you mentioned, we expect to see a true step-change not just to breakeven but to positive territory in that time frame. *And about 2/3 of that overall bridge is driven by fixed cost leverage that's derived from put -- having greater levels of volume running through our plant in Normal, Illinois.* The other final 1/3 of that walk is split 50% based off of how we're effectively reducing our material costs. And so the material cost reductions are driven by design-related changes.

**Answer:** Defendants admit that Ms. McDonough participated in the Bank of America Securities 2023 Global Automotive Summit on April 4, 2023. Paragraph 169 purports to characterize and selectively quote portions of the transcript of Ms. McDonough's presentation at the Bank of America Securities 2023 Global Automotive Summit on April 4, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 169.

170. These statements were materially false and misleading and omitted material facts when made because Defendant McDonough knew or recklessly disregarded that:

a. Defendants had no credible basis to claim production ramp could account for "two-thirds" of the Roadmap to profit in 2024 given

the Company's lack of clarity into demand, highly unprofitable sales prices, and existing supply chain and macroeconomic constraints. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

b.     Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog was not directly correlated to demand or actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

c.     Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 5, 39, 41, 93, 116, 123.

d.     A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.     Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 2-5, 53-54.

**Answer:**   The allegations in Paragraph 170 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 170.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

**F.     May 9, 2023 – Rivian Files Its Shareholder Letter and Quarterly Report for First Quarter of 2023**

171.   On May 9, 2023, Rivian announced its first quarter results and filed its 1Q 2023 Shareholder Letter, which was an exhibit to a Form 8-K signed by Defendant McDonough. On that date, the Company also filed its Form 10-Q reporting its financial results for the first quarter of 2023 (the "1Q 2023 Form 10-Q"). The 1Q 2023 Form 10-Q was signed by the Individual Defendants.

**Answer:** Defendants admit that Rivian announced its financial results for the first quarter of 2023 in a Form 10-Q filed with the SEC on May 9, 2023. Defendants admit that Rivian published its Q1 2023 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on May 9, 2023. Defendants otherwise deny the allegations in Paragraph 171.

172. The 1Q 2023 Shareholder Letter again emphasized that increased production was the "primary lever" to achieve profitability:

> • Production: ***Increasing our production volume as we simultaneously leverage our fixed costs at our manufacturing plant in Normal, Illinois is the primary lever on our path to sell each vehicle profitably***. Our 2023 production guidance of 50,000 vehicles remains on track, representing a 100% increase from 2022. While challenges remain, we have become a stronger, more agile company through this process.

**Answer:** Paragraph 172 purports to characterize and selectively quote certain portions of Rivian's Q1 2023 Shareholder Letter dated May 9, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 172.

173. This statement was materially false and misleading and omitted material facts when made because Defendants Rivian and McDonough knew or recklessly disregarded that:

> a. Ramping production to achieve positive gross profit margins presupposed that there was sufficient demand to warrant increased production, and that produced units would be sold at a profit. At the time, Defendants had no reasonable basis to assume either would be possible in time to deliver on the Roadmap. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.
>
> b. Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog was not directly correlated to demand or actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.
>
> c. Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV

highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 5, 39, 41, 93, 116, 123.

    d.    A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price relative to cost, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

    e.    Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 2-5, 53-54.

**Answer:**   The allegations in Paragraph 173 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 173.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

174.  Rivian's 1Q 2023 Shareholder Letter reaffirmed the Roadmap and underscored that it was a key test to determine whether the Company's fundamentals were sound as it acknowledged that the Company's viability and sustainability were staked on Rivian's "ability to produce high volumes of vehicles profitably". The letter went on to state that approximately 50% of Rivian's 2024 positive gross profit margins "will be driven by greater volume", and claimed that the production volumes for 2023 were sufficient to keep the Company on track and were only expected to improve in 2024:

Drive to sell each vehicle profitably

***Our long-term success as a business will be determined by our ability to produce high volumes of vehicles profitably****.* The collective efforts across all our teams and functions are focused on delivering on this goal. ***Our target of generating positive gross profit in 2024 is composed of several drivers across the business. We expect approximately half of the improvement, excluding the impact of lower of cost or net realizable value ("LCNRV") and net losses on firm purchase commitments, will be driven by greater volume****.* ***Our 2023 production guidance of 50,000 units implies a doubling of capacity utilization which we believe will result in significantly lower fixed cost per vehicle, and we expect production volumes to increase further in 2024.*** The remaining half is split between material cost reduction and increases in average selling prices. Driving lower material costs will be enabled by two key factors: the integration of new technologies such as Enduro and LFP battery packs as well as commercial contract negotiations with our suppliers. The increase in

average vehicle selling prices is composed of the gradual improvements we expect to achieve as we complete the fulfillment of our pre-March 2022 preorder base as well as the introduction of new technologies that produce improved performance and capabilities, such as our Max pack.

**Answer:** Paragraph 174 purports to characterize and selectively quote certain portions of Rivian's Q1 2023 Shareholder Letter dated May 9, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 174.

175. These statements were materially false and misleading and omitted material facts when made because Defendants Rivian and McDonough knew or recklessly disregarded that:

a. Defendants had no credible basis to claim production ramp could account for "half" of the Roadmap to profit in 2024 given the Company's lack of clarity into demand, highly unprofitable sales prices, and existing supply chain and macroeconomic constraints. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

b. Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog was not directly correlated to demand or actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

c. Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 5, 39, 41, 93, 116, 123.

d. A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e. Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented

an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 2-5, 53-54.

**Answer:** The allegations in Paragraph 175 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 175. Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

176. Rivian's 1Q 2023 Form 10-Q also included the same contradictory boilerplate risk statement as Rivian previously included in its 2022 Form 10-K concerning the Company's ability to maintain strong demand:

Our ability to become profitable in the future will depend on the continued successful development and commercial production and acceptance of our vehicles and services, our ability to maintain strong demand and average selling prices for our vehicles, as well as our capability to manufacture our vehicle portfolio efficiently and estimate and effectively manage both our operating expenditures and our capital expenditures.

**Answer:** Paragraph 176 purports to characterize and selectively quote certain portions of Rivian's Form 10-Q filed with the SEC on May 9, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 176.

177. This statement was materially false and misleading and omitted material facts when made because Defendants Rivian and McDonough knew that:

    a.    Defendants had already repeatedly assured investors that demand would not be an issue for the duration of the Roadmap because Defendants had a "clear" line of sight into demand that lasted well into 2024 (*i.e.* covering the path to profit), based on current and verifiable data that they closely tracked, including Rivian's Backlog, order rates, and cancellation rates. Unbeknownst to investors, this claim was baseless and it also voided the significance of Rivian's risk disclosure. *See* ¶¶ 31, 39-41, 45-47, 53-54.

    b.    Rivian improperly based demand on its Backlog, which was not a valid proxy for demand. Rivian's Backlog was based on $1,000 deposits that required no purchase commitment on the part of the

potential consumer and could be canceled at any time without penalty for any reason, which rendered the backlog highly volatile. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

c.   Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, which led to significant cancellations, and, in turn, reduced the Backlog and the supposed demand for Rivian EVs. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

d.   A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.   Macroeconomic factors, including high inflation and high interest rates were already adversely impacting the EV industry as a whole and causing competing EV manufacturers to reduce prices to address softening demand. Rivian was not immune to these factors, but Defendants claimed it was not similarly impacted by them. *See* 2-5, 53-54.

**Answer:**   The allegations in Paragraph 177 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 177.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 91-93, 116, and 123, inclusive, as if set forth fully herein.

178.   Also on May 9, 2023, Rivian held an earnings conference call with analysts. At the outset of the conference call, the Individual Defendants reinforced that Rivian was still well positioned to execute on its Roadmap to gross margin profits in 2024:

**Defendant Scaringe**

Overall, the progress we're making against our core value drivers of ramping production, driving costs down, developing new technologies and platforms and enhancing customer experience ***positions us well to continue executing on our goals for the remainder of the year as well as into 2024***….

**Defendant McDonough**

***I also want to take this opportunity to reiterate our gross profit bridge from Q1 2023 to Q4 2024. We continue to target positive gross profit in 2024.***

*Excluding the impact of LCNRV and firm purchase commitments, we expect approximately half of the improvement will be driven by greater volume and utilization of our installed capacity*. …

*Our 2023 production guidance of 50,000 units implies a doubling of capacity utilization, which will result in significantly lower fixed cost per vehicle, and we expect production volumes to increase further in 2024*. The remaining half is split between increases in average selling prices and material cost reduction. Lower material costs will be enabled by the integration of new technologies such as Enduro and LFP battery packs which delivered about a 25% material cost reduction for our commercial vehicles in Q1 versus Q4. In addition to the engineering design-driven cost reductions we also expect to realize commercial cost savings as we negotiate with our suppliers. The increase in average selling prices is based upon the gradual improvements we expect to achieve as we complete the fulfillment of our pre-March 2022 preorder base as well as the introduction of new technologies that produced improved performance and capabilities. While gross margin is expected to remain negative in 2023, Q1 represented significant progress versus Q4 2022 with gross profit loss per delivered vehicle nearly cut in half.

**Answer:** Defendants admit that Rivian held its Q1 2023 earnings conference call on May 9, 2023.  Paragraph 178 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q1 2023 earnings conference call on May 9, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 178.

179.  These statements were materially false and misleading and omitted material facts when made because Defendants Scaringe and McDonough knew or recklessly disregarded that:

   a.   Defendants had no credible basis to claim Rivian was well positioned at the time or that production ramp could still account for "half" of the Roadmap to profit in 2024 given the Company's lack of clarity into demand, highly unprofitable sales prices, and existing supply chain and macroeconomic constraints. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

   b.   Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog was not directly correlated to demand or actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

DEFENDANTS' ANSWER TO LEAD
PLAINTIFFS' AMENDED COMPLAINT

89

CASE NO.: 2:24-CV-04566 CBM (JPR)

      c.      Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 5, 39, 41, 93, 116, 123.

      d.      A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

      e.      Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 2-5, 53-54.

**Answer:**   The allegations in Paragraph 179 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 179.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

**G.**      **June 2, 2023 – Rivian Attends Sanford C Bernstein Strategic Decisions Conference**

180.  On June 2, 2023, Rivian participated in the Sanford C Bernstein Strategic Decisions Conference. Rivian's Roadmap was becoming increasingly more difficult to achieve as each quarter passed during the Class Period. Yet, during this conference, Defendant Scaringe was unphased and continued to tout Rivian's Roadmap, reiterating to the market that the "biggest driver towards healthy margin structure on R1 is volume", which remained "half" of the story for the Roadmap. Defendant Scaringe also explained that Rivian would "feather in" new EV orders (which were at much higher prices) into deliveries in an attempt to raise the average selling price of a Rivian EV and distract the market from the severe profit erosion that these earlier orders caused:

**Defendant Scaringe**

***So the biggest driver towards healthy margin structure on R1 is volume****. **So if you think about the path to our target state margin profile, about half is volume.*** And the reason for that is the fixed cost absorption in a large-scale plant when you're running a plant well under -- at subscale is really [sic] high deal. So that's by far away...

**A.M. Sacconaghi - Sanford Bernstein**

Now when you talk about fixed cost, is that depreciation? Is that overhead labor associated with that plant? Because again, at [this day], depreciation is $2,000 or $3,000 per car. So if your plant is theoretically half -- running at half capacity, maybe $5,000 or $6,000 per car, it doesn't feel like a $20,000 difference. You know what I'm saying?

**Defendant Scaringe**

Correct. So when I say a fixed, I'm bundling here for simplicity's sake. But if you think of when we're running at half capacity, the staffing -- the land layout is not set up for half the capacity. So the number of people on the line, so it's -- your variable cost is the same. So the number of people, the cost to run the plant is the same. All the nonpeople cost to run the plant remains the same. The depreciation, obviously, the overall not still the same, so it's divided by less vehicles.

***So when you put all those together, about half the reduction comes from volume.*** Now the other half is made up of really 2 parts. One is we have a step-up in our ASP that – we're already beginning to see, and you can see this -- you'll see this quarter-over-quarter happen, but we had pricing that we'd originally announced and locked to -- or linked to, I should say, our early configured vehicles. And that early pricing had a big step-up that represents roughly another 25% of the step down -- or step down -- or step towards profitability. And we're already seeing that. ***So we're now starting at the very beginning of blending in new orders, which are much higher pricing than the older orders.***

And then the third component for us is the bill of materials. So it's -- that's achieved in really 2 ways. One is the commercial negotiations that we're having today with suppliers. And the other are some of the things we've spent some time talking about today, which are just technical changes we're making to the vehicle simplification, consolidation of componentry, new drive units. We just launched a new dual-motor drive unit, which is a considerable cost-down relative to what we launched with. But all those things together get us to a healthy margin structure.

**Answer:**    Defendants admit that Rivian participated in the Sanford C. Bernstein's 39th Annual Strategic Decisions Conference on June 2, 2023.  Paragraph 180 purports to characterize and selectively quote certain portions of the transcript of Rivian's presentation at the Sanford C. Bernstein's 39th Annual Strategic Decisions Conference on June 2, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 180.

181.  These statements were materially false and misleading and omitted material facts when made because Defendant Scaringe knew or recklessly disregarded that:

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT

91

CASE NO.: 2:24-cv-04566 CBM (JPR)

      a.    Defendants had no credible basis to claim production ramp could still account for "half" of the Roadmap to profit in 2024 given the Company's lack of clarity into demand, highly unprofitable sales prices, and existing supply chain and macroeconomic constraints. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

      b.    Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog was not directly correlated to demand or actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

      c.    Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 5, 39, 41, 93, 116, 123.

      d.    A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

      e.    Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 2-5, 53-54.

**Answer:** The allegations in Paragraph 181 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 181. Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

182. When directly asked about whether Rivian still had "confidence" in the demand for its EVs, Defendant Scaringe was quick to answer that Rivian was still carefully and closely watching the matter "daily" based on several data points, and continued to see "strong" demand, which, in turn, gave further support to the Roadmap. According to Defendant Scaringe, the macroeconomic factors impacting others in the industry were still not a factor for Rivian:

**A.M. Sacconaghi - Sanford Bernstein**

Okay. And you've talked about like orders extending into 2024. Can you talk at all about sort of the rate of change of orders or backlogs in a way that makes you confident about volumes going forward?...

So I'm sure you look at daily orders and ready to change your backlog. And is there anything on that, that I mean, qualitatively, I presume that's what provides some of your confidence? Is there anything on that dimension that you can share that would be helpful for investors?

**Defendant Scaringe**

No. Just -- I mean, as you said, I think we – *we've watched the demand. I mean it is a daily thing that we watch*. We have to be careful not to overinterpret discrete events that are happening and look at enough of a time horizon to pick the true trend. But last summer, I would say it was the most extreme where you just had -- demand was almost -- it was off the charts….

*So we're watching really closely what's going to happen at the macro if that's going to introduce some major shifts, but we continue to see demand for the products*, and the functionality of the products helps us here. It's not like this is a 2-seat sports car that's a purely discretionary purchase.

**Answer:** Paragraph 182 purports to characterize and selectively quote certain portions of the transcript of Rivian's presentation at the Sanford C. Bernstein Strategic Decisions Conference on June 2, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 182.

183.  This statement was materially false and misleading and omitted material facts when made because Defendant Scaringe knew or recklessly disregarded that:

    a.    While Defendants admittedly continued to "closely" watch Rivian's Backlog and macroeconomic factors, the Backlog was not a valid proxy for demand, nor was Backlog directly correlated to actual vehicle purchases, or Rivian's ability to generate revenue. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

    b.    Rivian's Backlog was based on fully refundable $1,000 deposits that required no purchase commitment on the part of the potential consumer, and could be canceled at any time for any reason without penalty, which rendered the Backlog highly volatile and unreliable. *See* ¶¶ 5, 31, 52-54, 91, 116, 123.

c.  Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, which led to significant cancellations, which, in turn, reduced the Backlog and the supposed demand for Rivian's EVs. *See* ¶¶ 5, 31, 52-54, 91, 116, 123.

d.  A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low purchase price relative to cost, further undermining profitability and the rationale to ramp production on the basis of the Backlog. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

e.  Macroeconomic factors, including high inflation, supply chain issues and high interest rates were impacting the EV industry as a whole and causing competing EV manufacturers to reduce the price to purchase an EV to address softening demand. Rivian was not immune to these factors, and Defendant Scaringe's claim that Rivian nonetheless "continued" to see demand based on Backlog did not tell the true story. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

**Answer:**  The allegations in Paragraph 183 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 183.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

184.  Speaking further on the topic of demand, Defendant Scaringe explained that as much as Rivian still paid "close" attention to Backlog figures, which it had not reported since November 2022, it paid even "close[er] attention to" cancellation rates, which Rivian also did not report to the public.

**Answer:**  Paragraph 184 purports to characterize and selectively quote certain portions of the transcript of Rivian's presentation at the Sanford C. Bernstein Strategic Decisions Conference on June 2, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 184.

**H.    June 15, 2023 – Rivian Attends Deutsche Bank Global Auto Industry Conference**

185.    On June 15, 2023, Rivian attended the Deutsche Bank Global Auto Industry Conference. During the conference, a Deutsche Bank analyst inquired about the trend in the Company's Backlog and corresponding consumer demand – which were critical to following through on the Roadmap. In response, Defendant McDonough reiterated that despite macroeconomic factors impacting other EV manufacturers, the strong demand for Rivian EVs remained "really stable" and its Backlog was "really robust" and still extended into 2024. In other words, the strength of demand for Rivian's EVs kept the Roadmap on track:

**Emmanuel Rosner**

What do you think in terms of consumer demand and receptiveness to your current pricing? So you're not disclosing backlog anymore, but can we get some sense of demand trends you're seeing recently, any signs of consumer slowdown?

**Defendant McDonough**

***Overall, we continue to have a really robust backlog of preorders that extends into 2024.*** We certainly have seen some impacts of the broader macroeconomic environment in 2023 as we compare current daily order rates relative to what we saw maybe a year ago. ***But we've seen really a stable environment throughout the course of this year from a demand vantage point***.

**Answer:**    Defendants admit that Ms. McDonough participated in Deutsche Bank's Global Auto Industry Conference on June 15, 2023.  Paragraph 185 purports to characterize and selectively quote certain portions of the transcript of Ms. McDonough's presentation at Deutsche Bank's Global Automotive Conference on June 15, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 185.

186.    This statement was materially false and misleading and omitted material facts when made because Defendant McDonough knew or recklessly disregarded that:

    a.    Rivian repeatedly conflated its Backlog with actual demand and could not validly claim that the strong demand for Rivian EVs was "stable" based on the Backlog, which was extremely unstable. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

    b.    Rivian's Backlog was based on fully refundable $1,000 deposits that required no purchase commitment on the part of the potential

consumer, and could be canceled at any time for any reason without penalty, which rendered the Backlog highly volatile and unreliable. *See* ¶¶ 5, 31, 52-54, 91, 116, 123.

c. Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, which led to significant cancellations, and, in turn, reduced the Backlog and the supposed demand for Rivian's EVs. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

d. A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low purchase price relative to cost, further undermining profitability and the rationale to ramp production on the basis of the Backlog. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e. Macroeconomic factors, including high inflation, supply chain issues, and high interest rates were already adversely impacting the EV industry as a whole and causing competing EV manufacturers to reduce prices to purchase an EV to address softening demand. Rivian was not immune to these factors, and Defendant McDonough had no credible basis to claim that demand was "stable" notwithstanding these factors and reached well into 2024. *See* ¶¶ 2-5, 53-54.

f. By claiming Rivian's "really robust" Backlog still extended into 2024, Defendant Scaringe signaled that Defendants still knew Rivian had sufficient demand to deliver on the Roadmap, under which Rivian would become profitable in 2024. But Defendant Scaringe had no basis for this claim for the reasons given in (a)-(e).

**Answer:**   The allegations in Paragraph 186 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 186.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 91-93, 116, and 123, inclusive, as if set forth fully herein.

**I.    August 8, 2023 – Rivian Files Second Quarter 2023 Financial Results**

187.   On August 8, 2023, Rivian announced its second quarter results and filed its 2Q23 Shareholder Letter, which was an exhibit to a Form 8-K signed by Defendant McDonough and filed with the SEC. On that date, the Company also filed

its Form 10-Q reporting its financial results for the second quarter of 2023 (the "2Q 2023 Form 10-Q"). The 2Q 2023 Form 10-Q was signed by the Individual Defendants.

**Answer:** Defendants admit that Rivian announced its financial results for the second quarter of 2023 in a Form 10-Q filed with the SEC on August 8, 2023. Defendants admit that Rivian published its Q2 2023 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on August 8, 2023. Defendants otherwise deny the allegations in Paragraph 187.

188.   The 2Q 2023 Shareholder Letter again explained that the "primary lever" to achieving profitability under the Roadmap was still increasing production:

In the first half of 2023, we produced 23,387 vehicles which is in line with the production volumes we achieved for the full year 2022. ***Increasing our production is the primary lever in our path to profitability.*** The incorporation of our in-house drive units has played and will continue to play an instrumental role in improving our production ramp and cost structure.

**Answer:** Paragraph 188 purports to characterize and selectively quote certain portions of Rivian's Q2 2023 Shareholder Letter dated August 8, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 188.

189.   This statement was materially false and misleading and omitted material facts when made because Defendants Rivian and McDonough knew or recklessly disregarded that:

a.   Increasing "production" to reach gross margin profitability by the fourth quarter of 2024 presupposed that there was sufficient demand to warrant increased production, and that produced units would be sold at a profit. At the time, Defendants had no reasonable basis to assume either was possible in time to deliver on the Roadmap. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

b.   Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog was not directly correlated to demand or actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

c.  Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 5, 39, 41, 93, 116, 123.

d.  A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to filling at an extremely low price relative to cost, further undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.  Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 2-5, 53-54.

f.  Like its competitors, Rivian was not immune from macroeconomic factors impacting the EV industry as a whole, including, but not limited to, inflation rates, supply chain issues, high interest rates, weakened demand, and reduced retail prices to purchase EVs from competing EVs manufacturers like Tesla. Thus, representing that charging forward with a production ramp supported by Rivian's volatile Backlog would somehow weather these issues for Rivian was materially misleading. *See* ¶¶ 2-5, 53-54.

**Answer:**  The allegations in Paragraph 189 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 189.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

190.  The 2Q 2023 Form 10-Q also included the same boilerplate risk disclosures that Rivian previously issued concerning Rivian's ability to maintain demand. The 2Q 2023 Form 10-Q represented that:

Our ability to become profitable in the future will depend on the continued successful development and commercial production and acceptance of our vehicles and services, our ability to maintain strong demand and average selling prices for our vehicles, as well as our capability to manufacture our

vehicle portfolio efficiently and estimate and effectively manage both our operating expenditures and our capital expenditures.

**Answer:** Paragraph 190 purports to characterize and selectively quote from certain portions of Rivian's Form 10-Q filed with the SEC on August 8, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 190.

191. This statement was materially false and misleading when made because the Defendants Rivian and McDonough knew that:

a. Defendants had already repeatedly assured investors that demand would not be an issue for the duration of the Roadmap because Defendants had a "clear" line of sight into demand that lasted well into 2024 (*i.e.* covering the path to profit), based on current and verifiable data that they closely tracked, including Rivian's Backlog, order rates, and cancellation rates. This claim was baseless and voided the significance of Rivian's risk disclosure. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

b. Rivian improperly based demand on its Backlog, which was not a valid proxy for demand. Rivian's Backlog was based on $1,000 deposits that required no purchase commitment on the part of the potential consumer and could be canceled at any time without penalty for any reason, which rendered the backlog highly volatile. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

c. Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, which led to significant cancellations, and, in turn, reduced the Backlog and the supposed demand for Rivian EVs. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

d. A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e. Macroeconomic factors, including high inflation and high interest rates were already adversely impacting the EV industry as a whole and causing competing EV manufacturers to reduce prices

to address softening demand. Rivian was not immune to these factors, but Defendants claimed it was not similarly impacted by them. *See* ¶¶ 2-5, 53-54.

**Answer:**   The allegations in Paragraph 191 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 191.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

192.   On August 8, 2023, Rivian also hosted an earnings call with investors and analysts. During the conference call, Defendant Scaringe once again "confidently" stressed that Rivian still had "clear visibility" into the demand for Rivian's EVs "deep into 2024" based on the Backlog, signaling that the Roadmap, which was designed to yield its benefit in 2024, was on track:

**Dan Levy - Barclays Bank**

…I think one of the broader themes in the EV sales landscape today is just around demand. And I think there's questions broadly around some weakness of demand. Maybe you can give us a sense -- I know you've taken away the order backlog, but what confidence do you have that your backlog will sustain well into 2024 and that you're going to be supply constrained for the foreseeable future?

**Defendant Scaringe**

*…[W]e feel very confident in the continued backlog that we have. We have clear visibility into -- deep into 2024 with that backlog that's established.* And as more and more vehicles are on the roads, and we now have tens of thousands of R1s on the roads, it continues to feed the flywheel of awareness about the brand. And as I said, some of our strongest advocates are people that are driving our vehicles every day. And *so we're quite bullish on the continued strong demand we have for our products.*

**Answer:**  Defendants admit that Rivian held its Q2 2023 earnings conference call on August 8, 2023.  Paragraph 192 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q2 2023 earnings conference call on August 8, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 192.

193.   This statement was materially false and misleading and omitted material facts when made because Defendant Scaringe knew or should have known that:

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT

100

CASE NO.: 2:24-cv-04566 CBM (JPR)

a.  Rivian's Backlog was not a valid proxy for demand and thus could not demonstrate "clear visibility…deep into 2024" into the "strong demand" for Rivian EVs. Moreover, only Rivian had access to its Backlog and cancellation rate figures, as these figures were not reported to the public. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

b.  Rivian's Backlog was based on fully refundable $1,000 deposits that required no purchase commitment on the part of the potential consumer, and could be canceled at any time for any reason without penalty, which rendered the Backlog highly volatile and unreliable. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

c.  Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, which led to significant cancellations, and, in turn, reduced the Backlog and the supposed demand for Rivian's EVs. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

d.  A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low purchase price relative to cost, further undermining profitability and the rationale to ramp production on the basis of the Backlog. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.  Macroeconomic factors, including high inflation, supply chain problems (which Rivian was already experiencing), and high interest rates were already adversely impacting the EV industry as a whole and causing competing EV manufacturers to reduce the price to purchase an EV to address softening demand. Rivian was not immune to these factors. *See* ¶¶ 2-5, 53-54.

f.  By continuing to claim Rivian had "clear" visibility into demand that extends "deep" into 2024, Defendant Scaringe signaled that Defendants still knew Rivian had sufficient demand to deliver on the Roadmap, under which Rivian would become profitable in 2024. But Defendant Scaringe had no basis for this claim for the reasons given in (a)-(e).

**Answer:**  The allegations in Paragraph 193 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 193.  Defendants also incorporate and

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT

101

CASE NO.: 2:24-CV-04566 CBM (JPR)

reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

**J.    September 7, 2023 – Rivian Attends Goldman Sachs Communacopia + Technology Conference**

194.   On September 7, 2023, Rivian participated in an investor conference with Goldman Sachs. During that conference, Defendant McDonough continued to reiterate that ramping production, which Rivian supposedly had more than sufficient demand to do, was still "the single largest driver" to achieve profitability in 2024:

> *First, as we look at gross profit itself, the key levers for us are continuing to ramp up production volumes within our normal production facility itself. That, as we provided in our Q1 earnings call, we provided a little bit of details or context on a bridge from where our current financial results were in Q1 to the end of 2024.* As we think about the continued scaling and production of our facility in both the ramp of R1 vehicles and continued growth of our commercial van line as well. *That's the single largest driver as we think about the path to positive gross profit for us.* The other key factors for us are driven by introductions of new technologies within the vehicle.

**Answer:**   Defendants admit that Ms. McDonough participated in the 2023 Goldman Sachs Communacopia + Technology Conference on September 7, 2023. Paragraph 194 purports to characterize and selectively quote certain portions of the transcript of Ms. McDonough's presentation at the 2023 Goldman Sachs' Communacopia + Technology Conference on September 7, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 194.

195.   These statements were materially false and misleading and omitted material facts when made because Defendant McDonough knew or recklessly disregarded that:

a.    Ramping production to achieve positive gross profit margins presupposed that there was sufficient demand to warrant increased production, and that produced units would be sold at a profit. At the time, Defendants had no reasonable basis to assume either would be possible in time to deliver on the Roadmap. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

b.    Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog

was not directly correlated to demand or actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

c.    Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 5, 39, 41, 93, 116, 123.

d.    A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to filling at an extremely low price relative to cost, further undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.    Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 2-5, 53-54.

f.    Macroeconomic factors, including high inflation and high interest rates were already adversely impacting the EV industry as a whole and causing competing EV manufacturers to reduce the price to purchase an EV to address softening demand. Rivian was not immune to these factors. *See* ¶¶ 2-5, 53-54.

**Answer:**    The allegations in Paragraph 195 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 195.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

196.    During the same conference, a Goldman Sachs analyst asked Defendant McDonough about how the "closely watched" metric of demand was holding up at Rivian given its critical importance to achieving the Roadmap. In response, Defendant McDonough continued to tout Rivian's strong demand based on its Backlog, which was purportedly "holding up" and "mirror[ing]" production volumes, despite macroeconomic factors adversely impacting the EV industry. In other words, the Roadmap remained intact and on track:

**Mark Delaney – Goldman Sachs**

That's very interesting. Maybe we can shift gears a little bit and talk on demand. And given what's been a long wait times to get an R1, some customers tend to put in orders as well in advance, sometimes over a year long. So as you're notifying consumers to prepare for deliveries, what are you seeing in terms of conversion rates on that backlog? Are you seeing anything unusual in terms of cancellation rates? Or is the backlog holding up well?

**Defendant McDonough**

***The backlog has been holding up well****.* As we mentioned last quarter, we had the opportunity to have our first quarter where we had R1S production that outpaced R1T. And that's really important for us given the broader backlog for our vehicles have always been more heavily weighted towards S. ***And so we are now in a position to have our production volumes mirror or match more closely with the backlog that we have from a demand standpoint.*** And so we're excited about bringing more and more vehicles to market. Actually one of the biggest inhibitors to purchase or the reason why someone cancels is wait time. So we're excited to continue to work through that backlog, get more of the community out there growing and building awareness and excitement for the vehicles and the brand as well.

**Answer:** Paragraph 196 purports to characterize and selectively quote certain portions of the transcript of Rivian's presentation at Goldman Sachs' Communacopia + Technology Conference on September 7, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 196.

197. These statements were materially false and misleading and omitted material facts when made because Defendant McDonough knew or recklessly disregarded that:

    a.    The Backlog was not a valid proxy for demand, nor directly correlated to actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

    b.    Rivian's Backlog was based on fully refundable $1,000 deposits that required no purchase commitment on the part of the potential consumer, and could be canceled at any time for any reason without penalty, which rendered the Backlog highly volatile and unreliable. *See* ¶¶ 5, 31, 52-54, 91, 116, 123.

    c.    Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, which led to significant cancellations, and, in

turn, reduced the Backlog and the supposed demand for Rivian's EVs. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

d.    A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low purchase price, further undermining profitability and the rationale to ramp production on the basis of the Backlog. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.    Macroeconomic factors, including high inflation, supply chain problems (which Rivian was already experiencing) and high interest rates were already adversely impacting the EV industry as a whole and causing competing EV manufacturers to reduce prices to purchase an EV to address softening demand. Rivian was not immune to these factors, and neither was its Backlog. *See* ¶¶ 2-5, 53-54.

**Answer:**    The allegations in Paragraph 197 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 197.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90, 93, 116, and 123, inclusive, as if set forth fully herein.

### K.    September 14, 2023 – Rivian Attends Morgan Stanley Laguna Conference

198.    On September 14, 2023, Rivian participated in Morgan Stanley's Laguna conference. During that conference, Defendant Scaringe continued to highlight the singular importance of increased production for reaching the "pathway to profitability":

And we've got a few big objectives, which I'll ladder into. I'm sure some of the core questions you're thinking about. ***But number one, we continue to focus on ramping production.*** And the ramping of production for our first set of products are flagship consumer products, R1T and TVNOS, which Adam is referring to, along with our commercial vans.

***That's really critical to achieve the level of fixed cost leverage or fixed cost absorption we need on the pathway to profitability*** in our normal facility, our first production plant….

[W]e've done a really good job of creating a product portfolio that customers want…we then need to be able to produce products. And so the ability to ramp…is such an important part this.

**Answer:**  Defendants admit that Dr. Scaringe participated in Morgan Stanley's 11th Annual Laguna Conference on September 14, 2023.  Paragraph 198 purports to characterize and selectively quote certain portions of the transcript of Dr. Scaringe's presentation at Morgan Stanley's 11th Annual Laguna Conference on September 14, 2023, and Defendants therefore respectfully refer the court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 198.

199.  These statements were materially false and misleading and omitted material facts when made because Defendant Scaringe knew or recklessly disregarded that:

a.  Ramping production to achieve positive gross profit margins presupposed that there was sufficient demand to warrant increased production, and that produced units would be sold at a profit. At the time, Defendants had no reasonable basis to assume either would be possible in time to deliver on the Roadmap. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

b.  Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog was not directly correlated to demand or actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

c.  Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 5, 39, 41, 93, 116, 123.

d.  A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price relative to cost, further undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.  Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented

an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 5, 39, 41, 93, 116, 123.

    f.    Macroeconomic factors, including high inflation, supply chain problems and high interest rates were already adversely impacting the EV industry as a whole and causing competing EV manufacturers to reduce prices to purchase an EV to address softening demand. Rivian was not immune to these factors. *See* ¶¶ 2-5, 53-54

**Answer:**  The allegations in Paragraph 199 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 199. Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

200.  On the topic of demand, Defendant Scaringe once again made clear that demand was still "very strong". Indeed, he explained that the Backlog was so strong that customers had to wait over a year before Rivian fulfilled their order, which he claimed was a "good problem" for the Company to have:

> ***So we continue to see very strong demand backlog***. We have market-leading residual values. If you buy our R1S today, you can sell it tomorrow for more than you bought it for. If you order an R1S today, you're not going to get until the end of next year. That's a problem but a high-class problem. ***It's a good problem to have.***

**Answer:**  Paragraph 200 purports to characterize and selectively quote certain portions of the transcript of Rivian's presentation at Morgan Stanley's Laguna Conference on September 14, 2023, and Defendants therefore respectfully refer the court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 200.

201.  These statements were materially false and misleading and omitted material facts when made because Defendant Scaringe knew or recklessly disregarded that:

    a.    Rivian was conflating its Backlog with demand, and its Backlog was not a valid proxy for demand given its high volatility. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

b.    Rivian's Backlog was based on fully refundable $1,000 deposits that required no purchase commitment on the part of the potential consumer, and could be canceled at any time for any reason without penalty, which rendered the Backlog highly volatile and unreliable. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54.

c.    Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, which led to significant cancellations, and, in turn, reduced the Backlog and the supposed demand for Rivian's EVs. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

d.    Macroeconomic factors, including high inflation and high interest rates were already adversely impacting the EV industry as a whole and causing competing EV manufacturers to reduce prices to purchase an EV to address softening demand. Rivian was not immune to these factors. *See* ¶¶ 2-5, 53-54.

**Answer:**   The allegations in Paragraph 201 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 201.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 91-93, 116, and 123, inclusive, as if set forth fully herein.

**L.    November 7, 2023 – Rivian Files Third Quarter 2023 Financial Results, Hosts Conference Call, and Publishes Shareholder Letter**

202.   On November 7, 2023, the Company announced its third quarter results and published its 3Q 2023 Shareholder Letter, which was an exhibit to a Form 8-K signed by Defendant McDonough. On that date, the Company also filed its Form 10-Q reporting its financial results for the third quarter of 2023 (the "3Q 2023 Form 10-Q"). The 3Q 2023 Form 10-Q was signed by the Individual Defendants.

**Answer:**  Defendants admit that Rivian announced its financial results for the third quarter of 2023 in a Form 10-Q filed with the SEC on November 7, 2023. Defendants admit that Rivian published its Q3 2023 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on November 7, 2023. Defendants otherwise deny the allegations in Paragraph 202.

203.   The 3Q 2023 Form 10-Q once again included Rivian's boilerplate misleading risk disclosure concerning the Company's ability to maintain strong demand:

Our ability to become profitable in the future will depend on the continued successful development and commercial production and acceptance of our vehicles and services, our ability to maintain strong demand and average selling prices for our vehicles, as well as our capability to manufacture our vehicle portfolio efficiently and estimate and effectively manage both our operating expenditures and our capital expenditures.

**Answer:** Paragraph 203 purports to characterize and selectively quote certain portions of Rivian's Form 10-Q filed with the SEC on November 7, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 203.

204. This statement was materially false and misleading when made because Defendants Rivian and McDonough knew that:

    a.    Defendants had already repeatedly assured investors that demand would not be an issue for the duration of the Roadmap because Defendants had a "clear" line of sight into demand that lasted well into 2024 (*i.e.* covering the path to profit), based on current and verifiable data that they closely tracked, including Rivian's Backlog, order rates, and cancellation rates. Unbeknownst to investors, this claim was baseless and it also voided the significance of Rivian's risk disclosure. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

    b.    Rivian improperly based demand on its Backlog, which was not a valid proxy for demand. Rivian's Backlog was based on $1,000 deposits that required no purchase commitment on the part of the potential consumer and could be canceled at any time without penalty for any reason, which rendered the backlog highly volatile. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

    c.    Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, which led to significant cancellations, and, in turn, reduced the Backlog and the supposed demand for Rivian EVs. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

    d.    A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low price, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.    Macroeconomic factors, including high inflation and high interest rates were already adversely impacting the EV industry as a whole and causing competing EV manufacturers to reduce the price to purchase an EV to address softening demand. Rivian was not immune to these factors. *See* ¶¶ 2-5, 53-54.

**Answer:**    The allegations in Paragraph 204 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 204.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

205.   Rivian also held an earnings conference call on November 7, 2023. Top of mind, as always, was Rivian's progress on its Roadmap, especially since the Company was on the cusp of announcing production guidance for 2024. A Goldman Sachs analyst asked whether Rivian was still on track to achieve positive margins in 2024 and more specifically whether anything had changed in the Roadmap given macroeconomic factors impacting the EV industry as a whole. In response, Defendant Scaringe confirmed Rivian's Roadmap without qualification while expressing a "very high degree of confidence" that Rivian's fundamentals, in particular its ability to produce and sell EVs at profit, were strong:

**Mark Delaney - Goldman Sachs**

You reiterated your view to be gross margin positive in 2024, but I'm hoping to better understand if you're views in how Rivian will get there, have changed at all recently, given the volatility in the industry more broadly with competitors cutting EV vehicle prices, but also costs falling in Rivian, as you've described, making so much progress on its own cost structure.

**Defendant Scaringe**

Thanks, Mark. I'll let Claire jump in on this as well. This is just such an important topic. And ultimately, there's – I just spoke to it a bit, ***but there's a few major levers***. ***The first being, the continued ramp-up of our production facility and the fixed cost absorption that comes with that.*** We're seeing the benefits of that quarter-over-quarter as we continue to ramp. So it's numerically very easy to understand.

The second, which is maybe less – it's not as easy to see without having a look into all of our supplier negotiations and discussions is the significant progress we're making contractually with redefining build material costs or material costs through negotiations with suppliers, through resourcing of new suppliers, or through changes to the component or system design to achieve those cost reductions….

And then lastly, which I spoke to a moment ago is growth in ASP. And that's going to be both due to the layering in or the feathering in of new pricing, which again, we'll just see quarter-over-quarter as more and more of our

deliveries are associated with new pricing, meaning post-March 1, 2022, as we work through that. And then the other is the introduction of some of these new trim packages, Max Pack, is an example, we have some new trim configurations going to be coming out next year that will also help us grow ASP. *So it's a combination of ramp, material cost and ASP that give us a very high degree of confidence in our long-term for the business*….

**Answer:** Defendants admit that Rivian held its Q3 2023 earnings conference call on November 7, 2023. Paragraph 205 purports to characterize and selectively quote certain portions of the transcript of Rivian's Q3 2023 earnings conference call on November 7, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 205.

206. These statements were materially false and misleading and omitted material facts when made because Defendant Scaringe knew or recklessly disregarded that the "major lever" of the production ramp were not in place because:

a. Ramping production to achieve positive gross profit margins presupposed that there was sufficient demand to warrant increased production, and that the EVs produced would be sold at a profit. At the time, Defendants had no reasonable basis to assume either would be possible. *See* ¶¶ 2-5, 31, 39-41, 45-47, 53-54, 90.

b. Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely. The Backlog was not directly correlated to demand or actual vehicle purchases, or the expected delivery of vehicles to generate revenue. *See* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123.

c. Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company. At the time, Rivian lost tens of thousands of dollars on the sale of each EV produced. *See* ¶¶ 5, 39, 41, 93, 116, 123.

d. A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to filling at an extremely low price relative to cost, undermining profitability and the rationale to ramp production on the basis of those preorders. *See* ¶¶ 5, 39, 41, 93, 116, 123.

e.  Rivian was already experiencing supply chain, production, and macroeconomic issues. With no clarity into whether or when these issues would be resolved, Defendants knew they presented an even greater challenge for ramping production and achieving gross margin profits by 2024. *See* ¶¶ 2-5, 53-54.

f.  Macroeconomic factors, including high inflation and high interest rates were already adversely impacting the EV industry as a whole and causing competing EV manufacturers to reduce the prices to purchase an EV to address softening demand. Rivian was not immune to these factors. *See* ¶¶ 2-5, 53-54.

**Answer:**  The allegations in Paragraph 206 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 206.  Defendants also incorporate and reassert their responses to Paragraphs 2-5, 31, 39-41, 45-47, 52-54, 84, 90-93, 116, and 123, inclusive, as if set forth fully herein.

**M.  February 21, 2024 – The Truth is Revealed: Rivian Stuns the Market By Announcing Lower Production Guidance For 2024 Than In 2023, Substantially Weakened Demand, and a Modified Roadmap That Minimized Production**

207.  On February 21, 2024, Rivian published its 2023 Shareholder Letter, which was an exhibit to a Form 8-K signed by Defendant McDonough. In the 2023 Shareholder Letter, published after market close, Rivian jolted the market and announced ***production guidance for 2024 that was lower than that of 2023***: "We expect 2024 production to be flat year-over-year with total units of 57,000". This 57,000 figure was actually less than flat as it was below the 57,232 EVs Rivian produced in 2023. Thus, ***Rivian was not growing – it was moving backwards***. Rivian's 57,000 figure was also smaller than the Company's internal production target of 62,000 for 2023. *See* ¶¶76-77. In sum, the market learned that Rivian's supposed ramp up of production – the cornerstone of its growth story since the Roadmap was announced in 2022 – was in tatters when just one quarter prior it was strongly affirmed.

**Answer:**  Defendants admit that Rivian published its Q4 2023 Shareholder Letter, which was attached as an exhibit to Rivian's Form 8-K filed with the SEC on February 21, 2024.  Paragraph 207 purports to characterize and selectively quote from certain portions of Rivian's Q4 2023 Shareholder Letter dated February 21, 2024, and Defendants therefore respectfully refer the Court to that document for its

complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 207.

208.   With production moving backwards, Defendants had to go back to the drawing board and draft a new roadmap. In the 2023 Shareholder Letter, Rivian outlined a new roadmap that materially reduced the significance of production, which, of course, is a fundamental function for an EV manufacturer that investors were closely watching:

> ***The key drivers to bridge the fourth quarter 2023 to the fourth quarter of 2024 are***:
>
> •      ~50% - Variable cost per unit: We anticipate the majority of these savings will be accomplished through the material cost reductions planned as part of our R1 engineering design changes, commercial supplier negotiations, and lower raw material costs.
>
> •      ***~35% - Fixed/semi-fixed cost efficiencies***: As part of our planned shutdown and the associated design changes and optimization initiatives, we expect to significantly reduce our fixed costs per vehicle delivered by the end of 2024. ***These initiatives include increasing our production line rate by 30%.*** We also expect our LCNRV and firm purchase commitments balance to provide a benefit to gross profit during 2024.
>
> •      ~15% - Non-vehicle revenue: With over 71,000 Rivians on the road, we have the opportunity for increased revenue in areas such as service, accessories, remarketing, finance, insurance, and other software enabled services. These revenue sources are core to our long-term margin targets, and we expect to continue to drive growth and efficiencies in these areas over the next few years.

**Answer:** Paragraph 208 purports to characterize and selectively quote from certain portions of Rivian's Q4 2023 Shareholder Letter dated February 21, 2024, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 208.

209.   During Rivian's earnings conference call held that same day, Defendant Scaringe further shocked the market by stating that the demand underpinning the production ramp, which Defendants had repeatedly assured investors was "strong", "stable", "really robust", reached "deep into 2024", and was not suffering from macroeconomic factors impacting the EV industry as a whole, had supposedly suddenly been "negatively impacted" in the span of a single quarter. In addressing this issue, Defendant Scaringe ignored that he had told investors that Defendants "closely watched" the Backlog and cancellation rates "daily," (*see* ¶¶ 5, 31, 52-54, 84, 91-93, 116, 123). Thus, Defendants knew or recklessly disregarded that demand was suffering earlier than disclosed and was not as Defendants had portrayed throughout the Class Period:

> Our business is not immune to existing economic and geopolitical uncertainties, most notably the impact of historically high interest rates, ***which has negatively impact [sic] demand***. In this fluid environment, we appreciate the expressed interest in demand visibility from the investment community.

**Answer:** Paragraph 209 purports to characterize and selectively quote from certain portions of the transcript of Rivian's Q4 2023 earnings conference call on February 21, 2024, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants also incorporate and reassert their responses to Paragraphs 5, 31, 52-54, 84, 91-93, 116, and 123, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 209.

210. Defendant Scaringe's last statement – that Rivian "appreciate[d] the expressed interest in demand visibility from the investment community" was disingenuous at best as Defendants had relentlessly boasted of their "visibility" and "clear line of sight" into demand "well into 2024" throughout the Class Period while simultaneously withholding the data upon which these claims were based from investors. *See* ¶¶ 31, 39-41, 45-47, 53-54.

**Answer:** Paragraph 210 purports to characterize and selectively quote from certain portions of the transcript of Rivian's Q4 2023 earnings conference call on February 21, 2024, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants also incorporate and reassert their responses to Paragraphs 31, 39-41, 45-47, and 53-54, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 210.

211. Thus, ramping production volume (the heart of Rivian's Roadmap since 2022) and, as Defendants represented, the key to proving Rivian could emerge beyond the growth stage and achieve long-term sustainable success through the fundamentals of its business – plunged from 66% at the beginning of the Class Period to just a facet of the 35% bucket (together with cost efficiencies). Regardless of whether Rivian would somehow achieve profitability in 2024 or not, it was now abundantly clear that Rivian could not get there through what mattered most, the fundamentals of its business.

**Answer:** The allegations in Paragraph 211 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 211.

212. Relatedly, Rivian also announced that the Company had cashed in $73 million in regulatory credits in 2023, including $39 million in Q4 alone, signaling that Defendants knew they would need to bridge the gap to profit by means other than production.

**Answer:** Paragraph 212 purports to characterize and paraphrase certain portions of Rivian's Q4 2023 Shareholder Letter dated February 21, 2023, and Defendants therefore respectfully refer the Court to that document for its complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 212.

213. As alleged *supra* (*see* ¶¶133-135), after substantially reducing Rivian's 2024 production guidance further to just 47,000-49,000 EVs in October 2024, in November 2024, Defendants announced that Rivian would be selling $300 million in banked regulatory credits to add to the Company's revenue – a transparent attempt to salvage Rivian's profitability narrative by any means necessary. This was just lipstick on a pig as adding $300 million to revenues through banked regulatory credits does not testify to the fundamental soundness of Rivian's business, which is what the Roadmap was supposed to accomplish. In addition, Rivian had been sitting on these hundreds of millions of regulatory credits – which can be kept and sold at any time – and chose the failure of the Roadmap as the perfect time to cash a material amount of them in.

**Answer:** The allegations in Paragraph 213 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 213. Defendants also incorporate and reassert their responses to Paragraphs 133-135, inclusive, as if set forth fully herein.

## VI.    ADDITIONAL SCIENTER ALLEGATIONS

214. Defendants acted with scienter in that they knew or recklessly disregarded that the public documents and statements they issued and disseminated to the investing public in the name of the Company or in their own name during the Class Period were materially false and misleading.

**Answer:**   The allegations in Paragraph 214 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 214.

### A.   The Individual Defendants Knew Their Statements Were Materially Misleading As They Continually Boasted of Rivian's Clear Visibility Into, And Daily Tracking Of, Rivian's Demand and Backlog, and They Repeatedly Stressed Rivian's Strong Demand

215.   During at least *five different conference calls* during the Class Period, Defendant Scaringe represented that he had clear visibility of demand for Rivian's EVs. *See* ¶150 (November 9, 2022 conference call where Defendant Scaringe told the market that "we have significant demand visibility…"; ¶152 (November 29, 2022 conference call where Defendant Scaringe stated that he had a "clear line of sight through 2024 in terms of demand"); ¶163 (February 28, 2023 conference call where Defendant Scaringe repeated that "we maintain a vehicle backlog that provides clear demand visibility well into 2024" and that the Company has a "clear line of sight until well into 2024"); ¶181 (June 2, 2023 conference call where Defendant Scaringe stated that "we've watched the demand. I mean it is a daily thing that we watch" and "[a] metric that we actually pay even closer attention to is cancellation rate"); ¶191 (August 8, 2023 conference call where Defendant Scaringe stated that "we have clear visibility into – deep into 2024"); *see* also ¶184 (Defendant McDonough stated during a June 15, 2023 conference that "[w]e certainly have seen some impacts of the broader macroeconomic environment in 2023 *as we compare current daily order* rates relative to what we saw maybe a year ago").

**Answer:**   Paragraph 215 purports to characterize and selectively quote from certain portions of the transcripts of Rivian's earning conference calls on November 9, 2022 and February 28, 2023, the transcript of Rivian's presentation at Redburn's 2022 CEO Conference on November 29, 2022, the transcript of Rivian's presentation at the Sanford C. Bernstein Strategic Decisions Conference on June 2, 2023, and the transcript of Rivian's presentation at Deutsche Bank's Global Automotive Conference on June 15, 2023, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 215.

216.   Defendants also repeatedly represented that based on their "clear visibility" into the demand for Rivian EVs, they knew that the demand for Rivian EVs was strong. After the third quarter of 2022 when Rivian stopped reporting data regarding the status of the Backlog, Defendants alone had access to these highly relevant metrics. Nevertheless, Defendants repeatedly reassured investors that they monitored Rivian's Backlog figures, and its cancellation rates very closely, on a "daily" basis. And, based on the supposed strength of these metrics, and Defendants' clarity on the status of these metrics, during every single quarter of the Class Period,

Defendants stressed the strength of the demand for Rivian's EVs, including by claiming it would last deep into 2024. *See* ¶136 (2Q 2022 Shareholder Letter, signed by Defendant McDonough, stating that "demand is strong"); ¶150 (3Q 2022 Shareholder Letter, signed by Defendant McDonough, stating that there is "strong demand…evidenced by our robust Backlog"); ¶152 (November 29, 2022 conference call where Defendant Scaringe stated that unlike other EV manufacturers, Rivian was not experiencing weakening demand and its backlog was continuing to grow); ¶163 (February 28, 2023 conference call where Defendant Scaringe stated Rivian was confident in the strength of its demand); ¶168 (April 4, 2023 conference where Defendant McDonough explained that demand extended into 2024); ¶177 (May 9, 2023 conference call where Defendant Scaringe stated that demand extends into 2024); ¶181 (June 2, 2023 conference where Defendant Scaringe stated that demand was strong and Rivian's demand was "more resilient" than other EV manufacturers);¶184 (June 15, 2023 conference where Defendant McDonough stated that demand is "robust" and extends into 2024); ¶191 (August 8, 2023 conference call where Defendant Scaringe stated that Rivian was "confident" in the strength of demand); ¶195 (September 7, 2023 conference where Defendant McDonough stated that demand and the backlog "has been holding up well"); ¶204 (November 7, 2023 conference where Defendant Scaringe stated that Rivian "remain[s] very bullish on… long term demand").

**Answer:** Paragraph 216 purports to characterize and selectively quote from Rivian's Q2 2022 Shareholder Letter dated August 11, 2022, Rivian's Q3 2022 Shareholder Letter dated November 9, 2022, the transcript of Rivian's presentation at Redburn's 2022 CEO Conference on November 29, 2022, the transcript of Rivian's earnings conference call on February 28, 2023, the transcript of Rivian's presentation at the Bank of America Securities 2023 Global Automotive Summit on April 4, 2023, the transcript of Rivian's earnings conference call on May 8, 2023, the transcript of Rivian's presentation at the Sanford C. Bernstein Strategic Decisions Conference on June 2, 2023, the transcript of Rivian's presentation at Deutsche Bank's Global Automotive Conference on June 15, 2023, the transcript of Rivian's August 8, 2023 earnings conference call, the transcript of Rivian's presentation at Goldman Sachs' Communacopia + Technology Conference on September 7, 2023, and the transcript of Rivian's earnings conference call on November 7, 2023, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 216.

217. Defendants also repeatedly represented to investors throughout the Class Period that, unlike other EV manufacturers, demand for Rivian EVs was not significantly impacted by macroeconomic pressures. Defendants stopped just short of representing that the demand for Rivian EVs was immune from challenging macroeconomic factors and on five occasions during the Class Period, Defendants explained that Rivian's "robust" Backlog, which extended "deep into 2024" was "more resilient" and experiencing none of the softening demand that other EV manufacturers were experiencing. *See* ¶152 (November 29, 2022 conference call where Defendant Scaringe was explicitly asked if Rivian was experiencing softening demand like other EV manufacturers and his response was that the "demand backlog [] is very robust. It gives us a clear line of sight well into 2024"); ¶163 (February 28, 2023 conference call where Defendant Scaringe outright denied that Rivian was experiencing softening demand related to macroeconomic pressures); ¶181 (June 2, 2023 conference call where Defendant Scaringe stated Rivian is "watching really closely" what is happening with the macroeconomic environment and industry-wide demand for EVs, and that the Company "continue[s] to see demand for the products" because consumer demand for Rivian EVs is "more resilient"); ¶184 (June 15, 2023 conference call where Defendant McDonough stated that while macroeconomic factors were impacting other EV companies, the strong demand for Rivian EVs was "really stable"); ¶195 (September 7, 2023 conference call where Defendant McDonough stated that notwithstanding a challenging macroeconomic environment, "[t]he backlog has been holding up well"); ¶204 (November 7, 2023 conference call where Defendant Scaringe was asked about the status of consumer demand for Rivian EVs in an environment where other EV manufacturers were experiencing weakening demand, and Defendant Scaringe responded that with respect to demand and the Backlog, he had a "high degree of confidence" for the long term).

**Answer:** Paragraph 217 purports to characterize and selectively quote certain portions of the transcript of Rivian's presentation at Redburn's 2022 CEO Conference on November 29, 2022, the transcript of Rivian's earnings conference call on February 28, 2023, the transcript of Rivian's presentation at the Sanford C. Bernstein Strategic Decisions Conference on June 2, 2023, the transcript of Rivian's presentation at Deutsche Bank's Global Automotive Conference on June 15, 2023, the transcript of Rivian's presentation at Goldman Sachs' Communacopia + Technology Conference on September 7, 2023, and the transcript of Rivian's earnings conference call on November 7, 2023, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 217.

218. These statements and admissions show that Defendants had actual knowledge of Rivian's demand and, thus, knew that without increased demand, increased production could not support the Roadmap.

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT        118        CASE NO.: 2:24-cv-04566 CBM (JPR)

**Answer:** The allegations in Paragraph 218 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 218.

### B. The Individual Defendants' Repeated Colloquies With Analysts About Gross Profits, Profitability, and Demand Further Show They Knew Their Statements Were Materially Misleading

219. Throughout the Class Period, the Individual Defendants repeatedly engaged in lengthy colloquies with analysts about the Roadmap, demand and backlog, demonstrating that Defendants were well aware of such issues. *See* ¶¶140, 142 (August 11, 2022 conference call where Defendant McDonough had a lengthy discussion with analyst regarding Rivian's "path to positive gross profit and positive unit economics"); ¶150 (November 9, 2022 conference call where Defendant McDonough answered questions from analyst regarding the "production rate" Rivian "need[ed] to achieve" to get to profitability); ¶152 (November 29, 2022 conference call where Defendant Scaringe engaged in discussion with analyst regarding demand and the impact of macroeconomic pressures); ¶¶161-164 (February 28, 2023 conference call where Defendant McDonough had lengthy colloquy with analysts regarding increasing production).

**Answer:** Paragraph 219 purports to characterize and selectively quote certain portions of transcripts of Rivian's earnings conference calls on August 11, 2022, November 9, 2022, and February 28, 2022, and the transcript of Rivian's presentation at Redburn's 2022 CEO Conference on November 29, 2022, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 219.

220. The Individual Defendants knew that Rivian's Roadmap and ability to stop or slow its prolific cash burn were of paramount importance to investors and analysts because analysts routinely asked pointed questions about both these issues. *See, e.g.,* ¶¶140, 142, 150, 152, 161-167.

**Answer:** Defendants incorporate and reassert their responses to Paragraphs 140, 142, 150, 152, and 161-167, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 220.

221. After Rivian's conference calls, analysts who covered Rivian regularly reported on the Roadmap, the Company's cash burn rate, pace of production, and demand, as well as on their discussions with the Individual Defendants. *See id.*

**Answer:** Defendants incorporate and reassert their responses to Paragraphs 140, 142, 150, 152, and 161-167, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 221.

### C.    Rivian Had Numerous Suspiciously-Timed Resignations

222.   On August 31, 2023, Jiten Behl, the Chief Growth Officer resigned. As Chief Growth Officer, Behl was intimately familiar with the Company's vehicle production growth and the inner workings of the Roadmap. The timing of Behl's departure, a year after Rivian set forth its Roadmap to profitability and growth, six months after Rivian announced very disappointing guidance that began to call the Company's growth story into question, and six months before the Company announced it was dramatically changing course and would no longer rely on growth to get to profitability, is highly suspicious and supports a strong inference of scienter.

**Answer:** Defendants admit that Jiten Behl, Rivian's former Chief Growth Officer, separated from the Company effective August 31, 2023 and, in connection with his separation, Mr. Behl entered into a consulting agreement with the Company, pursuant to which Mr. Behl will provide advisory and consulting services to the Company for a term beginning on September 1, 2023 and continuing until November 30, 2025. Defendants otherwise deny the allegations in Paragraph 222.

223.   After the Class Period, executives continued to resign. On May 3, 2024, Chief Operating Officer Frank Klein resigned. As the Company's Chief Operating Officer throughout the Class Period, Klein was intimately familiar with the Roadmap, Defendants' repeated representations to the market that vehicle production increases were the principal factor driving the Company's Roadmap to profitability, and Rivian's reverse course in February 2024 when it forecasted producing less EVs in 2024 than 2023. The timing of Klein's resignation – just two months after Defendants admit that the Rivian growth story had stalled, is suspicious.

**Answer:** Defendants admit that Chief Operating Officer Frank Klein separated from the Company effective May 17, 2024. Defendants otherwise deny the allegations in Paragraph 223.

224.   On July 1, 2024, Jeffrey Baker, the Chief Accounting Officer resigned. Baker's resignation is suspicious because he resigned only four months after Defendants revealed the collapse of Rivian's growth story, and because as Chief Accounting Officer, Baker would have knowledge of the financial underpinnings of the Roadmap to profitability.

**Answer:** Defendants admit that Jeffrey Baker, Rivian's former Chief Accounting Officer, resigned on July 1, 2024, effective July 27, 2024. Defendants otherwise deny the allegations in Paragraph 224.

225. On July 24, 2024, Dr. Kjell Gruner, Chief Commercial Officer and President, Business Growth, resigned. As the second executive who was responsible for the growth of Rivian's business operations to resign in less than a year, Gruner's resignation is also suspicious and supports a strong inference of scienter.

**Answer:** Defendants admit that Dr. Kjell Gruner, Rivian's former Chief Commercial Officer and President, Business Growth, notified Rivian of his decision to resign to pursue other opportunities on July 24, 2024. Defendants otherwise deny the allegations in Paragraph 225.

226. Collectively, Rivian's string of executive resignations during the tail end of the Class Period and after the end of the Class Period bolster an already strong inference of Defendants' scienter.

**Answer:** The allegations in Paragraph 226 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 226.

**D.    The Individual Defendants Were Motivated to Commit Fraud to Ensure the Success of Rivian's Two Suspiciously-Timed Class Period Bond Offerings**

227. Rivian burned through, on average, over a billion dollars in cash per quarter and has been in a perpetual state of raising capital from investors since its inception. *See* ¶¶43, 49, 62, 86, 99, 112.

**Answer:** Defendants incorporate and reassert their responses to Paragraphs 43, 49, 62, 86, 99, and 112, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 227.

228. Rivian's Class Period bond offerings extended the Company's cash runway while it burned through billions in IPO funding.

**Answer:** Defendants deny the allegations in Paragraph 228.

229. On March 10, 2023, a year and a half after Rivian raised over $12 billion in one of the largest IPOs of all time, and just three years after Rivian raised $10.5

billion from private investors, Rivian sought additional funding to support its operations.

**Answer:** Defendants admit that Rivian raised funding from investors as disclosed in its SEC filings, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith. Defendants otherwise deny the allegations in Paragraph 229.

230. Namely, Rivian offered $1.5 billion in bonds on March 10, 2023. Rivian needed this cash infusion to support its multi-billion-dollar cash burn. This bond offering was suspiciously timed as it occurred only one week after an increased internal 2023 production target of 62,000 was revealed. *See* ¶¶78-79.

**Answer:** Defendants admit that in March 2023, Rivian issued $1,500 million principal amount of green convertible unsecured senior notes due March 2029 at a discount of $15 million in a private offering to qualified institutional buyers. Defendants also incorporate and reassert their responses to Paragraphs 78-79, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 230.

231. Unable to slow down its exorbitant cash burn rate of well over $1 billion per quarter, just seven months later, on October 11, 2023, Rivian again raised $1.725 billion in another bond offering. *See* ¶¶109-111. This bond offering was also suspiciously timed as it occurred just months before the February 21, 2024 bombshell announcement that Rivian would produce less vehicles in 2024 than in 2023, and would not be relying principally on increased vehicle production to reach positive gross margins.

**Answer:** Defendants admit that in October 2023, Rivian issued $1,725 million principal amount of green convertible unsecured senior notes due October 2030 at a discount of $15 million in a private offering to qualified institutional buyers. Defendants also incorporate and reassert their responses to Paragraphs 109-111, inclusive, as if set forth fully herein. Defendants otherwise deny the allegations in Paragraph 231.

E.    **Defendant Scaringe Was Motivated to Commit Fraud To Keep Rivian Going At All Costs**

232.    Defendant Scaringe founded Rivian in 2011. Founders of companies have singular motivations in ensuring their success. The reputation of a founder of a company is also inextricably linked with the fate of that company.

**Answer:**    Defendants admit that Dr. Scaringe founded Rivian in 2009. Defendants otherwise deny the allegations in Paragraph 232.

233.    Rivian had grave cash-burn problems almost immediately after its IPO. Rivian has also been struggling ever since to exit its growth-stage and become a functioning company that can turn a profit from the fundamentals of its business. As alleged herein, Rivian has had tremendous trouble doing that. Rivian's Roadmap narrative was the Individual Defendants' attempt to convince the market that it can finally turn a profit before it runs out of money.

**Answer:**  Defendants deny the allegations in Paragraph 233.

234.    Defendant Scaringe was motivated to commit fraud to keep the Roadmap narrative alive as long as possible.

**Answer:**  Defendants deny the allegations in Paragraph 234.

F.    **The Individual Defendants Were Motivated To Commit Fraud Because Their Compensation Was Heavily Dependent On Rivian's Share Price**

235.    The Individual Defendants were motivated to commit fraud and artificially inflate the value of Rivian stock because their compensation was heavily dependent on it. Indeed, Individual Defendants' stock awards during the Class Period were many multiples of their salaries:

| Name and Title | Year | Salary | Stock Awards | Options Awards |
|---|---|---|---|---|
| Robert J. Scaringe, Chief Executive Officer, Founder | 2023 | $759,038 | $6,065,409 | $7,173,658 |
| | 2022 | $650,000 | $2,267 | N/A |
| Claire McDonough, Chief Financial Officer | 2023 | $450,000 | $2,022,009 | $2,391,235 |
| | 2022 | $438,462 | $3,055,071 | $3,373,836 |

**Answer:**    Defendants admit that Dr. Scaringe and Ms. McDonough were eligible for stock awards during the purported Class Period and that this information was disclosed in its SEC filings, including Rivian's annual proxy materials filed with

the SEC on Schedule 14A, and Defendants therefore respectfully refer the Court to those documents for their complete and accurate contents and deny any allegations inconsistent therewith.  Defendants otherwise deny the allegations in Paragraph 235.

## VII.  LOSS CAUSATION

236.  During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Rivian securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and misleading because they failed to disclose material adverse information and misrepresented the truth about Rivian's business, operations, and prospects as alleged herein.

**Answer:**  The allegations in Paragraph 236 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 236.

237.  During the Class Period, as detailed herein, Rivian's securities were artificially inflated due to Defendants' materially misleading statements and omissions. When Defendants' misrepresentations and omissions were disclosed and became apparent to the market, the price of Rivian securities fell as the prior artificial inflation came out.

**Answer:**  The allegations in Paragraph 237 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 237.

238.  As a result of purchases of Rivian securities during the Class Period, Lead Plaintiffs and the other Class members suffered economic loss, i.e., damages, under the securities laws. The declines in the price of Rivian securities occurred after the corrective disclosures on February 28, 2023 and February 21, 2024.

**Answer:**  The allegations in Paragraph 238 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 238.

239.  The declines in the price of Rivian securities were also the result of the materialization of the concealed investment risk concerning Rivian.

**Answer:** The allegations in Paragraph 239 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 239.

240. Defendants' materially false and misleading statements relate to the Roadmap, demand, and Backlog.

**Answer:** The allegations in Paragraph 240 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 240.

241. The first corrective disclosure on February 28, 2023 revealed part of the truth about Rivian. On that date, Rivian shocked investors by revealing that the Company's expected vehicle production for 2023 (50,000) was significantly below the 60,000 analysts' consensus figure – which itself was supported by Rivian's internal 62,000 figure – raising serious questions about Rivian's ability to deliver on its Roadmap chiefly based on increasing production. The disclosure also revealed that Rivian was pushing the Roadmap back to the fourth quarter of 2024 from 2024. *See* ¶¶120-127, 206-212.

**Answer:** The allegations in Paragraph 241 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 241. Defendants also incorporate and reassert their responses to Paragraphs 120-127 and 206-212, inclusive, as if set forth fully herein.

242. This disclosure also caused part of the concealed investment risk that would become public to materialize.

**Answer:** The allegations in Paragraph 242 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 242.

243. After this disclosure, Rivian stock fell $3.54 per share to a March 1, 2023 closing price of $15.76, from a February 28, 2023 closing price of $19.30, a decline of almost 20%.

**Answer:** Paragraph 243 purports to describe the price of Rivian's stock, and Defendants therefore respectfully refer the Court to the publicly available daily

closing prices and trading volume information for the price and trading volume of Rivian stock. Defendants otherwise deny the allegations in Paragraph 243.

244. At the end of the Class Period, on February 21, 2024, Defendants disclosed the rest of the truth. On that date, Rivian stunned the market by revealing that the Roadmap was in shambles. Specifically, Rivian's expected vehicle production for 2024 (57,000) was lower than the previous year's production of 57,232 EVs, significantly lower than what Rivian had previously signaled to the market (62,000 EVs, *see* ¶¶76-77), and well below analysts' consensus of 65,000 (*see* ¶119). Rivian also revealed that demand for its EVs was significantly weaker than what Defendants had previously stated and that the Company would reduce its workforce by 10%. Rivian further revealed that it would not become a profitable Company based on improving the fundamentals of its business (making and selling more vehicles) and in the new and dramatically changed Roadmap, the role of increased production would be severely diminished.

**Answer:** The allegations in Paragraph 244 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 244. Defendants also incorporate and reassert their responses to Paragraphs 76-77 and 119, inclusive, as if set forth fully herein.

245. This disclosure also further caused the concealed investment risk that would become public to materialize.

**Answer:** The allegations in Paragraph 245 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 245.

246. On this news, Rivian stock fell $3.94 per share to a February 22, 2024 closing price of $11.45 from a February 21, 2024 closing price of $15.39, another decline of more than 25%.

**Answer:** Paragraph 246 purports to describe the price of Rivian's stock, and Defendants therefore respectfully refer the Court to the publicly available daily closing prices and trading volume information for the price and trading volume of Rivian stock. Defendants otherwise deny the allegations in Paragraph 246.

247. The timing and magnitude of the price declines in Rivian securities negate any inference that the loss suffered by Lead Plaintiffs and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to Defendants' statements. The

economic loss, *i.e.*, damages, suffered by Lead Plaintiffs and the other Class members was a direct result of Defendants' misstatements and omissions and the subsequent significant decline in the value of Rivian securities when Defendants' misrepresentations were revealed.

**Answer:** The allegations in Paragraph 247 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 247.

## VIII. CLASS ACTION ALLEGATIONS

248. Lead Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Rivian securities between August 11, 2022 and February 21, 2024, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

**Answer:** Defendants admit that Plaintiffs purport to bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons and entities that purchased or otherwise acquired Rivian securities during the purported class period and were damaged thereby, excluding Defendants and certain affiliated parties. Defendants deny that this action may be properly maintained as a class action and deny that any persons who purchased Rivian securities during the purported class period suffered damages. Defendants otherwise deny the allegations in Paragraph 248.

249. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Rivian's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Lead Plaintiffs at this time and can only be ascertained through appropriate discovery, Lead Plaintiffs believe that there are at least hundreds or thousands of members in the proposed Class. Millions of Rivian shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Rivian or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

**Answer:** The first sentence of Paragraph 249 is a legal conclusion, to which no response is required. To the extent this allegation purports to contain a factual

assertion requiring a response, Defendants lack information and knowledge sufficient to form a belief as to the truth of the allegations concerning the number of potential members of the putative class that Plaintiffs seek to define, and on that basis deny them. Defendants admit that throughout the purported Class Period, Rivian's shares traded on the Nasdaq. Defendants otherwise deny the allegations in Paragraph 249.

250.   Lead Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

**Answer:**   The allegations in Paragraph 250 consist of assertions or legal conclusions to which no response is required. To the extent that Paragraph 250 purports to contain factual assertions requiring a response, Defendants lack information and knowledge sufficient to form a belief as to the truth of allegations concerning the purported typicality of Plaintiffs' claims, and on that basis deny them. Defendants otherwise deny the allegations in Paragraph 250.

251.   Lead Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

**Answer:**   The allegations in Paragraph 251 consist of assertions or legal conclusions to which no response is required. To the extent that Paragraph 251 purports to contain factual assertions requiring a response, Defendants lack information and knowledge sufficient to form a belief as to the truth of allegations concerning the purported adequacy of Plaintiffs or of their counsel, and on that basis deny them. Defendants otherwise deny the allegations in Paragraph 251.

252.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: (a) whether the federal securities laws were violated by Defendants' acts as alleged herein; (b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Rivian; and (c) to what extent the members of the Class have sustained damages and the proper measure of damages.

**Answer:** The allegations in Paragraph 252 consist of assertions or legal conclusions to which no response is required. To the extent that Paragraph 252 purports to contain factual assertions requiring a response, Defendants lack information and knowledge sufficient to form a belief as to the truth of allegations concerning the purported commonality of the claims of the putative class, and on that basis deny them. Defendants otherwise deny the allegations in Paragraph 252.

253. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**Answer:** The allegations in Paragraph 253 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 253.

## IX.    APPLICABILITY OF PRESUMPTION OF RELIANCE

254. The market for Rivian's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Rivian's securities traded at artificially inflated prices during the Class Period. Lead Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Rivian's securities and market information relating to Rivian and have been damaged thereby.

**Answer:** The allegations in Paragraph 254 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 254.

255. During the Class Period, the artificial inflation of Rivian's securities was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Lead Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Rivian's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Rivian and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT                129                CASE NO.: 2:24-CV-04566 CBM (JPR)

Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

**Answer:** The allegations in Paragraph 255 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 255.

256. At all relevant times, the market for Rivian's securities was an efficient market for the following reasons, among others: (a) Rivian shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market; (b) As a regulated issuer, Rivian filed periodic public reports with the SEC and/or the NASDAQ; (c) Rivian regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or (d) Rivian was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

**Answer:** The allegations in Paragraph 256 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 256.

257. As a result of the foregoing, the market for Rivian's securities promptly digested current information regarding Rivian from all publicly available sources and reflected such information in the price of Rivian securities. Under these circumstances, all purchasers of Rivian's securities during the Class Period suffered similar injury through their purchase of Rivian's securities at artificially inflated prices and a presumption of reliance applies.

**Answer:** The allegations in Paragraph 257 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 257.

258. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations – information that Defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the

importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

**Answer:**   The allegations in Paragraph 258 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 258.

## X.    NO SAFE HARBOR

259.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Rivian who knew that the statement was false when made.

**Answer:**   The allegations in Paragraph 259 consist of assertions or legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 259.

## XI.    CAUSES OF ACTION

### FIRST CLAIM

**Violation of Section 10(b) of The Exchange Act
and Rule 10b-5 Promulgated Thereunder Against All Defendants**

260.   Lead Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

**Answer:**  Defendants incorporate and reassert their responses to Paragraphs 1-259, inclusive, as if set forth fully herein.

261.   During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Lead Plaintiffs and other Class members, as alleged herein; and (ii) cause Lead Plaintiffs and other members of the Class to purchase Rivian's securities at artificially inflated prices. In furtherance of this

unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

**Answer:** The allegations in Paragraph 261 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 261.

262. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Rivian's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

**Answer:** The allegations in Paragraph 262 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 262.

263. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Rivian, as specified herein. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Rivian's value, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Rivian, in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

**Answer:** The allegations in Paragraph 263 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 263.

264. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a Rivian officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financials; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other

defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's business operations at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

**Answer:** The allegations in Paragraph 264 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 264.

265. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the truth about Rivian from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' misstatements and omissions, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

**Answer:** The allegations in Paragraph 265 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 265.

266. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Rivian's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Lead Plaintiffs and the other members of the Class acquired Rivian securities during the Class Period at artificially high prices and were damaged thereby.

**Answer:** The allegations in Paragraph 266 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 266.

267. At the time of said misrepresentations and/or omissions, Lead Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true. Had Lead Plaintiffs and the other members of the Class and the marketplace

known the truth regarding the problems that Rivian was experiencing, which were not disclosed by Defendants, Lead Plaintiffs and other members of the Class would not have purchased or otherwise acquired their Rivian securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

**Answer:** The allegations in Paragraph 267 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 267.

268. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**Answer:** The allegations in Paragraph 268 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 268.

269. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**Answer:** The allegations in Paragraph 269 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 269.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act Against the Individual Defendants

270. Lead Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

**Answer:** Defendants incorporate and reassert their responses to Paragraphs 1-269, inclusive, as if set forth fully herein.

271. The Individual Defendants acted as controlling persons of Rivian within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the misstatements and omissions of material fact, including false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT

134

CASE NO.: 2:24-CV-04566 CBM (JPR)

control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Lead Plaintiffs contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Lead Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

**Answer:** The allegations in Paragraph 271 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 271.

272. In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the alleged misstatements giving rise to the securities violations as alleged herein, and exercised the same.

**Answer:** The allegations in Paragraph 272 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 272.

273. As set forth above, Rivian and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**Answer:** The allegations in Paragraph 273 consist of assertions or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations in Paragraph 273.

## PRAYER FOR RELIEF

WHEREFORE, Lead Plaintiffs pray for relief and judgment, as follows:

(a)   Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)   Awarding compensatory damages in favor of Lead Plaintiffs and the other Class members against all defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)   Awarding Lead Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)   Such other and further relief as the Court may deem just and proper.

**Answer:**  Defendants state that no response to Plaintiffs' prayer for relief is necessary.  To the extent any response is necessary, Defendants deny that they have engaged in any violation of law and deny that Plaintiffs are entitled to any relief whatsoever.

**JURY TRIAL DEMANDED**

Lead Plaintiffs hereby demand a trial by jury.

**Answer:**  Defendants state that no response to Plaintiffs' jury trial demand is necessary.  To the extent any response is necessary, Defendants deny that they have engaged in any violation of law and deny that Plaintiffs are entitled to any relief whatsoever.

**DEMAND FOR JURY TRIAL**

Defendants hereby demand a trial by jury on all issues upon which trial by jury may be had.

**AFFIRMATIVE DEFENSES**

Defendants set forth the following affirmative and/or other defenses.  To the extent that a defense asserted herein is an ordinary defense, Defendants do not intend to, and do not, assume any burden of proof, production, or persuasion that would not apply if such defense were not asserted herein.

First Affirmative Defense

Plaintiffs' and any putative class members' claims are barred, in whole or in part, because the Amended Complaint fails to allege facts sufficient to state a claim against Defendants upon which relief may be granted.

Second Affirmative Defense

Plaintiffs' and any putative class members' claims are barred, in whole or in part, because the Amended Complaint fails to plead fraud with particularity as

required by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(1), and otherwise fails to properly identify the alleged false or misleading statements of which Plaintiffs complain.

Third Affirmative Defense

If any false or misleading statement was made, or if any material fact required to be stated or necessary to make any statement not misleading was omitted, which Defendants deny, then every act or omission was done or omitted in good faith conformity with the rules and regulations of the Securities and Exchange Commission and, therefore, pursuant to Section 23(a) of the Securities Act of 1934, there is no liability for any act or omission alleged.

Fourth Affirmative Defense

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, because many of the matters now claimed by the Complaint to be the subject of misrepresentations or omissions were publicly disclosed or were in the public domain at the relevant time and, as such, were received by, or otherwise available to, Plaintiffs and members of the putative class and were at all times reflected in the price of Rivian's securities.

Fifth Affirmative Defense

If any false or misleading statement was made, or if any material fact required to be stated or necessary to make any statement not misleading was omitted, which Defendants deny, then the claims of Plaintiffs and members of the putative class based on alleged violations of the Securities Exchange Act of 1934 are barred, in whole or in part, because Plaintiffs and members of the putative class were aware of the misstatement or omission and/or did not rely upon those in purchasing Rivian securities.

Sixth Affirmative Defense

Any recovery for damages allegedly incurred by Plaintiffs or members of the putative class based on alleged violations of the Securities Exchange Act of 1934 is

barred, in whole or in part, by the damages limitations in Section 21D(e) of the Exchange Act, 15 U.S.C. § 78u-4(e).

### Seventh Affirmative Defense

Any recovery for damages allegedly incurred by Plaintiffs or members of the putative class based on alleged violations of the Securities Exchange Act of 1934 is limited to the percentage of responsibility by a defendant in proportion to the total fault of all persons, named as parties to this action or not, who caused or contributed to such alleged damages, pursuant to Section 21D(f) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(f).

### Eighth Affirmative Defense

Each Plaintiff and member of the putative class would have acquired Rivian securities even if, when those securities were acquired, each Plaintiff and member of the putative class would have known of the allegedly untrue statements of material fact, omissions of material fact, or misleading statements or other wrongful conduct upon which Defendants' purported liability rests.

### Ninth Affirmative Defense

The claims of Plaintiffs and members of the putative class fail to the extent predicated on statements that were not statements of fact, including statements of opinion or statements of corporate optimism.

### Tenth Affirmative Defense

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, because Defendants had no knowledge of or reasonable grounds to believe in the existence of facts by reason of which any alleged statement or omission was false or misleading.

### Eleventh Affirmative Defense

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, to the extent any challenged disclosures at issue in this action were forward-looking statements rendered inactionable by the safe harbor set forth in the

Private Securities Litigation Reform Act and/or the "bespeaks caution" doctrine.

Twelfth Affirmative Defense

If any false or misleading statement was made, or if any material fact required to be stated or necessary to make any statement not misleading was omitted, which Defendants deny, then the claims of Plaintiffs and members of the putative class based on alleged violations of the Securities Exchange Act of 1934 are barred, in whole or in part, because such misrepresentations did not cause or were not a material causal factor in the decline in the price of Rivian securities alleged in the Amended Complaint.

Thirteenth Affirmative Defense

The claims of Plaintiffs and members of the putative class cannot be maintained because superseding or intervening events caused some or all of the alleged damages.

Fourteenth Affirmative Defense

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, because any increase or decrease in the value of Rivian securities was and is, wholly or partially, the result of market conditions or other factors and not the result of any alleged wrongful conduct by Defendants.

Fifteenth Affirmative Defense

To the extent the claims asserted by Plaintiffs and members of the putative class are based on any predictions, expressions of opinion or forward-looking statements, such claims are not actionable under the statutory safe harbor in the Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-5(c), 77z-2(c), and/or the bespeaks caution doctrine.

Sixteenth Affirmative Defense

Any recovery for damages allegedly incurred by Plaintiffs or members of the putative class is subject to offset in the amount of any benefit received by Plaintiffs

or members of the putative class through their investments, including by not limited to any tax, insurance, or indemnification benefit, or proceeds received from hedging or short selling.

### Seventeenth Affirmative Defense

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, Plaintiffs have not pleaded, and cannot prove, loss causation, and/or have not pleaded, and cannot prove, that Plaintiffs or any putative class member suffered damages that can be attributed and/or causally related to the alleged misrepresentations or omissions. Without limiting the foregoing, Plaintiffs' and any putative class members' claims are barred, in whole or in part, because any depreciation in the market price of Rivian stock resulted from factors other than the purported misrepresentations and omissions alleged in the Amended Complaint, 15 U.S.C. § 77*l*(b), 15 U.S.C. § 77k(e).

### Eighteenth Affirmative Defense

All or a portion of the damages alleged by Plaintiffs and members of the putative class are attributable to causes other than any actions or omissions for which Rivian Defendants allegedly are responsible.

### Nineteenth Affirmative Defense

Each and every one of the Defendants alleged to be a control person under Section 20(a) of the Securities Exchange Act of 1934 had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

### Twentieth Affirmative Defense

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, by the doctrines of waiver, estoppel, ratification, laches and/or unclean hands.

### Twenty-First Affirmative Defense

Plaintiffs and members of the putative class are barred from claiming injury or

damage, if any, because they failed to make reasonable efforts to mitigate such injury or damage, which would have prevented their injury or damages, if any.

Twenty-Second Affirmative Defense

Plaintiffs and members of the putative class would be unjustly enriched if they were permitted to obtain any recovery in this action.

Twenty-Third Affirmative Defense

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, by the doctrine of assumption of risk. Plaintiffs and members of the putative class knew the risks inherent in investing in the securities at issue and thus assumed the risk of a decline in the value of their investments.

Twenty-Fourth Affirmative Defense

To the extent that it may be determined that any Defendant is responsible for the alleged losses of Plaintiffs and members of the putative class, and acted with the state of mind required under the Exchange Act, such mental state and actions may not be attributed to any other Defendant.

Twenty-Fifth Affirmative Defense

The claims of Plaintiffs and members of the putative class are not properly maintainable as a class action.

Twenty-Sixth Affirmative Defense

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, on the grounds that Defendants had no duty to disclose information allegedly omitted in their public statements, that Defendants had no duty to update information that was truthful and accurate when made, and that Defendants had no duty to correct information that they reasonably believed was truthful and accurate when made.

Twenty-Seventh Affirmative Defense

Each and every one of the Defendants cannot be held liable for statements that they did not make or cause to be made.

DEFENDANTS' ANSWER TO LEAD PLAINTIFFS' AMENDED COMPLAINT

141

CASE NO.: 2:24-CV-04566 CBM (JPR)

Twenty-Eighth Affirmative Defense

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, because the alleged misstatements were never the subject of a corrective disclosure.

Twenty-Ninth Affirmative Defense

The claims of Plaintiffs and members of the putative class are barred, in whole or in part, because the alleged damages, if any, are speculative and impossible to ascertain.

Thirtieth Affirmative Defense

Plaintiffs and members of the putative class are not entitled to prejudgment interest.

Thirty-First Affirmative Defense

Plaintiffs and members of the putative class are not entitled to recover counsel fees, expert fees, or other costs or expenses.

Thirty-Second Affirmative Defense

The purported misrepresentations or omissions alleged in this action had no impact on the price of Rivian securities.

Additional Affirmative Defenses

Defendants may have additional, as yet unidentified affirmative or additional defenses available against the Plaintiffs and/or putative class members and thus reserve the right to assert such defenses in a timely fashion after the facts to support such defenses become known to them.

**PRAYER**

WHEREFORE, Defendants requests judgment on the Amended Complaint as follows:

1. That judgment be entered against Plaintiffs and in favor of Defendants, on all claims asserted in this action;

2.  That Plaintiffs' Prayer for Relief be denied;

3.  That Plaintiffs and the putative class take nothing from Defendants by this Amended Complaint, and that the same be dismissed with prejudice;

4.  That the Court refuse to certify this suit as a class action;

5.  For costs of suit herein; and

6.  For such other and further relief as the Court may deem just and proper.

Dated: September 22, 2025

MORRISON & FOERSTER LLP

By:  */s/ Jordan Eth*
     Jordan Eth

*Attorneys for Defendants*
RIVIAN AUTOMOTIVE, INC.,
ROBERT J. SCARINGE, AND CLAIRE MCDONOUGH