JORDAN ETH (CA SBN 121617)
JEth@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
CHRISTINA E. DIEROLF (CA SBN 335258)
CDierolf@mofo.com
HANNA M. LAURITZEN (CA SBN 339895)
HLauritzen@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522

*Attorneys for Defendants*
RIVIAN AUTOMOTIVE, INC., ROBERT J.
SCARINGE, and CLAIRE MCDONOUGH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE, and CLAIRE MCDONOUGH,<br><br>Defendants. | Case No. 2:24-cv-04566-CBM-PVC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  November 25, 2025<br>Time: 10:00 a.m.<br>Courtroom: 8D<br>Judge: Hon. Consuelo B. Marshall<br><br>Action Filed:  May 31, 2024<br>Trial Date:  None set |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on November 25, 2025, at 10:00 a.m. at the United States District Court for the Central District of California, located at the First Street Courthouse, 350 W. 1st Street, Courtroom 8D, 8th Floor, Los Angeles, California 90012, Defendants Rivian Automotive, Inc. ("Rivian" or the "Company"), Robert J. Scaringe, and Claire McDonough (the "Individual Defendants," and together with Rivian, "Defendants") will and hereby do move this Court under Rule 12(c) of the Federal Rules of Civil Procedure for Judgment on the Pleadings. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of David J. Wiener ("Wiener Decl.") and exhibits attached thereto ("Ex. _"), and such other argument and materials as may be presented before this Motion is taken under submission.

Defendants' counsel met and conferred with Plaintiffs' counsel regarding this Motion in accordance with Local Rule 7-3 on October 1, 2025. The parties were unable to reach agreement to resolve this Motion.

Dated: October 22, 2025                MORRISON & FOERSTER LLP


By: */s/ Jordan Eth*
_____
Jordan Eth

*Attorneys for Defendants*
RIVIAN AUTOMOTIVE, INC.,
ROBERT J. SCARINGE, and
CLAIRE MCDONOUGH

# MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

    A.    The Company and Its Business ......................................................... 2

    B.    Rivian's Production Grew While It Disclosed to Investors the Risks it Faced ............................................................................................... 4

    C.    Plaintiffs' Complaint ....................................................................... 6

    D.    Procedural Background ..................................................................... 7

LEGAL STANDARD .............................................................................................. 8

ARGUMENT ............................................................................................................ 9

I.    THE COURT SHOULD GRANT JUDGMENT ON THE PLEADINGS BECAUSE PLAINTIFFS FAIL TO PLEAD FALSITY UNDER THE NINTH CIRCUIT'S RECENT DECISION IN *SNEED*. ................................. 9

    A.    The Ninth Circuit's *Sneed* Decision. ....................................... 9

    B.    Under *Sneed*, Plaintiffs Do Not Plead Falsity ...................... 10

CONCLUSION ........................................................................................................ 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................. 8

*In re Cloudera, Inc.*,
    121 F.4th 1180 (9th Cir. 2024) ........................................................... 8-9

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
    189 F.3d 971 (9th Cir. 1999) ................................................... 8, 14 n.2

*Jackson v. Fischer*,
    No. C 11-2753 PJH, 2015 WL 1143582 (N.D. Cal. March 13,
    2015) ..................................................................................................... 8

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) .......................................................... 13 n.2

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ................................................. 9, 14 n.2

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) ........................................................................... 10

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) .......................................................... 16 n.3

*Sneed v. Talphera, Inc.*,
    147 F.4th 1123 (9th Cir. 2025) ....................................................*passim*

*Wochos v. Tesla*,
    985 F.3d 1180 (9th Cir. 2012) ............................................................. 8

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ............................................................... 8

**Statutes and Rules**

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*

    § 10, 15 U.S.C. § 78j ................................................................*passim*
    § 20, 15 U.S.C. § 78t ...........................................................6, 16 n.3

Fed. R. Civ. P.
    9(b)........................................................................................8
    12(b)(6)..................................................................................8
    12(c)......................................................................................8

# INTRODUCTION

The day before this Court entered its order denying Defendants' motion to dismiss, the Ninth Circuit issued its opinion in *Sneed v. Talphera, Inc.*, 147 F.4th 1123 (9th Cir. 2025), clarifying the standard for pleading falsity under Section 10(b). Affirming dismissal, the Ninth Circuit held, as a matter of law, that a "reasonable investor" "acts with care and seeks out" all available public information, including SEC disclosures, information on a company's website, and the full context of defendants' statements.

*Sneed* is dispositive here. Under *Sneed*, no reasonable investor considering Rivian's disclosures in their full context, including the Company's detailed disclosures about the risks it faced, could have been misled by the challenged statements. Indeed, every one of the five "facts" Plaintiffs allege was concealed by the challenged statements was expressly disclosed to shareholders in statements ignored (or not challenged) by Plaintiffs' Complaint:

**Allegedly Omitted Fact #1:**  Plaintiffs allege that Rivian's "Backlog" was not a reliable indicator of demand because customer preorders were fully cancellable. Rivian, however, consistently disclosed to investors in each quarter of the Class Period that its preorders were "cancellable and fully refundable," and for that reason, "a significant number of customers who submitted preorders . . . may not purchase vehicles."

**Allegedly Omitted Fact #2:**  Plaintiffs allege that Rivian failed to disclose that its "Backlog required consumers to wait extremely long periods . . . significantly increasing the risk of cancellations." But Rivian repeatedly disclosed to investors that "by far, the largest contributor to our cancellations are wait time" and the "long wait from the time a preorder is made until the time the vehicle is delivered . . . could also impact consumer decisions on whether to ultimately make a purchase."

**Allegedly Omitted Fact #3:**  Plaintiffs allege that Rivian omitted that its preorders included pre-March 1, 2022 preorders that were subject to lower pricing

that would "undermine" profitability.  That, too, was no secret.  Rivian repeatedly disclosed during the Class Period that it was "working through the backlog of pre-March first 2022 preorders" and that "most" of its vehicle deliveries were under pre-March 1, 2022 pricing.

**Allegedly Omitted Fact #4:**  Plaintiffs allege that the challenged statements were misleading because "Rivian's cost to produce each EV. . . made the sale of each EV highly unprofitable for the Company."  Rivian's margins and costs of revenues were disclosed in every quarterly filing with the SEC and Rivian's quarterly shareholder letters, and discussed repeatedly on the Company's quarterly conference calls.

**Allegedly Omitted Fact #5:**  Plaintiffs allege that Rivian failed to disclose that it was facing supply chain and macroeconomic issues that threatened the Company's production ramp.  Throughout the Class Period, however, Rivian disclosed that its "production ramp [was] taking longer than originally expected as a result of supply chain challenges" and that the Company had "seen some impacts of the broader macroeconomic environment in 2023 as we compare current daily order rates relative to what we saw maybe a year ago."  Rivian made clear that the "short or medium-term headwinds we see [with] interest rates being at record high levels" would not "drop down anytime in the next month or two."

Under *Sneed*, in light of these on-point disclosures addressing the very issues Plaintiffs allege were concealed, Plaintiffs have not pled falsity, as a reasonable investor would not be misled by Rivian's statements.  This Court should grant judgment on the pleadings and dismiss the Complaint in its entirety.

## BACKGROUND

### A.    The Company and Its Business

Rivian is an electric vehicle ("EV") company based in Irvine, California.  (¶ 23.)  Rivian designs, develops, and manufactures EVs and sells them directly to consumer and commercial customers.  (*Id.*)  Rivian also offers financing, insurance,

software, vehicle charging, and vehicle service.  (*Id.*)   Rivian manufactures its vehicles at a plant in Normal, Illinois (the "Normal Facility").  (¶ 28.)  The Individual Defendants are Rivian's CEO Robert J. Scaringe and its CFO Claire McDonough.  (¶¶ 24-25.)

Rivian began accepting preorders for its first EVs in 2018.  (¶ 31.)  Customers placing a preorder were required to deposit $1,000.  (*Id.*)  Before and during the Class Period, Rivian disclosed in its SEC filings and other investor communications that customer preorders were "cancellable and fully refundable."  (*E.g.*, Ex. 1 at 19; Ex. 2 at 171.)[1]   The Company disclosed that "[b]ecause all of our preorders are cancellable, it is possible that a significant number of customers who submitted preorders for our vehicles may not purchase vehicles."  (*Id.*)

Rivian became a publicly traded company in November 2021, two months after producing its first EVs for sale.  (¶¶ 34, 36.)  In its first years as a public company, Rivian continued to invest heavily in increasing production at the Normal Facility, which led to operating losses and negative gross margins before and during the Class Period.  Throughout the Class Period, the Company disclosed that "[a]s we produce vehicles at low volumes on production lines designed for higher volumes, we have experienced, and will continue to experience, negative gross profit" and that this "pressure on gross profit from limited volumes will continue in the near-term."  (*See, e.g.*, Ex. 1 at 58.)

On August 11, 2022, Rivian announced that it expected to achieve positive gross margins for the first time by the end of 2024.  (¶¶ 3, 44.)  CFO McDonough identified three key factors to Rivian's projected path to profitability: (1) increasing

---

[1]  Defendants request that the Court consider Exhibits 1-24 to the Declaration of David J. Wiener.  Defendants requested that the Court consider the same documents in connection with their motion to dismiss.  (ECF No. 66-2.)  Plaintiffs did not oppose that request, and the Court found that the documents were incorporated by reference into the Complaint.  (Order at 3-4 & n.2.)  The Court should do the same here.

production; (2) implementing new technologies to reduce costs; and (3) increasing the average selling price of its EVs.  (Ex. 3 at 212-13; ¶ 44.)

### B.    Rivian's Production Grew While It Disclosed to Investors the Risks it Faced

Rivian's vehicle production grew throughout the Class Period.  On February 28, 2023, Rivian announced that it had produced 24,337 vehicles in 2022, far surpassing the 1,015 vehicles produced in 2021.  (¶¶ 37, 62; Ex. 4 (Q4 2022 Shareholder Letter) at 233.)  Rivian also projected that the Company would produce 50,000 vehicles in 2023.  (¶ 60.)  That production guidance was below analyst estimates, and Rivian's stock price declined from $19.30 to $15.76 per share the next day.  (¶¶ 60-61.)  Later in 2023, Rivian increased its 2023 production guidance to 52,000 and then to 54,000.  (¶ 9.)

While the Company was rapidly ramping up its production capacity, Rivian repeatedly disclosed to investors the risks it faced.  Rivian disclosed that:

- it had "a history of losses and expect[ed] to incur significant expenses and continuing losses for the foreseeable future" and that its "limited operating history makes it difficult for us to evaluate our future business prospects" (Ex. 2 (Q2 2022 Form 10-Q) at 136; Ex. 5 (Q3 2022 Form 10-Q) at 253; *see also* Ex. 1 (FY 2022 Form 10-K) at 14-15; Ex. 6 (Q1 2023 Form 10-Q) at 331; Ex. 7 (Q2 2023 Form 10-Q) at 405; Ex. 8 (Q3 2023 Form 10-Q) at 490);

- its "ability to develop and manufacture vehicles of sufficient quality and appeal to customers on schedule and on a large scale is unproven" and that it had "experienced, and may in the future experience, significant delays in the manufacture and delivery of our vehicles" (*see, e.g.*, Ex. 1 (FY 2022 Form 10-K) at 4);

- it "intend[ed] to continue making investments to drive growth," which would cause "additional losses [and] could delay [the Company's] ability to achieve profitability and positive operating cash flow" (Ex. 2 (Q2 2022 Form 10-Q) at

150; Ex. 5 (Q3 2022 Form 10-Q) at 268; Ex. 1 (FY 2022 Form 10-K) at 55; Ex. 6 (Q1 2023 Form 10-Q) at 347; Ex. 7 (Q2 2023 Form 10-Q) at 421; Ex. 8 (Q3 2023 Form 10-Q) at 506);

- it anticipated the future investments in growth "will require significant external debt and/or equity financing" (*id.*);

- "difficult economic conditions" could cause customers to "cancel preorders" (Ex. 2 (Q2 2022 Form 10-Q) at 178; Ex. 5 (Q3 2022 Form 10-Q) at 297; Ex. 6 (Q1 2023 Form 10-Q) at 390-91; Ex. 7 (Q2 2023 Form 10-Q) at 464; Ex. 8 (Q3 2023 Form 10-Q) at 550);

- its "production ramp is taking longer than originally expected as a result of supply chain challenges and other related factors" (Ex. 2 (Q2 2022 Form 10-Q) at 164; Ex. 5 (Q3 2022 Form 10-Q) at 283; *see also* Ex. 6 (Q1 2023 Form 10-Q) at 357; Ex. 7 (Q2 2023 Form 10-Q) at 431; Ex. 8 (Q3 2023 Form 10-Q) at 517); and

- "[a]s interest rates rise, market rates for new vehicle financing will generally be expected to rise as well, which may make our vehicles less affordable to customers or steer customers to less expensive vehicles that would be less profitable for us, adversely affecting our business, prospects, financial condition, results of operations, and cash flows" (Ex. 2 (Q2 2022 Form 10-Q) at 174; *see also* Ex. 1 (FY 2022 Form 10-K) at 29).

On February 21, 2024, the end of the Class Period, Rivian announced Q4 2023 and full-year 2023 results.  The Company reported that it had exceeded its original 2023 production guidance by over seven thousand vehicles, producing 57,232 vehicles.  (Ex. 9 (Q4 2023 Shareholder Letter) at 609.)  Rivian also announced that it had improved gross profit per vehicle by approximately $81,000 as compared to Q4 2022.  (*Id.* at 616.)  On the same day, the Company announced flat production guidance for 2024, projecting that it would produce 57,000 vehicles that year, which was below analyst expectations.  (¶ 120.)  That guidance reflected, among other

developments, Rivian's plans to temporarily shut down manufacturing lines at the Normal Facility in Q2 2024 to implement new technology. (Ex. 9 (Q4 2023 Shareholder Letter) at 610, 617.) The Company also projected that it would achieve positive gross margins in Q4 2024. (*Id.* at 610.) After these announcements, the Company's stock price declined from $15.39 to $11.45 per share. (¶ 15.)

### C.   Plaintiffs' Complaint

On May 31, 2024, this litigation was filed, purportedly on behalf of a class of persons who purchased Rivian stock between August 11, 2022, and February 21, 2024 (the "Class Period"). The operative Complaint was filed on December 10, 2024. Plaintiffs assert two Exchange Act claims: a fraud claim under Section 10(b) against all Defendants and a control-person claim under Section 20(a) against the Individual Defendants. (¶¶ 260-273.)

Plaintiffs challenge thirty-two statements made during the Class Period. The statements fall into three categories: (1) statements regarding Rivian's projections that it would achieve positive gross margins by the end of 2024; (2) statements discussing production and customer demand; and (3) risk-factor disclosures made in Rivian's quarterly and annual SEC filings regarding the Company's ability to maintain and estimate demand and cost improvements.

Plaintiffs allege that every challenged statement was misleading because Rivian's "Backlog" was "not a valid proxy for demand," and Rivian, therefore, had no basis to claim demand was "strong" or could support the Company's planned production ramp in 2024. To support this theory, Plaintiffs repeatedly point to the same five alleged facts that were purportedly concealed:

  1. "Rivian's Backlog was based on fully refundable $1,000 deposits that required no purchase commitment on the part of the potential consumer, and could be canceled at any time for any reason without penalty" (¶ 137(a); *see also* ¶¶ 141(c), 156(b), 158(b), 160(c), 165(b), 177(b), 183(b), 186(b), 191(b), 193(b), 197(b), 201(b), 204(b));

2. "Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, significantly increasing the risk of cancellations" (¶ 137(b); *see also* ¶¶ 141(d), 143(c), 156(c), 158(c), 161, 165(c), 177(c), 183(c), 186(c), 191(c), 193(c), 197(c), 201(c), 204(c));

3. A "material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low purchase price relative to cost" (¶ 137(c); *see also* ¶¶ 141(e), 143(d), 151(d), 153(d), 156(d), 158(d), 161(c), 163(d), 165(d), 167(d), 170(d), 173(d), 175(d), 177(d), 179(d), 181(d), 183(d), 186(d), 189(d), 191(d), 193(d), 195(d), 197(d), 199(d), 204(d), 206(d));

4. "Rivian's cost to produce each EV. . . made the sale of each EV highly unprofitable for the Company" (¶ 143(e); *see also* ¶¶ 146(c), 151(c), 153(c), 161(a), 163(c), 167(c), 170(c), 173(c), 175(c), 179(c), 181(c), 189(c), 195(c), 199(c), 206(c)); and

5. "Rivian was already experiencing supply chain, production, and macroeconomic issues" (¶ 143(f); *see also* ¶¶ 146(e), 151(e), 153(e), 161(b), 163(e), 167(e), 170(e), 173(e), 175(e), 179(e), 181(e), 183(e), 186(e), 189(e), 193(e), 195(e), 197(e), 199(e), 206(e)).

### D.    Procedural Background

Defendants moved to dismiss the Complaint (the "Motion to Dismiss"). (ECF No. 66.) The Motion to Dismiss was set to be heard on July 15, 2025. (ECF No. 74.) On July 14, 2025, the Court took the Motion to Dismiss under submission and vacated the hearing. (ECF No. 75.)

On August 21, 2025, the Court entered an order denying Defendants' Motion to Dismiss. (ECF No. 76, the "Order.") Defendants filed an answer to the Complaint on September 22, 2025. (ECF No. 79.)

# LEGAL STANDARD

"A judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 980 (9th Cir. 1999) (citation and emphasis omitted). "The legal standards governing Rules 12(c) and 12(b)(6) are 'functionally identical,' . . ." *Jackson v. Fischer*, 2015 WL 1143582, at *3 (N.D. Cal. March 13, 2015) (citation omitted). Thus, as in a Rule 12(b)(6) motion, "[t]he tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). "Rather, the allegations in the complaint 'must be enough to raise a right to relief above the speculative level.'" *Jackson*, 2015 WL 1143582, at *3 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Plaintiffs here must also meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the even "more exacting pleading requirements" of the Reform Act, which require that the complaint "plead with particularity both falsity and scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990-91 (9th Cir. 2009); *see Heliotrope*, 189 F.3d at 980 (judgment on the pleadings appropriate where a complaint fails to satisfy the pleading standards of the Reform Act); *Jackson*, 2015 WL 1143582, at *4 (applying these standards to motion for judgment on the pleadings).

To state a claim under Section 10(b), Plaintiffs must plead "a material misrepresentation or omission by the defendant [('falsity')]." *Sneed*, 147 F.4th at 1130 (citation omitted). To plead falsity, the complaint must "specify" each "statement alleged to have been misleading" and "what is false or misleading about the purportedly fraudulent statement, and why it is false." *In re Cloudera, Inc.*, 121 F.4th 1180, 1187 (9th Cir. 2024); *see also Wochos v. Tesla*, 985 F.3d 1180, 1188 (9th Cir. 2012). A plaintiff "cannot rely on hindsight; rather, it must explain why the statements were false or misleading at the time they were made." *Cloudera*, 121

F.4th at 1187.  Providing a "litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false," is insufficient. *Id.* (quoting *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008)).

## ARGUMENT

**I.    THE COURT SHOULD GRANT JUDGMENT ON THE PLEADINGS BECAUSE PLAINTIFFS FAIL TO PLEAD FALSITY UNDER THE NINTH CIRCUIT'S RECENT DECISION IN *SNEED*.**

### A.    The Ninth Circuit's *Sneed* Decision.

On August 20, 2025—the day before this Court entered its Order—the Ninth Circuit affirmed dismissal of a Section 10(b) claim in *Sneed v. Talphera, Inc.*, 147 F.4th 1123 (9th Cir. 2025).  The Ninth Circuit in *Sneed* considered statements made by a pharmaceutical manufacturer relating to a prescription opioid medication.  *Id.* at 1127.  The plaintiffs alleged that the company's marketing slogans and the CEO's statements to investors about the administration of the drug were misleading because they implied that administration was as simple as "Tongue and Done" when, in reality, administering the drug was far more complicated—it had to be administered in a hospital setting—and, as a result, the potential market for the drug was more limited than the defendants implied.  *Id.* at 1127-28.  To support their allegations, the plaintiffs cited a warning letter from the FDA.  *Id.* at 1127.  The warning letter concluded that the company had made "false or misleading claims" about the drug because the company's statements, including the statements challenged by the plaintiffs, failed to provide a balanced description of the drug's "risks and benefits." *Id.* at 1129-30.

The Ninth Circuit held that the plaintiffs failed to allege falsity, because "[a] reasonable investor would not blindly accept [a defendant's statements] without considering other information" provided by the company, including in SEC disclosures, on the company's website, and in the context of the company's other

1  statements. *Id.* at 1127. Only where this additional information provided by the

2  company failed to provide the allegedly concealed information could the plaintiffs

3  adequately plead falsity. *Id.* at 1131-32.

4      The court found that the FDA's finding that the company made "false or

5  misleading claims" did not establish falsity under the securities laws, because it did

6  not satisfy the "reasonable investor" standard applicable to claims under the

7  Exchange Act. *Id.* at 1130, 1133. The Ninth Circuit explained that, under the federal

8  securities laws, "[c]ontext matters because we presume that a reasonable investor—

9  who has money on the line—acts with care and seeks out relevant information." *Id.*

10  at 1131. "We expect reasonable investors to read an entire document, including the

11  fine print and caveats." Reasonable investors are "presumed to carefully scour" a

12  company's disclosures, including "hedges, disclaimers, and apparently conflicting

13  information." *Id.* at 1131-33 (quoting *Omnicare, Inc. v. Laborers Dist. Council*

14  *Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015)). The Ninth Circuit rejected

15  the falsity allegations as a matter of law and affirmed dismissal of the complaint,

16  finding that the company's disclosures—on its website, in SEC filings, and in other

17  statements—provided "caution[s]" and "clarifying information" that addressed the

18  issues that allegedly rendered the challenged statements misleading. *Sneed*, 147

19  F.4th at 1132-34.

20          **B.    Under *Sneed*, Plaintiffs Do Not Plead Falsity.**

21      *Sneed* is dispositive here. As shown below, every purported issue that

22  Plaintiffs allege was concealed was, in fact, disclosed by Rivian throughout the Class

23  Period in its SEC filings and other communications with investors. And unlike

24  *Sneed*—which involved challenged statements in bold text accompanied by fine print

25  disclosures spread across various other sources—the disclosures here were made in

26  normal typeface in the very documents and on the same conference calls that

27  Plaintiffs challenge.

28      Rivian's disclosure of the very issues that Plaintiffs claim the challenged

statements omitted is fatal to Plaintiffs' claims.  Under *Sneed*, a "reasonable investor" would look to Rivian's disclosures and find every one of the allegedly concealed "facts" disclosed in plain English.  147 F.4th at 1127.  Nothing was concealed.

**Allegedly Omitted Fact #1**:  Plaintiffs first allege that the challenged statements were misleading because "Rivian's Backlog was based on fully refundable $1,000 deposits that required no purchase commitment on the part of the potential consumer, and could be canceled at any time for any reason without penalty."  (¶ 137(a); *see also* ¶¶ 141(c), 156(b), 158(b), 160(c), 165(b), 177(b), 183(b), 186(b), 191(b), 193(b), 197(b), 201(b), 204(b).)

Plaintiffs omit that Rivian expressly disclosed this fact repeatedly throughout the Class Period in the same SEC filings that Plaintiffs claim were misleading. Rivian clearly and unequivocally informed investors in its SEC filings that customer preorders were "***cancellable and fully refundable***."  (Ex. 1 (FY 2022 Form 10-K) at 19; *see also* Ex. 2 (Q2 2022 Form 10-Q) at 171; Ex. 5 (Q3 2022 Form 10-Q) at 289; Ex. 6 (Q1 2023 Form 10-Q) at 361; Ex. 7 (Q2 2023 Form 10-Q) at 435; Ex. 8 (Q3 2023 Form 10-Q) at 520.)  The Company also explained in every one of its quarterly filings that "[b]ecause all of our preorders are cancellable, it is possible that a significant number of customers who submitted preorders for our vehicles may not purchase vehicles."  (Ex. 1 (FY 2022 Form 10-K) at 19; *see also* Ex. 2 (Q2 2022 Form 10-Q) at 171; Ex. 5 (Q3 2022 Form 10-Q) at 289; Ex. 6 (Q1 2023 Form 10-Q) at 361; Ex. 7 (Q2 2023 Form 10-Q) at 435; Ex. 8 (Q3 2023 Form 10-Q) at 521.)

**Allegedly Omitted Fact #2**:  Plaintiffs allege that the challenged statements were materially misleading because they failed to disclose that "Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, significantly increasing the risk of cancellations."  (¶ 137(b); *see also* ¶¶ 141(d), 143(c), 156(c), 158(c), 161, 165(c), 177(c), 183(c), 186(c), 191(c), 193(c), 197(c), 201(c), 204(c).)

Again, Plaintiffs ignore that Rivian expressly disclosed this fact repeatedly throughout the Class Period.  In every one of its Class Period Forms 10-K and 10-Q filed with the SEC, Rivian disclosed that "[t]he potentially long wait from the time a preorder is made until the time the vehicle is delivered, and any delays beyond expected wait times, could also impact consumer decisions on whether to ultimately make a purchase."  (Ex. 2 (Q2 2022 Form 10-Q) at 171; *see also* Ex. 5 (Q3 2022 Form 10-Q) at 289; Ex. 1 (FY 2022 Form 10-K) at 19; Ex. 6 (Q1 2023 Form 10-Q) at 361; Ex. 7 (Q2 2023 Form 10-Q) at 435; Ex. 8 (Q3 2023 Form 10-Q) at 521.)  The Individual Defendants also repeatedly discussed this issue on the Company's quarterly earnings calls and investor presentations:

- "[B]y far, the largest contributor to our cancellations are wait time."  (Ex. 21 (June 2, 2023 Presentation) at 897.)

- "[B]y far and away one of the biggest customer complaints we have, which is the amount of wait time associated with getting a Rivian today."  (Ex. 17 (Aug. 8, 2023 Earnings Call) at 816.)

- "[T]he single-biggest deterrent to putting in an order is how long the waitlist is as well."  (Ex. 20 (Apr. 4, 2023 Presentation) at 875.)

**Allegedly Omitted Fact #3**:  Plaintiffs next allege that the challenged statements were materially misleading because a "material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low purchase price relative to cost."  (¶ 137(c); *see also* ¶¶ 141(e), 143(d), 151(d), 153(d), 156(d), 158(d), 161(c), 163(d), 165(d), 167(d), 170(d), 173(d), 175(d), 177(d), 179(d), 181(d), 183(d), 186(d), 189(d), 191(d), 193(d), 195(d), 197(d), 199(d), 204(d), 206(d).)

This, too, was repeatedly disclosed by the Individual Defendants throughout the Class Period:

- "[W]e're still in the process of working through the backlog of pre-March first 2022 preorders."  (Ex. 22 (June 15, 2023 Presentation) at 907.)

- "While most of our deliveries today are based on pre-March 1st, 2022 pricing, we expect to see a meaningful step change in average selling price over the next two years as we introduce new higher-priced variants as well as move to our post March 1st preorders." (Ex. 13 (Feb. 28, 2023 Earnings Call) at 701.)
- "[T]he other core factor as we think about that step-stone from a gross profit perspective is also really the anniversarying or moving beyond those pre-March 1 pre-orders as well that allow us to move into our current [average selling prices]." (Ex. 3 (Aug. 11, 2022 Earnings Call) at 213; *see also* ¶¶ 41, 93.)
- "The pre-March first vehicles have a lower price point . . . So over the course of really the next year, we hope to work through those pre-March 1st quarters and get into newer post March 1, 2022 orders." (Ex. 15 (May 9, 2023 Earnings Call) at 766.)

**Allegedly Omitted Fact #4**: Plaintiffs allege that the challenged statements were materially misleading because "Rivian's cost to produce each EV. . . made the sale of each EV highly unprofitable for the Company." (¶ 143(e); *see also* ¶¶ 146(c), 151(c), 153(c), 161(a), 163(c), 167(c), 170(c), 173(c), 175(c), 179(c), 181(c), 189(c), 195(c), 199(c), 206(c).)  Rivian's margins and costs of revenues were disclosed in every quarterly filing with the SEC and Rivian's quarterly shareholder letters.  (*See* Ex. 2 (Q2 2022 Form 10-Q) at 152; Ex. 11 (Q2 2022 Shareholder Letter) at 671; Ex. 5 (Q3 2022 Form 10-Q) at 270; Ex. 12 (Q3 2022 Shareholder Letter) at 689; Ex. 4 (Q4 2022 Shareholder Letter) at 247; Ex. 6 (Q1 2023 Form 10-Q) at 348; Ex. 14 (Q1 2023 Shareholder Letter) at 740; Ex. 7 (Q2 2023 Form 10-Q) at 422; Ex. 16 (Q2 2023 Shareholder Letter) at 792; Ex. 8 (Q3 2023 Form 10-Q) at 508; Ex. 25[2] (Q3 2023

---

[2] Defendants request that the Court consider Exhibit 25, which is Rivian's Q3 2023 shareholder letter.  Exhibit 25 is incorporated by reference into the Complaint.  (¶ 202); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  It is also independently subject to judicial notice because it was filed with the SEC (¶

Shareholder Letter) at 962.)    Plaintiffs do not allege that these numbers were misstated and, in fact, rely on Rivian's reported margins to support their allegations. (*See, e.g.*, ¶¶ 43, 49, 62, 86, 98.)

**Allegedly Omitted Fact # 5**:  Finally, Plaintiffs allege that the challenged statements were materially misleading because "Rivian was already experiencing supply chain, production, and macroeconomic issues." (¶ 143(f); *see also* ¶¶ 146(e), 151(e), 153(e), 161(b), 163(e), 167(e), 170(e), 173(e), 175(e), 179(e), 181(e), 183(e), 186(e), 189(e), 193(e), 195(e), 197(e), 199(e), 206(e).)  Plaintiffs again omit that Rivian repeatedly discussed the challenges presented by supply chain issues and macroeconomic headwinds, such as rising inflation and interest rates, throughout the Class Period.

With respect to supply chain challenges, Rivian repeatedly disclosed in its quarterly SEC filings that its "production ramp is taking longer than originally expected as a result of supply chain challenges and other related factors" (Ex. 2 (Q2 2022 Form 10-Q) at 164; Ex. 5 (Q3 2022 Form 10-Q) at 283; *see also* Ex. 1 (FY 2022 Form 10-K) at 15; Ex. 6 (Q1 2023 Form 10-Q) at 357; Ex. 7 (Q2 2023 Form 10-Q) at 431; Ex. 8 (Q3 2023 Form 10-Q) at 517) and that "[t]here have been sizable increases in the cost of various inputs to manufacture our products. . . due to inflationary pressures and supply chain disruptions, impacting items such as the cost of input materials (e.g., lithium and nickel) and components (e.g., semiconductors)." (*See, e.g.*, Ex. 5 (Q3 2022 Form 10-Q) at 271.)  Rivian also provided regular updates on the impact of supply chain challenges in the Company's quarterly conference calls and shareholder letters, including that:

---

202) and communicated to Rivian's investors.  *Metzler*, 540 F.3d at 1055 n.1, 1064 n.7 (holding it is proper to take judicial notice of SEC filings and "publicly available financial documents").  The Court may take judicial notice that the "market was aware of the information" contained in Exhibit 25.  *Heliotrope*, 189 F.3d at 981 n.18.

- The Company "experienced 5 days of production downtime . . . due to a lack of supply of a key component, which limited . . . production" in Q3 2022. (Ex. 10 (Nov. 9, 2022 Earnings Call) at 640.)
- The Company "encountered multiple days of lost production due to supplier shortages" in Q4 2022. (Ex. 4 (Q4 2022 Shareholder Letter) at 239.)
- "The last 12 months were characterized by . . . significant supply chain volatility across the industry." (Ex. 13 (Feb. 28, 2023 Earnings Call) at 699.)

Rivian provided similarly robust disclosures in its SEC filings about the effects of macroeconomic challenges facing the industry, most notably economic uncertainty caused by rising interest rates and inflation. Rivian disclosed repeatedly that "[a]s interest rates rise, market rates for new vehicle financing will generally be expected to rise as well, which may make our vehicles less affordable to customers or steer customers to less expensive vehicles that would be less profitable for us, adversely affecting our business, prospects, financial condition, results of operations, and cash flows." (Ex. 2 (Q2 2022 Form 10-Q) at 174; *see also* Ex. 1 (FY 2022 Form 10-K) at 29.) The Individual Defendants also acknowledged the impact of these issues on the Company's results in the Company's conference calls with analysts:

- "We certainly have seen some impacts of the broader macroeconomic environment in 2023 as we compare current daily order rates relative to what we saw maybe a year ago." (Ex. 22 (June 15, 2023 Presentation) at 907.)
- "The last 12 months were characterized by economic uncertainty." (Ex. 13 (Feb. 28, 2023 Earnings Call) at 699.)
- "Now in the short term, I want to acknowledge the macroeconomic and geopolitical pressures impacting consumers and businesses, most notably the increase in interest rates." (Ex. 18 (Nov. 7, 2023 Earnings Call) at 834.)
- "I think there is an overreaction to some of the short-term headwinds -- short or medium-term headwinds we see between interest rates being at record high levels. And of course, those aren't going to drop down anytime in the next

month or [two], but this is something that will recover over time, and some of the geopolitical challenges that we have across the world." (*Id.* at 845.)

\* \* \*

To plead falsity under *Sneed*, a complaint must take into account the full context of a company's statements, rather than selectively cite them. A "reasonable investor" here would review the full context—SEC filings, shareholder letters on Rivian's website, and Rivian's conference calls with investors and analysts—when considering Rivian's public statements. This Court did not have the benefit of *Sneed* before issuing its Order, and therefore did not hold Plaintiffs to the standard articulated by the Ninth Circuit. Under that standard, because every purported "fact" that Plaintiffs allege rendered the challenged statements misleading was disclosed, Plaintiffs' Section 10(b) claim fails as a matter of law and judgment on the pleadings should be entered.[3]

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for judgment on the pleadings.

Dated: October 22, 2025                     MORRISON & FOERSTER LLP


By: */s/ Jordan Eth*
Jordan Eth

*Attorneys for Defendants*
RIVIAN AUTOMOTIVE, INC.,
ROBERT J. SCARINGE, AND CLAIRE
MCDONOUGH

---

[3] Judgment on the pleadings should also be entered with respect to Plaintiffs' Section 20(a) claim because the Complaint does not plead a predicate violation under Section 10(b). Plaintiffs' failure to plead an "underlying primary violation[] of the securities laws" is fatal to their Section 20(a) claim. *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Rivian Automotive, Inc.,
Robert J. Scaringe, and Claire McDonough, certifies that this brief contains 5,080
words, which complies with the word limit of L.R. 11-6.

Dated: October 22, 2025                     MORRISON & FOERSTER LLP


By: */s/ Jordan Eth*
    Jordan Eth

*Attorneys for Defendants*
RIVIAN AUTOMOTIVE, INC.,
ROBERT J. SCARINGE, AND
CLAIRE MCDONOUGH