THE BURKE LAW FIRM
Timothy J. Burke (SBN #181866)
tim.burke@burke-law-firm.com
1001 Wilshire Boulevard, #2187
(310) 984-7199 (phone)
(310) 602-6589 (fax)

*Liaison Counsel for Lead Plaintiffs and the Proposed Class*

[Additional Counsel on Signature Block]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> RIVIAN AUTOMOTIVE, INC., ROBERT J. SCARINGE and CLAIRE MCDONOUGH, <br><br> Defendants. | Case No. 2:24-cv-04566-CBM-PVC <br><br> CLASS ACTION <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br><br> Date: November 25, 2025 <br> Time: 10:00 a.m. <br> Courtroom: 8D <br> Judge: Hon. Consuelo B. Marshall <br> Action Filed: May 31, 2024 <br> Trial Date: None Set |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................ 1

II. STATEMENT OF FACTS .................................................................. 5

III. THE COURT'S ORDER ALREADY REJECTED THE ARGUMENTS DEFENDANTS REPEAT IN THEIR NEW MOTION ........................................ 6

IV. LEGAL STANDARD ........................................................................ 8

V. DEFENDANTS' MOTION IS MERITLESS AND SHOULD BE DENIED ....... 9

    A. *Sneed* Did Not Change or Clarify the Law for This Court ................ 9

    B. *Sneed*'s Highly Distinct Facts Render it Inapplicable to This Case ........................................................................................ 11

    C. The Court Already Found Defendants' Statements Actionable *After Analyzing* All the Information Defendants Resubmit As "Context" ................................................................................. 13

    D. Defendants' Motion Should Also Be Denied Because It Is a *De Facto* And Untimely Motion for Reconsideration .......................... 15

    E. Defendants Unilaterally – And Wrongly – Decided That Their Motion Automatically Reinstated the PSLRA's Discovery Stay .... 17

VI. CONCLUSION ............................................................................... 19

i

# TABLE OF AUTHORITIES

Page

Cases

*Chae v. SLM Corp*,
   2008 WL 11342464 (C.D. Cal. Jan. 17, 2008) ................................................................ 14

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ................................................................ 13

*Dworkin v. Hustler Mag. Inc.*,
   867 F.2d 1188 (9th Cir. 1989) ................................................................ 8

*Fecht v. Price Co.*
   70 F.3d 1078 (9th Cir. 1995) ................................................................ 2, 9

*Fleming v. Pickard*,
   581 F.3d 922 (9th Cir. 2009) ................................................................ 8

*Glazing Emps. & Glaziers Union Loc. #27 Pension & Ret. Fund v. iRhythm Techs., Inc.*,
   2025 WL 2243640 (N.D. Cal. Aug. 6, 2025) ................................................................ 18

*In re Convergent Techs. Sec. Litig.*,
   948 F.2d 507 (9th Cir. 1991) ................................................................ 10

*In re Facebook, Inc. Sec. Litig.*,
   2025 WL 556282 (N.D. Cal. Feb. 19, 2025) ................................................................ 17

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017) ................................................................ 2

*Kazerouni v. LVNV Funding LLC*,
   2014 WL 12968081 (C.D. Cal. 2014) ................................................................ 8

*Kmiec v. Powerwave Techs., Inc.*,
   2014 WL 12567781 (C.D. Cal. 2014) ................................................................ 8

*Local 272 Labor-Mgmt. Pension Fund v. Walt Disney Co.*,
   2025 WL 1461137 (C.D. Cal. May 20, 2025) ................................................................ 16

*Local 272 Labor-Mgmt. Pension Fund v. Walt Disney Co.*,
   2025 WL 1461139 (C.D. Cal. May 20, 2025) ................................................................ 4, 15, 16

*Lyon v. Chase Bank USA, N.A.*,
   656 F.3d 877 (9th Cir. 2011) ................................................................ 8

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015) ................................................................ 10

ii

*Pampena v. Musk*,
2024 WL 3678002 (N.D. Cal. Aug. 5, 2024) ............................................................. 3, 8

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ..................................................................................... 10

*Precision Specialty Metals, Inc. v. United States*,
315 F.3d 1346 (Fed. Cir. 2003) ................................................................................... 13

*Sneed v. Talphera, Inc.*,
147 F.4th 1123 (9th Cir. 2025) .............................................................................. passim

*Thomas v. Bible*,
983 F.2d 152 (9th Cir. 1993) ......................................................................................... 9

*United States v. Alexander*,
106 F.3d 874 (9th Cir. 1997) ......................................................................................... 8

*Warshaw v. Xoma Corp.*,
74 F.3d 955 (9th Cir. 1996) ..................................................................................... 9, 10

Rules

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 8

Fed. R. Civ. P. 12(c) .............................................................................................. passim

Other Authorities

L.R. 7-18 ........................................................................................................... 4, 15, 16

iii

Lead Plaintiffs Kamil Kirio and Nada Badr-Kirio ("Plaintiffs") hereby oppose Defendants' motion for judgment on the pleadings ("Motion") (ECF No. 81).[1]

## I.    INTRODUCTION

On October 22, 2025, two months after the Court denied Defendants' MTD (ECF No. 76, the "Order"), lifting the PSLRA's discovery stay, and one week after the Court scheduled a conference for November 25, 2025 (the "Conference") to, among other things, establish a discovery plan for this action (ECF No. 80), Defendants filed their Motion and "conveniently" noticed it for the same date as the Conference. As detailed herein, Defendants' Motion is not only fundamentally meritless and made under false pretenses to rehash failed arguments from their MTD, but it is an untimely *de facto* motion for reconsideration, and therefore should be subject to an even higher standard than a Rule 12(c) motion. In making their Motion, Defendants also usurped the Court's authority by unilaterally deciding the PSLRA's discovery stay was reinstated, when courts in this Circuit routinely find otherwise. Defendants' transparent attempt to hijack the Court's Conference with this last-ditch effort to dodge discovery and avoid the merits of this action should not be countenanced. Defendants' Motion should be denied.

Defendants' Motion is based entirely on supposedly new law created by the Ninth Circuit's holding in *Sneed v. Talphera, Inc.*, 147 F.4th 1123 (9th Cir. 2025) ("*Sneed*"), which was issued **before** the Court issued its Order. But *Sneed* neither created new law, nor a new pleading standard for falsity in securities cases. Rather, the Ninth Circuit applied well-established legal principles like the "total mix of information" doctrine to look at context and not just isolated statements alleged to be misleading. In tacit recognition that *Sneed* did not actually create new law, Defendants vaguely claim the Ninth Circuit somehow "clarif[ied]" this standard for the Court, but that argument is equally bankrupt.

---

[1] Undefined terms are defined in, and paragraph cites are to, the Complaint (ECF No. 58). Defendants' motion to dismiss (ECF No. 66) is cited as "MTD" and Plaintiffs' opposition to the MTD is cited as "Opp." (ECF No. 71).

Mot. 1. Defendants never explain what exactly was clarified by *Sneed*, and even 30 years ago, the Ninth Circuit found the proposition that statements must be analyzed in context "unremarkable". *See Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995). Defendants presumptuously assume this Court was unaware of *Sneed* when issuing the Order, but far more likely the Court simply chose not to cite the case because it is largely irrelevant here. The notion that the Court could not have incorporated a single case into its Order, or delayed issuing its Order, if it so desired is absurd.

Regardless, Defendants' Motion is fundamentally groundless because the Court already conducted the contextual analysis Defendants call for under *Sneed*. *See, e.g.*, Order 6 ("Plaintiffs sufficiently plead falsity [] because the statements created an impression of a state of affairs that differed in a material way from what actually existed") (citing *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017)); Order 9 ("the Court finds the general cautionary language identified by Defendants is insufficient to support a determination as a matter of law at this stage that Defendants' statements were not misleading"). In fact, Plaintiffs advocated for this contextual review because Defendants' statements are particularly misleading in context. *See* Opp. 6 ("[e]very securities case turns on what defendants said, how they said it, and what they knew at the time"); *id.*, at 10 ("Defendants' generic risk disclosures [] were rendered [] misleading, by Defendants' Guarantees"). As Plaintiffs explained, Defendants' Data-driven responses to pointed questions during context-specific investor calls – confidently claiming "clarity" into demand and the Roadmap – negated Defendants' contextless, boilerplate, and hypothetical warnings in Rivian's SEC filings. *Compare* ¶192 ("[W]e feel very confident in the continued backlog that we have. We have clear visibility into -- deep into 2024 with that backlog that's established") *with* Mot. 1 (preorders were "cancellable and fully refundable"). Defendants do not engage this argument in their Motion, ignoring their "clear line of sight" and "clear visibility" statements altogether.

Defendants' plea for a contextual review here is also particularly disingenuous given that the Court's analysis already included what Defendants now ask the Court to review. Indeed, Defendants ask the Court to review the same 24 exhibits that they submitted with their MTD. *See* Order 3-4; Mot. 3, n.1. Defendants add one new document with the Motion (Ex. 25), but that document offers no new context as it is duplicative of Ex. 8. *See* Mot. 13 & n.2 (Ex. 8 at 508 and Ex. 25 at 962 are the same chart); *see also* Order 9 n.7 (citing Ex. 8). Thus, the information Defendants claim is necessary and "dispositive" context was already considered and rejected by the Court. *See* Order 9.

To that end, the Court's findings on these matters cannot even be re-litigated as they are now the law of the case. *See Pampena v. Musk*, 2024 WL 3678002, at *2 (N.D. Cal. Aug. 5, 2024) (a "motion for judgment on the pleadings [raising] issues already decided on [a] motion to dismiss is subject to the 'law of the case' doctrine") (citation omitted). And Defendants' attempt to repackage their "risk warning" argument as an argument about "context" is a distinction without a difference. Even so, there is no basis for this Court to reach a different outcome on this Motion when applying what Defendants concede is the same legal standard as their MTD (if the Court is even willing to apply the Rule 12(c) standard rather than the more stringent reconsideration standard) and analysis (Mot. 8) to the same information the Court already considered.

Defendants' misapplication of *Sneed* to file their bankrupt Motion becomes even more pronounced when the facts of *Sneed*, which Defendants carefully skirt, are properly considered. *Sneed* was distinctly a case about marketing slogans for a drug made by a pharmaceutical company facing dual regulatory scrutiny from the FDA and SEC. In that narrow scenario, the Ninth Circuit found that reasonable investors would not blindly accept slogans when they have access to contextual information rendering those slogans inactionable. The Ninth Circuit further noted that FDA determinations about marketing materials do not automatically translate into securities fraud liability. *Sneed*, 147 F.4th at 1133. Defendants repeatedly and misleadingly quote from *Sneed* by omitting key words

like "slogan" and replacing them with contrived language (*e.g.*, "a defendant's statement") to try to broaden the case's application, but Defendants cannot escape that the fact-specific clarifications in *Sneed* have no import here. Mot. 9.

Defendants' tortured reading of *Sneed* also hypocritically ignores key context, including that Defendants here, unlike in *Sneed*, concealed vital information from investors. In *Sneed*, investors had access to information rendering the marketing slogans inactionable. Here, Defendants made concrete statements about demand and profitability based on their admitted "close", "daily" review of Backlog, cancel rates, macroeconomic factors, and other demand data – which Defendants either stopped reporting three months into the Class Period in November 2022 or never reported at all. Order 5. Defendants kept investors in the dark about this Data underpinning their Guarantees of "clear visibility" into "strong demand" for the duration of Rivian's Roadmap. Contextless, boilerplate, and generic risk warnings, which is all Defendants highlight in their Motion, could not possibly trump Defendants' context-specific, Data-driven statements. *See* ¶31 ("after November 2022, investors were left with no choice but to trust Defendants").

Finally, if Defendants truly believed *Sneed* created new law, or that the Court somehow erred in the Order, Defendants should have filed a timely motion to reconsider the Order within fourteen days. *See* L.R. 7-18. Instead, Defendants waited two months – until after the Conference was scheduled – to file the Motion. Defendants' attempt to dodge the high standards on reconsideration and unduly delay discovery must not be permitted. This Court has recently seen through this defense tactic in a similar situation, rejecting defendants' motion and holding them to the higher reconsideration standard where they, like here, filed a Rule 12(c) motion that repeated the same arguments as their failed motion to dismiss. *See  Loc. 272 Lab.-Mgmt. Pension Fund v. Walt Disney Co.*, ("*Disney*"), 2025 WL 1461139, at *1-2 (C.D. Cal. May 20, 2025). Defendants' Motion here should likewise be held to that higher standard and denied.

For these reasons, Defendants' Motion is meritless and should be denied.

## II.   STATEMENT OF FACTS

Founded by Defendant Scaringe, Rivian is a start-up known for bleeding cash and losing money on every EV manufactured. Rivian, which raised billions from investors, needed to prove its fundamentals were sound before its funding evaporated. ¶¶1, 27.

In August 2022, Defendants unveiled the Roadmap to achieve Rivian's first profits in 2024 by proving its fundamentals. ¶¶3, 42. The Roadmap involved ramping production, reducing costs, and increasing pricing. Production was by far the most important factor, but it required strong and stable demand for Rivian EVs. ¶¶44-47, 80-84.

Defendants painted a rosy picture of Rivian's ability to prove its fundamentals by: guaranteeing "strong demand" through 2024 based on Data they "closely" watched "daily"; boasting that its Backlog was resilient to industry-wide macroeconomic pressures; and overstating their Backlog data as a reliable indicator of "strong demand" and progress on the Roadmap. ¶¶5, 42, 51-52, 91-92, 101, 142, 145, 152, 182, 185, 192. Defendants spoke in confident and definitive terms about these matters based on Data they alone had access to and interpreted for investors. ¶¶5, 10, 64, 101, 152, 164, 192, 200, 205.

But Defendants knew Rivian's Backlog was highly unreliable, not immune to industry-wide macroeconomic pressures, and could not be used to predict demand or support production ramp under the Roadmap. ¶¶2-10, 31, 39-41, 45-47, 53-54, 64-71, 123. Defendants further knew Rivian was not close to selling its EVs at profit due to the high cost of its bill of materials (¶¶6, 150), high costs of producing a small volume of EVs in a large-scale facility (¶¶6, 28, 159, 166, 180), and supply-chain issues. ¶¶6, 53-54, 81. While Defendants issued some generic disclosures about these possible risks in their SEC filings, the picture Defendants painted by making specific, highly confident, and repeated statements to investors based on their real-time and constant access to the Data negated these generic and boilerplate disclosures. *See* Opp. 10; ¶53. Without access to the same Data Defendants repeatedly claimed gave them a "clear line of sight" and "clear visibility"

Case No. 2.24-cv-04566-CBM-PVC
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS

into "strong demand", investors had no choice but to accept Defendants' Guarantees and affirmations about demand and the Roadmap. ¶¶54, 152.

On February 28, 2023, Rivian surprised investors by reporting disappointing 2023 Guidance, raising serious doubts about the Roadmap's viability. ¶60. On this news, Rivian's stock plummeted 18%. ¶61. Defendants tempered this bad news by re-affirming the Roadmap and "strong demand". ¶¶7, 157.

In July 2023, Scaringe teased his "under-promise" strategy for Rivian. ¶95. On cue, Rivian increased its 2023 guidance to 52,000 EVs in August 2023. On the heels of this news, on October 11, 2023, Rivian conducted a $1.725 billion bond offering. ¶¶109-111.

Then, on February 21, 2024, Defendants stunned the market by admitting Rivian could not prove its fundamentals in 2024. ¶¶123, 124. Defendants reported wildly disappointing 2024 guidance, lower than Rivian's 2023 production. ¶120. Defendants also disclosed that despite their Guarantees, demand weakened before 2024 even started, and, as such, Rivian needed to revamp the Roadmap by slashing production and laying off 10% of its workforce. ¶124. On this news, Rivian stock plunged 25%. ¶125.

## III. THE COURT'S ORDER ALREADY REJECTED THE ARGUMENTS DEFENDANTS REPEAT IN THEIR NEW MOTION

On August 21, 2025, the Court denied Defendants' MTD, rejecting Defendants' arguments that Plaintiffs failed to adequately plead falsity and scienter.

In the Order, the Court conducted a thorough contextual analysis. This analysis included consideration of the statements alleged to be false and/or misleading, the reasons why those statements were actionable, and the accompanying context of the allegations, including, *inter alia*, that "Defendants' Roadmap for production was 'principally based' on a 'backlog of preorders[], which Defendants 'admittedly 'closely watched – along with cancellation rates and macroeconomic factors – 'daily,' and starting in November 2022, 'Defendants stopped reporting Rivian's Backlog to the public' and 'never reported Rivian's cancellation rates.'" Order 4.

The Court's contextual analysis also included an evaluation of whether the purported "risk warnings" raised by Defendants undermined falsity and scienter. For example, the Court considered that "the Company warned that its 'ability to develop and manufacture vehicles on a large scale is unproven'"; that "preorders for our vehicles are cancellable and fully refundable"; that it "may experience significant delays in the manufacture and delivery of…vehicles"; and that its "pricing decisions may affect our community, preorders, and demand negatively[.]" Order 9-10.

The Court cited the purported "risk warnings" that Defendants raised in their MTD (and now re-submit), including the documents Defendants sought judicial notice of in their MTD (and now resubmit). *See id*. 9 n.7 (citing Motion at 14 (citing Ex. 4 at 13-14; Ex. 11 at 15-16; Ex. 12 at 10-11; Ex. 14 at 13; Ex. 16 at 21); Motion at 15 (citing Ex. 2 at 2-3, 15-17, 25-37; Ex. 5 at 2-3, 16-18, 26-39; Ex. 1 at 2-6, 12-20; Ex. 6 at 2-3, 17-19, 27-40; Ex. 7 at 2-3, 17-19, 27-40; Ex. 8 at 2-3, 17-19, 28-41; Ex. 13 at 3; Ex. 15 at 3)); *compare* MTD 14-15 (ECF No. 66). *See also* Mot. 1 n.1.

In the end, the Court found Defendants' "risk warnings" generic and wanting. The Order concluded, in relevant part, that "[d]espite the risk disclosures, Plaintiffs plausibly allege Defendants made positive statements about increases in demand based on the preorder Backlog which was allegedly misleading to investors." Order 7. *See also id*. ("the FAC's allegations, accepted as true, demonstrate the alleged statements are not protected under the PSLRA's Safe Harbor provision or bespeaks-caution doctrine"); *id*. 9-10 ("the Court finds the general cautionary language identified by Defendants [fn] is insufficient to support a determination as a matter of law at this stage that Defendants' statements were not misleading.").

The Court's holding that Defendants' "risk disclosures" did not immunize them from liability is thus the law of the case. *See infra* 15. As set forth herein, Defendants offer no new facts, no legitimate changes or "clarifications" of law, and no other bases that

could possibly alter the Court's determination. In fact, the only new document Defendants submit with the Motion does not add further context and is duplicative of Exhibit 8.

## ARGUMENT

### IV.    LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is granted only when there is no issue of material fact in dispute. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Indeed, judgment on the pleadings is inappropriate unless "accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment **as a matter of law**." *Kazerouni v. LVNV Funding LLC*, 2014 WL 12968081, at *1 (C.D. Cal. 2014) (citation omitted) (emphasis added).

As Defendants concede, "[a] motion for judgment on the pleadings is substantially identical to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)" – a standard Plaintiffs here have already met. *Kmiec v. Powerwave Techs., Inc.*, 2014 WL 12567781, at *2 & n.2 (C.D. Cal. 2014); Mot. 8. *See also Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (motion under Rule 12(c) "functionally identical" to motion under Rule 12(b)(6)). The key difference between the two motions is timing – one is pre, and the other is post-answer. *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Here, Defendants filed their Answer on September 22, 2025. However, Defendants do not rely on their Answer in the Motion. Regardless, Defendants cannot meet their burden here either under the Rule 12(c) standard or the more stringent standard that should apply to their *de facto* reconsideration motion. *See infra* 17.

In addition, "[a] Rule 12(c) motion for judgment on the pleadings that raises issues already decided on a prior Rule 12(b)(6) motion to dismiss is subject to the 'law of the case' doctrine." *Pampena*, 2024 WL 3678002, at *2. *See also United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("[u]nder the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same

court, or a higher court in the identical case'") (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). The Court has already decided Defendants' "risk warnings" do not immunize them from liability here. Accordingly, Defendants are precluded from raising that argument again. Defendants' Motion should be denied.

## V.    DEFENDANTS' MOTION IS MERITLESS AND SHOULD BE DENIED

Defendants' Motion is based on the false premise that *Sneed* somehow changed or clarified the falsity standard, which it did not, and that the Court did not have access to *Sneed*, which it did since *Sneed* was decided ***before*** the Order. *See*, *e.g.*, Motion 16 ("[t]his Court did not have the benefit of *Sneed* before issuing its Order, and therefore did not hold Plaintiffs to the standard articulated by the Ninth Circuit"). Even more problematic, Defendants cannot escape that the Court already performed the precise contextual review that they are calling for under *Sneed*. Defendants wildly misconstrue *Sneed*, which is a fundamentally different case, using it as a pretext to rehash the same meritless arguments that failed in their MTD. This tactic will not work and indeed is impermissible under the law of the case doctrine. If Defendants genuinely believed there was a change in law or that the Court somehow erred, they should have filed a timely reconsideration motion. Defendants' Motion must be seen for what it truly is: just another meritless delay tactic in their playbook.

### A.    *Sneed* Did Not Change or Clarify the Law for This Court

It is beyond dispute that *Sneed* did not create a new falsity standard in the Ninth Circuit. *Sneed* merely re-affirmed the well-settled principle that courts must evaluate alleged misstatements and omissions in context. This principle is so well-settled that it was described by the Ninth Circuit as an "unremarkable proposition" ***30 years ago***. *See Fecht*, 70 F.3d at 1082. *See also Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996) ("The Complaint should not have been dismissed under 12(b)(6), without a contextual, 'delicate assessment' of the facts presented").

Countless cases – including those cited in both the Order and *Sneed* – reiterate this principle. *See In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991) ("[a]n issuer's public statements cannot be analyzed in complete isolation. Some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors") (internal quotation omitted); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015) (emphasizing context is relevant in determining whether statements were misleading); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1057 (9th Cir. 2014) (noting "the uncontroversial proposition that [] statements of optimism" can be actionable "when taken in context") (quoting *Warshaw*, 74 F.3d at 959).

Already knowledgeable of this well-settled principle of considering the context of alleged misstatements, the Court performed a thorough analysis when issuing the Order. *See infra* 14-15; *see also* Order 9-10. In fact, Plaintiffs asked for this review in their MTD Opp. *See* Opp. at 6 ("Every securities case turns on what defendants said, how they said it, and what they knew at the time"); *id*. at 10 ("Defendants' generic risk disclosures, which did not mention Backlog or the Roadmap, and were buried in SEC filings, were rendered meaningless, and even misleading, by Defendants' Guarantees").

Plaintiffs emphasized context to the Court because Defendants' misstatements and omissions were especially misleading when considering that Defendants repeatedly claimed to closely monitor the Data, including Backlog, cancel rates, and macroeconomic factors, which they did not disclose to investors. *See* ¶191 ("[W]e feel very confident in the continued backlog that we have. We have clear visibility into – deep into 2024 with that backlog that's established"); ¶150 ("we have significant demand visibility" based on Backlog); ¶152 (we have a "clear line of sight through 2024 in terms of demand"); ¶163 ("we maintain a vehicle backlog that provides clear demand visibility well into 2024" and the Company has a "clear line of sight until well into 2024"); ¶181 ("we've watched the demand. I mean it is a daily thing that we watch" and "[a] metric that we actually pay even

closer attention to is cancellation rate"). Defendants do not engage these highly-confident, context-specific, and Data-driven misstatements in the Motion, but choose instead to try and focus the Court on contextless, generic warnings made in the background to immunize themselves. Motion 1-2, 4-5, 11-16. It did not work in their MTD, and it will not work now because, *inter alia*, Defendants negated their generic warnings by contradicting them with specific statements backed by undisclosed Data.

This Court already found, notwithstanding Defendants' generic "warnings", including that preorders may be cancellable, that Plaintiffs sufficiently plead a case of securities fraud. Order 6-7, 9.

Thus, contrary to Defendants' assertion, *Sneed* neither brought about a sea-change in the law nor did it "clarify[] the [falsity] standard [] under Section 10(b)" for this Court. Mot. 1. The sole premise for Defendants' Motion is therefore groundless.

**B.    *Sneed*'s Highly Distinct Facts Render it Inapplicable to This Case**

Defendants' pretextual misapplication of *Sneed* to try and delay discovery and regurgitate meritless arguments is further exemplified by even a rudimentary reading of the case, which demonstrates that *Sneed* involves profoundly different facts and statements. The very first line of *Sneed* makes this abundantly clear: "Can a snappy ***slogan*** for a potent pharmaceutical [] lead to liability under our securities laws? Not in ***this case*** where the company provided additional disclosures alongside the slogan in materials intended for investors." *Sneed*, 147 F.4th at 1127 (emphasis added).

In *Sneed*, plaintiffs alleged: a slogan, "tongue and done", in "marketing materials" such as a "tabletop display and banner" advertisement at a conference booth; and the CEO's reiteration of the marketing slogan ("you 'lift up their tongue, you inject it under and you're done'"), misled investors because they omitted material information about "dosing, administration, and limitations of use," as well as the size of the potential market. *Id.*, at 1129-30. The Ninth Circuit disagreed, finding that a "pithy marketing slogan" "makes no representation" about the dosing, administration, limitations of use, or potential

market size. The Ninth Circuit further explained that "a reasonable investor knows not to trust a slogan without investigating further" and "seek[ing] out" more information in the market. *Sneed*, 147 F.4th at 1131-32. In reaching its holding, the Ninth Circuit noted that the "copious clarifying information next to the tongue and done slogan" informed investors about the relevant limitations of the product.

The facts and statements in this case could not be more different from *Sneed*. Far from alleging a consumer-facing marketing catchphrase misled investors, Plaintiffs here allege Defendants made Guarantees directly to investors about Rivian's business and operations based on their purported "close", "daily" review and analysis of Data that, as this Court recognized, was distinctly not disclosed to investors. *See* Order 5 ("Defendants 'admittedly 'closely watched [Backlog] – along with cancellation rates and macroeconomic factors – 'daily,' and starting in November 2022, 'Defendants stopped reporting Rivian's Backlog to the public' and 'never reported Rivian's cancellation rates'").

Defendants' repeated mantra during investor conference calls that they had "clear visibility" into "strong demand" for Rivian EVs based on Data they alone had access to is light years away from a rhyming slogan placed on a tabletop booth at a conference. Investors who read a slogan, as *Sneed* explained, would be expected to "seek out" additional information in, *e.g.*, a company's conference calls, press releases, or SEC filings, rather than investing based on the slogan alone. *Sneed*, 147 F.4th at 1132.

Here, Defendants made all of the alleged misstatements and omissions in materials directed to investors (not consumers), and then made it impossible for investors to verify the truth of their statements, *inter alia*, by concealing the Data from the market. As this Court found, Defendants' repeated, context-specific Guarantees that were purportedly based on closely-watched Data negated Defendants' generic and boilerplate disclosures about possible risks in Rivian's SEC filings. Order 5, 7. *Cf. id*. 12-13 (opinions actionable when an "omission makes [it] misleading to a reasonable person reading the statement

12

fairly and in context") (citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017)).

Defendants try to get around the distinct facts of *Sneed* by ignoring them and, even worse, altering what the Ninth Circuit actually held. Indeed, Defendants brazenly omit the essential word "slogan" when quoting the Ninth Circuit's holding and insert their own language, thereby distorting the import of the holding to the facts of this case. *Compare* Mot. 9 ("[a] reasonable investor would not blindly accept [*a defendant's statements*] without considering other information"); *with Sneed*, 147 F.4th at 1127 ("A reasonable investor would not blindly accept *a slogan* without considering other information") (emphasis added). To say the least, courts do not take kindly to such distortions. *See, e.g., Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346 (Fed. Cir. 2003) (affirming a reprimand for miscitation and mischaracterization of authority "because, in quoting from and citing published opinions, [counsel] distorted what the opinions stated by leaving out significant portions of the citations or cropping one of them, and failed to show that she and not the court had supplied the emphasis in one of them").

Thus, beyond reiterating well-established principles that this Court already applied, *Sneed* is a fundamentally different case than this one with no real application here.

### C.    The Court Already Found Defendants' Statements Actionable *After Analyzing* All the Information Defendants Resubmit As "Context"

Beyond the fact that *Sneed* neither created new law nor clarified the existing standard for this Court, Defendants' argument that the Court "did not hold Plaintiffs to the standard articulated by the Ninth Circuit" (Mot. at 16) is meritless for another reason: This Court already conducted a comprehensive contextual analysis of the "risk warnings" Defendants now resubmit as "context." *Compare* Mot. 11 (warning that "customer preorders were 'cancellable and fully refundable'") *with* Opp. 3, 10-11 *and* Order 9-10 (warning that "preorders for our vehicles are cancellable and fully refundable" was "not protected under [the] Safe Harbor"); *compare* Mot. 12-14 *with* Opp. 4, 10, 14 and Order

6 ("ability to become profitable [] will depend on [] our ability to maintain [] average selling prices for our vehicles" insufficient); Order 9, n.7 (citing Ex. 1 at 12-20, as well as all the exhibits from MTD at 15). *See also* Ex. 1 at 12-14, 17; Ex. 13 at 3, 9. *Cf.* ¶¶2-10, 31, 39-41, 45-47, 53-54, 64-71, 123. Indeed, Defendants re-submit with the Motion the same 24 exhibits that they submitted with their MTD. *See* Order 3-4; Mot. 3 n.1. Defendants add one just new document with the Motion (Ex. 25), but as discussed above, that document offers no new context as it is duplicative of Exhibit 8. *See supra* 8. Defendants also argue they disclosed Rivian's margins and cost of revenues (Mot. 14), but that is meaningless when Defendants alone had the Data necessary to understand those figures and whether Rivian could realistically reach profitability by 2024.

Accordingly, this Court found all Defendants' statements actionable after analyzing them in the context of the same "risk warnings" Defendants argue are needed for context in this Motion. *See* Order 10 ("the FAC's allegations, accepted as true, demonstrate the alleged statements are not protected under the PSLRA's Safe Harbor provision or bespeaks-caution doctrine"); Order 7 (holding "[d]espite the risk disclosures []… Plaintiffs plausibly allege Defendants made positive statements about increases in demand based on the preorder Backlog which was allegedly misleading to investors.").

Further underscoring that the Court properly analyzed context here, the Court found that Defendants tactically withheld vital information from, and interpreted it for, investors. *See id*. 14 (Plaintiffs "identifie[d] the Backlog as the metric which Defendants stated they reviewed 'daily,' and which is the data Plaintiffs contend Defendants materially misrepresented to investors"). The Court's findings are now the law of the case and Defendants are precluded from re-litigating them. *See Chae v. SLM Corp.*, 2008 WL 11342464, at *1 (C.D. Cal. Jan. 17, 2008) ("Defendants have effectively recast their arguments asserting Plaintiffs fail to state a claim upon which relief may be granted under a new Rule 12(c) motion. Accordingly, the 'law of the case' doctrine presumptively bars the Court from reexamining this issue.").

Case No. 2.24-cv-04566-CBM-PVC
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS

In sum, this Court already performed a detailed and contextual review of the same "risk warnings" Defendants now try to re-argue immunize them from liability. Defendants' request that the Court perform the same analysis a second time is futile because *Sneed* changed nothing and Defendants offer no new arguments or new context that would change the Court's detailed analysis in the Order. The Court rejected Defendants' argument, and its findings are the law of the case.

### D.    Defendants' Motion Should Also Be Denied Because It Is a *De Facto* And Untimely Motion for Reconsideration

Defendants' Motion, presented under Rule 12(c), is in fact an untimely *de facto* motion for reconsideration, which is an independent ground for its denial.

In an apparent attempt to skirt the strict standards for reconsideration, Defendants make their Motion under the guise of a motion for judgment on the pleadings. *See, e.g., Disney*, 2025 WL 1461139, at *1 ("a motion for reconsideration is only appropriate where '(a) a material difference in fact or law from that presented to the Court ... (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.'") (citing L.R. 7-18). But Defendants cannot sit on a purported "change in law," or supposed legal error, for nine weeks in the hopes of litigating under a more lenient standard. The time and place for Defendants to have argued such matters was in a motion for reconsideration brought within 14 days of the Order. *See* L.R. 7-18. Given that *Sneed* was issued before the Court's Order, Defendants had no excuse for missing the reconsideration deadline, if they genuinely believed reconsideration was warranted, which they apparently do not. Defendants' failure to meet the reconsideration deadline is an independent ground for denying the Motion. *See* L.R. 7-18 ("Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order . . .").

Case No. 2.24-cv-04566-CBM-PVC
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS

Notably, this Court recently did not allow other defendants in a securities case to use similar Rule 12(c) machinations to skirt the reconsideration standard. *See Disney*, 2025 WL 1461139, at *1-2. In *Disney*, this Court largely denied defendants' motion to dismiss, rejecting defendants' arguments that plaintiffs failed to adequately allege falsity and scienter. Approximately one month later, defendants, like Defendants here, moved for judgment on the pleadings, repeating many of the same arguments raised in their motion to dismiss. *Disney*, No. 2:23-cv-03661-CBM(ASx) (C.D. Cal. Mar. 28, 2025) (Dkt. No. 124-1) (Ex. A hereto). Unlike Defendants here, however, the *Disney* defendants also moved to reinstate the stay of discovery while the motion for judgment on the pleadings was pending. *Disney*, No. 2:23-cv-03661-CBM(ASx) (C.D. Cal. April 11, 2025) (Dkt. No. 139) (Ex. B hereto). The Court denied the motion for judgment on the pleadings, explaining that "[b]ecause [d]efendants' [m]otion requests the Court consider the same arguments for dismissal it previously considered under the motion to dismiss, it is in reality a motion for reconsideration." *Disney*, 2025 WL 1461139, at *1.

Applying the motion for reconsideration standard under L.R. 7-18, this Court held that "Defendants do not cite any new facts or change in the law that warrants reconsideration of the Court's order on the motion to dismiss." *Id*. The Court likewise denied the motion to reinstate the discovery stay as moot. *Local 272 Labor-Mgmt. Pension Fund v. Walt Disney Co.*, 2025 WL 1461137, at *1 (C.D. Cal. May 20, 2025). Here too, like the defendants in *Disney,* Defendants filed a *de facto* motion for reconsideration rehashing old arguments, and do not cite any new facts or legitimate changes in law. Accordingly, Defendants' Motion here too should be held to the stricter reconsideration standard and denied.

### E.    Defendants Unilaterally – And Wrongly – Decided That Their Motion Automatically Reinstated the PSLRA's Discovery Stay

Defendants have also usurped the Court's authority by unilaterally deciding that the PSLRA's discovery stay has been reinstated by their Motion. This is not only procedurally improper, but it is also wrong, as courts in this Circuit have found.

On August 21, 2025, this Court issued the Order. On September 22, 2025, Defendants filed their Answer. *See* ECF No. 79. On September 23, 2025, Plaintiffs requested a Rule 26(f) conference with Defendants. On October 1, 2025, the Parties held their first 26(f) conference. During that conference, Defendants indicated their intent to file the Motion within "weeks" and stated their belief that it would stay discovery. Plaintiffs, in turn, indicated that they intended to send a proposed Rule 26(f) report, including a discovery schedule, to Defendants for their review and consideration.

On October 10, 2025, Plaintiffs sent a draft Rule 26(f) status report to Defendants. On October 14, 2025, the Court issued an order setting the Conference for November 25, 2025. *See* ECF No. 80. On October 17, 2025, the Parties held their second 26(f) conference. During the October 17, 2025 conference, Defendants said that they would respond to the October 10, 2025 draft Rule 26(f) status report by the following week (October 20-24, 2025), but did not do so until 8:00 p.m. EST on November 4, 2025 – the night of this filing, nearly three weeks later. During that October 17, 2025 conference, Defendants again indicated their intent to file the Motion – now, in a matter of "days" – and reiterated their belief that it would reinstate the discovery stay. Plaintiffs indicated they would oppose the Motion and disagreed with Defendants' position on discovery. Plaintiffs further clarified whether Defendants intended to file a separate motion to seek a discovery stay, and Defendants indicated that they would not, and the reason why is clear.

Courts in this Circuit routinely reject Defendants' position that a Rule 12(c) motion imposes a discovery stay after the denial of a motion to dismiss. *See, e.g., In re Facebook*, 2025 WL 556282, at *2 (N.D. Cal. Feb. 19, 2025) ("the PSLRA discovery stay does not apply when there is a post-answer motion for judgment on the pleadings under Rule

12(c).… [Defendants] have the right to file a [12(c)] motion [] but they cannot further delay answering the operative complaint and conducting discovery"); *Glazing Emps. & Glaziers Union Loc. #27 Pension & Ret. Fund v. iRhythm Techs., Inc.*, 2025 WL 2243640, at *1 (N.D. Cal. Aug. 6, 2025) ("discovery [] was stayed while Defendants' motion to dismiss was pending. But, after the Court denied the motion in part [,] the Court held a case management conference, entered a pretrial scheduling order, and discovery commenced…. Defendants nonetheless contend they can unilaterally halt discovery and upend the scheduling order merely by filing a motion for judgment on the pleadings. The Court disagrees").

As indicated *supra*, this Motion seeks to hijack the Conference that this Court scheduled to address discovery and other scheduling matters for this case. Plaintiffs respectfully submit that the Court should see through this Motion, adjudicate it quickly on the papers, if possible, and allow the Conference to proceed as scheduled.

Case No. 2.24-cv-04566-CBM-PVC
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS

## VI.   CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

Dated: November 4, 2025

Respectfully submitted,

THE BURKE LAW FIRM


 /s/*Timothy J. Burke*

Timothy J. Burke (SBN #181866)
1001 Wilshire Drive, #2187
Los Angeles, CA 90017
(302) 984-7199 (phone)
(302) 602-6589 (fax)
tim.burke@burke-law-firm.com

*Liaison Counsel for Plaintiffs and the Proposed Class*

BERNSTEIN LIEBHARD LLP
Laurence J. Hasson
Joseph R. Seidman, Jr.
Jeffrey McEachern
10 East 40th Street
New York, NY  10016
(212) 779-1414 (phone)
(212) 779-3218 (fax)
lhasson@bernlieb.com
seidman@bernlieb.com
jmceachern@bernlieb.com

*Lead Counsel for Plaintiffs and the Proposed Class*

Case No. 2.24-cv-04566-CBM-PVC
PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 5,964 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 4, 2025

/s/ Timothy J. Burke
Timothy J. Burke