# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDIANA PUBLIC RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>RIVIAN AUTOMOTIVE, INC., *et al.*,<br><br>  Defendants. | Case No.:  2:24-cv-4566-CBM-JPR<br><br>**ORDER RE: DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

The matter before the Court is Defendants' Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 81 (the "Motion").)[1]

## I.    BACKGROUND

The operative complaint asserts the following two causes of action:  (1) violations of Section 10(b) of the Securities Exchange Act (the "Act") and Rule 10b-5 against all Defendants; and (2) violations of Section 20(a) of the Act against the Individual Defendants.  (Dkt. No. 57 (First Amendment Complaint ("FAC")).)  On August 20, 2025, the Court denied Defendants' motion to dismiss the FAC for failure to satisfy applicable pleading standards securities claims.  (Dkt. No. 76 (the "MTD Order").)  In the Court's August 20, 2025 MTD Order, the Court found,

---

[1] After the matter was fully briefed, the parties filed notices of supplemental authority (Dkt. Nos. 84, 88, 89, 90), which the Court has considered in ruling on the instant Motion.

*inter alia*, Plaintiffs "sufficiently plead falsity to survive the motion to dismiss stage because the statements created an impression of a state of affairs that differed in a material way from what actually existed," and "plausibly allege Defendants made positive statements about increases in demand based on the preorder Backlog which was allegedly misleading to investors." (*Id*. at 5-7.)  On September 22, 2025, Defendants filed an answer to the FAC.  (Dkt. No. 79.)  On October 22, 2025, Defendants filed the instant Motion based on the Ninth Circuit's decision in *Sneed v. Talphera, Inc.*, 147 F.4th 1123 (9th Cir. 2025), which was issued on August 20, 2025—the same date the Court issued its MTD Order.

## II.    LEGAL STANDARD

In ruling on a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court "inquires whether the complaint at issue contains 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.'"  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court accepts as true all well-pleaded allegations of material fact and construes them in a light most favorable to the non-moving party.  *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020).  The Court must also assume as true contents of documents incorporated by reference, and attached to the complaint.  *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 887 (9th Cir. 2018); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The Court may also consider facts contained in materials properly the subject of judicial notice.  *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).

## III.    DISCUSSION

The FAC alleges Defendants violated Section 10(b) of the Act and Rule 10b-5.  The elements of a securities fraud action pursuant to Section 10(b) and Rule 10b-5 are:  (1) a material misrepresentation or omission of fact, (2) scienter;

(3) a connection with the purchase or sale of a security; (4) transaction and loss causation; and (5) economic loss. *See Zucco Partners*, 552 F.3d at 990; *In re Daou Sys. Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005). Falsity, scienter, and loss causation must each be pled with particularity. *See Metzler Invest. GMBH*, 540 F.3d at 1061; *Oregon Pub. Employees Ret. Fund*, 774 F.3d at 605. Defendants move for judgment on the pleadings on the ground the Ninth Circuit's recent decision in *Sneed v. Talphera, Inc.*, 147 F.4th 1123 (9th Cir. 2025), "clarif[ies] the standard for pleading falsity under Section 10(b)" and "is dispositive here" because "[u]nder *Sneed*, no reasonable investor considering Rivian's disclosures ***in their full context***, including the Company's detailed disclosures about the risks it faced, could have been misled by the challenged statements" because "every one of the five 'facts' Plaintiffs allege was concealed by the challenged statements was expressly disclosed to shareholders in statements ignored (or not challenged) by Plaintiffs' Complaint." (Motion at 1.) Defendants attach 25 exhibits to the instant Motion (*see* Wiener Decl. Exs. 1-25), which they contend are "on-point disclosures addressing the very issues Plaintiffs allege were concealed," a reasonable investor would have considered and thus argue a reasonable investor would not have been misled by Defendants' statements.

In *Sneed v. Talphera, Inc.*, 147 F.4th 1123 (9th Cir. 2025), shareholders brought action against pharmaceutical company, its chief executive officer (CEO), and its chief medical officer (CMO) for securities fraud under § 10(b) of the Act and Rule 10b-5 and for control-person liability based on the pharmaceutical company's marketing slogan "Tongue and Done" for its under-the-tongue opioid. The United States District Court for the Northern District of California dismissed the shareholders' complaint for failure to state a claim, and the shareholders appealed. The Ninth Circuit affirmed dismissal, holding the shareholders failed to adequately allege that the company's slogan "Tongue and Done" would mislead a reasonable investor, reasoning "[t]o decide whether a misstatement or omission

3

can mislead, we need to look at 'the context surrounding the statement," and "[a] reasonable investor would not blindly accept a slogan without considering other information" in the advertising, in a speech at an investor conference, and in SEC disclosures "that clarified the context of 'Tongue and Done.'" *Id*. at 1127, 1131 (citing *Weston Fam. P'ship. LLLP v. Twitter, Inc.*, 29 F.4th 611, 622 (9th Cir. 2022)).  The Ninth Circuit noted "[c]ontext matters because we presume that a reasonable investor—who has money on the line—acts with care and seeks out relevant information," and "[a] reasonable investor cares about a statement's 'surrounding text, including hedges, disclaimers, and apparently conflicting information.'"  *Id*. at 1131 (citing *Sec. Exch. Comm'n v. Monarch Fund*, 608 F.2d 938, 942 (2d Cir. 1979); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 190 (2015)).  The Ninth Circuit further noted "[s]ometimes other information outside the immediate document can form the context in which a reasonable investor would view a particular statement," and "courts sometimes look at falsity through the lens of a 'total mix' of information that forms part of the materiality analysis."  *Id*. (citing *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390 (9th Cir. 2010) (quoting *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991))).  The Ninth Circuit thus reasoned "a reasonable investor would not blindly accept a marketing slogan by itself when she has access to other contextual information," "[a] reasonable investor would read 'Tongue and Done' in the context of a marketing campaign designed to highlight its key selling point—that patients can receive the drug orally without the frequent redosing required with IV-administered painkillers," and "a reasonable consumer—who, unlike a reasonable investor, is not presumed to carefully scour all the fine print—understands that a slogan is just that" and "certainly knows not to trust a slogan without investigating further."  *Id*. at 1132.[2]

---

[2] The pharmaceutical company ceased using the "Tongue and Done" slogan after receiving a warning letter from the FDA dated February 11, 2021 wherein the FDA asserted the company "misbrand[ed] Dsuvia within the meaning of the

Plaintiff argues *Sneed* neither created new law, nor a new pleading standard for falsity in securities cases, and therefore cannot be a basis for reconsideration of the Court's MTD Order wherein the Court already found Plaintiff sufficiently pled falsity. Plaintiff argues while the Court's MTD Order did not cite to *Sneed*, the Court already conducted the contextual analysis discussed in *Sneed* in ruling on Defendants' motion to dismiss. Plaintiff argues 24 of the 25 exhibits attached to Defendants' instant Motion which Defendants argue provide the "context" for "contextual review" of the information available to a reasonable investor are the same exhibits previously filed by Defendants for the Court's consideration in connection with Defendants' motion to dismiss. Plaintiff contends the sole new exhibit attached to the instant Motion (Ex. 25) offers no new context because it is duplicative of Exhibit 8. Plaintiff thus argues the "context" information submitted by Defendants in connection with the instant Motion were already considered and rejected by the Court when it ruled on Defendants' motion to dismiss and found that Plaintiff adequately pleaded falsity, and that the Court's MTD Order is the law of the case.

*Sneed* was based on an allegedly misleading marketing slogan and is therefore distinguishable based on its facts because the instant case before this Court does not involve an allegedly misleading marketing slogan. *Cf. Sneed*, 147 F.4th at 1132. Moreover, *Sneed* did not create new case law or clarify existing case law regarding the pleading standards for falsity in security cases. Rather, *Sneed* cited existing case law in noting that courts should look at the context surrounding the statement in deciding whether a misstatement or omission can be

---

Federal Food, Drug and Cosmetic Act [FDCA]" and concluded the company made "false or misleading claims" for purposes of the FDCA by not providing a balanced description of the "risks and benefits" of the drug. *Sneed*, 147 F.4th at 1129-30. On appeal, the Ninth Circuit found the FDA's warning letter objecting to the slogan did not mean the slogan was "not dispositive or even necessarily probative of falsity claims under the Exchange Act" because "[t]he FDCA imposes different legal requirements" than the Securities Exchange Act and "targets a different audience." *Id*. at 1133.

misleading.  *See Sneed*, 147 F.4th at 1131 (citing cases decided in 1979, 1991, 2010, 2015, 2022).

Even having considered *Sneed*, the Court cannot find as a matter of law that a reasonable investor would not be misled by Defendants' statements—indeed, the Court considered the context surrounding the alleged statements in denying Defendants' motion to dismiss.  This action is based on Defendants' alleged misrepresentation that Rivian was on track to achieve gross margin profits in 2024 by increasing the production and sales of its electric vehicles ("EVs"), and Defendants' "repeated[] reassur[ances] [to] the market that Rivian was unscathed by macroeconomic factors impacting the EV industry, which had weakened demand and reduced prices for competitors" when "Rivian was, in fact, suffering from the same macroeconomic factors as its peers," and Rivian had a "disappointing production in 2023," and it was disclosed that "Rivian's production in 2024 would be even worse," resulting in Rivian's stock price "plummeting." (FAC ¶ 2.)  As to pleading falsity, "[a]lthough plaintiffs do not need to prove at the pleading stage that [a] statement is false or misleading, pursuant to Rule 9(b) and the PSLRA, they must plead with enough particularity to make the falsity or the misleading character of the statement plausible."  *In re NVIDIA Corp. Sec. Litig.*, 2011 WL 4831192, at *4 (N.D. Cal. Oct. 12, 2011), *aff'd*, 768 F.3d 1046 (9th Cir. 2014); *see also Brown*, 875 F. Supp. 2d at 1112 (holding plaintiffs sufficiently plead falsity in securities fraud action, noting defendant "essentially disputes the accuracy of the conclusions" drawn from plaintiffs, which was improper in a motion to dismiss challenging the sufficiency of plaintiffs' complaint, reasoning "[i]f the allegations of the complaint are sufficiently supported under the standard imposed by Rule 9(b) and the PSLRA, the fact that the allegations may later be shown to be false or incorrect does not change that fact or suggest that the case should not move beyond the pleadings stage").

Here, the FAC alleges Defendants' statements regarding positive statements

6

regarding demand, production, and the Roadmap were materially misleading because Defendants knew at the time that:

1.  "Rivian's Backlog was based on fully refundable $1,000 deposits that required no purchase commitment on the part of the potential consumer, and could be canceled at any time for any reason without penalty, which rendered the Backlog highly volatile and unreliable" (FAC ¶ 137(a));

2.  Rivian's Backlog required consumers to wait extremely long periods (approximately two years) before their turn came up to purchase an EV, significantly increasing the risk of cancellations, which, in turn, reduced the Backlog and the supposed demand for Rivian EVs" (*id*. ¶ 137(b));

3.  "A material portion of Rivian's Backlog was based on pre-March 1, 2022 preorders, which the Company committed to fulfilling at an extremely low purchase price relative to cost, undermining profitability and the rationale to ramp production on the basis of those preorders." (*id*. ¶ 137(c));

4.  "Rivian's support for claiming it had sufficient demand was based on a highly unreliable Backlog that was volatile due to the ease of cancellations, which Defendants watched closely" (*id*. ¶ 143(b));

5.  "Rivian's cost to produce each EV, including bill of material costs, and other fixed and variable costs associated with operating the Normal Facility (below capacity), made the sale of each EV highly unprofitable for the Company" and "[a]t the time, Rivian lost tens of thousands of dollars on the sale of each EV produced" (*id*. ¶ 143(e)); and

6.  "Rivian was already experiencing supply chain, production, and macroeconomic issues" (*id*. ¶ 143(f)).[3]

The FAC alleges each of the 32 challenged statements alleged are materially misleading because (1) Defendants lacked a reasonable basis to assume there was sufficient demand to warrant increased production or that produced units would be sold at a profit as required to achieve gross-margin profitability in 2024; (2) preorder backlog was not a reliable indicator of demand because preorders were fully cancellable; (3) Rivian's preorder backlog included a large number of pre-

---

[3] *See also* FAC ¶¶ 146, 151, 153, 156, 158, 160, 161, 163, 165, 167, 170, 173, 175, 177, 179, 181, 183, 186, 189, 191, 193, 195, 197, 199, 201, 204, 206 (alleging similar bases for why Defendants' statements were materially misleading as alleges in paragraphs 137 and 143 of the FAC).

March 1, 2022 preorders, which Rivian had committed to fulfilling at lower prices that would undermine profitability; (4) macroeconomic factors, including rising inflation and interest rates, were adversely affecting demand; and (5) Rivian was experiencing supply chain and production issues that presented a challenge for ramping production and achieving gross margin profits by 2024.  (*See* FAC ¶¶ 5, 54, 141, 143, 163.)  Accepting these allegations as true and in the light most favorable to Plaintiff, the Court found in its MTD Order that Plaintiffs sufficiently pled falsity because the statements created an impression of a state of affairs that differed in a material way from what actually existed.  (MTD Order at 5-6 (citing *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017); *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 771 (9th Cir. 2023); *Laborers Dist. Council Constr. Indus. Pension Fund v. Sea Ltd.*, 743 F. Supp. 3d 1083, 1106 (D. Ariz. 2024); *Stadium Cap. LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, at *6 (S.D.N.Y. Feb. 5, 2024); *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 320 (S.D.N.Y. 2024).)

As to Defendants' contention that Plaintiffs' claims fail because all of the issues were disclosed to the market, the Court found in its MTD Order that despite Defendants' risk disclosures, "Plaintiffs plausibly allege Defendants made positive statements about increases in demand based on the preorder Backlog which was misleading to investors."  (MTD Order at 6-7 (citing FAC ¶¶ 52, 136, 140, 142, 145-46, 150, 164-65; *Borteanu v. Nikola Corp.*, 2023 WL 1472852, at *11 (D. Ariz. Feb. 2, 2023); *Farrar v. Workhorse Grp., Inc.*, 2021 WL 5768479, at *5 (C.D. Cal. Dec. 2, 2021); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d at 1148).)  In ruling on Defendants' motion to dismiss, the Court considered Defendants' disclosures (i.e., the "context" information which Defendants now contend are required to be considered by a reasonable investor under *Sneed*), and found even considering Defendants' disclosures, "Plaintiffs plausibly allege Defendants made positive

statements about increases in demand based on the preorder Backlog which was misleading to investors,"[4] and "Plaintiffs plead sufficient facts that these statements regarding customer demand would be misleading to an investor where Defendants omitted facts regarding the reliability of the Backlog as a basis for demand." (MTD Order at 6-7, 12.)[5]

Thus, even considering Defendants' disclosures and the Ninth Circuit's *Sneed* decision, the Court cannot find as a matter of law that Defendants' alleged statements would not mislead a reasonable investor.

## IV.  CONCLUSION

Accordingly, the Court **<u>DENIES</u>** Defendants' Motion for Judgment on the Pleadings.

**IT IS SO ORDERED.**

DATED:  January 22, 2026.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE

---

[4] The Court noted "the FAC alleges Defendants' Roadmap for production was "principally based" on a 'backlog of preorders (the 'Backlog'), which' Defendants 'admittedly 'closely watched – along with cancellation rates and macroeconomic factors – 'daily,'' and starting in November 2022, 'Defendants stopped reporting Rivian's Backlog to the public' and 'never reported Rivian's cancellation rates.' (FAC ¶ 5.)  Therefore, the FAC identifies the Backlog regarding preorders which Defendants stopped reporting publicly." (MTD Order at 5.)  Moreover, the Court noted "the FAC identifies the Backlog as the metric which Defendants stated they reviewed 'daily,' and which is the data Plaintiffs contend Defendants materially misrepresented to investors. (*See* FAC ¶¶ 2, 5, 53, 91, 123, 182.)." (MTD Order at 12.)  Thus, while Defendants made certain risk disclosures about the Backlog, Defendants stopped publicly reporting Backlog preorders but allegedly made statements regarding increases in demand based on the preorder Backlog that Plaintiffs plausibly allege were misleading to a reasonable investor.

[5] Plaintiffs argue Defendants' Motion was filed to unduly delay discovery and is an untimely motion for reconsideration.  There is nothing in the record clearly demonstrating the Motion was filed for an improper purpose.  Regardless of whether the Court treats the instant Motion as a motion for judgment on the pleadings or a motion for reconsideration under L.R. 7-18, the Court denies the Motion because even if the Court considers *Sneed*, Defendants fail to demonstrate Defendants' alleged statements would not mislead a reasonable investor as a matter of law.